UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ENRON CREDITORS RECOVERY CORP., *et al.*,<br><br>Reorganized Debtors. | Chapter 11<br>Case No. 01-16034 (AJG)<br><br>Jointly Administered |
| ENRON CREDITORS RECOVERY CORP.,<br><br>Appellant,<br><br>v.<br><br>INTERNATIONAL FINANCE CORP., *et al.*,<br><br>Appellees. | Adv. Pro. No. 03-93370 (AJG)<br><br>District Court<br>Case No. 07-06597 (AKH)<br><br>**ORAL ARGUMENT REQUESTED** |

## APPELLEES' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION TO DISMISS APPEAL

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

    The Collateralized Loan Obligation Transaction ............................................................ 2
    Decline in The Value of the CLO Assets ..................................................................... 3
    The Adversary Proceeding ....................................................................................... 4
    Initial Dismissals .................................................................................................. 5
    Motions to Dismiss ................................................................................................ 5
    New Counsel and the Remaining Defendants ............................................................... 7

ARGUMENT ............................................................................................................. 9

    This Court Should Dismiss Enron's Appeal as Untimely ............................................... 9
    Application of Rule 54 Within the Second Circuit ..................................................... 11

CONCLUSION .......................................................................................................... 18

## TABLE OF AUTHORITIES

### FEDERAL CASES

*AFGE Local 1533 v. Cheney*, 944 F.2d 503 (9th Cir. 1991) .......................................................13

*Acha v. Beame*, 570 F.2d 57 (2d Cir. 1978).............................................................................18

*Askanase v. Livingwell, Inc.*, 981 F.2d 807 (5th Cir. 1993) .......................................................13

*Carter v. City of Philadelphia*, 181 F.3d 339 (3d Cir. 1999).....................................................14

*Cody, Inc. v. Town of Woodbury*, 179 F.3d 52 (2d Cir. 1999).....................................................10

*Delta Airlines, Inc. v. A.I. Leasing II, Inc. (In re Pan Am Corporation)*, 159
B.R. 396 (S.D.N.Y. 1993)..............................................................................12, 15, 16

*Ebrahimi v. City of Huntsville Board of Education*, 114 F.3d 162 (11th Cir.
1997) ...............................................................................................................................14

*Enron Corp. v. International Finance Corp. (In re Enron Corp. et al.)*, 341
B.R. 451 (Bankr. S.D.N.Y. 2006)........................................................................6, 14, 18

*Enron Corp. v. International Finance Corp. (In re Enron Corp. et al.)*, 343
B.R. 75 (Bankr. S.D.N.Y. 2006) ............................................................................7, 9,14

*Fletcher v. Marino*, 882 F.2d 605 (2d Cir. 1989) .....................................................................13

*Fuller v. M.G. Jewelry*, 950 F.2d 1437 (9th Cir. 1991) .............................................................13

*Gray v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400 (5th Cir. 2004) ............................13

*HBE Leasing Corp. v. Frank*, 48 F.3d 623 (2d Cir. 1995) .........................................................12

*Hardie v. Cotter & Co.*, 819 F.2d 181 (8th Cir. 1987) ..............................................................14

*In re Johns-Manville Corp.*, 476 F.3d 118 (2d Cir. 2007)..........................................................10

*Kahn v. Chase Manhattan Bank, N.A.*, 91 F.3d 385 (2d Cir. 1996) ...........................................18

*LTV Steel Co. v. United Mine Workers of America (In re Chateaugay Corp.)*,
922 F.2d 86 (2d Cir. 1990).......................................................................................12,15, 16

*Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737 (1976)....................................................15

*Olin Corp. v. Certain Underwriters at Lloyd's London*, 468 F.3d 120 (2d Cir. 2006) ...................................................................................................................13

*Perez v. Ortiz*, 849 F.2d 793 (2d Cir. 1988) ..............................................................13

*In re Satellite System Corp.*, 73 B.R. 610 (S.D.N.Y. 1987) .........................................10

*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956) ...............................................11

*St. Paul Fire & Marine Insurance Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989) ...........................................................................................................12, 13

*Witchard v. Montefiore Medical Center*, 2006 WL 2773870 (S.D.N.Y. Sept. 26, 2006) ...................................................................................................................15

## FEDERAL STATUTES

28 U.S.C. §158(c) ..................................................................................................10

Fed. R. Bankr. P. 7054.....................................................................................*passim*

Fed. R. Bankr. P. 8001 ...........................................................................................10

Fed. R. Bankr. P. 8002 .......................................................................................1, 10

Fed. R. Bankr. P. 9021 .........................................................................................7, 8

