# EXHIBIT 6

Response Deadline: July 23, 2004
Reply Deadline: August 13, 2004
Hearing Date: To Be Determined

Barry H. Berke (BB-1421)
Stephen M. Sinaiko (SS-2147)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 Third Avenue
New York, New York   10022
(212) 715-9100

Attorneys for Bear, Stearns & Co. Inc.
and Banque Générale du Luxembourg S.A.

[Additional Counsel Noted in Signature Block]

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ──────────────────────── x | | |
| In re: | : | Case No. 01-16034 (AJG) |
| ENRON CORP., *et al.*, | : | Chapter 11 |
| Debtors. | : | Jointly Administered |
| ──────────────────────── x | | |
| ENRON CORP., | : | |
| Plaintiff, | : | Adversary Proceeding No. 03-93370 (AJG) |
| - against - | : | |
| INTERNATIONAL FINANCE CORP., *et al.*, | : | |
| Defendants. | : | |
| ──────────────────────── x | | |

MEMORANDUM OF LAW OF DEFENDANTS BEAR, STEARNS & CO.
INC., BANQUE GÉNÉRALE DU LUXEMBOURG S.A., ENSIGN PEAK
ADVISORS, INVESTKREDIT BANK A.G. AND NATEXIS BANQUES
POPULAIRES IN SUPPORT OF THEIR MOTION TO DISMISS

KL3:2329527.3

## TABLE OF CONTENTS

Page

Table of Authorities .................................................................................................................. ii

Preliminary Statement ................................................................................................................ 1

Factual Background ................................................................................................................... 2

Applicable Legal Standards ....................................................................................................... 5

Argument ................................................................................................................................... 6

I.  ENRON'S PAYMENTS ARE EXEMPT FROM
    AVOIDANCE UNDER 11 U.S.C. § 546(e) .......................................................................... 6

    A.  Enron's Transfers to Bear Stearns, BGL, Ensign Peak, Investkredit and Natexis
        Were Settlement Payments. ....................................................................................... 7

    B.  Enron Made Its Settlement Payments "By or To" a Stockbroker ............................ 10

    C.  Section 546(e) Independently Bars Avoidance of Enron's Settlement Payments to
        Bear Stearns, BGL, Investkredit and Natexis. ......................................................... 12

II. THE COURT LACKS PERSONAL JURISDICTION OVER BGL ................................. 14

Conclusion ................................................................................................................................ 16

## TABLE OF AUTHORITIES

### CASES

*Asahi Metal Indus. Co. v. Superior Ct.*,
    480 U.S. 102 (1987)...............................................................................................**14**, 16

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002).......................................................................................5, 14

*Bear, Stearns Sec. Corp. v. Gredd*,
    275 B.R. 190, 192 (S.D.N.Y. 2002).................................................................................5

*Bevill, Bressler & Schulman Asset Mgmt. Corp. v. Spencer Sav. & Loan Ass'n*,
    878 F.2d 742 (3d Cir. 1989)..................................................................................6 n.4

*Brass v. American Film Tech., Inc.*,
    987 F.2d 142 (2d Cir. 1993).................................................................................2 n.1

*Codos v. National Diagnostics Corp.*,
    No. 88-1845, 1988 WL 80878 (D.N.J. July 29, 1988) ................................................. 14-15

*In re Comark*,
    971 F.2d 322 (9th Cir. 1992) .............................................................................................9

*CutCo Indus., Inc. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986) ..............................................................................................5

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998)...............................................................................2 n.1

*Hechinger Inv. Co. v. Fleet Retail Fin. Group*,
    274 B.R. 71, 87 (D. Del. 2002)........................................................................10, 11, 13 n.8

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995)...............................................................................................5

*Kaiser Steel Corp. v. Charles Schwab & Co.*,
    913 F.2d 846 (10th Cir. 1990) ("Kaiser I") .................................................6 n.4, 7, 8, 10, 11

*Kaiser Steel Corp. v. Pearl Brewing Co.*,
    952 F.2d 1230 (10th Cir. 1991),
    *cert. denied*, 505 U.S. 1213 (1992) ("Kaiser II")................................................9 n.5, 12, 13

*L'Europeenne de Banque v. La Republica de Venezuela*,
    700 F. Supp. 114 (S.D.N.Y. 1988).....................................................................................14

*Longwood Res. Corp. v. C.M. Exploration Co.*,
    988 F. Supp. 750 (S.D.N.Y. 1997) ....................................................................... 5

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d 204 (2d Cir. 2003) ............................................................................... 5

