# EXHIBIT 9

Case 1:07-cv-06597-AKH   Document 7-10   Filed 08/01/2007   Page 1 of 9

Response Deadline: July 11, 2005
Reply Deadline: July 26, 2005
Hearing Date: To Be Determined

CLAYMAN & ROSENBERG
Attorneys for National Australia Bank
305 Madison Ave # 1301
New York, NY 10165
(212) 922-1080 (office)
(212) 949-8255 (facsimile)
Paul Hugel (PH 4749)

WILLIAMS & CONNOLLY LLP
Attorneys for National Australia Bank
725 Twelfth Street NW
Washington, DC 20005
(202) 434-5000 (office)
(202) 434-5029 (facsimile)
Philip J. Ward, Esq. (*pro hac vice*)
Helen I. Dooley, Esq. (*pro hac vice*)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:

       ENRON CORP., *et al.*

               Debtors.
------------------------------------------------------------x
ENRON CORP.,

               Plaintiff,

       -against-

INTERNATIONAL FINANCE CORP., *et al.*

               Defendants.
------------------------------------------------------------x

Chapter 11

Case No. 01-16034 (AJG)

Jointly Administered

Adversary Proceeding
No. 03-93370 (AJG)

### DEFENDANT NATIONAL AUSTRALIA BANK'S
### MOTION TO DISMISS ADVERSARY COMPLAINT

/03

**TO THE HONORABLE ARTHUR J. GONZALEZ,**
**UNITED STATES BANKRUPTCY JUDGE:**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable in adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, defendant National Australia Bank ("NAB") respectfully submits this motion for an order dismissing with prejudice the claims asserted against NAB by plaintiff Enron Corp. ("Enron") in the second and third causes of action set forth in the complaint in this adversary proceeding.[1]

## PRELIMINARY STATEMENT

Enron seeks to recover from NAB and other financial institutions, on a fraudulent transfer theory, payments they received on account of certain securities. Enron does not allege that NAB accepted the payments with fraudulent intent, nor does Enron allege that NAB received any payment directly from Enron. Rather, Enron relies upon the constructive fraud provisions of § 548(a)(1)(B) of the Bankruptcy Code, and seeks to recover from NAB as a mediate transferee of the immediate transferee, who received the money from the initial transferee of Enron's allegedly fraudulent transfer. Thus NAB is a full two steps removed from the actual alleged fraudulent transfer.[2]

Section 550(a) of the Bankruptcy Code governs recovery of allegedly fraudulent transfers from subsequent transferees. Enron fails to meet the requirements of the statute, as § 550(a) requires avoidance of the initial transfer before recovery may be sought from

---

[1] Enron has sued NAB in the second and third, but not the first, cause of action set forth in the complaint.

[2] As set forth in the Background section of this brief, the alleged fraudulent transfer occurred when Enron paid $63,109,023.64 pursuant to a put option. The recipient of the money then paid the funds over to a trust, which then distributed a portion of the money to NAB and other defendants, on account of certain securities in which the defendants, including NAB, had invested.

2

subsequent transferees. Enron has not avoided the initial transfer or even sued the initial transferee. Accordingly, Enron's claims against NAB should be dismissed as they fail to state a claim upon which relief can be granted.

## BACKGROUND

In or about December 1999, Enron caused Enron North America Corp. ("ENA") and LJM2 to engage in a transaction known as a "collateralized loan obligation", or "CLO", to securitize a portfolio of loan facilities (the "CLO Assets") owned by ENA and other affiliates of Enron. Complaint ¶ 26. In connection with the CLO transaction, Enron caused LJM2 to establish the ENA CLO I Trust (the "CLO Trust"). Id. In connection with the CLO, Enron formed three entities: ENA CLO I Holding Company GP, L.L.C. ("Holding GP"), ENA CLO I Holding Company I L.P. ("Holding I LP"), and ENA CLO I Holding Company II L.P. ("Holding II LP"). ¶ 27. Holding GP was the general partner of both Holding I LP and Holding II LP. Id. Enron caused ENA and other affiliates of Enron to transfer the CLO Assets to Holding I LP. ¶ 28. The CLO Trust was the sole limited partner of Holding I LP. ¶ 29. The source of funds from which the CLO Trust could make payments to holders of the CLO Notes was Holding I LP. Id. The defendants, including NAB, each held CLO Notes at the time of the transfers. ¶ 31.

