# EXHIBIT 1

Westlaw.

Slip Copy                                                                                                    Page 1

Slip Copy, 2006 WL 1030413 (Bkrtcy.S.D.N.Y.)

(Cite as: Slip Copy)

**H**

In re Enron Corp.

Bkrtcy.S.D.N.Y.,2006.

Only the Westlaw citation is currently available.Not For Publication

United States Bankruptcy Court,S.D. New York.

In re ENRON CORP., et al., Reorganized, Debtors.

Rufus T. Dorsey, IV, Examiner for Newpower Holdings, Inc., and TNPC Holdings, Inc., Plaintiff,

v.

Enron Corp., Enron North America Corp., Enron Energy Services, Inc., Enron Power Marketing, Inc., Enron Energy Services, LLC, Cortez Energy Services, LLC, McGarret I, LLC, McGarret II, LLC, McGarret III, LLC, and EES Warrant Trust, Defendants.

**Bankruptcy No. 01-16034 (AJG).**

**Adversary No. 04-04303 (AJG).**

April 10, 2006.

Weil, Gotshal & Manges LLP, New York, NY, Martin J. Bienenstock, Brian S. Rosen, Stephen T. Loden, for Reorganized Debtors, Enron Corp. and certain of its subsidiaries and affiliates as Defendants, of counsel.

Parker, Hudson, Rainer & Dobbs, LLP, Atlanta, GA, Rufus T. Dorsey, IV, Jack C. Basham, Jr., for Plaintiff Rufus T. Dorsey, IV, Examiner for New Power Holdings, Inc. and TNPC Holdings, Inc., of counsel.

ORDER AND OPINION REGARDING MOTION OF NEW POWER EXAMINER TO ALTER OR AMEND OPINION AND JUDGMENT, OR IN THE ALTERNATIVE, CERTIFY ORDER UNDER RULE 54(b)

GONZALEZ, Bankruptcy J.

*1 Before the Court is the Motion of the Examiner to Alter or Amend Opinion and Judgment, or In the Alternative, Certify Order Under Rule 54(b), dated February 27, 2006 (the " Motion to Amend" ), filed by the New Power Examiner [FN1] in the above-referenced adversary proceeding. The Examiner, who was appointed in the chapter 11 cases of the New Power Debtors, seeks first to have the Court alter or amend the order that was entered on February 17, 2006 (the " Order" ) in relation to this Court's Opinion Regarding Defendant's Motion to Dismiss

Adversary Complaint of New Power Examiner For Failure to State a Claim, dated January 26, 2006 (the " Opinion" ). Barring such relief, the Examiner seeks to have the Court amend the Order to include a certification for immediate appeal of the portion of the Order granting the Motion to Dismiss.

> FN1. Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Opinion.

I. ALTERATION OR AMENDMENT

The Examiner first requests that the Court alter or amend the Order (and thus the Opinion) so as to deny Enron's motion to dismiss the recharacterization claim based " (i) on the conclusions of the Eleventh Circuit in the Eleventh Circuit Decision, which decision was issued shortly after entry of the Opinion but before entry of the Order, and (ii) on the applicable case law regarding the requisites of a withdrawal of a proof of claim, an issue which is raised by the Court's Opinion but never briefed by either party." [FN2] (Mot. to Amend at 3.)

> FN2. This issue was raised in the Motion to Dismiss, and discussed during the hearing held on December 9, 2004. (See Motion to Dismiss at 5-6) (" Pursuant to the terms of the Second NewPower Settlement ... the Enron Claims in the NewPower chapter 11 cases were deemed paid in full and Enron was required to release and withdraw all of those claims immediately, which it did. Upon satisfaction of the Enron Claims, the Master Agreement and the Second Agreement were automatically terminated, and both NewPower and Enron fully and completely released each other from all claims pursuant to the terms of the First NewPower Settlement ... Accordingly, Enron no longer holds any unsatisfied claims in the NewPower chapter 11 cases, and the Examiner's present effort to recharacterize and subordinate those non-existent claims is moot." ) (See Hr'g Tr. 14: 17-15: 18, Dec. 9, 2004) (" The Examiner brings these claims without so much as a mention of the fact that Enron has no claims against NewPower that can be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2
Slip Copy, 2006 WL 1030413 (Bkrtcy.S.D.N.Y.)
(Cite as: Slip Copy)

recharacterized, because those claims were withdrawn pursuant to the settlement approved by Judge Drake. The Examiner also fails to mention that both Judge Drake and this Court made factual findings on those settlement orders that directly contradict the Examiner's present allegations. As demonstrated in the motion to dismiss, the Examiner's failure to acknowledge the impact of those settlements is fatal to his adversary complaint, because the Examiner cannot prove the facts he alleges without first reversing the settlement orders." ) Furthermore, the issue has been fully addressed by the Examiner in the Motion to Amend, and, as discussed below, the Court disagrees with the Examiner's reasoning on the issue.

The approval of a motion to alter or amend an order under Bankruptcy Rule 9023,[FN3] which incorporates Rule 59(e) of the Federal Rules of Civil Procedure, " is merited when there has been a clear error or manifest injustice in an order of the court or if newly discovered evidence is unearthed." In re Bird, 222 B.R. 229, 235 (Bankr.S.D.N.Y.1998); see also Griffin Indus., Inc. v. Petrojam, Ltd., 72 F.Supp.2d 365, 368 (S.D.N.Y.1999) (citing Robins v. Max Mara, U.S.A., Inc., 923 F.Supp. 460, 472 (S.D.N.Y.1996)). The burden is on the movant to show that factual matters or controlling precedent were overlooked that could have materially influenced the earlier decision. See Cioce v. County of Westchester, 128 Fed. Appx. 181, 185 (2d Cir.2005); Griffin, 72 F.Supp.2d at 368 (citing Fruit of the Loom, Inc. v. American Mtg. Enters., Inc., 1999 U.S. Dis. LEXIS 11060, 97 Civ. 3510, at *1 (S.D.N.Y. July 22, 1999)); Bird, 222 B.R. at 235. Importantly, a " motion to reconsider should not give the moving party another bite at the apple by permitting argument on issues that could have been or should have been raised prior to the original motion." Bird, 222 B.R. at 235; see also Griffin, 72 F.Supp.2d at 368 (citing Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir.1998)).

> FN3. In the Motion to Amend, the Examiner cites to Bankruptcy Rule 9024 as authority for the amendment of judgments. The Court assumes the Examiner meant to cite to Bankruptcy Rule 9023, as he cited to Local Rule 9023-1(a). Bankruptcy Rule 9024 relates to relief from a judgment or order

and incorporates Federal Rule of Civil Procedure 60, while Bankruptcy Rule 9023 relates to the relief sought under Federal Rule of Civil Procedure 59.

First, the Court disagrees with the Examiner's assertion that the withdrawal of the Claim is the " key event" with respect to each of the Court's conclusions. The Claim withdrawal is clearly central to the Court's ruling that " the claim has been withdrawn and therefore cannot be recharacterized." (Op. at 3.) However, with regard to the Court's second finding that " the Claim has been released and any cause of action to recharacterize the Claim is barred by the release" (Op. at 3), the withdrawal of the Claim is not the crucial event that the Examiner asserts it to be. The Examiner states that " [t]he withdrawal is also deemed to trigger the effectiveness of the release under the First Settlement because the withdrawal is equated by the Court with ' full satisfaction' of the Claim." (Mot. to Amend at 4.) This is an incorrect interpretation of the Opinion. The Court states in the Opinion:
*2 [T]he release approved through the First Settlement Order did not become effective until after the New Power Petition Date, as it was not triggered until the postpetition payment of ' all principal and accrued and unpaid interest under the Note' .... [I]t was pursuant to the Second Settlement that the Note was deemed paid in full and all Enron's claims under the Note were satisfied. Upon such full satisfaction, the release under the First Settlement took effect, and Enron withdrew its claims and released its liens against New Power.

(Op. at 22.) The Court does not find this language to equate full satisfaction with withdrawal of the Claim. Rather, the withdrawal came about only after full satisfaction took place.

With regard to the Court's third finding that " recharacterization of the Claim is barred by res judicata" (Op. at 3), the Court again disagrees that the withdrawal of the Claim is a critical factor. The Examiner states that in the Opinion, the withdrawal is " deemed as a binding determination on the merits of the Claim." (Mot. to Amend at 4-5.) However, the Court does not view its discussion in this section of the Opinion to be the key to its res judicata finding. Rather it is a rejection of the Examiner's argument set forth in his response to the Motion to Dismiss that the Second Settlement was not a final allowance of the Claim or final approval of the Second Settlement.

(See Op. at 35-36.) The Court points out that the Second Settlement Order does not act in opposition to the powers of the Examiner by allowing the Claim, but rather requires that the Claim be reinstated. (See Op. at 35-36.) Furthermore, the Court stated in the Opinion that " [w]hile the Examiner does not specifically set out which elements of res judicata have not been met, this Court will discuss the arguments raised by the Examiner in the categories to which they can most properly be assigned." (Op. at 30-31.) Thus, the fact that the Court included this discussion in this section of the Opinion does not mean that it is the critical finding, but rather that it seemed the most appropriate place to include a discussion of the Examiner's argument. Indeed, the key(s) to the Court's res judicata findings are that:

[A]ll claims that Enron and New Power had against one another in relation to the debt under the Master Agreement have been released pursuant to the Settlements. Additionally, the First Settlement Order found that the First Settlement was the result of an arms' length negotiation, conferring res judicata status upon issues resolved under the Master Agreement. Furthermore, the recharacterization claim was not raised regarding either of the Settlements. This, together with [sic] preclusive effect of the findings in the First Settlement Order, prevents re-visitation of the issues resolved pursuant to the Settlement Orders.

(Op. at 29.)

In any case, the Court does not agree with the Examiner's interpretation of Bankruptcy Rule 3006 that for the actual withdrawal of a claim pursuant to a settlement to take place, all parties must return themselves to " the status they occupied at the time the proofs of claim were filed." (Mot. to Amend at 5.) Even if withdrawal of a claim leaves the parties involved in the position they would have been in if the claim had never been brought, such withdrawal does not change the fact that an obligation was due and was independently settled. The acts taken by a court in approving such settlements do not have to be reversed in order for a claim to be withdrawn. The case cited by the Examiner, Smith v. Dowden, 47 F.3d 940 (8th Cir.1995), involves a discussion relating to whether a claimant that withdrew its proof of claim had still irrevocably submitted to the jurisdiction of the bankruptcy court, and thereby waived its right under the Seventh Amendment to a trial by jury. See id. at 941. This case focused on the withdrawal of a claim from the standpoint of the jurisdictional consequences of such withdrawal. It does not stand for the proposition that every action taken related to the claim must be undone in order for the claim to be withdrawn. The Examiner essentially argues that in every case in which a settlement hinged on the withdrawal of the underlying claim, such withdrawal did not actually occur because the parties were not returned to their position prior to the filing of the claim. Hence, the claim still exists. This Court finds that this result is not dictated by the Smith decision.

