KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California  90067
(310) 407-4000 (telephone)
(310) 407-9090 (facsimile)
David M. Stern (admitted *pro hac vice*)
Kenneth N. Klee (KK-5910)
Daniel J. Bussel (admitted *pro hac vice*)

-and-

VENABLE LLP
The Chrysler Building
405 Lexington Avenue, 56th Floor
New York, New York  10174
(212) 983-3850 (telephone)
(212) 307-5598 (facsimile)
Edward A. Smith (ES-2461)

Attorneys for Plaintiff/Appellant
Enron Creditors Recovery Corp. f/k/a Enron Corp.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------X

In re:

ENRON CREDITORS RECOVERY CORP., *et al.*,

Reorganized Debtors.

----------------------------------------------------X

ENRON CREDITORS RECOVERY CORP.

Plaintiff,

v.

INTERNATIONAL FINANCE CORP., *et al.*,

Defendants.

----------------------------------------------------X

ENRON CREDITORS RECOVERY CORP.
Appellant,

v.

INTERNATIONAL FINANCE CORP., *et al.*,
Appellees.

----------------------------------------------------X

Case No. 01-16034 (AJG)

Chapter 11

(Jointly Administered)

Adversary No.:  03-93370 (AJG)

District Court

Case No. 07-06597 (AKH)

**APPELLANT'S OPENING BRIEF**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF JURISDICTION ...................................................................... 1

III.    ISSUE PRESENTED AND APPLICABLE STANDARD OF REVIEW ............. 1

IV.     STATEMENT OF THE CASE .............................................................................. 2

V.      SUMMARY OF ARGUMENT .............................................................................. 4

VI.     UNDER THE BANKRUPTCY CODE, AVOIDANCE RELATES TO
        TRANSFERS NOT TRANSFEREES .................................................................... 6

VII.    THE BANKRUPTCY CODE DOES NOT REQUIRE THAT A
        TRUSTEE SUE THE INITIAL TRANSFEREE IN ORDER TO
        RECOVER A FRAUDULENT TRANSFER FROM A SUBSEQUENT
        TRANSFEREE ....................................................................................................... 8

        A.      The plain language of 11 U.S.C. § 550(a) permits the trustee to sue
                subsequent transferees without first suing the initial transferee ................ 8

        B.      There is no logical or legal inconsistency in avoiding a transfer, as
                required by 11 U.S.C. § 550(a), without suing the initial transferee ........ 11

        C.      The statutes of limitations provisions in Bankruptcy Code §§
                546(a) and 550(f) do not dictate joinder of the initial transferee in
                an action against a subsequent transferee ................................................. 15

        D.      Other provisions of the Bankruptcy Code make clear Enron could
                sue subsequent transferees to avoid and recover fraudulent
                transfers without also suing the initial transferee ..................................... 16

VIII.   LONG-STANDING POLICIES ARE ADVANCED BY PERMITTING A
        TRUSTEE TO CHOOSE TO SUE SUBSEQUENT TRANSFEREES
        WITHOUT FIRST SUING THE INITIAL TRANSFEREE ............................... 19

IX.     CONCLUSION .................................................................................................... 21

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*In re Acadiana Electrical Serv., Inc.,*
    66 B.R. 164 (Bankr. W.D. La. 1986) ............................................................ 8, 9, 12, 13

*In re Advanced Telecom. Network, Inc.,*
    321 B.R. 308 (Bankr. M.D. Fla. 2005) .................................................................. 9, 15

*Argentinian Recovery Co. v. Bd. of Dirs. of Multicanal S.A.,*
    331 B.R. 537 (S.D.N.Y. 2005).......................................................................................... 2

*In re Arkansas Catfish Growers, LLC,*
    2007 WL 215815 (E.D. Ark. Jan. 25, 2007)...................................................... 9, 18, 19

*BFP v. Resolution Trust Corp.,*
    511 U.S. 531 (1994)......................................................................................................... 19

*Cent. Va. Community College v. Katz,*
    546 U.S. 356 (2006)........................................................................................................... 7

*In re Crafts Plus+ Inc.,*
    220 B.R. 331 (Bankr. W.D. Tex. 1998)................................................................... 9, 12

*Decker v. Voisenat (In re Serrato),*
    233 B.R. 833 (Bankr. N.D. Cal. 1999) ...................................................................... 15

*Enron Corp. v. International Finance Corp. (In re Enron Corp.),*
    343 B.R. 75 (Bankr. S.D.N.Y. 2006).............................................................. *passim*

*In re Enron Creditors Recovery Corp.,*
    2007 WL 2962336 (S.D.N.Y. Oct. 10, 2007) ............................................................ 1

*In re Flashcom, Inc.,*
    361 B.R. 519 (Bankr. C.D. Cal. 2007)............................................................... 14, 17

*In re Furs by Albert & Marc Kaufman, Inc.,*
    2006 WL 3735621 (Bankr. S.D.N.Y. Dec. 14, 2006)................................................ 9

*Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.),*
    230 B.R. 101 (Bankr. N.D. Ohio 1998).......................................................... 9, 10, 11

*H&C P'ship v. Virginia Serv. Merchandisers,*
    164 B.R. 527 (E.D. Va. 1994)................................................................................... 7, 8

*Hartford Underwriters Ins. Co. v. Union Planters Bank*,
    530 U.S. 1 (2000) ........................................................................... 9

*IBT Int'l v. Northern (In re Int'l Admin. Svcs., Inc.)*,
    408 F.3d 689 (11th Cir. 2005) ............................................. 9, 11, 14, 20, 21

*Kendall v. Sorani (In re Richmond Produce Co.)*,
    195 B.R. 455 (N.D. Cal. 1996) ......................................................... 9, 11, 14

*Maxwell v. Mich. Fid. Acceptance Corp. (In re Maestas)*,
    354 B.R. 844 (Bankr. E.D. Wis. 2006) ......................................................... 7

*In re National Audit Defense Network*,
    332 B.R. 896 (Bankr. D. Nev. 2005) ....................................... 9, 12, 13, 15

*Official Comm. of Unsecured Creditors v. Foss (In re Felt Mfg. Co.)*,
    371 B.R. 589 (Bankr. D.N.H. 2007) ............................................................. 9

*Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC)*,
    340 B.R. 829 (Bankr. E.D. Mich. 2006) ..................................... 9, 11, 17