Fed. R. Civ. P. 41(a) ................................................................................................9

Fed. R. Civ. P. 54(b) .......................................................................................*passim*

## MISCELLANEOUS

Craig C. Reilly, 22 No. 2 LITIG 43, 43, *Interlocutory Orders: Getting It Right The Second Time* (Winter, 1996) ....................................................................................................17

J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 110.08[1] ..........................15

Caisse de Dépôt et placement du Québec ("Caisse") and National Australia Bank ("NAB," and, together with Caisse, the "Appellees") respectfully submit this memorandum of law in support of their motion to dismiss the above-captioned appeal pursuant to Federal Rules of Bankruptcy Procedure 8002 and 8011, and Federal Rule of Civil Procedure 54(b) (made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7054(a)) ("Rule 54").

## PRELIMINARY STATEMENT

This appeal arises from the dismissal with prejudice under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012(b) and Federal Rule of Civil Procedure 12(b)(6) of an adversary proceeding brought by Enron Creditors Recovery Corp. (formerly known as Enron Corp.) ("Enron") against the Appellees and others. Appellees move to dismiss this appeal as untimely. Enron filed its notice of appeal after nearly ten months of total inactivity in the underlying adversary proceeding and nearly ten months after the entry of a final judgment (the "Judgment") under Rule 54 in Appellees' favor.

Enron has suggested in its Notice of Appeal dated June 22, 2007 that, based on Second Circuit precedents, it could not appeal from the Judgment as a matter of right by filing a notice of appeal on or before the August 21, 2006 deadline to appeal. Without saying so, Enron appears to maintain that the variance of the Judgment's form from the letter of Rule 54 rendered the Judgment interlocutory, not final, and this relieved Enron of the need to appeal.

The matter, of course, is not that simple. The procedural posture of Enron's appeal and the procedural posture of the underlying adversary proceeding both in August 2006 and June 2007 present a fact pattern without precedent in this Circuit and thus this motion involves a matter of first impression. The decisions in this Circuit and

elsewhere establish that finality under Rule 54 in a case like this does not depend invariably, as Enron apparently contends, on the inclusion of "magic words" and written reasons for those words, but rather on a determination of judicial intent based on the state of the record when the Bankruptcy Clerk entered the judgment. The evident facts and circumstances establish that Judge Gonzalez intended the Judgment as final.

Whether Enron made an initial determination not to appeal the Judgment despite its finality, or whether Enron's new counsel has decided "nothing ventured, nothing gained" in revisiting a decision that Enron made ten months ago, matters little. Enron allowed the ten-day appeal period to lapse following entry of the Judgment. The Judgment is final and non-appealable, and this Court should dismiss Enron's appeal.

## STATEMENT OF FACTS

### The Collateralized Loan Obligation Transaction

This litigation results from Enron's structured financing activities. In or about December 1999, Enron and two other entities, Enron North America Corp. ("ENA") and LJM2, entered into a transaction known as a "collateralized loan obligation," or "CLO," to securitize a portfolio of loan facilities (the "CLO Assets") owned by ENA and other affiliates of Enron. Enron caused LJM2 to establish a trust, ENA CLO I Trust (the "CLO Trust"), which issued several series of notes to third parties (the "CLO Notes"). (Complaint (defined below) ¶ 26, attached as Exhibit 1 to the Declaration of Stephen J. Shimshak ("Shimshak Decl.") sworn to on August 1, 2007) ("Compl.").) To ensure timely interest and other payments on the CLO Notes, Enron separately formed three other entities as part of the CLO transaction structure: ENA CLO I Holding Company GP L.L.C. ("Holding GP"), ENA CLO I Holding Company I

L.P. ("Holding I LP"), and ENA CLO I Holding Company II L.P. (*Id.* ¶ 27.) Holding GP served as the general partner of both limited partnerships. (*Id.*) The CLO Trust served as the sole limited partner of Holding I LP. (*Id.* ¶ 29.)

After establishing these entities, Enron caused ENA and other Enron affiliates to transfer the CLO Assets to Holding I LP. (*Id.* ¶ 28.) These assets enabled the CLO Trust, through distributions received as the sole limited partner, to make payments to holders of the CLO Notes. (*Id.* ¶ 30.) All of the defendants in above-captioned adversary proceeding, including the Appellees, held CLO Notes. (*Id.* ¶ 31.)