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) ............................................................................... 5

*In re Resorts Int'l, Inc.*,
    181 F.3d 505 (3d Cir.), *cert. denied*, 528 U.S. 1021 (1999) ................................ 8, 9, 10, 11

*Wenche Siemer v. Learjet Acquisition Corp.*,
    966 F.2d 179 (5th Cir. 1992) ............................................................................. 5

*Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co.*,
    No. 00 Civ. 5663, 2001 WL 1468168 (S.D.N.Y. Nov. 19, 2001) ........................... 5

## STATUTES & RULES

11 U.S.C. § 101(22) ......................................................................................... 11 n.7, 13

11 U.S.C. § 101(53A) ....................................................................................... 11 n.6, 13

11 U.S.C. § 502(d) ........................................................................................... 4 n.3, 13 n.9

11 U.S.C. § 546(e) ........................................................................................... 6, 7, 10, 11-12 n.7

11 U.S.C. §§ 546(e) ......................................................................................... 1, 2, 4, 10

11 U.S.C. § 548(a)(1)(B) .................................................................................. 1, 4

11 U.S.C. § 741(8) ........................................................................................... 7, 8

31 U.S.C. § 5318(j) .......................................................................................... 15

31 U.S.C. § 5318(k) ......................................................................................... 15

Fed. R. Bankr. P. 7012(b) ................................................................................ 1, 2, 5

Fed. R. Bankr. P. 7004(d) ................................................................................ 14

Fed. R. Civ. P. 12(b)(6) .................................................................................... 1, 2, 5

KL3-2329527.3

Fed. R. Civ. P. 12(b)(2)....................................................................................................................5

S.E.C. Rule 144A.............................................................................................................................3

**MISCELLANEOUS**

H.R. Rep. No. 97-420, at 1, *reprinted in* 1982 U.S.C.C.A.N. 583, 583 ..........................................6

*Collier on Bankruptcy* 502.05[1], at 502-57 (15th ed. 2003) ....................................................13 n.9

Defendants Bear, Stearns & Co. Inc. ("Bear Stearns"), Banque Générale du Luxembourg S.A. ("BGL"), Ensign Peak Advisors ("Ensign Peak"), Investkredit Bank A.G. ("Investkredit") and Natexis Banques Populaires ("Natexis") respectfully submit this Memorandum of Law, the accompanying Declaration of André Hoffmann ("Hoffmann Decl.") and the accompanying affidavits of Stephen M. Sinaiko, Esq. ("Sinaiko Aff."), Richard P. Tashjian, Esq. ("Tashjian Aff.") and David G. Tobias, Esq. ("Tobias Aff.") in support of their motion to dismiss this adversary proceeding as against them pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6) or, in the alternative, to dismiss BGL from this proceeding pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(2).

## Preliminary Statement

In this proceeding, Enron Corp. ("Enron") asserts avoidance claims that are barred by the plain language of section 546(e) of the Bankruptcy Code. During April and May 2001, Enron paid nearly $100 million to purchase securities from Bear Stearns, BGL, Ensign Peak, Investkredit, Natexis and other defendants. More than two and a half years later, Enron commenced this proceeding, seeking to undo its payments as fraudulent transfers. Enron does not, however, allege that any party acted with intent to delay, hinder or defraud any creditors. Instead, Enron relies on a constructive fraudulent transfer theory under 11 U.S.C. § 548(a)(1)(B).

As we demonstrate below, Enron's payments are precisely the sort that Congress sought to shield from avoidance by enacting 11 U.S.C. § 546(e). Congress long ago recognized that after-the-fact reversal in bankruptcy proceedings of settled securities transactions -- as Enron seeks here -- could destabilize financial markets and even cause the failure of one market participant to result in "rippling bankruptcies."    To avert these potentially disastrous

consequences, Congress added a number of broad "safe harbor" provisions to the Bankruptcy Code, including section 546(e) which, as relevant here, exempts from avoidance "settlement payment[s] . . . made by or to a . . . stockbroker [or] financial institution." 11 U.S.C. § 546(e). Given Congress' remedial purpose, federal appellate courts repeatedly have held that section 546(e) protects payments by which an allegedly insolvent corporation purchases securities from a broker-dealer or its customers, or from a financial institution. This Court should follow those authorities and dismiss Enron's claims against Bear Stearns, BGL, Ensign Peak and Natexis.

In the alternative, the Court should dismiss BGL from this proceeding under Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(2). BGL is a Luxembourg-based bank with no offices or employees in the United States. Because BGL's contacts with the United States are, at best, insignificant, the Due Process Clause of the Fifth Amendment precludes this Court from exercising personal jurisdiction over BGL.