Between December 1999 and September 2000, the market value of the CLO Assets declined. ¶ 32. On or about September 1, 2000, Enron granted a put option (the "Put Option") to Holding I LP. Id. Under the Put Option, Holding LP could require Enron to purchase interest in the CLO Assets whose obligors had defaulted in making payments to the CLO Trust, in an amount up to $113 million. Id. Enron received no premium payment in return for granting the Put Option. Id. Because the CLO Trust was the sole limited partner of Holding

I LP, any payment that Enron made to Holding I LP under the Put Option would be distributed by Holding I LP to the CLO Trust. ¶ 33.

Between September 2000 and April 2001, the market value of the CLO Assets continued to decline, and the obligors of the collateralized loans included in the CLO Assets did not make payments sufficient to cover the obligations of the CLO Trust to the holders of CLO Notes. ¶ 34. On or about December 29, 2000, Holding I LP exercised its rights under the Put Option, and on or about January 12, 2001, Enron paid $63,109,023.64 to Holding I LP (the "January Put Payment"). ¶ 47. Holding I LP transferred the funds received from the January Put Payment to the CLO Trust. ¶ 48. The CLO Trust transferred these funds to certain holders of CLO Notes in January 2001 (the "January Transfers"), including NAB. To the extent NAB received a portion of the January Transfers, NAB is a mediate transferee of Enron. ¶ 55.

## ARGUMENT

A motion to dismiss should be granted where "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle [it] to relief." Gratton v. Jetblue Airways, No. 04 Civ. 7561(DLC), 2005 WL 1251786, at *6 (S.D.N.Y. May 25, 2005) (citation omitted). The court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. Washington Capital Ventures, LLC v. Dynamicsoft, Inc., No. 04 Civ. 8878(VM), 2005 WL 1322712, at *2 (S.D.N.Y. Jun. 1, 2005). "Where it is clear, however, that 'no relief could be granted under any set of facts that could be proved consistent with the allegations,' the complaint should be dismissed." Gratton, 2005 WL 1251786, at *6 (citation omitted).

**I.   COUNT TWO OF THE COMPLAINT SHOULD BE DISMISSED AGAINST NAB BECAUSE ENRON HAS NOT AVOIDED THE ALLEGED FRAUDULENT TRANSFER, AS REQUIRED BY SECTION 550 OF THE BANKRUPTCY CODE.**

Section 550(a) of the Bankruptcy Code states in relevant part:

> Except as otherwise provided in this section, <u>to the extent a transfer is avoided</u> under section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. §550 (a) (emphasis added). Courts have interpreted the plain language of § 550(a) to require that a plaintiff first actually avoid a transfer before seeking to recover from subsequent transferees. See Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 312 (Bankr. S.D.N.Y. 1999) ("However, recovery for the estate under § 550(a) is available only to the extent a transfer has been <u>successfully avoided</u> pursuant to any of the avoidance sections of the Bankruptcy Code . . . .") (emphasis added); In re Wedtech Corp., 165 B.R. 140, 145 (Bankr. S.D.N.Y. 1994) ("[Plaintiff] put the cart before the horse by attempting to recover from [defendant] as initial transferee without first proceeding against the officers to establish a voidable transfer.") aff'd in part, rev'd in part, 187 B.R. 105 (S.D.N.Y. 1995); In re Trans-End Tech., Inc., 230 B.R. 101, 104-05 (Bankr. N.D. Ohio 1998) (before recovering from subsequent transferees trustee must actually avoid initial transfer); Collier on Bankruptcy, ¶ 550.01[1] at 550-53 (15th ed. 2004) ("Section 550 of the Bankruptcy Code permits a trustee (or debtor in possession), <u>after avoidance of a transfer</u> under the trustee's avoiding powers, to recover the property transferred or the value of the property transferred.") (emphasis added).

Indeed, this Court has held that actual avoidance of a transfer is required before a plaintiff may recover from a subsequent transferee. In re Wedtech Corp., 165 B.R. at 145. Other courts have reached similar conclusions, holding that a mere showing that a transaction is avoidable is insufficient to meet the requirements of § 550. For example, in In re Trans-End Technology, the chapter 11 trustee sued a law firm as a subsequent transferee of money transferred by the debtor to its parent, which money the parent then transferred to the law firm. In re Trans-End Technology, 230 B.R. at 102. The trustee did not sue the parent or otherwise avoid the transaction. The law firm moved to dismiss, arguing that § 550 required actual avoidance of the initial fraudulent transfer before the trustee could recover from a subsequent transferee. Id. at 102. The court held that actual avoidance of an initial transfer, and not a mere showing that the transfer is avoidable, is required before recovery may be sought from subsequent transferees. See id. at 104 ("*In short, the Court cannot accept the Trustee's invitation to read the word 'avoided' in § 550(a) to mean 'avoidable.'*") (emphasis added).