*3 Additionally, the Examiner argues that this Court should amend the Order (and thus the Opinion) based upon the conclusions contained in the decision of Enron Corp. v The New Power Co. (In re The New Power Co.), 438 F.3d 1113 (11th Cir.2006). In re New Power was issued subsequent to entry of the Opinion, but prior to entry of the Order.[FN4] The Examiner first revisits the discussion raised in his response to the Motion to Dismiss that relates to the position taken by Enron in the New Power Cases and during the appellate process in the Eleventh Circuit. The Court addressed this issue in the Opinion based upon the evidence presented in the pleadings submitted by the parties with respect to the Motion to Dismiss. This included the record of Enron's arguments made before the Georgia Bankruptcy Court and the District Court for the Northern District of Georgia. The Court finds no basis to modify its Opinion based upon the Examiner's interpretation of the way in which the Court of Appeals for the Eleventh Circuit characterizes Enron's argument. The arguments made by Enron before the Eleventh Circuit were legal rationales taken to protect the interests of Enron from the proceedings in the New Power Cases. They were not admissions that any claims still existed for purposes of that process, or that there were no defenses to such process.

> FN4. While In re New Power was rendered subsequent to entry of the Opinion, the Motion to Amend is based on Fed.R.Civ.P. 59(e), which applies to " judgments," which are synonymous to " appealable orders" under Fed. R. Bankr.P. 9001(7). Thus, the Court believes the Motion to Amend was correctly brought in light of the timing of the Order. Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.), 290 B.R. 55, 61 n. 4 (Bankr.S.D.N.Y.2003).

Slip Copy                                                                                                          Page 4
Slip Copy, 2006 WL 1030413 (Bkrtcy.S.D.N.Y.)
**(Cite as: Slip Copy)**

In its opinion, the Eleventh Circuit addressed the issues of whether " (1) the bankruptcy court lacked the statutory authority to confirm the Second Amended Plan because the modifications were material and adverse with respect to Enron's claims and interests; and (2) the modifications violate the equal treatment required by the Bankruptcy Code with respect to members of the same class of creditors." *In re New Power,* 438 F.3d at 1117. The findings of the Eleventh Circuit appear to relate to the powers of the Examiner and whether the Examiner was precluded from conducting his investigation. However, the issue of whether Enron could assert its available defenses against the Examiner does not appear to have been argued before the Eleventh Circuit. Indeed, it appears that neither the First nor the Second Settlements were presented for the Eleventh Circuit's consideration. This Court must reiterate that the Opinion does not conclude the Examiner lacked the authority to examine the Claims, but rather that the Examiner would not succeed in such efforts as a result of the defenses available to Enron under the circumstances of this case. (Op. at 20.)

Putting aside withdrawal, the Examiner states that the res judicata effect of the Second Settlement must be interpreted in accordance with Eleventh Circuit precedent under *In re Justice Oaks II, Ltd.,* 898 F.2d 1544 (11th Cir.1990). While the Examiner has previously made this assertion in his response to the Motion to Dismiss, he has now for the first time presented this Court with case law to support his argument. The Examiner cites to *Kern v. Hettinger,* 303 F.2d 333, 340 (2d Cir.1962), *Hillary v. Trans World Airlines, Inc.,* 123 F.3d 1041, 1043 (8th Cir.1997), and *In re Tippins,* 221 B.R. 11, 19 (Bankr.N.D.Ala.1990) to support his argument that a court should determine the scope of its own judgment. However, the reasoning of those cases should not be divorced from their factual background. Specifically, *Hettinger, Hillary* and *Tippins* involved discussions of whether to apply state law or federal law with regard to the res judicata effect of a judgment.

**\*4** *Hettinger* and *Hillary* involved diversity actions. In *Hettinger,* the court held that federal law, not California law, determined the res judicata effects of a dismissal pursuant to Federal Rule 41(b). *Hettinger,* 303 F.2d at 340. In *Hillary,* the court held that the state law used in making the rule of decision should govern the res judicata effect of a judgment in a Louisiana federal district court. *Hillary,* 123 F.3d at 1043.

In *Tippins,* the debtors filed a state court action in Alabama after the Bankruptcy Court for the Northern District of Alabama had entered a confirmation order. *Tippins,* 221 B.R. at 14-15. The *Tippins* court considered the res judicata effect of a confirmation order on a state court action, and was concerned that federal law should determine the res judicata effect of a federal judgment, as opposed to the law of the state in which that court sits. *Tippins,* 221 B.R. at 18-19.

Thus, all three cases cited by the Examiner involve a choice between differing laws. Here, the Examiner is not contending that state law should apply over federal law or federal law over state law, but rather that the federal common law on res judicata is not unitary and should be applied in accordance with the law of the circuit in which the particular order was entered. (See Hr'g Tr. 5:9-21, Mar. 30, 2006.) The issue before the Court does not concern the choice between different laws, but rather the choice between different interpretations of federal common law. Under the unitary principle there is but one law, and a court is bound to the law as interpreted by the circuit in which that court sits. Ultimately the parties may seek to reconcile any conflict in interpretation among the circuits through the appellate process.

Furthermore, even accepting the Examiner's argument, the res judicata effect of the First Settlement Order must still be determined in accordance with the law of this Circuit. The Examiner has in effect admitted as much. (See Hr'g Tr. 6: 13-17, Mar. 30, 2006) (" Your Honor, I don't disagree with what the Court is stating about the First Settlement Order. It was issued and issued in the Second Circuit, and its legal effect, I believe is controlled by the Second Circuit law." ) The significance of the findings in the First Settlement Order is made evident in the Opinion. (See Op. at 29, 39). The Second Settlement Order is not cited by the Court for the preclusive effect of its findings, but rather for the opportunity it presented for the Examiner to object to its approval and the consequences this had on implementation of the First Settlement. In this way, the Second Settlement Order contributes to the res judicata analysis in that it presented an opportunity to raise an issue. As stated in the Opinion, " [u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that

Slip Copy                                                                                     Page 5

Slip Copy, 2006 WL 1030413 (Bkrtcy.S.D.N.Y.)

**(Cite as: Slip Copy)**

were or could have been raised in that action." (Op. at 31.) (quoting *Petitioning Creditors of Melon Produce, Inc. v. Braunstein,* 112 F.3d 1232, 1240 (1st Cir.1997)). Thus, the Second Settlement Order's finality allows the First Settlement to become effective and, if the First Settlement Order did not have preclusive effect through its own finality, gives preclusive effect to the findings in the First Settlement. This, in turn, creates a res judicata effect with regard to the issue of recharacterization. However, even if the Court focused on the First Settlement Order prior to entry of the Second Settlement Order, arguably under recent Second Circuit case law, even if the First Settlement had never gone into effect, the First Settlement Order became preclusive at the point when it became a final, non-appealable order. *See The Bennett Funding Group, Inc. v. Bredeen,* 439 F.3d 155 (2d Cir.2006) (finality as to appellate rights). Additionally, the Examiner's argument does not touch on the release of the claims, and so even if correct, would not necessitate the Court modifying its Opinion regarding res judicata. As stated above, even under the Examiner's rationale, the preclusive effect of the First Settlement would be interpreted under Second Circuit precedent.

## II. CERTIFICATION

*5 Alternatively, the Examiner requests that the Court, pursuant to Bankruptcy Rule 7054, which incorporates Rule 54(b) of the Federal Rules of Civil Procedure, certify for immediate appeal the portion of the Opinion and Order that granted dismissal of the Examiner's recharacterization claim. If certification is granted, the Examiner requests that this Court continue the existing stay of the adversary proceeding initiated by the Complaint. However, the Examiner further requests that the Court rule on the Defendants' Motion for Entry of an Order Enforcing The Automatic Stay and The Confirmation Order and Imposing Sanctions and Civil Penalties for Knowing and Willful Violations of The Automatic Stay and This Court's Prior Orders, dated April 13, 2005 (the " Sanctions Motion " ), so that the Examiner can proceed against Enron's equity interests in the New Power Cases.

Bankruptcy Rule 7054 states that Rule 54(b) of the Federal Rules of Civil Procedure, which concerns judgments involving multiple claims or multiple parties, applies in adversary proceedings. *See* Fed. R. Bank. P. 7054. Rule 54(b) states:

When more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b).

" The standards for a Rule 54(b) certification are stringent in this Circuit." *Northpark Nat. Bank v. Bankers Trust Co.,* 572 F.Supp 520, 523 (S.D.N.Y.1983). In this Circuit, the power of the Court to grant a Rule 54(b) certification is to be reserved for those rare cases where there exists " some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *El-Marzouki Establishment v. Environmental Research and Dev., Inc.,* 94 F.R.D. 661, 662 (S.D.N.Y.1982) (internal citations omitted); *see also Arlinghaus v. Ritenour,* 543 F.2d 461, 464 n. 1 (2d Cir.1976) ( " [T]he Advisory Committee's note to the 1946 amendment of Rule 54(b), which stated that the certificate provision was intended only to confer ' a discretionary power to afford a remedy in the infrequent harsh case....' ' ); *Schwartz v. Compagnie Gen. Transatlantique,* 405 F.2d 270, 274-75 (2d Cir.1968) (" The power which this Rule confers upon the trial judge should be used only ' in the infrequent harsh case' as an instrument for the improved administration of justice" ) (internal citations omitted). Certification is certainly not to be granted " routinely or as a courtesy or accommodation to counsel." *Brunswick v. Sheridan,* 582 F.2d 175, 183 (2d Cir.1978) (" [E]ntry of final judgment under Rule 54(b) is not to be done lightly, particularly when the action remains pending as to all parties." ).