*Sharp International Corp. v. State Street Bank and Trust Co.*
    *(In re Sharp International Corp. & Sharp Sales Corp.)*,
    403 F.3d 43 (2d Cir. 2005) ............................................................................. 2

*In re Slack-Horner Foundries Co.*,
    971 F.2d 577 (10th Cir. 1992) ....................................................... 9, 10, 11

*United States v. Stewart*,
    311 U.S. 60 (1940) ........................................................................................ 17

*United Savings Association of Texas v. Timbers of Inwood Forest*
    *Associates, Ltd*,
    484 U.S. 365 (1988) ............................................................................... 10, 16

*Universal Church v. Geltzer*,
    463 F.3d 218 (2d Cir. 2006), *cert. denied*, 127 S. Ct. 961,
    166 L. Ed. 2d 706 (2007) ............................................................................. 20

## STATE CASES

*Leifer v. Murphy*,
    149 Misc. 455, 267 N.Y.S. 701 (1933) ................................................... 19

*Locafrance U.S. Corp. v. Interstate Distrib. Svcs., Inc.*,
    451 N.E.2d 1222 (Ohio 1983) ................................................................... 19

*Running v. Widdes*,
    190 N.W.2d 169 (Wis. 1971) .................................................................... 19

## FOREIGN CASES

*Twyne's Case*,
    3 Coke Rep. 80b, 76 Eng. Rep. 809 (K. B. 1601) .................................... 19

## FEDERAL STATUTES

11 U.S.C. § 502(d) ......................................................................................... 10

11 U.S.C. § 544 ................................................................................................ 5

11 U.S.C. § 545 ................................................................................................ 5

11 U.S.C. § 546(a) ............................................................................. 10, 15, 16

11 U.S.C. § 547 .................................................................... 5, 6, 17, 18, 19

11 U.S.C. § 548 ................................................................. 5, 6, 12, 13, 21

11 U.S.C. § 549 ................................................................................................ 5

11 U.S.C. § 550 ...................................................................................... *passim*

11 U.S.C. § 553(b) ........................................................................................... 5

11 U.S.C. § 724(a) ........................................................................................... 5

11 U.S.C. § 1107(a) ......................................................................................... 4

11 U.S.C. § 1123(b)(3)(B) ............................................................................... 4

28 U.S.C. §§ 157(b)(2) .................................................................................... 1

28 U.S.C. § 158(a)(1) ...................................................................................... 1

28 U.S.C. § 1334 .............................................................................................. 1

## FEDERAL RULES

Fed. R. App. P. 30(a) .............................................................................. 1

Fed. R. Bankr. P. 7012 ............................................................................ 2

Fed. R. Bankr. P. 8009(b) ....................................................................... 1

Fed. R. Civ. P. 12(b)(6).......................................................................... 2

Fed. R. Civ. P. 83(b) ............................................................................... 1

## MISCELLANEOUS

5 COLLIER ON BANKRUPTCY ¶ 547.LH[5] (15th Edition Rev. 2007).............................. 17

5 COLLIER ON BANKRUPTCY ¶ 548.01[1] (15th Edition Rev. 2007) .................................. 6

5 COLLIER ON BANKRUPTCY ¶ 550.02[4] (15th Edition Rev. 2007) ................................. 4

5 COLLIER ON BANKRUPTCY ¶ 550.07 (15th Edition Rev. 2007)...................................... 7

H.R. Rep. No. 595, 95th Cong., 1st Sess. 375 (1977),
    *reprinted in* 1978 U.S.C.C.A.N. 5963 ......................................................... 7

S. Rep. No. 989, 95th Cong., 2d Sess. 90 (1978),
    *reprinted in* 1978 U.S.C.C.A.N. 5787 ......................................................... 7

# I.

## INTRODUCTION

Enron Creditors Recovery Corp., formerly known as Enron Corp. ("Enron" or "Appellant"), appeals from the Bankruptcy Court order and judgments (collectively, the "Judgment") granting the motions to dismiss of Caisse de Dépôt et placement du Québec ("Caisse") and National Australia Bank ("NAB," and with Caisse, "Appellees") and dismissing Enron's complaint against Appellees with prejudice. App. at Tabs 10, 13 & 14.[1] This appeal does not involve the dismissal of Enron's claims against any of the other parties it sued in the Bankruptcy Court.

# II.

## STATEMENT OF JURISDICTION

The Judgment from which Enron appeals is a final judgment of a "core" matter entered by the United States Bankruptcy Court for the Southern District of New York pursuant to 28 U.S.C. §§ 157(b)(2)(A), (H) & (O) and 1334. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1), as it determined in connection with Appellees' motion to dismiss. *In re Enron Creditors Recovery Corp.*, 2007 WL 2962336 (S.D.N.Y. Oct. 10, 2007).

# III.

## ISSUE PRESENTED AND APPLICABLE STANDARD OF REVIEW

This appeal requires interpretation of Bankruptcy Code section 550(a),[2] which provides:

---

[1] Citations to the Opinion below are to *Enron Corp. v. International Finance Corp. (In re Enron Corp.)*, 343 B.R. 75 (Bankr. S.D.N.Y. 2006). Citations to other parts of the record on appeal, to legislative histories and to cases not reported in the federal or regional reporters are to the Appendix filed herewith pursuant to Fed. R. App. P. 30(a) and Fed. R. Bankr. P. 8009(b), applicable per Fed. R. Civ. P. 83(b), and cited as "App. at Tab __."

[2] This brief refers at times to Title 11 of the United States Code as the Bankruptcy Code.

1

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

The Bankruptcy Court interpreted section 550(a) as if it read:

> Except as otherwise provided in this section, to the extent that a transfer is avoided *against the initial transferee* under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a) (with additional language shown in *red*).

The sole question here presented is whether the Bankruptcy Court erred in interpreting section 550(a) as if it contained the highlighted language above. As the Bankruptcy Court made its determination in connection with a motion to dismiss under FED. R. CIV. P. 12(b)(6), applicable in bankruptcy adversary proceedings in accordance with FED. R. BANKR. P. 7012, the question is one of law subject to *de novo* review by this Court. *Sharp International Corp. v. State Street Bank and Trust Co. (In re Sharp International Corp. & Sharp Sales Corp.)*, 403 F.3d 43, 49 (2d Cir. 2005); *Argentinian Recovery Co. v. Bd. of Dirs. of Multicanal S.A.,* 331 B.R. 537, 543 (S.D.N.Y. 2005).