**Decline in The Value of the CLO Assets**

Some nine months after the transfer of the CLO Assets to Holding I LP, the market value of the CLO Assets began to decline. (*Id.* ¶ 32.) In response, on or about September 1, 2000, Enron granted a put option (the "Put Option") to Holding I LP that enabled Holding I LP to require Enron to purchase interests in the CLO Assets in an amount up to $113 million. (*Id.*)

Between September 2000 and April 2001, the decline in the market value of the CLO Assets continued, and the underlying obligors of the collateralized loans included in the CLO Assets failed to make payments sufficient to cover the CLO Trust's obligations on the CLO Notes. (*Id.* ¶ 34.) On or about December 29, 2000, Holding I LP exercised its rights under the Put Option, and on or about January 12, 2001, Enron paid $63,109,023.64 to Holding I LP (*Id.* ¶ 47), which, in turn, distributed this amount to the CLO Trust, as limited partner. (*Id.* ¶ 33.) The CLO Trust then transferred these funds to certain holders of CLO Notes in or around January 2001 and June 2001 (the "Put Transfers"), including the Appellees. (*Id.* ¶ 47, 50.)

In spring 2001, Enron purchased the then-outstanding CLO Notes from certain defendants at face value, plus accrued interest. (*Id.* ¶ 35.) To do so, Enron made certain transfers by wire to Chase Manhattan Bank ("Chase"), as indenture trustee for the benefit of holders of CLO Notes. (*Id.* ¶¶ 37-40.) On the same dates as those transfers, Chase made transfers (the "May Transfers") to certain of the Defendants other than the Appellees, and, in exchange, those Defendants transferred their CLO Notes to Enron or ENA. (*Id.*)

**The Adversary Proceeding**

In November 2003, Enron filed a complaint seeking to recover from sixteen defendants, including the Appellees, payments made in respect of the CLO Notes (the "Complaint"). In Count I of the Complaint, Enron sought to avoid and recover the May Transfers from ten of the Defendants (the "Initial Transferees") as constructive fraudulent transfers pursuant to sections 548(a)(1)(B) and 550(a)(1) of the Bankruptcy Code. (*Id.* ¶¶ 36-45.) In Count II, Enron sought to recover the Put Transfers from the Appellees and from other defendants as alleged mediate transferees of Enron (the "Subsequent Transferees"). (*Id.* ¶¶ 46-56.) Enron sought to recover the Put Transfers as constructive fraudulent transfers, pursuant to section 550(a)(2) of the Bankruptcy Code. (*Id.*) Finally, in Count III, Enron sought to disallow any claims of the defendants on the basis that the defendants held property recoverable by Enron under section 550 of the Bankruptcy Code as alleged in Counts I and II. (*Id.* ¶¶ 57-61.)

## Initial Dismissals

Within a few months of filing the Complaint, in the first quarter of 2004, Enron filed stipulations voluntarily dismissing the Complaint against two of the Initial Transferees and one of the Subsequent Transferees. (Shimshak Decl., Exs. 2, 3.)[1]

## Motions to Dismiss

Over the next nine months, between May 2004 and January 2005, seven of the eight remaining Initial Transferees and one of the five remaining Subsequent Transferees filed motions to dismiss the Complaint for failure to state a claim, on the grounds that the safe harbor for "settlement payments" provided by section 546(e) of the Bankruptcy Code barred Enron from avoiding and recovering the subject transfers.[2] (Shimshak Decl., Exs. 4, 5, 6, 7.)

In August 2004 and June 2005, Caisse and NAB, two of the five remaining Subsequent Transferees, each separately moved to dismiss the Complaint for failure to state a claim because Enron could not establish the elements of a claim for recovery under section 550 of the Bankruptcy Code.[3] (Shimshak Decl., Exs. 8, 9.) More specifically, Enron could not recover from the Appellees because Enron had neither avoided the initial transfer nor sued the initial transferee.

---

[1]   "Bankruptcy Docket" refers to the adversary proceeding docket: *Enron Creditors Recovery Corp.* v. *International Finance Corp., et al.*, Ch. 11, Case No. 01-16034 (AJG), Adv. Pro. 03-93370 (AJG).

[2]   The Clerk of the Bankruptcy Court had entered a default judgment against one of the Initial Transferees, Protective Life; the parties subsequently set aside the default by "so ordered stipulation," which enabled Protective Life to file a motion to dismiss.

[3]   The Clerk of the Bankruptcy Court had entered a default judgment against NAB in November 2004; the parties subsequently set aside the default by "so ordered" stipulation, which permitted NAB to file its motion to dismiss.