### Factual Background[1]

The facts of this case are straightforward, and establish that Enron's payments to Bear Stearns, BGL, Ensign Peak, Investkredit and Natexis fall squarely within the safe harbor of 11 U.S.C. § 546(e).

---

[1]     Solely for purposes of this motion to dismiss, Bear Stearns, BGL, Ensign Peak, Investkredit and Natexis draw their statement of facts from Enron's complaint, documents referenced therein and matters of which the Court may take judicial notice. *See, e.g., Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (on motion to dismiss, court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."); *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 300 n.12 (S.D.N.Y. 1998) (on motion to dismiss, court may consider agreements establishing terms of relationship between parties).

In December 1999, Enron determined to monetize a portfolio of loan assets held by certain of its affiliates, including Enron North America Corp. ("ENA"). (Compl. ¶ 26).[2] In order to accomplish the monetization, Enron caused the creation of a number of entities, including a limited partnership called ENA CLO I Holding Company, L.P. ("CLO Holding") and a trust called ENA CLO I Trust ("CLO Trust"). (Compl. ¶¶ 26-27). CLO Holding acquired the portfolio loans from ENA and other Enron affiliates. (Compl. ¶ 28; Sinaiko Exh. 2, at 8). In turn, on or about December 22, 1999, CLO Trust sold notes (the "Notes") to qualified institutional buyers in an offering pursuant to S.E.C. Rule 144A, and used the proceeds from that offering to purchase the sole limited partnership interest in CLO Holding. (Compl. ¶ 26, 29; Sinaiko Exh. 2, at 7, 42). The Notes, all due in July 2014, were divided into eight classes, based on their risk, credit rating and payment characteristics. CLO Trust pledged its limited partnership interest in CLO Holding and certain other assets as security for the Notes, and the Notes were otherwise without recourse to CLO Trust or any other entity. (Compl. ¶ 30; Sinaiko Exh. 2, at 7, 9-14). Proceeds from the portfolio loans owned by CLO Holding were the principal source of funds with which CLO Trust was to make payments on the Notes. (Compl. ¶ 29).

Following December 1999, the value of the portfolio loans held by CLO Holding began to decline. (Compl. ¶ 32). In September 2000, Enron provided credit support for the Notes by granting a put option to CLO Holding. The put option obligated Enron to purchase from CLO Holding up to $113 million in defaulted portfolio loans. (Compl. ¶ 32). CLO

---

[2]     "Compl. ¶ __" refers to the complaint filed by plaintiff in this adversary proceeding. "Hoffmann Exh. __," "Sinaiko Exh. __," "Tashjian Exh. __" and "Tobias Exh. __" refer, respectively, to the exhibits annexed to the Hoffmann Decl., Sinaiko Aff., Tashjian Aff. and Tobias Aff. For the Court's convenient reference, a copy of Enron's complaint in this proceeding is annexed as Exhibit 1 to the Sinaiko Aff.

KL3:2529527.3

Holding exercised its rights under the put option in December 2000 and again in June 2001. (Compl. ¶¶ 47, 49).

Payment defaults continued to depress the value of CLO Holding's loan portfolio after September 2000 and, in or about April 2001, Enron unwound the 1999 monetization by purchasing all of the then-outstanding Notes at face value plus accrued interest. (Compl. ¶¶ 34-35, 37-40). Thus, Bear Stearns, BGL, Ensign Peak, Investkredit, Natexis and other defendants sold their Notes to Enron, at face value plus accrued interest, through accounts at Bear, Stearns Securities Corporation. (Sinaiko Exh. 3). Enron paid for its purchases by transfers from Chase Bank of Texas. (Compl. ¶¶ 37-40).

On or about December 2, 2001, Enron filed a voluntary petition under Chapter 11 of the Bankruptcy Code. (Compl. ¶ 1). Nearly two years later -- and over two and a half years after the transactions at issue -- Enron commenced this adversary proceeding, seeking to recover the payments it made to purchase Notes from Bear Stearns, BGL, Ensign Peak, Investkredit, Natexis and other defendants in April and May 2001. Unable to allege "actual intent to hinder, delay, or defraud" creditors, Enron claims that its payments are avoidable on a constructive fraudulent transfer theory under 11 U.S.C. § 548(a)(1)(B). (Compl. ¶¶ 36-45). Because Enron's payments fall within the safe harbor of 11 U.S.C. § 546(e), its avoidance claim against Bear Stearns, BGL, Ensign Peak, Investkredit and Natexis cannot survive a motion to dismiss.[3]

---

[3]    In Count II of the complaint, Enron seeks to avoid payments it allegedly made in January 2001 pursuant to the put it granted to CLO Holding. Because Count II of the complaint does not seek recovery from Bear Stearns, BGL, Ensign Peak, Investkredit or Natexis, we do not address that claim in this Memorandum of Law. Count III of the complaint, seeking disallowance under 11 U.S.C. § 502(d) of defendants' claims against the Enron bankruptcy estate, is derivative of -- and therefore fails along with -- Enron's avoidance claim in Count I. (*See* note 9, *infra*).