The Tenth Circuit reached the same conclusion in In re Slack-Horner Foundries Co., 971 F.2d 577 (10th Cir. 1992). In that case, a chapter 11 trustee sought to recover from an immediate transferee a pre-petition tax deed that had conveyed the debtor's property to the State of Colorado, the initial transferee. In re Slack-Horner Foundries Co., 971 F.2d at 580. The trustee did not sue the initial transferee or otherwise seek to avoid the initial transfer. Id. The Tenth Circuit held that "[a]lthough § 550 of the Code authorizes the trustee in certain circumstances to recover the value of the property transferred from either the initial transferee or a subsequent transferee, . . . *in order to recover from a subsequent transferee the trustee must first have the transfer of the debtor's interest to the initial transferee avoided under § 548.*"

(internal citations omitted) (emphasis added).[3] See also In re Healthco Int'l, Inc., 195 B.R. 971, 981-82 (Bankr. D. Mass. 1996) ("An avoided 'transfer' is recoverable only from a 'transferee.' If the initial transferee makes a second transfer, the property may be recovered from the later transferee only if the 'transfer is avoided' with respect to the 'initial transferee.'"). In this case Enron has not avoided the allegedly fraudulent transfer to the initial transferee, Holding I LP, as required by § 550. Thus, Enron cannot pursue NAB as a mediate transferee.[4]

For the reasons set forth above, NAB respectfully requests that the Court dismiss the § 550 claim against NAB because Enron cannot show an "avoided" transfer to the initial transferee, as required by the statute.

## II. THE THIRD CAUSE OF ACTION SHOULD BE DISMISSED AGAINST NAB BECAUSE IT IS DERIVATIVE OF THE SECOND CAUSE OF ACTION.

The third cause of action, requesting that any claims filed by NAB be disallowed, is entirely derivative of Enron's § 550 claim against NAB. See 11 U.S.C. § 502(d) (2004). If the Court dismisses the § 550 claim against NAB, as requested herein, Enron's request that any claim filed by NAB be disallowed would also fail.

---

[3] Recently the Eleventh Circuit took a different view, holding that a trustee "may simultaneously avoid a transfer . . . and seek recovery under § 550. This approach allows a plaintiff to recover property from those considered to be 'mediate' transferees of the initial transferee. In short, once the plaintiff proves that an avoidable transfer exists he can then skip over the initial transferee and recover from those next in line." In re Int'l Admin. Servs., Inc., No. 04-11829, 2005 WL 1017990 (11th Cir. May 3, 2005) (citations omitted). This is not the law in the Second Circuit, however, and at least one case in the Bankruptcy Court of the Southern District of New York has held otherwise. See In re Wedtech Corp., 165 B.R. at 145.

[4] The initial transferee, Holding I LP, was an Enron-created, independent legal entity which may not have existed by the time Enron filed its complaint in this case. However, as a mediate transferee NAB is liable for the alleged fraudulent transfer only "to the extent that [the] transfer is avoided" pursuant to the express terms of § 548. If Enron cannot comply with the requirements of § 550 because Holding I LP no longer exists (which existence was entirely within the control of Enron, not NAB or any other defendant), their claim against NAB must fail.

### III.  CONCLUSION

For the reasons set forth above, NAB respectfully requests that this Court enter an order granting NAB's motion to dismiss with prejudice the second and third causes of action and grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
       June 10, 2005

                                    Respectfully Submitted,

                                    CLAYMAN & ROSENBERG

                                    By:   /s/   Paul Hugel
                                          Paul Hugel (PH-4749)

                                    305 Madison Ave # 1301
                                    New York, NY
                                    (212) 922-1080 (office)
                                    (212) 949-8255 (facsimile)

                                    and

                                    WILLIAMS & CONNOLLY LLP

                                    By:   /s/   Philip J. Ward

                                    725 Twelfth Street NW
                                    Washington, DC 20005
                                    (202) 434-5000 (office)
                                    (202) 434-5029 (fax)

                                    Philip J. Ward, Esq. (*pro hac vice*)
                                    Helen I. Dooley, Esq. (*pro hac vice*)