*6 The Court has reviewed the Sanctions Motion and the opposing papers. Although the Court has not heard arguments on the Sanctions Motion and the outcome on that matter is yet to be determined, the Debtors have set forth a prima facie case. The cases cited in opposition by the Examiner do not address

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 6
Slip Copy, 2006 WL 1030413 (Bkrtcy.S.D.N.Y.)
(Cite as: Slip Copy)

the consequence of another court's fiduciary actively participating in a confirmation process, thereby submitting to such court's jurisdiction, and thereafter disregarding the order of that court especially where that order addressed the very issues on which that fiduciary rests his *Barton* FN5 doctrine contention. Here, the Examiner previously objected to the Confirmation Order, arguing that the injunction (the " Plan Injunction" ) FN6 contained in the Debtors' Plan should not apply to actions of the Examiner. This objection was denied pursuant to the Findings of Fact and Conclusions of Law Confirming Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, and Related Relief, dated July 15, 2004 (the " Findings of Fact" ). This Court stated in the Findings of Fact that " the objection of the NewPower Examiner should be overruled because (a) the NewPower Examiner was appointed in the NewPower Cases, not the Debtors' Chapter 11 Cases, and the confirmation of the Plan does not affect such appointment, (b) res judicata and collateral estoppel appear to preclude the NewPower Examiner from pursuing a re-characterization of the settlement payment, and (c) the claim objection process, and not confirmation of the Plan, is the appropriate platform for the determination of this dispute." FN7 Whether these determinations are correct is not an issue related to the Sanctions Motion. The Examiner chose not to appeal the denial, and the ruling is the law of the case. It is arguable that the *Barton* FN8 line of cases does not support the Examiner, in that the Examiner cannot ignore a ruling that was made on the issues he originally brought before this Court. This situation does not involve a private litigant asserting its rights to fees, for example, as in the case of *Solar Fin. Servs., Inc. v. Price Waterhouse, LLP (In re Solar Fin. Servs., Inc.),* 255 B.R. 801, 805-06 (Bankr.S.D.Fla.2000). Rather, in this case an order of a court is at issue. The question is whether a fiduciary of another court has the right under the *Barton* doctrine to ignore such order and thereby require the court that issued the order to seek the permission of the fiduciary's court so as to enforce its own order. Whether economic sanctions are appropriate or any relief would be limited to an injunction is a possible consequence of the interplay between the principles of the *Barton* doctrine and the circumstances presented herein. Nonetheless, the broad application of the *Barton* doctrine is, based upon the pleadings as filed to date, not likely. It is important to note that the Court's findings with respect to the effect of the Plan and related confirmation order on the Examiner were

made in response to the Examiner's direct request to this Court to address the issue.FN9 Though the Court does not rule on the merits, in light of the fact that the Examiner submitted fully to this Court's jurisdiction and sought a ruling on the issue, and yet subsequently acted in contravention to the Plan Injunction and the automatic stay under section 362 of the Bankruptcy Code,FN10 the Court concludes that there is a strong likelihood the litigation on equitable subordination will go forward in this Court. There does not appear to be efficiency or judicial economy in the process envisioned by the Examiner, since determination of the equitable subordination issue would be stayed until the Examiner pursued the appeals process to its conclusion. This length of delay would certainly restrain the ability of the parties to properly conduct discovery in relation to these claims. (See Hr'g Tr. 43: 19-23, Mar. 30, 2006.) This Court finds it is more appropriate for the appeal to go forward at the conclusion of the matters before this Court, as it can be assumed that any decision made by this Court with respect to the equitable subordination count of the Complaint will also be appealed. (See Hr'g Tr. 42: 16-20, Mar. 30, 2006.) The Court finds that a mediated resolution is in the best interest of all parties, and until such time as the Mediator determines that such continued efforts in that regard are not warranted, that process should continue and the stay ordered by this Court should remain in effect.

FN5. *Barton v. Barbour,* 104 U.S. 126 (1881).

FN6. Section 42.4 of the Debtors' chapter 11 plan (the " Plan" ) states that " all Persons or Entities who have held, hold or may hold Claims ... are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action of other proceeding of any kind on any such Claim. (Plan § 42 .4.)

FN7. At the time the Examiner's objection to confirmation was argued, the Court viewed these issues as concerning the Examiner's ability to bring an action against the Enron Debtors in a different court. To the extent the Examiner disagreed with the ruling, he had an obligation to appeal that order. Not having appealed, the Examiner is bound by the ruling of this Court and cannot argue that this Court is unable to enforce its ruling,

Slip Copy                                                                    Page 7

Slip Copy, 2006 WL 1030413 (Bkrtcy.S.D.N.Y.)

**(Cite as: Slip Copy)**

especially in light of the fact that the Examiner originally sought that a ruling be made on these issues.

FN8. It is important to note that the *Barton* doctrine was not cited by the Examiner in his initial objection to confirmation of the Debtors' Plan.

FN9. The Examiner suggests that it is more logical to bring the action to disallow the equity prior to litigating the equitable subordination claim. If that were truly a concern of the Examiner, and he believed he was not prevented by the automatic stay from bringing the disallowance action, the Court questions why the Examiner did not bring an action for disallowance of equity prior to requesting equitable subordination from this Court, and thereby submitting to this Court's jurisdiction. Furthermore, it appears that the disallowance of the equity will essentially involve the same proof as is put forward with respect to the equitable subordination claim.

FN10. Section 42.5 of the Plan states that " all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until entry of an order in accordance with Section 42.17 of the Plan or such other Final Order of the Bankruptcy Court." (Plan § 42.5.)

### III. CONCLUSION

*7 Based upon the foregoing, the requests of the Examiner for amendment of the Order and for certification are denied. It is hereby

ORDERED that the Motion to Amend is denied in its entirety; and it is further

ORDERED that this Court's stay remains in effect in all respects.

Bkrtcy.S.D.N.Y.,2006.
In re Enron Corp.
Slip Copy, 2006 WL 1030413 (Bkrtcy.S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Westlaw.

Slip Copy                                                        Page 1

Slip Copy, 2007 WL 534547 (Bkrtcy.S.D.N.Y.)

**(Cite as: Slip Copy)**

**H**

In re Manhattan Inv. Fund, Ltd.

Bkrtcy.S.D.N.Y.,2007.

Only the Westlaw citation is currently available.

United States Bankruptcy Court,S.D. New York.

In re MANHATTAN INVESTMENT FUND LTD.,
et al., Debtors,

Helen Gredd, Chapter 11 Trustee for Manhattan
Investment Fund Ltd., et al., Plaintiffs,

v.

Bear, Stearns Securities Corp., Defendant.

**Bankruptcy Nos. 00-10922 (BRL), 00-10921(BRL).
Adversary No. 01-2606.**

Feb. 15, 2007.

Daniel Reynolds, Lankler Siffert & Wohl, LLP,
Stuart Hirshfield, Ropes & Gray LLP, New York,
NY, for Plaintiffs.
Harry S. Davis, Michael L. Cook, Schulte Roth &
Zabel LLP, New York, NY, for Defendant.

MEMORANDUM DECISION GRANTING *FINAL
JUDGMENT PURSUANT TO FRCP 54*

BURTON R. LIFLAND, United States Bankruptcy
Judge.

**\*1** Pursuant to Federal Rule of Civil Procedure 54(b),
the Chapter 11 Trustee for Manhattan Investment
Fund Ltd. moves for the entry of a final judgment on
count I of the complaint following this Court's
Memorandum Decision dated January 9, 2007,
granting the Trustee's motion for summary judgment.

Federal Rule of Civil Procedure 54(b) [FN1] permits a
court to certify a partial judgment as final " only
upon an express determination that there is no just
reason for delay." The court's power to certify a
judgment as final should be " exercised sparingly,"
and " only if there are interests of sound judicial
administration and efficiency to be served, or in the
infrequent harsh case where there exists some danger
of hardship or injustice through delay which would
be alleviated by immediate appeal." *Adrian v. Town
of Yorktown,* 2006 WL 3826663, \*1 (2d Cir.
December 28, 2006) *quoting Harriscom Svenska AB
v. Harris Corp.,* 947 F.2d 627, 629 (2d Cir.1991). In
making such a certification, a court " should not
merely repeat the formulaic language of the rule, but
rather should offer a brief, reasoned explanation." *Id.*

FN1. Fed.R.Civ.Proc. 54(b) made applicable
here by Fed.R.Bankr.Proc. 7054(a), provides
as follows:
(b) Judgment Upon Multiple Claims or
Involving Multiple Parties. When more than
one claim for relief is presented in an action,
whether as a claim, counterclaim, cross-
claim, or third-party claim, or when multiple
parties are involved, the court may direct the
entry of a final judgment as to one or more
but fewer than all of the claims or parties
only upon an express determination that
there is no just reason for delay and upon an
express direction for the entry of judgment.
In the absence of such determination and
direction, any order or other form of
decision, however designated, which
adjudicates fewer than all the claims or the
rights and liabilities of fewer than all the
parties shall not terminate the action as to
any of the claims or parties, and the order or
other form of decision is subject to revision
at any time before the entry of judgment
adjudicating all the claims and the rights and
liabilities of all the parties.

To have a " final judgment" under Rule 54(b), (1)
multiple claims or multiple parties must be present,
(2) at least one claim, or the rights and liabilities of at
least one party, must be finally decided, and (3) the
court must make an express determination that there
is no reason for delay and expressly direct the clerk
to enter judgment. *See* Fed.R.Civ.P. 54(b); *see also
Grand River Enterprises Six Nations, Ltd. v. Pryor,*
425 F.3d 158, 164-165 (2d Cir.2005). Bear Stearns
opposes the Trustee's motion for entry of a final
judgment on Count I under Bankruptcy Rule 7054(b)
for two reasons.

First, Bear Stearns contends that this Court lacks
jurisdiction to enter a final judgment here because
Bear Stearns argues that it is entitled to a jury trial
with respect to an issue that this court decided as a
matter of law. While Bear Stearns disagrees with this
Court's determination regarding Count I of the
complaint, Bear Stearns can appeal that
determination. The issues before the Court on
summary judgment have been finally determined -
rightly or wrongly-and accordingly it is appropriate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 534547 (Bkrtcy.S.D.N.Y.)

**(Cite as: Slip Copy)**

to enter a final judgment and allow the appeals to go forward if such is contemplated.

The only remaining claim in the adversary proceeding, Count IV, is a claim for equitable subordination of a proof of claim that Bear Stearns may-or may not-some time in the future-file. It is not clear to this Court whether Count IV will ever go forward. Bear Stearns may never file a proof of claim or, at a minimum, may await the outcome of an appeal. Accordingly, Count IV is not " inherently inseparable" from Count I. *See Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1091 (2d Cir.1991) (" Only those claims ' inherently inseparable' from or ' inextricably interrelated' to each other are inappropriate for rule 54(b) certification." ).

*2 Moreover, this bankruptcy case has been pending for seven years. Judicial economy and the preservation of the assets of this estate are best served by permitting any appeal of this Court's decision to be taken immediately. Accordingly, the Court expressly finds and determines pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay for the consideration by the District Court on appeal of this court's decision granting summary judgment.