## IV.

## STATEMENT OF THE CASE

On December 2, 2001, Enron (and thereafter various affiliates) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. On July 15, 2004, the

Bankruptcy Court entered an Order confirming the Debtors' Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan") in the underlying Chapter 11 cases. The Plan became effective on November 17, 2004. 343 B.R. at 76.

Before plan confirmation, Enron commenced this adversary proceeding by filing a complaint (the "Complaint"). *Id.*; App. at Tab 1. The Complaint sought to avoid and recover certain transfers made (via special purpose entities) to and for the benefit of Caisse and NAB, as well as fourteen other unaffiliated financial institutions, as fraudulent transfers pursuant to sections 548 and 550 of the Bankruptcy Code. *Id.* ¶¶ 5-25. The underlying transactions date back to approximately December 1999, at which time Enron monetized a portfolio of loan facilities owned by Enron North America Corp. ("ENA") and certain other Enron affiliates in a transaction described as a "collateralized loan obligation" ("CLO"). *Id.* ¶ 26. In connection with the CLO transaction, several entities were formed including a limited partnership, ENA CLO I Holding Company I L.P. ("CLO Holding"), and a trust, ENA CLO I Trust (the "CLO Trust"). *Id.* ¶¶ 26-27. As part of the CLO transaction, the contents of the portfolio of loan facilities were transferred to CLO Holding. *Id.* ¶ 28. The CLO Trust thereupon issued several classes of notes with maturities in 2014 (the "CLO Notes"). *Id.* ¶ 26. Security for the Notes was provided by CLO Trust's limited partnership interest in CLO Holding, with recourse limited to the funds and assets of the CLO Trust. *Id.* ¶ 30. Thus, the source of funds from which the CLO Trust could make payments to holders of the CLO Notes was CLO Holding. *Id.* ¶ 29. Repayment of the CLO Notes was dependent upon payment to CLO Holding by the obligors of the collateralized loans included in the portfolio of loan facilities. *Id.*

In 2000, the value of CLO Holding's portfolio of loan facilities declined, and in September 2000, Enron provided credit support for the Notes by granting a "put option" to CLO Holding. *Id.* ¶ 32. Pursuant to the put option, Enron was obligated to purchase from CLO Holding up to $113 million in defaulted portfolio loans. *Id.* Enron did not

receive a premium payment or monetary consideration in return for its granting of the put option. *Id.* In December 2000 and, again, in June 2001, CLO Holding exercised its rights pursuant to the put option. *Id.* ¶¶ 47, 49. CLO Holding transferred the funds received as a result of exercising its rights under the put option (the "Put Transfers") to the CLO Trust. *Id.* ¶¶ 48, 50. In turn, the CLO Trust transferred the Put Transfers to certain holders of CLO Notes, including Caisse and NAB. *Id.* Of note to the decision below, *see* 343 B.R. at 80, Enron did not sue CLO Holding (the initial transferee of the Put Transfers), which had been dissolved. *Id.*

Seizing upon the failure of Enron to sue its former (now dissolved) affiliated special purpose entity, Caisse and NAB, the subsequent (*i.e.*, mediate) transferees, moved to dismiss the Complaint. App. at Tabs 2 & 5. The Bankruptcy Court, interpreting Bankruptcy Code section 550(a) to require that Enron sue the initial transferee (CLO Holding) at or before the time it could sue subsequent transferees (like Caisse and NAB), granted Appellees' motions to dismiss. 343 B.R. at 84. After all other claims and defendants were dismissed, this appeal ensued. App. at Tab 18.

## V.

## SUMMARY OF ARGUMENT

This case involves a circumstance in which the language, the structure and the policies of the Bankruptcy Code all work together to require reversal.

***First***, by its terms Bankruptcy Code section 550(a) "permit[s] the trustee to recover from the initial transferee 'or' the entity for whose benefit the transfer was made 'or' subsequent transferees. As used in the Bankruptcy Code, 'or' is not exclusive." 5 COLLIER ON BANKRUPTCY ¶ 550.02[4] (15th Edition Rev. 2007). Nothing in section 550 requires a trustee or other bankruptcy estate representative[3] to sue the initial transferee for

---

[3]    Bankruptcy Code section 1107(a) (11 U.S.C. § 1107(a)) grants the same powers to a debtor-in-possession as to a trustee with exceptions not here relevant. Bankruptcy Code section 1123(b)(3)(B) (*id.* § 1123(b)(3)(B)) authorizes the retention and
(continued)

4

avoidance in order to pursue a beneficiary or subsequent transferee. Simply put, section 550(a) only requires that, in order to recover a transfer, the trustee avoid the transfer and demonstrate that the defendant falls into one of the categories of permissible transferee defendants. *See* Part VII.A, *infra.*

*Second*, the structure of the Bankruptcy Code dictates both how and why the preceding simple formula works. On the question of what transfers or obligations may be avoided, section 550(a) does nothing other than cross-reference the substantive Bankruptcy Code provisions governing avoidance. Focusing on the pertinent provision of the Bankruptcy Code at issue here, section 548 of the Bankruptcy Code details the terms and conditions under which *transfers* may be avoided, without addressing at all from *whom* recovery may be obtained. 11 U.S.C. § 548. Section 550(a) addresses the "from whom" question and permits recovery against the initial transferee, parties for whose benefit the transfer was made, or subsequent parties in the transfer chain. Both the statute and due process make clear that both the elements of avoidance and recovery must be proven as to any party against whom the trustee seeks to impose such liability. *See* Parts VI & VII.B-VII.D, *infra.* Nothing in either the substantive Bankruptcy Code provisions governing avoidance (11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), or 724(a)), or the provision governing who may be liable for an avoided transfer (*id.* § 550(a)), in any way requires that the trustee sue the initial transferee before seeking avoidance against and then recovery from subsequent or beneficial transferees.