By opinion dated May 2, 2006 (the "546(e) Opinion") (Shimshak Decl.,

Ex. 10), Bankruptcy Court Judge Gonzalez granted the motions to dismiss filed by five of

the Initial Transferees and one Subsequent Transferee, reducing the number of remaining

defendants to five.[4]  In the 546(e) Opinion, the Bankruptcy Court held that section 546(e)

of the Bankruptcy Code protected the subject transfers from avoidance by Enron.  (546(e)

Op. pp. 458-59.)  On June 15, 2006, the Bankruptcy Court entered a corresponding order

that dismissed all counts in the Complaint against these six defendants with prejudice,

and directed the clerk to enter a final judgment pursuant to Bankruptcy Rule 7054(b) and

Fed. R. Civ. P. 54(b) dismissing the adversary proceeding as to them with prejudice (the

"546(e) Order").  (Shimshak Decl., Ex. 11.)  The form of that Order proposed to Judge

Gonzalez on May 2, 2004, contained a "Whereas" recital "that there is no just reason for

delay" in the entry of judgment in the proceeding with respect to the moving defendants.

(Shimshak Decl., Ex. 12.)  Judge Gonzalez deleted that recital from the form of the order

that he entered.  (546(e) Order.)  The clerk entered a judgment on August 9, 2006.

(Shimshak Decl., Ex. 13.)

Though the 546(e) Opinion and form of proposed order preceded the

opinion on Appellees' motion to dismiss, the entry of the corresponding order and

judgment did not.[5]  By opinion dated May 18, 2006 (the "550 Opinion") (Shimshak

---

[4]    After filing motions to dismiss, but before issuance of the 546(e) Opinion, two Initial
Transferees entered into settlements with Enron; thus, the Complaint was dismissed
against each before issuance of this opinion.

[5]    Enron may contend that the deletion of the language in the 546(e) Order, submitted
before, but entered after, the 550 Order, somehow reflects the Bankruptcy Court's
view that the 550 Order did not constitute a final order within the meaning of Rule
54.  In fact, the docket just as readily supports the opposite conclusion -- that the
Bankruptcy Court determined correctly that there was no finality when it received the

Decl., Ex. 14), the Bankruptcy Court granted the Appellees' motions to dismiss. In the 550 Opinion, Judge Gonzalez reasoned that section 550(a) of the Bankruptcy Code required that Enron first establish the initial transfers as improper and avoided (which Enron failed to do) before it could recover such transfers from the Appellees. (550 Op. p. 84.)

On June 5, 2006, the Bankruptcy Court entered an order (the "550 Order") in accordance with the 550 Opinion. (Shimshak Decl., Ex. 15.) Rather than addressing Rule 54's timing element in the negative ("no just reason for delay"), the 550 Order (unlike the 546(e) Order) expressed the same thought in the affirmative (". . . this order shall take effect immediately upon its entry"). (550 Order ¶ 3.) It also directed the Bankruptcy Clerk to enter final judgment pursuant to Fed. R. Bankr. P. 7054 and Fed. R. Bankr. P. 9021 dismissing the adversary proceeding as to Caisse and NAB with prejudice. (Id. ¶ 4.) The Bankruptcy Clerk entered the Judgment on August 9, 2006. (Shimshak Decl., Ex. 16.) Therefore, on August 21, 2006, ten days after the Bankruptcy Clerk entered the Judgment, the 550 Order became final and non-appealable.

**New Counsel and the Remaining Defendants**

In November 2004, the Clerk of the Bankruptcy Court entered a default judgment against CDC Investment Management Corp. ("CDC"), a Subsequent Transferee, and, in December of that year, the Bankruptcy Court entered an order

---

proposed 546(e) order because it had not yet entered the 550 Opinion. That the Bankruptcy Court docketed the 546(e) Order after the 550 Order suggests nothing more than an internal administrative delay. This Court should draw its conclusions from the actual posture of the case at the time of the 550 Order and Judgment.

granting default judgment against CDC in a specified dollar amount. (Shimshak Decl., Exs. 17, 18.)[6]

In June 2005, Berkeley Capital Management, LLC ("Berkeley"), the only Initial Transferee that had not either been dismissed or filed a motion to dismiss as of that time, filed an answer to the Complaint. (Shimshak Decl., Ex. 19.) In its answer, Berkeley asserted several affirmative defenses, including the defense provided by the safe harbor provision for settlement payments under section 546(e) of the Bankruptcy Code. (Shimshak Decl., Ex. 19, p.9.)

This was, then, the procedural posture of the adversary proceeding as of August 9, 2006. For all intents and purposes, for the nine months following entry of the Judgment on August 9, 2006, nothing happened in the adversary proceeding. Beginning in April, 2007, a series of seemingly interrelated events took place. In April, 2007, several attorneys from the law firm of Klee, Tuchin, Bogdanoff & Stern LLP ("Klee Tuchin"), moved for admission to practice, *pro hac vice*, before the Bankruptcy Court to represent Enron in the adversary proceeding. (Shimshak Decl., Ex. 20.)