- 4 -

## Applicable Legal Standards

Under Fed. R. Civ. P. 12(b)(6), incorporated by reference into Fed. R. Bankr. P. 7012(b), the Court should dismiss this adversary proceeding if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While a motion to dismiss pursuant to Rule 12(b)(6) generally requires that the Court accept as true the material allegations in the complaint and draw reasonable inferences in the plaintiffs' favor, the Court should "disregard legal conclusions, deductions or opinions couched as factual allegations." *See, e.g., Bear, Stearns Securities Corp. v. Gredd,* 275 B.R. 190, 192 (S.D.N.Y. 2002); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint."). The Court should grant a motion to dismiss if a defense negating plaintiff's claims appears on the face of the complaint (or documents otherwise cognizable on the motion). *See, e.g., Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 158 (2d Cir. 2003).

Faced with a motion to dismiss under Fed. R. Civ. P. 12(b)(2), likewise incorporated by reference into Fed. R. Bankr. P. 7012(b), Enron bears the burden of alleging facts sufficient to make a *prima facie* showing of a basis for asserting personal jurisdiction over BGL, a non-resident defendant. *See In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206 (2d Cir. 2003); *CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986); *Longwood Resources Corp. v. C.M. Exploration Co.,* 988 F. Supp. 750, 751 (S.D.N.Y. 1997).

Enron's complaint fails against Bear Stearns, BGL, Ensign Peak, Investkredit and Natexis under those standards.

- 5 -

Argument

I.

ENRON'S PAYMENTS ARE EXEMPT FROM
AVOIDANCE UNDER 11 U.S.C. § 546(e)

The safe harbor of 11 U.S.C. § 546(e) bars Enron's attempt to avoid the payments

it made to purchase Notes from Bear Stearns, BGL, Ensign Peak, Investkredit, Natexis and other

defendants. As relevant here, section 546(e) provides:

> Notwithstanding sections 544 . . . [and] 548(a)(1)(B) . . . of this
> title, the [debtor-in-possession] may not avoid a transfer that is a
> . . . *settlement payment*, as defined in section 101 or 741 of this
> title, *made by or to* a commodity broker, forward contract
> merchant, *stockbroker, financial institution*, or securities clearing
> agency, that is made before the commencement of the case, except
> under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e) (emphasis added). Congress enacted that broad prohibition on avoidance of

settlement payments in order to "minimize the displacement caused in the commodities and

securities markets in the event of a major bankruptcy affecting those industries," and "prevent

the insolvency of one commodity or security firm from spreading to other firms and possible

[*sic*] threatening the collapse of the affected market." H.R. Rep. No. 97-420, at 1, *reprinted in*

1982 U.S.C.C.A.N. 583, 583.[4]   In light of those policy concerns, federal appellate courts

repeatedly have concluded that transfers by which a debtor purchases securities from a broker-

dealer or its customers, or from a financial institution, are "settlement payments" immune from

---

[4]  *See also Kaiser Steel Corp. v. Charles Schwab & Co.*, 913 F.2d 846, 849 (10th Cir. 1990)
("Congress's purpose was to minimize the displacement caused in the commodities and
securities markets in the event of a major bankruptcy affecting those industries.")
(internal quotation marks and citation omitted); *Bevill, Bressler & Schulman Asset
Management Corp. v. Spencer Savings & Loan Ass'n*, 878 F.2d 742, 747 (3d Cir. 1989)
("Congress was concerned about the volatile nature of the commodities and securities
markets, and decided that certain protections were necessary to prevent 'the insolvency of
one commodity or security firm from spreading to other firms and possibly threatening
the collapse of the affected market.'") (citation omitted).

- 6 -

avoidance under section 546(e).  The transfers at issue in this proceeding fall well within the section 546(e) safe harbor.

      A.     Enron's Transfers to Bear Stearns, BGL, Ensign Peak,
              Investkredit and Natexis Were Settlement Payments.