Bear Stearns also objects to the amount of the proposed final judgment on Count I arguing that it permits " double recovery" against it because it does not take into account the undisputed fact that Bear Stearns returned more than $16 million of the Fund's account deposits to the Trustee before this litigation even began. I agree with Bear Stearns on this point and direct the Trustee to submit and order and judgment that gives effect to the amount that Bear Stearns returned to the Trustee.

SUBMIT AN ORDER CONSISTENT WITH THE FOREGOING.

Bkrtcy.S.D.N.Y.,2007.
In re Manhattan Inv. Fund, Ltd.
Slip Copy, 2007 WL 534547 (Bkrtcy.S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

Westlaw.

--- B.R. ----

--- B.R. ----, 2007 WL 1630493 (Bkrtcy.S.D.N.Y.)

(Cite as: --- B.R. ----)

Page 1

**H**
In re RMM Records & Video Corp.
Bkrtcy.S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States Bankruptcy Court,S.D. New York.
In re RMM RECORDS & VIDEO CORP., Debtor.
RMM Records & Video Corp., Plaintiff,
v.
Universal Music & Video Distribution Co.,
Defendant.
Bankruptcy No. 00-15350 (AJG).
Adversary No. 06-01351.

June 7, 2007.

**Background:** After confirmation of its Chapter 11 plan of liquidation, debtor commenced adversary proceeding to compel purchaser of its assets to make payment due under promissory note. Debtor moved for summary judgment.

**Holdings:** The Bankruptcy Court, Arthur J. Gonzalez, J., held that:

(1) buyer's letter did not preserve its setoff rights for unspecified claims;

(2) claim against company was too conclusory and speculative to act as offset or affirmative defense to payment; and

(3) stipulation setting amount of claim against company precluded buyer from subsequently asserting claim for additional funds.

Motion granted.

**[1] Bills and Notes 56 ☜516**

56 Bills and Notes
   56XI Actions
      56k515 Weight and Sufficiency of Evidence
         56k516 k. In General. Most Cited Cases
Under New York law, to make out prima facie case for recovery for breach of obligation to pay under promissory note, plaintiff simply must show proof of note and defendant's failure to pay by its maturity date.

**[2] Bankruptcy 51 ☜2164.1**

51 Bankruptcy
   51II Courts; Proceedings in General
      51II(B) Actions and Proceedings in General
         51k2164 Judgment or Order
            51k2164.1 k. In General. Most Cited Cases
Under New York law, when note holder has established prima facie claim for recovery for breach of obligation to pay under promissory note, burden shifts to defendant to prove existence of triable issue of fact precluding summary judgment in form of bona fide defense against note.

**[3] Bankruptcy 51 ☜2164.1**

51 Bankruptcy
   51II Courts; Proceedings in General
      51II(B) Actions and Proceedings in General
         51k2164 Judgment or Order
            51k2164.1 k. In General. Most Cited Cases
Under New York law, while it is general rule that alleged breach of related but independent contract will not defeat summary judgment motion on promissory note, alleged breach of related but independent contract can defeat motion for summary judgment in lieu of complaint where instrument and contract are sufficiently intertwined.

**[4] Corporations 101 ☜445**

101 Corporations
   101XI Corporate Powers and Liabilities
      101XI(C) Property and Conveyances
         101k441 Conveyances by Corporations
            101k445 k. Construction and Operation in General. Most Cited Cases
Under New York law, letter from buyer of record company's assets claiming offsets for post-closing returns of records that " may have occurred" did not preserve its setoff rights for unspecified claims under provision of promissory note issued in conjunction with asset purchase agreement permitting buyer to offset any amount due under agreement's indemnity provisions against note " at any time and from time to time on or before the Maturity Date of the Note."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                                    Page 2

--- B.R. ----, 2007 WL 1630493 (Bkrtcy.S.D.N.Y.)

**(Cite as: --- B.R. ----)**

**[5] Corporations 101 ⟜445**

101 Corporations
   101XI Corporate Powers and Liabilities
     101XI(C) Property and Conveyances
      101k441 Conveyances by Corporations
       101k445 k. Construction and Operation
in General. Most Cited Cases
Under New York law, recording artist's estate's claim
that record company did not have right to artist's
recording was too conclusory and speculative to act
as offset or affirmative defense to payment on
promissory note issued in conjunction with asset
purchase agreement, where estate gave no estimate of
damages, and buyer continued to commercially
exploit recordings.

**[6] Corporations 101 ⟜445**

101 Corporations
   101XI Corporate Powers and Liabilities
     101XI(C) Property and Conveyances
      101k441 Conveyances by Corporations
       101k445 k. Construction and Operation
in General. Most Cited Cases
Under New York law, provision of promissory note
issued in conjunction with asset purchase agreement
providing that buyer " may offset any amount owed
to it by [seller] prior to maturity" required buyer to
exercise its offset rights on or before maturity date,
and thus claims asserted after maturity date could not
be used to offset buyer's obligations under note.

**[7] Stipulations 363 ⟜14(12)**

363 Stipulations
   363k14 Construction and Operation in General
     363k14(12) k. Stipulations as to Judgment and
Review. Most Cited Cases
Under New York law, stipulation between buyer and
seller of record company permitting buyer to offset
against amount due under promissory note
unrecouped balance of $80,000 due on license
agreement with third party precluded buyer from
subsequently asserting claim against seller for
additional royalties.

**[8] Bankruptcy 51 ⟜3772**

51 Bankruptcy
   51XIX Review
     51XIX(B) Review of Bankruptcy Court

      51k3772 k. Petition for Leave; Appeal as of
Right; Certification. Most Cited Cases
Administrative interests that bankruptcy court should
consider in determining whether to certify
interlocutory appeal include whether claims under
review were separable from others remaining to be
adjudicated and whether nature of claims already
determined was such that no appellate court would
have to decide same issues more than once even if
there were subsequent appeals. Fed.Rules
Civ.Proc.Rule 54(b), 28 U.S.C.A.

**[9] Bankruptcy 51 ⟜3772**

51 Bankruptcy
   51XIX Review
     51XIX(B) Review of Bankruptcy Court
      51k3772 k. Petition for Leave; Appeal as of
Right; Certification. Most Cited Cases
Certification of interlocutory appeal was not
warranted following resolution of debtor's claim
against buyer of its assets for payments due under
promissory note, where buyer asserted counterclaims
against debtor seeking damages greater than balance
of note, and debtor had no apparent assets, no longer
conducted business, and had no potential sources of
revenue. Fed.Rules Civ.Proc.Rule 54(b), 28 U.S.C.A.

Labaton Sucharow & Rudoff LLP, Brian D. Caplan,
Esq., Jonathon J. Ross, Esq., Of Counsel, New York,
NY, Attorneys for Plaintiff.
McKenna, Long & Aldridge LLP, Barry J.
Armstrong, Esq., Robert A. Bartlett, Esq., Of
Counsel, Atlanta, GA, and James S. Cochran, Esq.,
Of Counsel, Los Angeles, CA, Attorneys for
Defendant.

OPINION GRANTING MOTION FOR SUMMARY
JUDGMENT AND ADDRESSING MOTION FOR
FINAL ENTRY OF JUDGMENT UNDER
FED.R.CIV.P. 54(b)
ARTHUR J. GONZALEZ, Bankruptcy Judge.

**I. INTRODUCTION**

*1 This adversary proceeding arises from the non-
payment of money due under a promissory note
issued by defendant Universal Music and Video
Distribution Corporation (" Universal" or "
Defendant" ) to plaintiff RMM Records and Video
Corporation (" RMM" or " Plaintiff" ). RMM filed
for bankruptcy in November 2000, and subsequently
sold its assets to Universal in exchange, in part, for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                                                    Page 3

--- B.R. ----, 2007 WL 1630493 (Bkrtcy.S.D.N.Y.)

**(Cite as: --- B.R. ----)**

money due under the promissory note (the " Note" ). Universal refused to pay RMM pursuant to the Note by its maturity date, and RMM brought an action to compel payment. Universal responded with affirmative defenses and counterclaims for breaches of the asset sale. The subject of this opinion concerns RMM's motion for summary judgment on its claim for breach of the Note and for entry of a final judgment under Fed.R.Civ.P. 54(b). For the reasons stated below, the Court grants RMM's motion for summary judgment on its Note claim and grants RMM's motion for entry of a final judgment under Rule 54(b) but stays enforcement of that judgment pending resolution of Universal's counterclaims.

## II. BACKGROUND

Summarized below are the facts, drawn from both the pleadings and evidentiary materials in the records. The facts are construed in the light most favorable to Universal, as the party opposing the motion for summary judgment.

RMM was a " pioneering record company in the salsa and Latino music markets" before entering bankruptcy in November 2000 as a result of a civil judgment against it. (Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment on the Promissory Note, Claim (" RMM's Memo." ) at 2). To satisfy that civil judgment and its creditors, RMM entered into an Asset Purchase Agreement (the " APA" ) with Universal, in which RMM agreed to sell its catalog of master recordings and artist agreements to Universal in exchange for cash, Universal's forgiveness of debt, and a Promissory Note (the " Note" ) by Universal to RMM. (*Id.* at 2). The APA was entered into on April 30, 2001 and closed on August 16, 2001. (Lehman Aff. ¶¶ 3, 8).[FN1]

The APA contains the following clause, Section 11(d), addressing Universal's offset rights

Buyer's Offset Rights. At Buyer's option, Buyer may, at any time and from time to time on or before the Maturity Date of the Note, offset any amount due to it from Seller pursuant to Section 11(c) by reduction of the then outstanding amount of the Note, including the principal thereof and any accrued and unpaid interest thereon....

Section 11(c) contains an indemnification clause.[FN2]

In connection with the APA's closing, on August 16, 2001, Universal issued to RMM the Note in the

principal amount of $1,300,000 and containing an interest rate of 5% and a maturity date of August 16, 2002. The Note contains a choice of law provision at paragraph 8, stating that New York law governs its construction. The Note, at paragraphs 3-4, confirms that it is subject to all terms of the APA and to Universal's right of offset pursuant to Section 11(d) of the APA.[FN3]

*2 On March 29, 2002, this Court entered its order confirming the Debtor's Chapter 11 plan of liquidation, pursuant to which all of RMM's creditors were paid in full. (Order Confirming Joint Plan Chapter 11 Plan of Liquidation, 00-15350(AJG), Doc. # 184).