*Third*, it makes no sense to require that the trustee sue an initial transferee against whom he cannot recover. This case is a paradigm example of a circumstance in which

---

enforcement by the debtor, by the trustee, or by a representative of the estate of any claim or interest belonging to the debtor or the estate. Enron commenced the instant action as a debtor-in-possession and is prosecuting it in its capacity as estate representative. For ease of reference, we sometimes refer simply to the avoidance and recovery power as a trustee's power.

suing an initial transferee would be at a minimum pointless and arguably impossible. Permitting recovery here validates Congress's policy choice to provide trustees with the option of suing beneficiaries of transfers and subsequent transferees instead as long as the underlying transfer is avoided, and is consistent with long-standing Anglo-American jurisprudence of liberally construing statutes addressing fraudulent conveyances. *See* Part VIII, *infra.*

## VI.

## UNDER THE BANKRUPTCY CODE, AVOIDANCE RELATES TO TRANSFERS NOT TRANSFEREES

Although the present case turns on an interpretation of Bankruptcy Code section 550(a), it is appropriate to examine first section 548, which is the section of the Bankruptcy Code that empowers a trustee to avoid fraudulent transfers. 5 COLLIER ON BANKRUPTCY ¶ 548.01[1] (15th Edition Rev. 2007). As such, we start with the second point outlined in the Summary of Argument section, Part V, above, *i.e.*, the separation that the Bankruptcy Code makes between avoidance and recovery. This is logical because, as concerns this case, if section 548 did not empower a trustee to avoid a transfer, section 550 – describing from whom a transfer or its value may be recovered – would never be in play.

A notable feature of section 548(a) – and it shares this quality with, *inter alia,* section 547, 11 U.S.C. § 547 (relating to preferences), which is also referenced in section 550(a) – is that by its terms this provision focuses on property, specifically *transfers* of property.[4] As the Supreme Court recently observed in upholding a trustee's ability to sue

---

[4]    Although since amended (in ways not here material), the version of 11 U.S.C. § 548(a) here applicable provided that "The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily … [the section then goes on to state the elements of fraudulent transfer avoidance]."

a state agency under the Bankruptcy Code's preference statute (section 547), which is similarly directed:

> The § 547 determination, standing alone, operates as a mere declaration of avoidance. That declaration may be all that the trustee wants; for example, if the State has a claim against the bankrupt estate, the avoidance determination operates to bar that claim until the preference is turned over. See § 502(d). In some cases, though, the trustee, in order to marshal the entirety of the debtor's estate, will need to recover the subject of the transfer pursuant to § 550(a). A court order mandating turnover of the property, although ancillary to and in furtherance of the court's *in rem* jurisdiction, might itself involve *in personam* process.

*Cent. Va. Community College v. Katz*, 546 U.S. 356, 371-72 (2006).

To be sure, the trustee commonly sues the initial transferee of a preferential or fraudulent transfer, often no one else, and seeks both avoidance of the transfer and recovery from the initial transferee in one action. *See* 5 COLLIER ON BANKRUPTCY ¶ 550.07 (15th Edition Rev. 2007); *Maxwell v. Mich. Fid. Acceptance Corp. (In re Maestas)*, 354 B.R. 844, 846-47 (Bankr. E.D. Wis. 2006) ("[W]hile it is permissible to bring an avoidance action and a recovery action in one suit, it is not mandatory to do so."). However, nothing in the language of section 548 makes the *initial* transferee a necessary party in an action to avoid or recover a transfer. This is so because, as numerous cases have held, "avoidability is an attribute of the transfer rather than of the creditor." *H&C P'ship v. Virginia Serv. Merchandisers*, 164 B.R. 527, 530 (E.D. Va. 1994) (collecting authorities); H.R. Rep. No. 595, 95th Cong., 1st Sess. 375 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6331; S. Rep. No. 989, 95th Cong., 2d Sess. 90 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5876 (section 550 "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee.").[5] App. at Tabs 21 & 22. And, as the Supreme Court held in *Katz*, quoted

---

[5] This aphorism is oft-repeated in the multiple cases that deal with the precise question posed here, notably including the Opinion below. 343 B.R. at 81-82.

above, nothing requires that an action to avoid a transfer (whether as a preference or fraudulent conveyance) be coupled with an action to recover the transfer.

In the present case, Enron sought avoidance of the transfers in question and recovery under section 550(a) against Caisse and NAB as subsequent transferees. As we demonstrate below, just as nothing in section 548 requires an avoidance action be brought first against an initial transferee, so section 550(a) does not require any such action as a precondition to proceeding against subsequent transferees.

## VII.

## THE BANKRUPTCY CODE DOES NOT REQUIRE THAT A TRUSTEE SUE THE INITIAL TRANSFEREE IN ORDER TO RECOVER A FRAUDULENT TRANSFER FROM A SUBSEQUENT TRANSFEREE

### A.    The plain language of 11 U.S.C. § 550(a) permits the trustee to sue subsequent transferees without first suing the initial transferee

Section 550(a) – quoted in Part III, *supra* – does not in any way mandate that a trustee avoid a transfer against an initial transferee in order to recover from a subsequent transferee. On the contrary, the plain language of that section gives the trustee the option of suing the initial transferee, the beneficiaries of the transfer *or* the subsequent transferees, and provides no suggestion that a prerequisite to suing one of the statutory targets requires naming others. *H&C P'ship*, 164 B.R. at 529.

As neatly summarized in *In re Acadiana Electrical Serv., Inc.*, 66 B.R. 164 (Bankr. W.D. La. 1986):

> It is quite true that under section 550 of the Bankruptcy Code a trustee can recover the value of a preferential transfer from the initial transferee or from an entity which benefited by the transfer. In many cases, a guarantor of a debt, although not the initial transferee of a preferential payment, receives the benefit of that payment through a reduction in liability on the guarantee. Thus, section 550 gives the trustee the option of recovering from someone other than the direct transferee. That provision essentially enables the trustee to reach the "deep pocket" in a case. The trustee must elect to sue either the initial transferee or the beneficiary of the transfer, because section 550(c) states that the trustee is entitled to only one "satisfaction" of the transfer.

66 B.R. at 166.

The fact that nothing in section 550(a) requires that the trustee first seek avoidance against the initial transferee should end the inquiry. *See Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms."). The Opinion below, and several cases, including one by a divided Tenth Circuit panel (cited in the Opinion), however, have espoused a minority view requiring suit against the initial transferee as a prerequisite to recovery against a subsequent transferee.[6] The rationale underlying the holding below, and the case law upon which it relies, was set out by Judge Gonzalez and remarkably purports to rely on the same plain language principle:

> Section 550(a) permits recovery only to the extent that a transfer is avoided. 11 U.S.C. § 550(a). The language of the statute is plain and requires that prior to actual recovery by a subsequent transferee, the transfer of a debtor's interest in property to the initial transferee must be avoided. *In re Slack-Horner Foundries Co.*, 971 F.2d 577, 580 (10th Cir. 1992).