On June 14, 2007, the Bankruptcy Court entered two "so ordered" stipulations that (i) simultaneously vacated the default judgment against CDC and dismissed the adversary proceeding against CDC with prejudice under Fed. R. Civ. P. 41(a)(1)(ii); and (ii) dismissed the adversary proceeding against Berkeley with prejudice under Fed. R. Civ. P. 41(a)(1)(ii). (Shimshak Decl., Exs. 21, 22.) On that same date, Enron filed a notice of dismissal of action, dismissing the adversary proceeding against

---

[6]   AP Funding, another Subsequent Transferee named in the Complaint, did not answer the Complaint nor appear in the case. However, nothing happened with respect to AP Funding until its dismissal in June, 2007.

defendant and Subsequent Transferee AP Funding with prejudice under Fed. R. Civ. P. 41(a)(1)(ii). (Shimshak Decl., Ex. 23.)

Four days later, the clerk of the Bankruptcy Court entered a judgment noting "that the plaintiff take nothing and that the action be dismissed on the merits with respect to [Berkeley] and [CDC]." (Shimshak Decl., Ex. 24.)

On June 19, 2007, Enron substituted its counsel throughout the adversary proceeding, Togut, Segal & Segal LLP ("Togut"), with new counsel, Venable LLP ("Venable"). (Shimshak Decl., Ex. 25.) Venable now serves with Klee Tuchin as co-counsel to Enron.

On June 22, 2007, Enron filed its notice of appeal (the "Notice of Appeal") from the 550 Opinion, 550 Order and Judgment of the Bankruptcy Court, nearly ten months after the entry of the Judgment. (Shimshak Decl., Ex. 26.)

## ARGUMENT

### This Court Should Dismiss Enron's Appeal as Untimely

The disposition of this motion turns on whether the Judgment entered by the Bankruptcy Court on August 9, 2006 was final under Rule 54.[7] If it was, then Enron had to file a notice of appeal by August 21, 2006 (which it did not do), and it cannot obtain any relief from that deadline.[8]

---

[7]    Bankruptcy Rule 7054(a) applies Rule 54(a)-(c) to adversary proceedings.

[8]    Bankruptcy Rule 8001, in pertinent part, requires that a party filing a notice of appeal from a judgment, order, or decree of a bankruptcy judge to a district court file such notice within the time allowed by Bankruptcy Rule 8002. Fed. R. Bankr. P. 8001. In turn, Bankruptcy Rule 8002 requires filing a notice of appeal "within 10 days of the date of the entry of the judgment, order, or decree appealed from." Fed. R. Bankr. P. 8002; *see also* 28 U.S.C. §158(c) (incorporating Bankruptcy Rule 8002).

Rule 54(b) provides:

> When more than one claim for relief is presented in an
> action, whether as a claim, counterclaim, cross-claim, or
> third-party claim, or when multiple parties are involved, the
> court may direct the entry of a final judgment as to one or
> more but fewer than all of the claims or parties only upon
> an express determination that there is no just reason for
> delay and upon an express direction for the entry of
> judgment. In the absence of such determination and
> direction, any order or other form of decision, however
> designated, which adjudicates fewer than all the claims or
> the rights and liabilities of fewer than all the parties shall
> not terminate the action as to any of the claims or parties,
> and the order or other form of decision is subject to
> revision at any time before the entry of judgment
> adjudicating all the claims and the rights and liabilities of
> all the parties.

The purpose of Rule 54 is straightforward: to avoid the denial of justice through delay in

the context of a multi-party litigation; before Rule 54, courts increasingly needed to await

adjudication of all claims before rendering appealable a judgment on a distinctly separate

claim, due to the liberalization of the joinder and intervention provisions in the federal

rules. Advisory Committee Note of 1946; *Sears, Roebuck & Co. v. Mackey*, 351 U.S.

427, 432-35 (1956).