      The transfers Enron seeks to avoid in Count I of its complaint were settlement payments for purposes of 11 U.S.C. § 546(e).  In the context of securities transactions, the Bankruptcy Code defines the term "settlement payment" to mean:

> a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade.

11 U.S.C. § 741(8).  Seeking to effectuate "the legislative intent behind § 546 to protect the nation's financial markets from the instability caused by the reversal of settled securities transactions," *Kaiser Steel Corp. v. Charles Schwab & Co.*, 913 F.2d 846, 848 (10th Cir. 1990) ("*Kaiser I*"), each court of appeals to consider the question has read the Bankruptcy Code definition of "settlement payment" broadly, so that it easily encompasses payments (like Enron's here) by which a debtor consummates purchases of securities.

      For example, in *Kaiser I*, the debtor-in-possession sought to recover, as a fraudulent transfer, $162 million that Kaiser Steel Corp. had paid to repurchase common stock in connection with its leveraged buyout ("LBO").  *Id.* at 847-48.  Charles Schwab & Co. moved for summary judgment, arguing that, among other things, section 546(e) barred avoidance of a $450,000 payment it had received as consideration for the purchase of common stock beneficially owned by its customers.  *Id.*  The Tenth Circuit agreed.

Initially, the court of appeals found that the definition of "settlement payment" in 11 U.S.C. § 741(8) "while somewhat circular, is 'extremely broad,' . . . in that it clearly includes anything which may be considered a settlement payment." *Id.* (*quoting In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 878 F.2d 742, 751 (3d Cir. 1989)). The panel further noted that broad interpretation of the term "settlement payment" would be consistent with "the legislative intent behind § 546 to protect the nation's financial markets from the instability caused by the reversal of settled securities transactions." *Kaiser I*, at 848 (citation omitted). Finally, the court pointed out that treating the payment of LBO consideration as a "settlement payment" was consistent with the securities industry understanding of "settlement" as "the completion of a securities transaction." *Id.* at 849. Thus, the court held that (a) the Kaiser LBO was a securities transaction, (b) the transfer of cash (and other consideration) by Kaiser "was a settlement of that transaction," and (c) Kaiser's "transfers to Schwab were exempt from avoidance under section 546(e) as 'settlement payment[s] . . . to a . . . stockbroker.'" *Id.* at 850.

Other courts of appeals have reached similar results under sections 546(e) and 741(8). In *In re Resorts International, Inc.*, 181 F.3d 505 (3d Cir.), *cert. denied*, 528 U.S. 1021 (1999), Resorts International, Inc. sought to recover, as a constructive fraudulent transfer and on other theories, money paid to purchase shares of its common stock from Fred Lowenschuss in connection with a 1988 LBO. *Id.* at 508-09, 514. Lowenschuss had tendered his stock to Resorts, and received payment, through his brokerage account at Merrill Lynch. In turn, Resorts had received Lowenschuss' stock, and paid him, through its transfer agent Chase Manhattan Bank. *Id.* Resorts asserted, *inter alia*, that its payment to Lowenschuss was avoidable as a constructive fraudulent transfer. *Id.* at 508-09, 514. The Third Circuit held that section 546(e) barred Resorts' avoidance claim.

KL3:2329527.3

Initially, the court found that, under securities industry usage (and hence for purposes of section 546(e)), "a settlement payment is generally the transfer of cash or securities made to complete a securities transaction." *Id.* at 515 (*citing Kaiser I*, 913 F.2d at 849). Noting that Lowenschuss tendered his shares, and received Resorts' payment, through Merrill Lynch and Chase Manhattan Bank, the Court concluded:

> Although no clearing agency was involved in this transfer, two financial institutions -- Merrill Lynch and Chase -- were. Under a literal reading of section 546, therefore, this was a settlement payment "made by . . . a financial institution."

*Resorts International*, 181 F. 3d at 515.[5]

Like the debtors in *Kaiser I* and *Resorts International*, Enron made the transfers it now seeks to avoid to settle its purchases of Notes from Bear Stearns, BGL, Ensign Peak, Investkredit and Natexis. Accordingly, Enron made each of those transfers "to complete a securities transaction," *Resorts International*, 181 F.3d at 515, and each is a "settlement payment" within the meaning of 11 U.S.C. §§ 546(e) and 741(8).