Several issues arose post-APA between the parties that resulted in the parties entering into a stipulation modifying the APA on February 5, 2003 (the " Stipulation" ). The Stipulation extended the maturity date of the Note [FN4] and provided for Universal to make an immediate payment to RMM under the Note in the amount of $267,495.95 plus accrued interest. The Stipulation also provided for an offset that further reduced the outstanding principal of the Note by more than $700,000 to $401,500. The bulk of the reduction, $584,180, was for " returns liability" - stemming from the issuance of credits to customers by Universal for the customers' returns of records sold or distributed for sale prior to the closing of the APA (August 16, 2001) and returned through the first anniversary of the closing (August 16, 2002). (Defendant's Response to Plaintiff's Motion for Summary Judgment (" Defendant's Response Memo." ) at 5; Lehman Aff. ¶ 14). The Stipulation also provided Universal with three additional set-offs relating to the then-unresolved claims, referred to by the parties as the " UMLA," " DAM," and " BMG Direct" claims. (Lehman Aff. ¶ 16). Only the BMG Direct set-off claim arose by the expiration date of the Note's Maturity. (*Id.* at ¶¶ 17-18). Regarding the BMG Direct claim, the Stipulation entitled Universal to offset up to $80,000 plus accrued interest due under the Note. The Stipulation stated

In lieu of [Universal] further reducing the outstanding amount of the Note by such amount as [Universal] deems appropriate under the provisions of Section 11 of the Asset Purchase Agreement in order to resolve some or all of the Unresolved Claims, the Debtor agrees that ... (iii) with respect to the BMG Direct Claims, [Universal] shall be entitled to offset up to $80,000.00 under the Note (plus accrued interest thereon) in order to recover that amount equal to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

aggregate amount of royalties that would have been payable to [Universal] for the semiannual accounting periods [from December 2001 to June 2003] if there had been no unrecouped balance under the BMG Direct Agreement.

Stipulation (Defendant's Response to Plaintiff's Motion for Summary Judgment, Cochran Decl. part IV, Exh. I).

On October 31, 2003, the Note's date of maturity, Universal notified RMM in a letter by its counsel, James S. Cochran, (the " Cochran Letter," attached to the Complaint as Exhibit E), that with respect to the BMG Direct claim Universal was offsetting the $80,000 plus accrued interest due under the Note, leaving a balance due under the Note at $332,841.80. (Lehman Aff., ¶ 19). In the Cochran Letter, Universal also notified RMM that because of RMM's breaches of the APA and related third-party claims against Universal, Universal could incur losses or damages " perhaps well in excess" of the amount due on the Note. (Cochran Letter, ¶ 4). Universal simultaneously advised RMM that, although $332,841.81 was otherwise payable under the Note, it would not make a payment of the balance due on the Note because of third-party claims by Celia Cruz's estate that reduced the amount due to zero dollars. (Cochran Letter, ¶ 5).

*3 On March 15, 2006, RMM filed this complaint in the adversary proceeding, seeking primarily three claims for relief. First, RMM's complaint seeks payment on the Note. The other two claims are not subjects of RMM's motion for summary judgment and will not be addressed herein.[FN8]

Universal filed its answer and counterclaims on March 27, 2006. Universal contends that its counterclaims entitle it to setoff or recoupment and act as affirmative defenses to payment of the outstanding amount of the Note. The counterclaims allege that RMM has breached obligations under the APA. The four categories of counterclaims are (1) the Additional Returns Liability Amount claim, (2) the Celia Cruz claim, (3) the Malpractice claims, and (4) BMG Direct claims. (Defendant's Response Memo. at 5).

On May 15, 2006, RMM moved for summary judgment on its Promissory Note claim against Universal in the amount of $332,841.81 plus applicable interest from the Note's maturity date.

In response to RMM's motion for summary judgment, Universal contends that since the APA and the Note are inextricably intertwined, under New York law, its counterclaims act as defenses against, and preclude entry of, summary judgment. Universal contends that RMM's attempt to focus just on the Note is " designed to frustrate Universal in its efforts to recover damages" for its counterclaims regarding RMM's alleged breaches of the APA. Universal also urges the Court to look at the practicalities of the situation in that if RMM is granted judgment on the Note, it would " unlikely have any funds [later] to pay a judgment on the counterclaims." (Defendant's Response Memo. at 2).

RMM asserts that the Additional Returns Liability claim and Malpractice claims were not asserted prior to the maturity of the Note, and thus are barred by the express provisions of the APA. (Plaintiff's Reply Memorandum of Law In Support of Summary Judgment on the Promissory Note Claim (" Plaintiff's Reply Memo." ) at 4 (" it is patently clear that the relevant agreements do contain specific express language restricting Universal's ability to claim offsets against the Note to those asserted prior to the Note's maturity" )). RMM further asserts that " New York law does not permit contingent or speculative claims to be used to offset monies due under a Promissory Note," and thus that the " purely speculative" Celia Cruz, Malpractice, and Additional Returns Liability claims are barred. (RMM's Memo. at 11, 13). With respect to the BMG Direct claim, RMM argues that the Stipulation firmly resolved this claim. RMM characterizes the counterclaims in sum as " a transparent attempt to avoid having to pay the remainder of the Purchase Price for RMM's valuable catalog of recordings and artist agreements." (*Id.* at 7).

A hearing was held on July 26, 2006.

### III. LEGAL STANDARDS

#### A. *Summary Judgment*

" One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ..." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Under Federal Rule of Civil Procedure 56(c), made applicable to this proceeding by Federal Rule of Bankruptcy 7056, summary judgment is only appropriate where the record shows

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                          Page 5

--- B.R. ----, 2007 WL 1630493 (Bkrtcy.S.D.N.Y.)

(Cite as: --- B.R. ----)

that " there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a
matter of law." *See* Fed.R.Civ.P. 56(c); *see also*
*Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. A
genuine issue of material fact exists where " there is
sufficient evidence favoring the nonmoving party for
a jury to return a verdict for that party." *Anderson v.
Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct.
2505, 91 L.Ed.2d 202 (1986). In determining whether
such an issue exists, " the court is required to resolve
all ambiguities and draw all permissible factual
inferences in favor of the party against whom
summary judgment is sought." *Stern v. Trustees of
Columbia Univ.,* 131 F.3d 305, 312 (2d Cir.1997). A
motion for summary judgment is appropriate to
decide an action for recovery on a promissory note.
*See Camofi Master LDC v. College Partnership, Inc.,*
452 F.Supp.2d 462, 470 (S.D.N.Y.2006); *see also*
*Pereira v. Cogan,* 267 B.R. 500, 506 (S.D.N.Y.2001)
(" Cases seeking recovery on promissory notes are
particularly suitable for disposition via summary
judgment, as the moving party need merely establish
the absence of a genuine issue as to execution and
default." ).

*4 Regarding contract disputes, the Second Circuit
has further stated that if a court finds that a " contract
is not ambiguous it should assign the plain and
ordinary meaning to each term and interpret the
contract without the aid of extrinsic evidence" and it
may then award summary judgment. *Int'l Multifoods
Corp. v. Commercial Union Ins. Co.,* 309 F.3d 76, 83
(2d Cir.2002) (citation omitted). The ambiguity of a
contract " is a threshold question" for the Court. *See
Pfizer, Inc. v. Stryker Corp.,* 348 F.Supp.2d 131, 142
(S.D.N.Y.2004). " The existence of an ambiguity
depends on whether there is a reasonable basis for
difference of opinion as to the meaning of the
contract." *Id.* " Contract language is ambiguous if it
is capable of more than one meaning when viewed
objectively by a reasonably intelligent person who
has examined the context of the entire integrated
agreement." *Compagnie Financiere De CIC Et De
L'Union Europeenne v. Merrill Lynch, Pierce,
Fenner & Smith Inc.,* 232 F.3d 153, 158 (2d
Cir.2000) (citations and quotations omitted).
However, a contract is not made ambiguous " simply
because the parties urge different interpretations."
*Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 959 F.2d
425, 428 (2d Cir.1992).

To defeat a proper summary judgment motion, the
opposing party " ' may not rest upon the mere

allegations or denials of the adverse party's pleading,
but ... must set forth specific facts showing that there
is a genuine issue for trial.' " *Parks Real Estate
Purchasing Group v. St. Paul Fire and Marine Ins.
Co.,* 472 F.3d 33, 41 (2d Cir.2006) (citing Rule
56(e)). The opposing party " cannot defeat the motion
by relying on the allegations in his pleading or on
conclusory statements, or on mere assertions that
affidavits supporting the motion are not credible."
*Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d
Cir.1996); *see also Anderson,* 477 U.S. at 252, 106
S.Ct. 2505 (the " mere existence of a scintilla of
evidence in support of the [non-movant's] position
will be insufficient" ); *Davis v. New York,* 316 F.3d
93, 100 (2d Cir.2002) (" reliance on conclusory
statements or mere allegations is not sufficient to
defeat a summary judgment motion" ).

### B. Breach of Obligation to Make a Payment Pursuant to Promissory Note

[1][2] To make out a *prima facie* case for recovery
for breach of obligation to pay under a promissory
note, the plaintiff simply must show proof of the note
and the defendant's failure to pay by its maturity date.
*See Camofi Master,* 452 F.Supp.2d at 470. " When a
note holder has established a *prima facie* claim, the
burden shifts to the defendant to prove the '
existence' of a triable issue of fact in the form of a
bona fide defense against the note." *Id.* (citations
omitted). It is well settled under New York law that
conclusory allegations as to the defenses do not
suffice to defeat a summary judgment motion for
payment of a promissory note *See, e.g., Lavelle v.
Urbach, Kahn Werlin, P.C.,* 198 A.D.2d 751, 604
N.Y.S.2d 614, 615 (3d Dep't 1993) (" it is well
settled that proof showing the existence of a triable
issue of fact with respect to a bona fide defense
against the note will defeat a CPLR 3213 motion" );
[FN6] *Quest Commercial, LLC v. Rovner,* 35 A.D.3d
576, 825 N.Y.S.2d 766 (2d Dep't 2006); *Coladonato
v. Tutto Pizza,* 243 A.D.2d 330, 664 N.Y.S.2d 524
(1st Dep't 1997); *Money Store of New York, Inc. v.
Kuprianchik,* 240 A.D.2d 398, 658 N.Y.S.2d 1019,
1020 (2d Dep't 1997) (" The plaintiff established a
prima facie case that it was entitled to summary
judgment by proving the existence of the note, the
defendant's guaranty of the note, and the defendant's
default in payment of the note after due demand. The
defendant's conclusory and speculative assertions that
the underlying loan was discharged or modified,
thereby negating his guarantee, were insufficient to
raise a triable issue of fact and defeat the plaintiff's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                                              Page 6

--- B.R. ----, 2007 WL 1630493 (Bkrtcy.S.D.N.Y.)