343 B.R. at 80.

---

[6] The primary cases holding that a trustee must sue the initial transferee are *In re Slack-Horner Foundries Co.*, 971 F.2d 577 (10th Cir. 1992), and *Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.)*, 230 B.R. 101 (Bankr. N.D. Ohio 1998); *see also In re Furs by Albert & Marc Kaufman, Inc.*, 2006 WL 3735621 (Bankr. S.D.N.Y. Dec. 14, 2006) (following the decision below, but containing no analysis). App. at Tab 23. These cases represent a minority. The most significant cases holding to the contrary, *i.e.*, favoring Enron's position here, and representing the majority view, are *IBT Int'l v. Northern (In re Int'l Admin. Svcs., Inc.)*, 408 F.3d 689 (11th Cir. 2005); *In re Arkansas Catfish Growers, LLC*, 2007 WL 215815 (E.D. Ark. Jan. 25, 2007), App. at Tab 24; *Kendall v. Sorani (In re Richmond Produce Co.)*, 195 B.R. 455 (N.D. Cal. 1996); *Official Comm. of Unsecured Creditors v. Foss (In re Felt Mfg. Co.)*, 371 B.R. 589 (Bankr. D.N.H. 2007); *Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC)*, 340 B.R. 829 (Bankr. E.D. Mich. 2006); *In re National Audit Defense Network*, 332 B.R. 896 (Bankr. D. Nev. 2005); *In re Advanced Telecom. Network, Inc.*, 321 B.R. 308 (Bankr. M.D. Fla. 2005); and *In re Crafts Plus+ Inc.*, 220 B.R. 331 (Bankr. W.D. Tex. 1998).

Although Judge Gonzalez concluded that joinder of the initial transferee is a prerequisite to avoidance of the transfer, nothing in the language of section 550(a) says that. Nevertheless, the Opinion below articulates various rationales (which are similar to those of the cases cited in note 6, *supra*) for reading section 550(a) to impose such a requirement. An examination of those reasons reveals why the conclusion drawn was erroneous.

First, the Bankruptcy Court concluded that suing the initial transferee was essential as it could not appreciate how the transfer could be avoided "absent the participation of the initial transferee … because it is not clear who would have knowledge of the defenses available to the initial transferee." 343 B.R. at 82; *accord Slack-Horner*, 971 F.2d at 580; *Trans-End*, 230 B.R. at 105. In fact, this is a false conundrum, as discussed in Part VII.B, *infra*.

Second, Judge Gonzalez supported his decision by relying on Bankruptcy Code sections 546(a) and 550(f) (11 U.S.C. §§546(a) & 550(f)) – two statutes prescribing time limits for the filing of, respectively, avoidance and recovery actions – which led him to conclude that "there would effectively be no statute of limitations" on section 550(a) actions unless it were read to require that the initial transferee be sued – and the transfer avoided as to it – before the trustee could recover against subsequent transferees. 343 B.R. at 82-83; *accord Trans-End*, 230 B.R. at 104-05. Although section 550(a) must be read in light of other provisions of the Bankruptcy Code, *see United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd*, 484 U.S. 365, 371 (1988), the analysis of how sections 546 and 550 interrelate made by Judge Gonzalez, and before him by the Bankruptcy Court in *Trans-End,* is based on a misreading of those statutes.[7] *See* Part VII.C, *infra*.

---

[7]    The Opinion also focused on the difference between the term "avoided," contained in section 550(a), and "avoidable," contained in other provisions of the Bankruptcy Code (*see* 11 U.S.C. § 502(d)). 343 B.R. at 80-82 & n.3. Judge Gonzalez clearly read

(continued)

Additionally, other provisions of the Bankruptcy Code make sense only when section 550(a) is construed, we submit in accord with its plain meaning, to permit the trustee to elect to sue the subsequent transferees without first naming the initial transferee. See Part VII.D, *infra*.

**B.    There is no logical or legal inconsistency in avoiding a transfer, as required by 11 U.S.C. § 550(a), without suing the initial transferee**

The rationale of both the Opinion below and the cases it cites – *Slack-Horner* and *Trans-End* – is that "[a]lthough § 550 of the Code authorizes the trustee in certain circumstances to recover the value of the property transferred from either the initial transferee or a subsequent transferee (*see* 11 U.S.C. § 550(a)(1) and (a)(2)), in order to recover from a subsequent transferee the trustee must first have the transfer of the debtor's interest to the initial transferee avoided under § 548." *Slack-Horner*, 971 F.2d at 580; *Trans-End*, 230 B.R. at 105. But, as the Court in *In re Connolly N. Am.,* 340 B.R. at 839, observed, there is no reason or basis for the "[i]mplicit … assumptions that a fraudulent transfer cannot be avoided in the absence of the initial transferee as a party, and that such initial transfer cannot be avoided in an action against only a subsequent transferee."

In fact, there are at least five more than adequate reasons why construing the Bankruptcy Code to require that the trustee sue the initial transferee as a predicate to

---

into the language of section 550 an unstated additional requirement: that avoidance of a transfer could only be sought and obtained against an initial transferee and that until avoidance is obtained against the initial transferee, the transfer is only "avoidable." Only by making this assumption does Judge Gonzalez's chain of reasoning, based upon his interpretation of "is avoided," logically lead to his conclusion that avoidance *against the initial transferee* is a necessary predicate to recovery from a subsequent transferee. *In re Connolly N. Am.,* 340 B.R. at 839 (criticizing the same unexplained implicit assumption by the *Trans-End* court). The linguistic confusion rapidly vanishes when one realizes that a transfer avoidable as to an initial transferee can be avoided as to subsequent transferees for there to be a recovery against them. *Int'l Admin. Svcs.*, 408 F.3d at 706; *Richmond Produce*, 195 B.R. at 463.

11

proceeding against a subsequent transferee is untenable, and why suing only what *Acadiana Electrical Serv.*, 66 B.R. at 166, called the "deep pocket" – which might be a beneficiary of a transfer or a subsequent transferee – is entirely sensible.