Enron's adversary proceeding involved multiple claims for relief against

multiple parties -- initially sixteen defendants. Because Rule 54 applied to the procedural

---

The ten-day limit prescribed by Bankruptcy Rule 8002 is mandatory and must be
strictly enforced. *See In re Johns-Manville Corp.*, 476 F.3d 118, 121 (2d Cir. 2007)
(dismissing cross-appeal as untimely when filed one day beyond applicable time
limit); *Cody, Inc.* v. *Town of Woodbury,* 179 F.3d 52, 56 (2d Cir. 1999) (dismissing
appeal as untimely when filed outside of Federal Rules of Appellate Procedure time
limit); *In re Satellite Sys. Corp.*, 73 B.R. 610 (S.D.N.Y. 1987) (dismissing appeal as
untimely when filed outside of Bankruptcy Rule 8002 time limit).

posture of the adversary proceeding, the Bankruptcy Court entered an order pursuant to
Bankruptcy Rule 7054 and Rule 54, dismissing the action with prejudice as to the
Appellees. The Bankruptcy Court's order did not recite the words that "there is no just
reason for delay," found in Rule 54. It made that determination using different words
with the same meaning, stating that its order shall "take effect immediately," and
directing the Clerk of the Bankruptcy Court to enter a final judgment dismissing the
action with prejudice as to the Appellees. The Bankruptcy Clerk subsequently entered
the Judgment under Rule 54.

### Application of Rule 54 Within the Second Circuit

Was the Judgment final? The answer to that question on these unique
facts lies in the precedents in this Circuit and elsewhere concerning Rule 54. As
demonstrated below, the answer to that question is "Yes."

Unlike the situation here, the Second Circuit has generally applied Rule 54
strictly in the context of a party's attempt to invoke the jurisdiction of the Court of
Appeals prematurely, not belatedly. *HBE Leasing Corp.* v. *Frank*, 48 F.3d 623, 631 (". . .
entry of a 'judgment' unaccompanied even by the statutory formula is not a sufficient
basis for our jurisdiction") (citing *In re Chateaugay Corp.*, 928 F.2d 63, 64 (2d Cir.
1991); *see also Delta Airlines, Inc.* v. *A.I. Leasing II, Inc. (In re Pan Am Corporation)*,
159 B.R. 396, 400 (S.D.N.Y. 1993) ("The law of this Circuit, however requires, 'strict
compliance will rule 54(b) in the bankruptcy context.'").

The rigid application of Rule 54 is not invariable, however. When the
underlying record demonstrates finality, the Second Circuit has displayed flexibility and
does not insist upon an express determination of "no just reason for delay." "[I]f the

record reveals that the [lower court] could 'easily' provide acceptable reasons for the entry of judgment" and "[t]he interest of sound judicial administration favors an expeditious resolution of the conflict presented," the Second Circuit has excused literal compliance with the language of Rule 54. *St. Paul Fire & Marine Ins. Co.* v. *PepsiCo, Inc.*, 884 F.2d 688, 693 (2d Cir. 1989) (citing cases).

*St. Paul* is illustrative. In *St. Paul*, PepsiCo, Inc. ("PepsiCo") moved for entry of judgment pursuant to Rule 54. *See id.* at 692. In granting PepsiCo's motion, the district court gave no reasons for its action and simply wrote the words "motion granted so ordered" and signed the cover of the notice of motion submitted to the court. *Id.* at 693. The district court issued no opinion whatsoever on the matter nor did it adopt any reasons for the decision. *See id.* While displeased with the district court's failure to use the words "no just reason for delay" or to supply any reasons for granting the motion under Rule 54(b), the Second Circuit, upon examination of the record, found the reasons for the district court's actions readily apparent. *Id.* In granting PepsiCo's motion, the District Court disposed of PepsiCo's "entire claim for indemnity [and] finally determine[d] a distinct and separable part of the suit." *Id.* Thus, based on the record, the court had effectively deemed that there was no just reason for delay. *See id.* at 694.

"Where the reasons for the entry of [a] judgment are obvious ... a district court's entry of judgment pursuant to Rule 54 will satisfy the purposes of the Rule even though the court did not state the reasons for its determination that judgment should be entered." *Fletcher* v. *Marino*, 882 F.2d 605, 609-10 (2d Cir. 1989) (reciting "no just reason for delay," but offering no reasons; because the causes of action were independent from those left undecided and such causes of action were "finally determined" by the

judgment, the rationale for "no just reason for delay" was obvious); *Perez* v. *Ortiz*, 849

F.2d 793, 796-97 (2d Cir. 1988) (same).  The Second Circuit continues to display

flexibility in this circumstance, most recently in *Olin Corp.* v. *Certain Underwriters at*

*Lloyd's London*, 468 F.3d 120, 126, n.4 (2d Cir. 2006) (although the district court failed

to give the required reasons for its decision to certify under rule 54(b), the reasons were

sufficiently obvious that such omission did not deprive the court of jurisdiction).[9]

      At the time of entry of the 550 Order, there were "no just reasons for

delay,"[10] and Judge Gonzalez directed that the 550 Order "take effect immediately upon