---

[5]  *See also In re Comark*, 971 F.2d 322, 326 (9th Cir. 1992) ("We now join with the Third and Tenth Circuits and broadly define the term settlement payment. A settlement payment clearly includes a transfer of securities that completes a securities transaction. . . . Therefore, a transfer of securities needed to complete a Repo transaction is a 'settlement payment.' . . . This includes any transfers that occur during the settlement process.") (*citing Bevill*, 878 F.2d at 752); *Kaiser Steel Corp. v. Pearl Brewing Co.*, 952 F.2d 1230, 1237 (10th Cir. 1991) (Bankruptcy Code definition of "settlement payment" is "extremely broad," and "encompass[es] all 'settlement payments' commonly used in the securities trade.") (citations omitted), *cert. denied*, 505 U.S. 1213 (1992).

B.    Enron Made Its Settlement Payments "By or
To" a Stockbroker.

Because Enron made its purchases of CLO Notes through accounts at Bear,
Stearns Securities Corp. ("BSSC"), its transfers to Bear Stearns, BGL, Ensign Peak, Investkredit
and Natexis are exempt from avoidance as "settlement payments . . . made by or to a . . .
stockbroker." 11 U.S.C. § 546(e).

In both *Kaiser I* and *Resorts International,* Kaiser Steel Corp. and Resorts
International Inc. sought to avoid, as fraudulent transfers, payments by which they had
repurchased common stock in connection with their respective LBOs. *Resorts International,* 181
F.3d at 514; *Kaiser I,* 913 F.2d at 848. Because the securities at issue in *Kaiser I* and *Resorts
International* had been held in accounts with broker-dealers who received the debtors' payments
of LBO consideration on behalf of their clients, the court in each of those cases found that the
debtors' payments were settlement payments "by or to" a stockbroker, unavoidable under section
546(e). Other courts have applied section 546(e) in similar fashion. *See, e.g., Hechinger
Investment Company of Delaware v. Fleet Retail Finance Group,* 274 B.R. 71, 87 (D. Del. 2002)
("So long as a financial institution is involved, the payment is an unavoidable 'settlement
payment.'").

The holdings in *Kaiser I, Resorts International* and *Hechinger* -- and the plain
language of section 546(e) -- compel dismissal of Enron's claims against Bear Stearns, BGL,
Ensign Peak, Investkredit and Natexis. Like the stock purchases in those cases (and the others
we have cited), Enron's purchases of Notes were securities transactions. The transfers Enron
now seeks to avoid -- payments made to complete Enron's Note purchases -- were "settlement

payment[s]." Moreover, Enron cannot seriously dispute that BSSC is a "stockbroker" for purposes of section 546(e),[6] given that:

- BSSC is registered as a broker-dealer with, among other authorities, the Securities and Exchange Commission, the National Association of Securities Dealers and numerous exchanges. (Sinaiko Exh. 4).

- BSSC's business, as described on its Form BD, includes "act[ing] as clearing broker to clear and carry securities transactions of affiliates, including Bear Stearns" and "act[ing] as clearing agent for customer accounts of such affiliates and other unrelated correspondent broker-dealers." (Sinaiko Exh. 4).

- BSSC is a member of the Securities Investor Protection Corporation and of the National Securities Clearing Corporation. (Sinaiko Exhs. 5, 6).

Thus, Bear Stearns, BGL, Ensign Peak, Investkredit and Natexis sold their Notes, and received settlement payments, through a stockbroker -- BSSC. (Sinaiko Exh. 3). As the *Kaiser I, Resorts International* and *Hechinger* courts held, payments in connection with a securities transaction conducted through a broker-dealer are "settlement payments . . . made by or to a . . . stockbroker," and fall within the safe harbor of section 546(e). This Court should follow those authorities and dismiss Count I of the complaint.[7]

---

[6]    The Bankruptcy Code defines the term "stockbroker" to mean a:

> person (A) with respect to which there is a customer, as defined in section 741 of this title; and (B) that is engaged in the business of effecting transactions in securities -- (i) for the account of others; or (ii) with members of the general public, from or for such person's own account.

11 U.S.C. § 101(53A).

[7]    Enron's avoidance claims also fail against Bear Stearns, BGL, Ensign Peak, Investkredit and Natexis for the separate and independent reason that the settlement payments at issue came from Chase Bank of Texas (now known as JPMorgan Chase Bank) -- a "commercial or savings bank" and hence a "financial institution" as that term is defined in 11 U.S.C. § 101(22). (Sinaiko Exh. 7). On its face, section 546(e) of the Bankruptcy

- 11 -

C.    Section 546(e) Independently Bars Avoidance of
      Enron's Settlement Payments to Bear Stearns, BGL,
      Investkredit and Natexis.