**(Cite as: --- B.R. ----)**

motion." ); *Bennell Hanover Assocs. v. Neilson,* 215 A.D.2d 710, 627 N.Y.S.2d 439, 441 (2d Dep't 1995) (" To preclude the plaintiff from enforcing the terms of the note, it became incumbent upon the defendant to establish, by admissible evidence, that a triable issue of fact existed. Although the defendant alleged that there were valid affirmative defenses, including fraud in the inducement and lack of consideration, those allegations amounted to no more than unsupported, conclusory assertions which were not sufficient to defeat the motion." ); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Keenan,* No. 93 Civ. 6784(LLS), 2005 WL 736233, at *2 (S.D.N.Y. Mar.31, 2005) (conclusory assertions in opposition to a summary judgment motion did not raise a triable issue of fact in the form of a bona fide defense against the note); *Camofi,* 452 F.Supp.2d at 471 (" To establish a bona fide defense, the defendant may not rely on conclusory allegations, but instead must show by admissible evidence ' a genuine and substantial issue rebutting holder's entitlement to payment.' " ) (citation omitted).

### IV. DISCUSSION

#### A. *Motion for Summary Judgment on Note*

*5 The determination of whether to grant RMM's motion for summary judgment turns on whether Universal has valid defenses to its non-payment of the Note. As a reasonable jury could only conclude that RMM has established a *prima facie* case for payment-proof of the Note and Universal's failure to make payment by its maturity date, the burden accordingly shifts to Universal to present evidence from which a reasonable jury could find a bona fide defense to payment. A " stringent standard" applies to evaluating a defense to negotiable instruments in cases such as this one made among sophisticated business people. *See Camofi Master,* 452 F.Supp.2d at 471. As stated above, Universal cannot rely on conclusory allegations to establish a bona fide defense " but must show by admissible evidence ' a genuine and substantial issue rebutting holder's entitlement to payment." *Id.* (citation omitted). Universal argues that its counterclaims act as defenses to non-payment. Each counterclaim's applicability as a bona fide defense must be addressed in turn. But first, the Court must discuss the effect of the intertwinement of the Note and the APA.

#### B. *The Intertwinement of the Note and the APA*

Universal argues that " [w]here a defense to a promissory note is premised on provisions of a related but separate agreement, the court will consider the two agreements ' intertwined,' and therefore sufficient to demonstrate ' the existence of a triable issue of fact with respect to a bona fide defense.' " RMM replies that, to defeat its motion for summary judgment, the intertwinement the Note and APA is not sufficient; rather, the intertwined agreements must raise a triable issue of fact as to a bona fide defense.

[3] While it is the general rule that the alleged breach of a related but independent contract will not defeat a summary judgment motion on a promissory note, *see, e.g., Logan v. Williamson & Co.,* 64 A.D.2d 466, 409 N.Y.S.2d 883, 885 (4th Dep't 1978), an " alleged breach of a related but independent contract" can defeat a motion for summary judgment in lieu of complaint where the instrument and the contract are sufficiently intertwined. *See, e.g., Corvetti v. Hudson,* 252 A.D.2d 787, 676 N.Y.S.2d 263 (3d Dep't 1998). The court in *Logan* provided helpful analysis of the relationship of counterclaims and section 3213 The CPLR makes no reference to the disposition of counterclaims asserted on a section 3213 motion for summary judgment. Certainly it would be inconsistent with that section's purpose to delay entry of plaintiff's judgment because defendant asserted an unrelated and *unliquidated* claim *upon which it was not clearly entitled to relief.* In such cases, in the absence of special equities, the counterclaim should be dismissed by the court to be the subject of a separate action. A related counterclaim arising from the same transaction stands on firmer ground, however, and *may* preclude plaintiff's motion for summary judgment.

*Logan,* 409 N.Y.S.2d at 885 (emphasis added).

*6 Although it is apparent that the Note and APA are " intertwined," [FN7] a review of New York cases shows support for RMM's position that intertwinement is not sufficient on its own. For example in *Eurotech Dev. Inc. v. Adirondack Pennysaver Inc.,* 224 A.D.2d 738, 636 N.Y.S.2d 956 (3d Dep't 1996), the court held that the purchase agreement and promissory note were sufficiently " intertwined" to render the grant of summary judgment on the note premature as " it appears that defendants may be entitled to rescission of the purchase agreement if their allegations of fraud in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

inducement or failure of consideration can be proven." Thus, triable issues of fact existed. *Id.* In *Regal Limousine, Inc. v. Allison Limousine Serv., Ltd.,* 136 A.D.2d 534, 523 N.Y.S.2d 154 (2d Dep't 1988), the court denied a motion for summary judgment where the contract and underlying obligation were " intertwined." The court noted that a customer list referred to in the parties' agreement for the sale of Allison's limousine business formed an integral part of the proffered consideration and that allegations of fraudulent misrepresentations regarding it thus precluded summary judgment. *Id.* at 155. In *A+ Assoc. Inc. v. Naughter,* 236 A.D.2d 655, 654 N.Y.S.2d 44 (3d Dep't 1997), the court agreed with the defendant that a significant portion of the consideration that defendant was to receive in exchange for the promissory note was plaintiff's covenant not to compete. " As such, the promissory note was inextricably intertwined with the obligations contained in the purchase agreement and, therefore, summary judgment was inappropriately granted." *Id.* at 44-45. There, the defendant, who had begun making monthly payments in accordance with the terms of the promissory note, stopped after learning that the plaintiff violated the non-compete agreement and the defendant commenced an action against the plaintiff for breach of contract. *Id.* at 45. In *Ssangyong (U.S.A.) Inc. v. Sung Ae Yoo,* 88 A.D.2d 572, 451 N.Y.S.2d 90 (1st Dep't 1982), the plaintiff commenced a motion for summary judgment in lieu of a complaint pursuant to § 3213. *Id.* at 90. The plaintiff and defendants, importers, had entered into an agreement whereby the defendants agreed to buy the plaintiff's furniture. *Id.* at 90. The parties executed two promissory notes shortly after entering into the agreement. *Id.* at 90. After delivery, the defendants notified the plaintiff that the goods were defective and non-conforming and thus the defendants did not make full payment on the notes. *Id.* at 91. The Appellate Division found that summary judgment in the plaintiff's favor was inappropriate as " a fundamental question exists as to whether the agreement between these parties can be viewed as being distinct and separate from the notes." *Id.* The court also noted that the defendants had alleged " sufficient facts" of fraud in the inducement. *Id.* A common thread in all the cases, then, is that the defendants raised triable issues of fact regarding a defense.

*7 The defendant's cited case of *Lavelle v. Urbach, Kahn Werlin, P.C.,* 198 A.D.2d 751, 604 N.Y.S.2d 614, 615 (3d Dep't 1993), is instructive. There, the

court held that summary judgment was inappropriate as to the promissory note. The defendant corporation, upon termination of plaintiff's employment, executed a promissory note agreeing to pay the plaintiff $28,152 in severance pay in accordance with the parties' contract, the " Master Agreement." *Id.* One of the corporation's defenses to the note was that the Master Agreement's anti-competitive provisions permitted reductions or offsets to the amount due the plaintiff because of plaintiff's competition with the defendant. The court found that this raised a triable issue of fact with respect to the bona fide defense " given the fact that the Master Agreement and the promissory note are intertwined." The court's holding was *not* that merely because the Master Agreement and the promissory note were intertwined, any defense would preclude summary judgment on the note claim. The holding was that summary judgment was inappropriate because (1) the Master Agreement and the promissory note were intertwined, and (2) the defense, which had its source in the Master Agreement, raised an issue of fact, helped in part by the intertwinement.

It should also be noted that New York state cases that discuss " intertwinement" in CPLR § 3213 actions do not seem entirely applicable-section 3213 actions are streamlined, expedited proceedings as no complaint needs to be filed, the ability to bring counterclaims is limited by statute, and discovery is generally stayed. *See Meding,* 462 F.Supp.2d at 349. Therefore, the issue of counterclaim viability is more important because the defendant opposing payment on the note may not be able to pursue its claim as a counterclaim. However, when a section 3213 case is brought in federal court the Federal Rules govern the summary judgment procedure and the bringing of counterclaims. *See Com/Tech Commc'n Tech., Inc. v. Wireless Data Sys., Inc.,* 163 F.3d 149, 151 (2d Cir.1998).

It is apparent that the Note and APA are " intertwined" but as shown above that is not dispositive. Rather, Universal still must raise a triable issue of fact with regard to a bona fide defense. In *Camofi Master,* the court found that the promissory notes and a banking agreement were separate contracts and thus that a defense predicated on fraudulent inducement to defendant's entering the distinct contract of the banking agreement did not excuse defendant's nonpayment under the notes. 452 F.Supp.2d at 474. However, besides the unrelated nature of the agreement and the notes, the court also

--- B.R. ----                                                                    Page 8

--- B.R. ----, 2007 WL 1630493 (Bkrtcy.S.D.N.Y.)

**(Cite as: --- B.R. ----)**

found a separate reason for the defense to fail-
defendant's " fraud defense also fails because it is not
based on misrepresentation of existing fact" and its
allegations " are merely conclusory." *Id.* at 476.

### C. *Universal's Counterclaims*

Universal asserts that its counterclaims regarding
RMM's breaches of the APA both entitle it to
affirmative relief and act as affirmative defenses to
payment of the outstanding amount of the Note.
RMM contends that there is no factual dispute that
any of the counterclaims can bar summary judgment
on the note.

#### 1. *Additional Returns Liability Amount claim*

**\*8** Universal's first counterclaim concerns records
sold or distributed prior to the APA closing. If any
records were returned to Universal after the APA
closing, the APA directed Universal to accept the
returns, issue credits, and treat the credits as amounts
for which RMM would indemnify Universal. Prior to
entering the Stipulation, Universal estimated the
amount of credits for post-closing returns to be
$584,180. But based on information it learned after
entering the Stipulation, Universal determined that
the correct amount was not less than $794,020,[FN8] or
$210,000 more than the estimate stated in the
Stipulation. RMM contends that Universal has waited
too long to assert this claim. RMM notes that Section
11(d) of the APA states that Universal may offset
against the Note " at any time and from time to time
on or before the Maturity Date of the Note" any
amount due under the indemnity provisions of
Section 11(c) of the APA. RMM contends that there
is no factual dispute that this claim was not asserted
prior to the Note's maturity date as the APA
demands. RMM acknowledges that this claim should
be resolved as part of the " Audit Dispute" but that it
cannot be used to offset Universal's liability under the
Note.