First, the statutory scheme relating to the bankruptcy avoiding powers provides a trustee with a broad and flexible election of remedies against potential defendants (initial transferees, beneficiaries, subsequent transferees), all of whom may be pursued in any order or combination, together or separately, subject only to the limitation that only a single satisfaction may be obtained.  11 U.S.C. § 550(a), (d).  *See In re Crafts Plus+, Inc.*, 220 B.R. at 338 ("While the avoidance and recovery process is conceptually bifurcated, both steps can be taken in the same proceeding, and nothing in the text of §§ 547 and 550 require the joinder of the 'entity for whose benefit such transfer was made' for the purposes of avoiding the transfer. § 550(a)(1) then expressly allows recovery against either the initial transferee or the preferred creditor.").  It is the trustee's choice against whom to proceed and in what order, and it is creditors who either will benefit or suffer from that decision.

The Bankruptcy Code establishes specific defenses for the benefit of subsequent transferees whom the trustee chooses to sue.

> Mediate transferees, for example, have a defense if they took: (1) for value; (2) in good faith; and (3) without knowledge of the voidability of the transfer.  11 U.S.C. § 550(b)(1).  They also have a shelter defense; if a mediate transferee takes in good faith from another mediate transferee who had the protection of Section 550(b)(1), then each subsequent transferee who takes in good faith is sheltered by its transferor's status, even if the transferee did not take for value or took with knowledge that the initial transfer was voidable.  *Id*. § 550(b)(2).

*National Audit Defense Network*, 332 B.R. at 914-15.

Credit also is given to good faith transferees in cases in which the transferee makes expenditures which improve the transferred property while in its possession. 11 U.S.C. § 550(e).  Finally, all good faith transferees have statutory lien protection to the extent they have given value to the debtor in exchange for the transfer.  *Id.* § 548(c).  As

these provisions evidence, the Bankruptcy Code finely balances the equities of the debtor's creditors and those of transferees. There is no basis to engraft onto the Bankruptcy Code an *additional* requirement that the trustee sue and avoid against the initial transferee, before the trustee may avoid and seek recovery from subsequent transferees.

Second, there is nothing particularly unusual about proving facts or making out defenses that involve persons other than the litigants before the Court. A successor liability lawsuit involving a defunct manufacturer's allegedly defective merchandise, or a fatal air crash involving allegedly negligent pilots, to name just two obvious examples, necessarily involve doing just that under far more difficult circumstances. Indeed, in many cases, subsequent transferees as the ultimate beneficiaries of the transfers for which recovery is sought are in a better position to defend than an initial transferee through whom the transfers merely passed. To the extent that the initial transferee is in possession of evidence helpful to the defense that is not available from the plaintiff – and there is no reason to believe that is the case here[8] – then, as in any civil litigation, access to that information is available by subpoena.

Third, in an avoidance action, the problem of not suing the initial transferee is primarily the plaintiff's, as the trustee has the burden of proof. 11 U.S.C. § 548(a). Even if it is not the initial transferee, the defendant can defend based on the unavoidability of the transfer on any basis afforded in the Bankruptcy Code provisions governing avoidance. *See National Audit Defense Network*, 332 B.R. at 914-15; *Acadiana Electrical Serv.*, 66 B.R. at 167.

---

[8]    CLO Holding's sole general partner was an Enron affiliate. CLO Trust had a purely ministerial role in collecting the Put Transfers from CLO Holding and passing them through to the CLO Noteholders, including Appellees. Complaint (App. Tab 1), ¶¶ 27-29.

Fourth, the logical extension of the argument that the trustee must sue the initial transferee in order to avoid the transfer would be that if the trustee prevails against the initial transferee as to avoidance, the trustee then should be able to take that determination and use it against a subsequent transferee as to liability. In other words, if suing the initial transferee for avoidance is required in order to sue a subsequent transferee, then an avoidance judgment against the initial transferee should bind a subsequent transferee. The transferee should be limited only to the good faith defense and limitations defenses set out in section 550(b) itself. In a recent case a trustee tried to convince a court of just that. *In re Flashcom, Inc.*, 361 B.R. 519, 522 (Bankr. C.D. Cal. 2007). The trustee was unsuccessful for precisely the reason Enron should succeed on this appeal, because "§ 547 addresses transfers, and not creditors or transferees…. That is, § 547 does not specify the proper defendant for a preference action…. Rather, § 550 identifies who the trustee may proceed against…. As such, it is reasonable to believe that Congress intended the trustee to avoid and recover a transfer against the same entity…." *Id.* at 525-26.

Simply put, as a matter of statute and due process, Enron must prove its avoidance case against Caisse and NAB, and neither a prior proceeding against the initial transferee (as in *Flashcom*) nor the lack of one (as here) changes that. Since avoidance against the initial transferee has no determinative effect on the trustee's avoidance case against other parties in the transferee chain, there is no sound reason to require that the trustee sue the initial transferee as a predicate to proceeding against subsequent transferees.

Finally, it bears emphasizing that the focus on the initial transferee simply ignores the words of the avoidance statutes which focus on the transfer, not the transferee. *Richmond Produce*, 195 B.R. at 463 ("avoidability is an attribute of the transfer rather than that of the creditor"), *cited with approval, Int'l Admin. Serv.,* 408 F.3d at 706 ("An interpretation of Section 550 mandating actual avoidance of initial transfers conflates

14

Chapter 11's avoidance and recovery sections."); *National Audit Defense Network*, 332

B.R. at 916 (same).  As aptly summarized by the Court in *Advanced Telecom. Network*:

> Applicable case law and statutes do not require suit against the initial transferee before seeking to recover an avoidable transfer against subsequent transferees.  Section 550 of the Bankruptcy Code provides that a plaintiff may recover a fraudulent transfer from the initial transferee or any immediate or mediate transferee.  The provision contains no language that suggests that recovery from immediate transferees is in any way dependent upon a prior action or recovery against the initial transferee.

321 B.R. at 328.

### C.    The statutes of limitations provisions in Bankruptcy Code §§ 546(a) and 550(f) do not dictate joinder of the initial transferee in an action against a subsequent transferee

Consistent with the bifurcation between avoidance and recovery, the Bankruptcy

Code has two separate statutes of limitation that deal, respectively, with the time to bring

an action to avoid and the time to bring an action to recover.  First, Bankruptcy Code

section 546(a)(1)(A) provides that "[a]n action or proceeding under section 544, 545,

547, 548, or 553 of this title may not be commenced [more than] 2 years after the entry of

the order for relief."  Second, Bankruptcy Code section 550(f)(1) provides that "[a]n

action or proceeding under this section may not be commenced [more than] one year after

the avoidance of the transfer on account of which recovery under this section is sought."