---

[9]   Decisions in other circuits have concluded that no "magic words" are necessary
when the record is obvious. *Gray* v. *Beverly Enterprises-Mississippi, Inc.*, 390 F.3d
400, 404 (5th Cir. 2004) (when record is obvious, to hold that an order is not
appropriate for review because it lacks "talismanic" words would be contrary to Fifth
Circuit precedent); *Askanase* v. *Livingwell, Inc.*, 981 F.2d 807, 810 (5th Cir.1993)
("[I]t is not necessary for the Trial Court to recite the magic words of 'no just reason
for delay.'"); *AFGE Local 1533* v. *Cheney*, 944 F.2d 503, 505, n.3 (9th Cir. 1991)
("Rule 54(b) does not require that the district court use the rule's precise wording.");
*Fuller* v. *M.G. Jewelry*, 950 F.2d 1437 (9th Cir.1991) (holding that 54(b) certification
did not have "jurisdictional defect" merely because district court did not include
specific findings regarding appropriateness of certification); *Ebrahimi* v. *City of
Huntsville Bd. of Educ.*, 114 F.3d 162, 165-66 (11th Cir.1997) (explaining that where
reasons for entry of separate judgments for fewer than all parties or claims are
obvious, and remand would result only in unnecessary delay in the appeal process,
the court of appeals will not require explanation; but when the sound basis for
certification is not obvious, the court must dismiss the appeal for lack of final
judgment); *Carter* v. *City of Philadelphia*, 181 F.3d 339, 345 (3d Cir. 1999) ("A rule
requiring remand or dismissal even when the propriety of immediate appeal is
apparent would not optimally balance the competing concerns that must inform our
interpretation of Rule 54(b)."); *Hardie* v. *Cotter & Co.*, 819 F.2d 181, 182 (8th
Cir.1987) (declining to say that an order that does not elaborate on the reasons for
Rule 54(b) certification would never be sufficient to withstand attack, but reversing
an order that failed to do so, where the appellate court could find nothing in the
record justifying the certification or suggesting that the interests of the parties would
be furthered by such a certification).

[10]   The record before the Bankruptcy Court clearly demonstrated the finality of the
proceedings -- in substance, the 546(e) and the 550 Opinions granting the motions to
dismiss together resolved all claims against all remaining defendants, even if they did

its entry." The effect of both directing an immediately effective dismissal with prejudice and entry of a final order negates any intention on Judge Gonzalez's part to reserve his prerogative to revise the order or other form of decision before the entry of final judgment against the remaining defendants, Berkeley and CDC[11] -- both of which had the benefit of the 550 Opinion and the 546(e) Opinion. Why after all would he choose to reserve that prerogative? The combined effect of the two Opinions, as shown by Enron's subsequent conduct, disposed of the case, leaving nothing more to adjudicate.

In its Notice of Appeal, Enron states that "[t]he opinion, order and judgment listed as Docket Nos. 132, 137 and 140 became appealable as final only upon entry of the orders and judgment [Docket Nos. 153, 154 and 156] disposing of the remaining claims against the remaining defendants," and, as noted above, cites two cases in support of this proposition -- *LTV Steel Co.* v. *United Mine Workers of America* (*In re Chateaugay Corp.*), 922 F.2d 86 (2d Cir. 1990) and *Delta Air Lines, Inc.* v. *A.I. Leasing II, Inc. (In re Pan Am Corp.)*, 159 B.R. 396, 400 (S.D.N.Y. 1993). (Shimshak Decl., Ex. 26.) These decisions -- both involving attempts to appeal from otherwise interlocutory matters -- are distinguishable and do not support Enron's contention that the Judgment was not final as of August 21, 2006.

---

not technically dismiss the three remaining non-moving defendants. These defendants only "remained" in the adversary proceeding in the technical sense that an order had not been entered specifically dismissing such defendants; however, upon entry of the 546(e) and the 550 Opinions, each had the immediate advantage of one or both of these opinions.

[11]   AP Funding, a defendant and Subsequent Transferee, did not appear in the adversary proceeding. While the Court had not dismissed the adversary proceeding against AP Funding as of entry of the 550 Opinion, it, too, had the benefit of the decision. On June 12, 2207, Enron filed a notice of dismissal of action dismissing the adversary proceeding against AP Funding with prejudice.

*Chateaugay* involved an appeal from a partial summary judgment in favor of LTV. *Chateaugay* at 87. In its opinion, the Second Circuit focused on the well-understood proposition that "[a]n order granting a partial summary judgment is interlocutory." *Id.* (citing *Liberty Mutual Ins. Co.* v. *Wetzel*, 424 U.S. 737, 742-43 (1976); 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 110.08[1] (1990)); *see also Delta*, 159 B.R. at 400 (an order partially granting a motion to dismiss considered interlocutory). As distinct from an order granting partial summary judgment, dismissal of the only claim against a defendant conveys full finality. *See Witchard* v. *Montefiore Medical Center*, 2006 WL 2773870, at *6 (S.D.N.Y. Sept. 26, 2006) ("Dismissal with prejudice as a result of a successful motion to dismiss is usually considered a final adjudication on the merits."). Unlike with a partial summary judgment, nothing remains to continue. That was the very circumstance here.