Finally, section 546(e) requires dismissal of Enron's claims against Bear Stearns,

BGL, Investkredit and Natexis, even if those defendants had neither sold their Notes through a

broker-dealer nor received payment from a financial institution.

In *Kaiser Steel Corp. v. Pearl Brewing Co.*, 952 F.2d 1230 (10th Cir. 1991)

("*Kaiser II*"), *cert. denied*, 505 U.S. 1213 (1992) -- another case arising from the Kaiser LBO --

the Tenth Circuit held that section 546(e) protects payments made to purchase securities held by

a broker-dealer for its own account, rather than (as in *Kaiser I*) for the benefit of its customers.

*Kaiser II*, 952 F.2d at 1240.  The *Kaiser II* court held that barring avoidance of payments made

to purchase stock from a broker-dealer trading for its own account was consistent with the

purposes of section 546(e):

> For the broker trading on its own account, our holding is consistent
> with even the strictest notion of 'settlement payment' (i.e., a notion
> tied to the clearance and settlement system).   This is true
> particularly to the extent a broker's settlement obligations to a
> clearing agency or participant were calculated with regard to the
> payments of LBO consideration. . . .  Further, as the SEC has
> emphasized, this holding is supported by Congress' policy of
> promoting the health of the clearance and settlement system, which
> by all accounts is one of the fundamental aims of the 546(e)
> exemption.

*Id.* at 1240 n.10 (*citing Kaiser I*, 913 F.2d at 848-49).  In addition, the panel rejected as "clearly

wrong" the debtor-in-possession's argument that section 546(e) "does not protect brokers trading

---

Code precludes avoidance of "settlement payment[s] . . . made by . . . [a] financial
institution."  And as the *Resorts International* and *Hechinger* courts held, that statutory
language applies where -- as here -- payments by a financial institution fund a debtor's
purchases of securities.  The Court should reject Enron's attempt to avoid settlement
payments made by a financial institution.

- 12 -

on their own account." *Kaiser II*, 952 F.2d at 1241 n.11. Instead, the court held: "On its face the statute is clear.    The statute exempts payments made '*by or to*' a stockbroker, financial institution, or clearing agency.    Again, unless there is some reason to believe the clear application is absurd or otherwise unreasonable, we can leave our inquiry at that." *Id.* at 1240 (emphasis in original).[8]

The reasoning and holding of *Kaiser II* call for dismissal of Enron's avoidance claims against Bear Stearns, BGL, Investkredit and Natexis. Bear Stearns, as a broker-dealer registered with the Securities and Exchange Commission, the National Association of Securities Dealers and various stock exchanges, is itself a "stockbroker" within the meaning of 11 U.S.C. § 101(53A).    (Sinaiko Exh. 8).    Moreover, BGL, Investkredit and Natexis -- all "entit[ies] (domestic or foreign) that [are] commercial or savings bank[s]" -- are "financial institutions" under 11 U.S.C. § 101(22).    (Hoffmann Exh. 2; Tashjian Exhs. A, B; Tobias Exh. 2).    As recognized in *Kaiser II*, section 546(e) shields from avoidance payments a debtor makes to purchase securities beneficially owned by stockbrokers or financial institutions -- or any of the other sorts of entities identified in the statute.    Accordingly, this Court should hold that Enron cannot avoid payments it made to purchase Notes from Bear Stearns, BGL, Investkredit or Natexis.[9]

---

8    *Hechinger*, 274 B.R. at 87 ("So long as a financial institution is involved, the payment is an unavoidable 'settlement payment.'").

9    Because Enron's fraudulent transfer claim fails as a matter of law, the Court also should dismiss Count III, seeking disallowance of claims under 11 U.S.C. § 502(d). Enron's disallowance claim cannot go forward against Bear Stearns, BGL, Ensign Peak or Natexis in the absence of a viable claim that any of them was the recipient of an avoidable transfer. *See Collier on Bankruptcy* ¶ 502.05[1], at 502-57 (15th ed. 2003) ("Section 502(d) is operative . . . when the trustee, having successfully avoided transfers

II.
THE COURT LACKS PERSONAL
JURISDICTION OVER BGL

The Court also should dismiss BGL from this proceeding on the independent ground of lack of personal jurisdiction.