RMM asserts that the Cochran Letter of October 31,
2003 (the Note's maturity date) did not mention any
other offsets aside from the Celia Cruz claim.
Universal disputes this and states that the letter
claims that other breaches " may have occurred."
(Defendant's 7056-1 Response at ¶ 12) and further
argues that the letter " expressly stated that it was not
intended as an exhaustive list of RMM's breaches,
and Universal reserved its rights to raise additional
breaches at a later date."

**[4]** The Court finds that the Additional Returns
Liability Amount claim does not raise a triable issue
of fact regarding a bona fide defense to the Note
claim. Contrary to Universal's interpretation of the
Cochran Letter, the letter did not operate to assert an
offset regarding additional returns before the Note's
maturity date. On page three of the letter, Universal's
counsel wrote that the defendant may suffer damages
" by reason of the various breaches by RMM of its
representations and warranties under the Asset
Purchase Agreement ... with respect to the Celia Cruz
Master." There is nothing to suggest that other
breaches may have occurred, particularly any that
involve the additional returns. Further, the APA
required Universal to offset an amount by the Note's
maturity date and to provide prompt, written
notification to RMM of any such reduction. A vague
reference on the Note's maturity date to possible
future offsets because of " other breaches" would not
meet Section 11(d)'s requirement.

#### 2. *Celia Cruz claim*

In the Celia Cruz claim, Universal claims that RMM
made misrepresentations in the APA when it agreed
to sell all of its assets to Universal. Universal claims
that RMM represented that it had a legal and binding
written agreement with Cruz, a performing artist, as
well as good title and ownership rights to her
recordings. After the APA's closing, Universal
alleges Cruz's estate notified it that it did not have
rights to Cruz's recordings. RMM argues that the
Cruz claims are lacking or premature, noting that
Cruz's estate has apparently not pursued any claim,
stating that " [t]o RMM's knowledge, other than the
exchange of a few pieces of correspondence between
Universal and the Estate of Celia Cruz in the summer
of 2003, the purported claim by [Cruz] has not been
pursued, and Universal continues to have and to
exercise the unfettered right to commercially exploit
the Celia Cruz master recordings which were
transferred by RMM to Universal pursuant to the
APA."

**\*9** RMM contends that under New York law "
contingent or speculative claims" such as the Celia
Cruz claim cannot be used to offset monies due under
a promissory note. Additionally, RMM argues that
this claim for indemnification is not actionable until
an actual loss has been established. RMM points out
that in the four plus years since Universal's purchase
of RMM's assets, Universal has not presented any

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----

--- B.R. ----, 2007 WL 1630493 (Bkrtcy.S.D.N.Y.)

**(Cite as: --- B.R. ----)**

Page 9

proof of actual damages incurred. Earl Little, Universal's Director of Financial Reporting, states that RMM's misrepresentation that its assets included an artist agreement with Celia Cruz has damaged Universal, although no estimate of damages is given. Also, Universal claims that this misrepresentation restricts its ability to sell the Cruz recordings.

The Celia Cruz claim was asserted by the Note's maturity date. In the Cochran Letter, Universal's attorney Cochran claimed that the estate of Celia Cruz, through letters and phone calls, had asserted that Universal did not own rights to the master recordings of Cruz and " may be liable to the Estate for damages in an unspecified amount." The letter further stated that despite Universal's intention to vigorously defend against the claims, it " could be liable to [Cruz's] Estate for damages that are in excess (perhaps well in excess) of the $442, 841.81 that (subject to [Universal's] legal, equitable and contractual rights) would otherwise be payable under the Note."

[5] The Court finds that this claim is too conclusory and speculative to entitle Universal to act as an offset or affirmative defense to payment on the Note. *See Hutton Const. Co. v. County of Rockland,* 52 F.3d 1191, 1193 (2d Cir.1995) (" under New York law, no liability [for indemnification] existed until it was fixed by a judgment or a fair settlement" ). The analysis is the same regardless of whether the APA can be classified as indemnification against loss or indemnification against liability. *See Pfizer, Inc. v. Stryker Corp.,* 348 F.Supp.2d 131, 150-51 (S.D.N.Y.2004) (" New York recognizes agreements that indemnify against loss and those that indemnify against liability. Under an agreement to indemnify against loss, a claim does not accrue until the indemnified party has made a payment, or actually suffered a loss. A right to indemnification against liability, however, arises when the party faces a fixed liability, even though it has not paid the claim and thus suffered no damage." ) (footnotes omitted). Universal has put forth no evidence that raises a triable issue of fact that shows it faces a fixed liability, let alone a definitive claim by Cruz's estate. Universal has not shown any damages, and its unsupported claim that the purported cloud on the title to Cruz's recording damages Universal by restricting its ability to sell the Cruz recording is simple conjecture.

*3. Malpractice claims*

The Malpractice claims contain two different malpractice claims. In the first, Universal alleges that it is entitled to indemnification for its legal expenses, $152,000, spent to enforce its rights to RMM's pre-petition legal malpractice claims (the " Paterno Malpractice Claim" ). Universal claims that it learned, after the APA closed, that RMM had commenced a civil action against former attorneys for pre-petition legal malpractice. In that malpractice action, RMM took the position that it owned the pre-petition legal malpractice claims and disputed Universal's ownership. Universal then incurred " substantial" legal expenses to dispute RMM's standing to bring the claims.

*10 In the second, Universal alleges it is entitled to the settlement of a separate RMM pre-petition legal malpractice claim (the " Castellanos Malpractice Claim" ). RMM and the Castellanos Law Firm had agreed to settle the malpractice claim for, among other considerations, a reduction of Castellanos' legal bills by $38,000. Universal argues that this reduction is an asset that it owned under the APA.

Regarding both Malpractice claims, RMM contends that Universal has waited too long-past the maturity date of the Note-to assert the indemnification claims as offsets to or defenses against the Note. RMM points to Section 11(d) of the APA, that states that Universal may offset against the Note " at any time and from time to time on or before the Maturity Date of the Note" any amount due under the indemnity provisions of Section 11(c) of the APA. RMM contends that there is no factual dispute that this claim was not asserted prior to the Note's maturity date as the APA demands.

[6] Universal contends that Section 11(d) does not limit the time period for it to exercise its offset rights. Universal claims that the section's language is permissive (" Universal *may* offset any amount owed to it by RMM prior to maturity" ) not mandatory (" Universal *must* offset any amount owed to it by RMM prior to maturity" ). This strained interpretation fails. The clear and unambiguous meaning of such language is that Universal's choice to offset was discretionary but that, if it chose to offset against the Note, it must do so prior to the Note's maturity. The language of " at any time and from time to time on or before the maturity Date of the Note" is a clear and unambiguous express limitation on when Universal can choose to offset. Otherwise,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                          Page 10

--- B.R. ----, 2007 WL 1630493 (Bkrtcy.S.D.N.Y.)

(Cite as: --- B.R. ----)

the parties would have simply stated " Universal may
at any time...." Furthermore, such a modification of
the right to offset operates to limit Universal's
defenses to the summary judgment motion on the
Note. *See, e.g., Perlstein v. Kullberg Amato
Picacone,* 158 A.D.2d 251, 550 N.Y.S.2d 883, 884
(1st Dep't 1990) (defendants' waiver of offsets,
defenses or counterclaims barred them from asserting
failure of consideration as a defense). The *Perlstein*
case further stated that " [w]hile defendants' claim
could perhaps serve as the basis of a breach of
contract action, the waivers contained in the
promissory note bar defendants from asserting the
alleged failure of consideration to avoid summary
judgment for failure to make payments under the
promissory note." *Id. See also PGA Marketing Ltd.
v. Windsor Plumbing Supply, Inc.,* 124 A.D.2d 576,
507 N.Y.S.2d 721, 722 (2d Dep't 1986) (" the
promissory notes contained explicit waivers of the
right to assert any defense, offset or counterclaim
against the notes" and although " the waiver would
not preclude a defense of fraud, the evidence in the
record, taken most favorably to the defendant, does
not support a claim of active intentional conduct
required to support a fraud defense and is too vague
to withstand a motion for summary judgment" );
*Tradition North America, Inc. v. Sweeney,* 133
A.D.2d 53, 518 N.Y.S.2d 982, 985 (1st Dep't.1987)
(holding that defendant was " similarly barred by the
terms of the notes from asserting counterclaims and
defenses" as each note provided that " [a]ll amounts
payable in respect of this note shall be paid without
counterclaim, setoff, deduction, defense, abatement,
suspension or deferment.... Under New York law
Sweeney is barred by the express terms of the notes
from asserting these counterclaims." ); *Aaron v.
Mattikow,* 146 F.Supp.2d 263, 266 (E.D.N.Y.2001)
(" To be sure, such waiver clauses do serve to
invalidate certain defenses in an action to enforce a
promissory note" ).

*11 Thus, while a claim for indemnity for the
Malpractice claims can survive as a counterclaim in
this action, to be used as an offset and thus as a bona
fide defense to the Note, it must have been made by
October 2003, which it was not.

### 4. *BMG Direct claim*

A license agreement between BMG Direct and RMM
became an asset of Universal through the APA.
Universal alleges that, as part of the APA, RMM
represented that there was no unrecouped balance due

on the license agreement. After the APA's closing,
Universal alleges that it discovered that the BMG
Direct agreement was subject to an unrecouped
balance of approximately $256,923.71. In their
Stipulation, the parties agreed " to resolve the ...
BMG Direct claim." (Stipulation, ¶ 9). RMM agreed
that that Universal would be entitled to offset up to
$80,000 plus interest against the Note with respect to
BMG Direct claims so that Universal " could recover
that amount equal to the aggregate amount of
royalties that would have been payable to [Universal]
for the semiannual accounting periods ending
December 31, 2001, June 30, 2002, December 31,
2002 and June 30, 2003 if there had been no
unrecouped balance under the BMG Direct
Agreement." (*Id.,* ¶ 9(b)). After entering into the
Stipulation, Universal argues that the final accounting
statement BMG Direct provided to Universal showed
that " BMG Direct actually accrued $233,128.28 to
Universal's royalty account" instead of the estimated
$80,000 in royalties. If there had been no unrecouped
balance, a total of $233,128.28 would have been paid
to Universal. (Cochran Decl., ¶ 27).[FN9] Thus,
Universal alleges that its damages from RMM's
breach equal at least $147,637.86, plus interest-
$233,128.28 minus the $80,000 plus interest that
Universal offset against the Note's balance on
October 31, 2003 pursuant to the Stipulation.
(Answer and Counterclaim, at 59 ¶¶ 9-11.).
Universal argues that it did not waive its rights under
the APA or the Stipulation to proceed against RMM
for the additional royalties.