Thus, the trustee has two years to sue to avoid a transfer.  Once the trustee

prevails in the first suit, the trustee then has one more year to sue to recover.  *Decker v.*

*Voisenat (In re Serrato)*, 233 B.R. 833, 835 (Bankr. N.D. Cal. 1999).

Bankruptcy Judge Gonzalez felt compelled to require avoidance against the initial

transferee as a condition to recovery against a subsequent transferee because otherwise

"there would effectively be no statute of limitations."  343 B.R. at 83.  He reasoned that a

trustee could simply skip over the step of avoiding the transfer and thus have forever to

sue a subsequent transferee.  But that would be the case only if the avoidance step could

be magically bypassed, thereby never triggering the one-year limitation under section 550(f).

The position advocated by Enron (and endorsed by numerous courts, *see* note 6, *supra*) creates no such statute of limitations problem. Stated succinctly, the trustee must commence, within two years of the petition date, the action to avoid the transfer. If the trustee does not timely do so, section 546(a)(1) renders the transfer unavoidable. Further, if the trustee intends to recover against a defendant, the trustee must sue the defendant within a year of the judgment being entered in the avoidance action. Once again, if the trustee does not timely commence suit, then any recovery action is barred by section 550(f)(1).

There is, in short, no hole in the statute, no magical escape valve from the limitations period that only a non-literal interpretation of section 550(a) can fix, and thus there is no need for such a construction.

> ### D.    Other provisions of the Bankruptcy Code make clear Enron could sue subsequent transferees to avoid and recover fraudulent transfers without also suing the initial transferee

Although Enron disagrees with the conclusion the Bankruptcy Court reached about the role played by sections 546(a) and 550(f) in pointing toward the proper interpretation of section 550(a), we agree (indeed, we are compelled to agree) that "[s]tatutory construction, however, is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme – because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *Timbers of Inwood*, 484 U.S. at 371.

Three provisions of the Bankruptcy Code make no sense unless section 550(a) is interpreted, per its plain meaning, to give the trustee an option of suing only subsequent

transferees to avoid preferential and fraudulent transfers.   They are sections 547(g), 547(i)[9] and 550(c).

Bankruptcy Code section 547(g) provides that:

> For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the ***creditor or party in interest against whom recovery or avoidance is sought*** has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

11 U.S.C. § 547(g) (emphasis added).

The highlighted language would be unnecessary, and the phrase "initial transferee" would suffice unless the trustee is permitted to seek both recovery *and* avoidance against someone other than the initial transferee.  *Flashcom*, 361 B.R. at 526 & n.10 ("[I]t is reasonable to believe that Congress intended the trustee to avoid and recover a transfer against the same entity, whether it be in one proceeding or two. [¶]  This belief is further supported by § 547(g)…."); *In re Connolly N. Am.*, 340 B.R. at 838-39 (also relying on section 547(g) in support of holding that an action against initial transferee to avoid is not required).

Stated succinctly, if avoidance under section 547 had to be pursued against the initial transferee, there would be no reason for section 547(g) to additionally allocate the burden of proof to a party against whom recovery is sought: the party against whom avoidance and recovery would be sought would always be one and the same, namely, the initial transferee.  Section 547(g) plainly contemplates otherwise.

Bankruptcy Code section 547(i) provides that:

> ***If the trustee avoids*** under subsection (b) ***a transfer*** made between 90 days and 1 year before the date of the filing of the petition, ***by the***

---

[9]    11 U.S.C. § 547(i) was added to the Bankruptcy Code in 2005 to clarify the impact of 11 U.S.C. § 550(c), and expressly applies to pending cases.   5 COLLIER ON BANKRUPTCY ¶ 547.LH[5] & n.24 (15th Edition Rev. 2007).   Regardless of retroactivity, the amendment may be used for purposes of statutory interpretation. *United States v. Stewart*, 311 U.S. 60, 64 & n.4 (1940).

> ***debtor to an entity that is not an insider*** for the benefit of a creditor that is an insider, ***such transfer shall be considered to be avoided under this section only with respect to the creditor that is an insider.***

11 U.S.C. § 547(i) (emphasis added),

> Bankruptcy Code section 550(c) provides that:

>> If a transfer made between 90 days and one year before the filing of the petition—

>> (1) is avoided under section 547(b) of this title; and

>> (2) was made for the benefit of a creditor that at the time of such transfer was an insider;

>> the trustee may not recover under subsection (a) from a transferee that is not an insider.

11 U.S.C. § 550 (c),

These two sections were recently construed in *Arkansas Catfish Growers*, 2007 WL 215815, *2-*3. In that case, the trustee sued insiders of the debtor who had in 2002 guaranteed a $3 million unsecured note to the Arkansas Development Finance Authority ("ADFA"). *Id.* at *1-*2. In 2003, but within a year prior to its bankruptcy, the debtor gave the ADFA security (trust deeds and related personal property) that ultimately enabled it to get paid and the insiders to be exonerated from the guarantees. *Id.* at *2. The trustee sued the insiders, but not the ADFA which was protected by the above-excerpted sections 547(i) and 550(c). *Id.* One of the insiders moved to dismiss contending that "ADFA is the original transferee of the security interest that the trustee now seeks to avoid and that prior to the trustee being entitled to recovery from any party pursuant to 11 U.S.C. § 550(a), the trustee must first avoid the transfer to ADFA pursuant to 11 U.S.C. § 547(b)." *Id.*

In denying the motion, District Judge Wright noted that the argument could not be accepted because sections 547(i) and 550(c) were specifically adopted only to protect *non*-insiders such as ADFA from being sued for transfers that benefited insiders, and not to insulate insider beneficiaries of transfers. *Id.* at *3. Indeed, these sections would make little sense if joinder of a non-insider initial transferee were required, because there could

then be no way that "such transfer [could] be considered to be avoided under this section only with respect to the creditor that is an insider." 11 U.S.C. § 547(i). Instead, the insider would be exonerated in any circumstance where the initial transferee was protected by section 547(i) or 550(c). Such absurdity can be avoided, as it was in *Arkansas Catfish Growers*, only if a trustee has, as Enron argues it does here, the option of suing a subsequent transferee or beneficiary without suing the initial transferee.