Enron's reliance on *Delta* is also misplaced. *Delta* involved a consolidated appeal from an order that both granted a motion to dismiss third-party claims and counterclaims as to individual members of a creditors committee and denied the motion to dismiss as to the creditors committee itself in two separate adversary proceedings. The other causes of action in the underlying adversary proceeding remained pending. After reaching its decision on the motion to dismiss, the bankruptcy court had the option to choose between two proposed orders -- one containing a citation to Rule 54 and one without. The bankruptcy court entered the order without the reference to Rule 54. Because the bankruptcy court partially granted the motion to dismiss, the district court analogized the situation to *Chateaugay*: "[m]ore specifically, the Second Circuit has held that an order granting partial summary judgment disposing of only one of two

pending claims in adversary proceeding is interlocutory and therefore not appealable as a final order absent compliance with Rule 54(b)." *Id.* at 400 (citing *Chateaugay*, 922 F.2d at 90-91.) Unlike the circumstances in *Delta*, Judge Gonzalez, for the obvious reasons identified above, directed that his order of dismissal with prejudice take immediate effect and directed entry of a final judgment.

*    *    *

A final note: while Enron in its June 22, 2007 Notice of Appeal insists that it could only proceed with an appeal at that time, its conduct of the adversary proceeding after August 2006 supports precisely the opposite conclusion -- that Enron regarded the adversary proceeding as over, save for tying up some procedural, not substantive, loose-ends.

Consider the subsequent record. Following entry of the Judgment on August 9, 2006, nothing at all happened in the adversary proceeding until April of 2007, when the Klee Tuchin attorneys moved for admission to practice, *pro hac vice*, before the Bankruptcy Court. (Shimshak Decl., Ex. 20.) [12]

The next event occurred on June 14, 2007, when by a "so ordered" stipulation and order, Enron vacated the default judgment against CDC and dismissed the adversary proceeding as against CDC. (Shimshak Decl., Ex. 21.) That very day, also by "so ordered" stipulation and order, Enron dismissed the adversary proceeding as against Berkeley (Shimshak Decl., Ex. 22), and, by notice of dismissal, dismissed the adversary

---

[12]    In August and September, 2006, Enron filed three documents that related to the larger insolvency proceedings in the Enron chapter 11 cases. These filings are not specific to the adversary proceeding and are unrelated to the subject-matter of this memorandum.

proceeding as against AP Funding (Shimshak Decl., Ex. 23). On June 19, 2007, Enron substituted Togut with new counsel, Venable -- now co-counsel with Klee Tuchin. Three days later, Enron filed the Notice of Appeal.

Enron identifies these three docket items -- 153, 154, and 156 -- as the equivalent to "entry of judgment adjudicating all the claims and the rights and liabilities of all the parties," in other words, a final judgment. *See* Craig C. Reilly, 22 No. 2 LITIG 43, 43, *Interlocutory Orders: Getting It Right The Second Time* (Winter, 1996) (under Rule 54(b), "an order that adjudicates 'all the claims and the rights and liabilities of all the parties' would be 'final'"). These acts prove the opposite proposition. *See Kahn* v. *Chase Manhattan Bank, N.A.,* 91 F.3d 385, 388 (2d Cir. 1996) (finality, for purposes of the application of Rule 54(b), is "defined as a judgment which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment") (citing *Acha* v. *Beame,* 570 F.2d 57, 62 (2d Cir. 1978)). They amount to nothing more than long overdue, and perfunctorily-performed tasks to clean up a docket resolved with finality under the 550 and 546(e) Opinions months earlier.

None of these actions were the by-product of any litigating in the case. They confirm the obvious: that this appeal involves nothing more than the second guessing of Enron's earlier decision not to appeal the Judgment as final.

## CONCLUSION

For all the reasons set forth above, the Court should dismiss this appeal as

untimely, and grant Appellees such other relief as it deems just and proper.

Dated: New York, New York
      August 1, 2007

Respectfully submitted,


_____/s/ Stephen J. Shimshak_____
Stephen J. Shimshak (SS-8822)
Douglas R. Davis (DD-0874)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

Attorneys for Caisse de Dépôt et placement
du Québec and National Australia Bank