Federal Rule of Bankruptcy Procedure 7004(d) provides for nationwide service of process establishing personal jurisdiction over a defendant "if the exercise of jurisdiction is consistent with the Constitution and the laws of the United States." Federal due process requires that a non-resident defendant have certain "minimum contacts" with the forum for jurisdiction to be proper and that the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *See generally Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002); *L'Europeenne de Banque v. La Republica de Venezuela*, 700 F. Supp 114, 123-24 (S.D.N.Y. 1988). General jurisdiction exists in cases where a defendant has "continuous and systematic" business contacts with the forum. *Bank Brussels*, 305 F.3d at 127. Specific jurisdiction may exist when the claim asserted against a defendant "arise[s] out of" the defendant's contacts with the forum. *Id.*

The Complaint does not set forth any basis for asserting general jurisdiction over BGL. BGL is a foreign bank headquartered in Luxembourg. (Hoffmann Decl. ¶¶ 2, 3; Hoffmann Exh. 1). BGL does not maintain any offices or have any employees in the United States, and does not otherwise have any continuous or systematic business contacts with the

¶under the sections dealing with the trustee's avoiding powers, may proceed under section 550.").

- 14 -

United States. (*Id.* ¶ 4). Nor does BGL's maintenance of a handful of correspondent banking and brokerage accounts in New York, including its brokerage account maintained at Bear Stearns and cleared through BSSC (*see id.* ¶ 5; Sinaiko Exhs. 3, 4), suffice to establish general jurisdiction over a non-resident foreign defendant. *See Codos v. Nat'l Diagnostics Corp.*, No. 88-1845, 1988 WL 80878, at *2-*3 (D.N.J. July 29, 1988). Similarly, BGL's appointment -- in compliance with sections 5318(j) and 5318(k) of the USA PATRIOT Act -- of an agent in New York to accept service of legal process seeking records related to its correspondent accounts (Hoffmann Decl. ¶ 6) does not, by itself, establish a basis for asserting general jurisdiction over BGL. *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181-82 (5th Cir. 1992); *Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co.*, No. 00 Civ. 5663, 2001 WL 1468168, at *4 (S.D.N.Y. Nov. 19, 2001) (citations omitted).

Enron's complaint also is devoid of any basis for asserting specific jurisdiction over BGL. In connection with its initial purchase of Notes, BGL dealt exclusively with Bear Stearns International Limited ("BSIL"), in London, England. (Hoffmann Decl. ¶ 7). Similarly, after receiving notice of Enron's offer to purchase all of the outstanding Notes, BGL in Luxembourg accepted Enron's offer by delivering appropriate instructions to BSIL in London. (*Id.* ¶ 7). Thus, at no time during the purchase or sale of the Notes did BGL direct any communication to Enron or any Enron-related entity in the United States. (*Id.* ¶ 7). In connection with its sale of Notes, BGL's only contact with the United States was the transfer of funds from Enron to BGL through the account that BGL maintains at Bear Stearns in New York. (*Id.* ¶ 8).

Under these circumstances, BGL has insufficient contacts with the United States to confer specific jurisdiction over BGL. Moreover, asserting jurisdiction over BGL would not

- 15 -

be consistent with "traditional notions of fair play and substantial justice." *Asahi Metal Indus.*, 480 U.S. at 113.

Conclusion

For all of the foregoing reasons, we respectfully request that the Court dismiss this action with prejudice as against Bear Stearns, BGL, Ensign Peak and Natexis.

Dated: New York, New York
      May 14, 2004

Respectfully Submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:_____ /s/ Stephen M. Sinaiko_____
        Barry H. Berke (BB-1421)
        Stephen M. Sinaiko (SS-2147)

919 Third Avenue
New York, New York   10022
(212) 715-9100

Attorneys for Bear, Stearns & Co. Inc.
and Banque Générale du Luxembourg S.A.

KL3:2329527.3

BRESSLER, AMERY & ROSS, P.C.


By: _____ /s/ David H. Pikus _____
                David H. Pikus (DP-7846)

17 State Street
New York, New York   10004
(212) 425-9300

KIRTON & McCONKIE, P.C.
Eric C. Olson
1800 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah   84111-1004
(801) 328-3600

Attorneys for Ensign Peak Advisors


TASHJIAN & PADIAN


By: _____ /s/ Richard G. Tashjian _____
                Richard G. Tashjian

15 West 36th Street
New York, New York   10018
(212) 319-9800

Attorneys for Investkredit Bank A.G.

- 17 -

SAVIANO & TOBIAS, P.C.


By:_____ /s/ David G. Tobias
　　　　　　David G. Tobias (DT-3284)

9 East 40th Street, 15th Floor
New York, New York  10016
(212)532-7650

Attorneys for Natexis Banques Populaires

KL3 2329527.3