[7] RMM disputes that argument and claims that the
BMG Direct claim was settled in the Stipulation. The
Court agrees. In the Stipulation, Universal bargained
for and received an offset of $80,000 plus accrued
interest for the then unresolved BMG Direct claim.
The offset was according to the Stipulation " in lieu
of any further right to offset against the Note."
Further, as stated above, the parties clearly expressed
a desire to settle the BMG Direct claim in the
Stipulation. Such unambiguous language can only be
read to mean that Universal intended to settle the
BMG Direct claim with finality, and without the
ability to assert further offsets against the Note. The
Court should not remake the parties' agreement by
allowing Universal, despite the Stipulation's clear
language, to assert a further offset.

### D. *Rule 54(b) Motion*

RMM argues that final judgment on the promissory

--- B.R. ----                                                                         Page 11

--- B.R. ----, 2007 WL 1630493 (Bkrtcy.S.D.N.Y.)

(Cite as: --- B.R. ----)

note claim should be entered immediately pursuant to Rule 54(b), made applicable to this proceeding by Bankruptcy Rule 7054. Rule 54(b) provides in pertinent part

*12 *Judgment upon Multiple Claims or Involving Multiple Parties.* When more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

RMM argues that there is no just reason for delay, that Universal should not be permitted to retain money belonging to RMM, and that the Promissory Note claim is " wholly separate from the other claims and counterclaims in this proceeding." In response, Universal cites the Second Circuit's disfavor of Rule 54(b) and the " historic policy against piecemeal appeals." *See Hogan v. Consol. Rail Corp.,* 961 F.2d 1021, 1025 (2d Cir.1992). Universal argues that a proper factor to consider is the " relatedness of the pending and adjudicated claims." Furthermore, Universal states that it is more likely to be harmed by a grant of certification than RMM would be if the Court denied certification, stating that its counterclaims against RMM may result in damages greater than the balance of the Note, forcing Universal to " attempt collection from a bankrupt entity with no apparent assets and no continuing business."

" Rule 54(b) permits certification of a final judgment where (1) there are multiple claims or parties, (2) at least one of the claims or the rights and liabilities of at least one party has been finally determined, and (3) ' there is no just reason for delay.' " *Grand River Enter. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 165 (2d Cir.2005) (citation omitted). " Respect for the ' historic federal policy against piecemeal appeals' requires that such a certification not be granted routinely." *L.B. Foster Co. v. America Piles, Inc.,* 138 F.3d 81, 86 (2d Cir.1998) (citation omitted). In a leading Rule 54(b) case, *Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), the Supreme Court stated that " a district court must take into account judicial administrative interests as well as the equities involved" in determining whether entry of such a judgment is appropriate.

[8] Administrative interests include " whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright,* 446 U.S. at 8, 100 S.Ct. 1460. The mere presence of counterclaims does " not render a 54(b) certification inappropriate." *Id.* at 9, 100 S.Ct. 1460. *See also Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1091 (2d Cir.1992) (" Only those claims ' inherently inseparable' from or ' inextricably interrelated' to each other are inappropriate for rule 54(b) certification." ).

In the similar case of *EMI Music Marketing v. Avatar Records, Inc.,* 317 F.Supp.2d 412, 424 (S.D.N.Y.2004), the court balanced the equities of Rule 54(b), noting that the plaintiff, EMI, who prevailed on its account stated claim, " has already waited several years to recover most of the amount that [defendant] owes it, and EMI should not have to experience what may be substantial further delay until [defendant]'s counterclaims are finally resolved for it to have legal assurance that it can collect from Defendants the amount to which it is entitled."

*13 The Court takes note of Universal's concern about being forced to " attempt collection from a bankrupt entity with no apparent assets." Should Universal prevail on its counterclaims, RMM would not likely be able to satisfy a judgment against it. The last Monthly Operating Report filed by the Debtor shows it had $41,186 in cash as of May 31, 2004.[FN10] Furthermore, RMM did not challenge Universal's contentions regarding RMM's " lack of apparent assets" aside from the Note, that RMM no longer conducts any business, and that RMM has no potential sources of revenue.

[9] The Court chooses to follow *EMI Music Marketing's* holding that equitably addresses the issues presented here. That court held that given the historic policy considerations against piecemeal appeals, " and in view of the remaining disputes still to be resolved and the prospects that EMI's judgment may be reduced by offsets should Avatar prevail on its surviving counterclaims, the Court is persuaded that the most prudent course is to direct the entry of a final judgment on EMI's" claim pursuant to Rule 54(b), but to stay enforcement of that judgment pursuant to Fed.R.Civ.P. 62(h) until resolution of the " counterclaims." [FN11] 317 F.Supp.2d at 424-25.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----, 2007 WL 1630493 (Bkrtcy.S.D.N.Y.)

**(Cite as: --- B.R. ----)**

## CONCLUSION

Based upon the aforementioned, RMM's motion for summary judgment on the promissory note claim is granted. RMM's motion for entry of a final judgment under <u>Rule 54(b)</u> is granted but enforcement of that judgment is stayed pending resolution of Universal's counterclaims.

RMM should submit an order consistent with this opinion.

> FN1. The Lehman Affidavit is deemed to be the Complaint, as ordered by this Court on March 9, 2006, 00-15350(AJG), Doc. # 290. Before commencing the Adversary Proceeding, the Plaintiff sought relief via a Notice Motion in its Chapter 11 bankruptcy proceeding. Universal objected that because monetary relief was sought, the motion should have been brought as an adversary proceeding. The Court agreed and converted the motion to an adversary proceeding.

> FN2. Section 11(c)(i) states in part ... Seller [RMM] agrees to fully indemnify and hold harmless Buyer [Universal] ... against and in respect of any all liabilities, losses, damages, deficiencies, costs and expenses (including the reasonable fees and expenses of investigation and counsel) (collectively, " Losses" ) arising out of or resulting from (A) any misrepresentations or any breach of the representations, warranties, covenants and agreements made or deemed made by Seller in or in connection with this Agreement, (B) any breach of any covenant or agreement made by Seller in this Agreement or in any certificate furnished to Buyer in accordance with this Agreement or in any certificate furnished to Buyer in accordance with this Agreement or in connection with the transactions contemplated by this Agreement, (C) any Excluded Liabilities, and (D) any actions, suits, proceedings, investigations, claims, demands, assessments and judgments incidental to the foregoing or the enforcement of such indemnification.

> FN3. The Note provides at paragraphs 3-4

that
This is the Note referred to in Section 3(a)(iii) of, and is subject in all respects to the terms of, that certain Asset Purchase Agreement, dated as of April 30, 2001, between [Universal] and RMM ... the terms and conditions of which are incorporated herein by reference ...
This Note and the amounts due to RMM hereunder are subject in all respects to [Universal's] right of offset pursuant to the terms of Section 11(d) of the [APA].

> FN4. It is undisputed that the Stipulation operates to extend the maturity date of the Note to October 31, 2003. (*See* Defendant's Response to Plaintiff's Statement of Material Facts in Support of its Motion for Summary Judgment on the Promissory Note Claim, Rule 7056-1 statement, (" Defendant's 7056-1 Response" ) ¶ 13).

> FN5. RMM's complaint also seeks resolution of a dispute related to the audit of Universal's books and records done in accordance with the APA. In its third claim, RMM seeks an order compelling Universal to produce documents and appear for a deposition in connection with the audit dispute.

> FN6. <u>Section 3213</u> of the New York State Civil Practice Law and Rules (" CPLR" ), allows for motions for summary judgment in lieu of a complaint. *See Meding v. Receptopharm, Inc.,* 462 F.Supp.2d 348-49 (E.D.N.Y.2006). The section " is peculiar to New York State practice and aims to allow expedited resolution of actions based on promissory notes, judgments, or accounts stated." *Id.* In this proceeding, " courts are reluctant to allow counterclaims, and often require that they be brought in a new, separate lawsuit so as not to delay the resolution of the <u>CPLR § 3213</u> motion." *Id. at 349* (citing <u>CPLR 3213</u>, Official Commentary C3213:17 (McKinney's 2004)).

> FN7. The APA and the Note refer to each other, were negotiated simultaneously, and language in Note indicates its connection to the APA. Section 3 of the APA states that

--- B.R. ----, 2007 WL 1630493 (Bkrtcy.S.D.N.Y.)

(Cite as: --- B.R. ----)

the Note is part of the " purchase price" of the APA. (APA, § 3(a)(iv)). The Note expressly incorporated all terms of the APA at paragraph 3, stating " [t]his is the Note referred to in Section 3(a)[ (iv) ] of, and subject in all respects to the terms of, that certain Asset Purchase Agreement, dated as of April 30, 2001, between [Universal] and RMM ... the terms and conditions of which are incorporated herein by reference." *Compare Camofi Master,* 452 F.Supp.2d at 475 (The court found banking agreement and Notes to be separate agreements because " [r]ather than being executed simultaneously, the Notes and Banking Agreement were completed at different times, and signed by different people and parties" and " [n]either the Notes nor the Banking Agreement incorporates the terms of the other by reference" ).

FN8. In three different pleadings or declarations, Universal identifies three different amounts. The $794,020 amount is from Defendant's Response Memo. at 6, dated June 5, 2006. Universal's Answer of January 18, 2006, listed the Returns Liability Amount as $1,567,608. (Answer at 61, ¶ 18); Earl Little, Universal's Director of Financial Reporting, said that " thus far" (presumably as of June 5, 2006) $668,851 had been identified and Universal was continuing to review. (*See* Defendant's Response Memo., Little Decl., Appendix # 5).

FN9. The Court notes that it is unclear from where the $233,128 figure arises. It is not a figure easily drawn from Cochran Decl., Ex. I, which purports to state the final accounting statement.

FN10. *See* Monthly Operating Report for May 2004, 00-15350(AJG), Doc. # 252.

FN11. Rule 62(h), made applicable to this proceeding by Bankruptcy Rule 7062, states [w]hen a court has ordered a final judgment under the conditions stated in Rule 54(b), the court may stay enforcement of that judgment until the entering of a subsequent judgment or judgments and may prescribe such conditions as are necessary to secure

the benefit thereof to the party in whose favor the judgment is entered.

Bkrtcy.S.D.N.Y.,2007.

In re RMM Records & Video Corp.

--- B.R. ----, 2007 WL 1630493 (Bkrtcy.S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.