## VIII.

## LONG-STANDING POLICIES ARE ADVANCED BY PERMITTING A TRUSTEE TO CHOOSE TO SUE SUBSEQUENT TRANSFEREES WITHOUT FIRST SUING THE INITIAL TRANSFEREE

The law of fraudulent transfers dates its origins at least as far back as Elizabethan England and the 1601 opinion in *Twyne's Case*, 3 Coke Rep. 80b, 76 Eng. Rep. 809 (K. B. 1601). App. at Tab 25. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 540-41 (1994) (specifically citing to the Statute of 13 Elizabeth and *Twyne's Case* to construe section 548). Among the principles of *Twyne's Case* – and of fraudulent conveyance law generally – is this:

> And because fraud and deceit abound in these days more than in former times, it was resolved in this case by the whole court, that all statutes made against fraud should be liberally and beneficially expanded to suppress the fraud.

76 Eng. Rep. at 815-16.

More recent case law reaffirms that liberal construction remains the rule in fraudulent transfer litigation. *See, e.g., Locafrance U.S. Corp. v. Interstate Distrib. Svcs., Inc.*, 451 N.E.2d 1222, 1225 (Ohio 1983); *Running v. Widdes*, 190 N.W.2d 169, 172 (Wis. 1971) ("The purpose of the Uniform Fraudulent Conveyance Act is primarily for the benefit of creditors, not grantees. It is a remedial statute and a liberal construction should be given it to accomplish its purpose of giving speedy relief against a fraudulent debtor."); *Leifer v. Murphy*, 149 Misc. 455, 459, 267 N.Y.S. 701, 705 (1933) ("The

statute which the plaintiff invokes is the Legislature's recognition of the myriad schemes resorted to by judgment debtors, potential and actual, to defeat the enforcement of judgments.  It is a remedial statute designed to furnish a creditor, as therein defined, full, complete and speedy relief against his fraudulent debtor.  It should, therefore, receive a liberal construction by the courts in order to accomplish that purpose.").

The object of the fraudulent transfer statute is to "protect the interests of creditors against fraudulent transfers" and to "preserve property of the estate for distribution to creditors." *Universal Church v. Geltzer*, 463 F.3d 218, 228 (2d Cir. 2006) (citation omitted), *cert. denied*, 127 S. Ct. 961, 166 L. Ed. 2d 706 (2007).  The statutory construction advanced by Enron in this matter not only is consistent with the language and logic of the Bankruptcy Code's avoidance provisions, but also with the underlying objectives of these remedial provisions.  The contrary construction adopted by the Bankruptcy Court below is inimical to any notion of a liberal construction in favor of the remedial purposes served by the statute.  As the Eleventh Circuit explained in *Int'l Admin. Svcs.,* a case involving a Byzantine series of transfers involving successive transfers to and from 23 companies variously owned or controlled by various parties and located in such places as the Netherlands, the Isle of Man, Nevada and California:

> The cornerstone of the bankruptcy courts has always been the doing of equity, and in situations such as this, where money is spread throughout the globe, fraudulent transferors should not be allowed to use § 550 as both a shield and a sword.  ….  Not only would subsequent transferees avoid incurring liability, but they would also defeat recovery and further diminish the assets of the estate.  An opposite result would foster the creation of similar enterprises, for creditors would design increasingly complex transactions, with the knowledge that more transfers decrease the likelihood of a successful avoidance action.  Moreover, the increased cost in litigation and the delays associated with prolonged investigations would only contribute to a debtor's shrinking estate.

> ....The results here would be absurd, and, as the bankruptcy court put it, a bizarre exercise in futility.  After looking at the statute as a whole, we think Congress contemplated "to the extent that a transfer is avoided" to be a simultaneous as well as successive process.  The Trustee here did not have to pursue litigation against [the initial and subsequent transferees] to successfully avoid the transfers of assets to [the subsequent transferees].  Therefore, we hold that Section 550(a) does not mandate a plaintiff to first

pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee.

408 F.3d at 707-08 (internal quotation marks and citations omitted).

Whether the initial transferee is not amenable to suit or penniless – both true here – or where a convoluted structure is employed to frustrate honest collection efforts, as in *Int'l Admin. Svcs.*, 408 F.3d at 704, compelling the trustee to sue the shell initial transferee in order to reach the property in the hands of deep pocket subsequent transferees would be pointless or worse, as well as entirely inconsistent with the structure of both fraudulent conveyance law and the Bankruptcy Code. In addition to frustrating a recovery here, the Opinion below effectively encourages parties in future transactions to engage in pre-bankruptcy manipulation in order to evade the avoidance and recovery provisions of the Bankruptcy Code that often are essential to equalizing distributions and fairly administering the bankruptcy estate. The well-documented history of Enron highlights just how detrimental to creditors those incentives can be.

In sum, neither the language of the statutes in question nor the policies they seek to implement justify the restrictive interpretation of Bankruptcy Code sections 548 and 550(a) employed by the Bankruptcy Court.

## IX.

## CONCLUSION

As a matter of statutory language, construction and policy, the decision below was erroneous. Bankruptcy Code section 550(a) plainly gave Enron the right to sue all or any of the initial transferees, beneficiaries and/or subsequent transferees of the fraudulent transfers set forth in the complaint. Accordingly the Complaint stated viable claims against Caisse and NAB, such that the Judgment should be reversed and the case remanded to the Bankruptcy Court with directions to deny Caisse's and NAB's motions to dismiss, to compel them to answer and to permit Enron an opportunity to establish its claims for avoidance and recovery of the fraudulent transfers received by Caisse and NAB.

Dated:    New York, New York
          November 27, 2007

                                         ENRON CREDITORS RECOVERY CORP.
Reorganized Debtor,
By their Special Bankruptcy Litigation
Counsel
KLEE, TUCHIN, BOGDANOFF & STERN LLP
By:


/s/ David M. Stern
DAVID M. STERN (admitted *pro hac vice*)
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
Telephone: (310) 407-4000


–    and    –


VENABLE LLP
By:


/s/ Edward A. Smith
EDWARD A. SMITH (ES-2461)
The Chrysler Building
405 Lexington Avenue, 56th Floor
New York, New York 10174
Telephone: (212) 307-5500


Attorneys for Plaintiff/Appellant
Enron Creditors Recovery Corp. f/k/a Enron Corp.