6

Case 1:07-cv-06597-AKH    Document 24-8    Filed 11/27/2007    Page 1 of 19

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ENRON CORP., *et al.*,<br><br>            Debtors. | Reply Deadline:  June 24, 2005<br>Hearing Date:  to be determined<br><br>Case No. 01-16034 (AJG)<br>Chapter 11<br>Jointly Administered |
| ENRON CORP.,<br><br>            Plaintiff,<br><br>- against -<br><br>INTERNATIONAL FINANCE CORP., *et al.*,<br><br>            Defendants. | Adversary Proceeding<br>No. 03-93370 (AJG) |

**CAISSE DE DEPOT ET PLACEMENT DU QUEBEC'S
REPLY IN FURTHER SUPPORT OF MOTION TO
<u>DISMISS ADVERSARY COMPLAINT WITH PREJUDICE</u>**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Stephen J. Shimshak (SS/8822)
Douglas R. Davis (DD/0874)
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000

Attorneys for Caisse de Depot et Placement du Quebec

Doc #:NY6:981456.6

**Table of Contents**

                                                                      **Page**

Table of Authorities ................................................................................................................ ii

Preliminary Statement ............................................................................................................ 1

Argument ................................................................................................................................ 2

      I.      THE SECTION 550 CLAIM FAILS BECAUSE ENRON DOES NOT, AND CANNOT, PLEAD AN *AVOIDED* TRANSFER UNDER SECTION 550(a) OF THE BANKRUPTCY CODE ................... 2

            A.      Enron Must Plead an Avoided Transfer To Recover Under Section 550(a) ............................................................................... 3

            B.      Enron Misstates the Law ................................................................ 5

      II.     EVEN IF SECTION 550(A) ONLY REQUIRES AN "AVOIDABLE" TRANSFER, ENRON CANNOT MAKE THAT ALLEGATION ........................................................................................ 13

Conclusion ............................................................................................................................ 14

## Table of Authorities

**Page**

**CASES**

*In re Advanced Telecommunication Network, Inc.,*
    321 B.R. 308 (Bankr. M.D. Fla. 2005) ................................................................... 9

*In re Burns*, 322 F.3d 421 (6th Cir. 2003) ................................................................ 3, 4

*Bell* v. *Bell* (*In re Bell*), 225 F.3d 203, 219 (2d Cir. 2000) ............................................ 11

*In re Cassandra,* 312 B.R. 491 (Bankr. S.D.N.Y. 2004) ............................................ 3, 4

*Conn. Nat'l Bank* v. *Germain*, 503 U.S. 249 (1992) ..................................................... 6

*Crafts Plus+, Inc.* v. *Foothill Capital Corp. (In re Crafts Plus+, Inc.),*
    220 B.R. 331 (Bankr. W.D. Tex. 1998) ............................................................. 8, 9

*Greenwald* v. *Latham & Watkins (In re Trans-End Tech., Inc.),*
    230 B.R. 101 (Bankr. N.D. Ohio 1998) ................................................................ 9

*IBT International, Inc.* v. *Northern (In re International Administrative*
    *Services, Inc.),* 2005 U.S. App. LEXIS 7593 (11th Cir. May 3, 2005) ....... 9, 10, 11

*Kendall* v. *Sorani (In re Richmond Produce Co., Inc.),*
    195 B.R. 455 (N.D. Cal. 1996) ............................................................................. 9

*Lamie* v. *U.S. Tr.*, 540 U.S. 526, 124 S. Ct. 1023 (2004) ............................................ 5

*In re Linc Capital, Inc.*, 310 B.R. 847 (Bankr. N.D. Ill. 2004) ....................................... 3

*In re Morgan*, 276 B.R. 785 (Bankr. N.D. Ohio 2001) ................................................ 4

*In re Teligent*, 307 B.R. 744 (Bankr. S.D.N.Y. 1999) ................................................. 12

*Term Loan Holder Comm.* v. *Ozer Group, L.L.C. (In re The Caldor Corp.),*
    303 F.3d 161 (2d Cir. 2002) .............................................................................. 11

*In re Trace International Holdings, Inc.*, 287 B.R. 98 (Bankr. S.D.N.Y. 2002) .......... 12

*United States* v. *Ron Pair Enters.,*
    489 U.S. 235, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989) ................................. 11

*In re Wedtech Corp.*, 165 B.R. 140 (Bankr. S.D.N.Y. 1994), *aff'd in part,*
    *rev'd in part,* 187 B.R. 105 (S.D.N.Y. 1995) ...................................................... 3

**Page**

*Weinman* v. *Simons (In re Slack-Horner Foundries Co.)*,
    971 F.2d 577 (10th Cir. 1992) ......................................................................... 6, 7, 8

**STATUTES**

11 U.S.C. § 349(b)(1) ............................................................................................... 4

11 U.S.C. § 349(b)(2) ............................................................................................... 4

11 U.S.C. § 544(b)(1) ............................................................................................... 6

11 U.S.C. § 546(a) ................................................................................................... 3

11 U.S.C. § 550 ................................................................................................ *passim*

11 U.S.C. § 550(a) ........................................................................................... *passim*

11 U.S.C. § 550(f) .................................................................................................... 3

Defendant Caisse de Depot et Placement du Quebec ("CDP") submits this reply memorandum of law (the "Reply") in further support of its motion to dismiss with prejudice (the "Motion") the claims asserted against CDP by Enron Corp. ("Enron") in the complaint (the "Complaint").

### Preliminary Statement

Enron's arguments in its Response do not eliminate the deficiencies of the Complaint. In its Motion, Enron concedes that CDP functions only as the mediate transferee of the initial transferee of the funds that Enron seeks to recover – as such, two steps removed from Enron. Section 550(a) thus requires that Enron allege an "avoided transfer" (not an *avoidable* transfer) under section 548 of the Bankruptcy Code to recover from CDP.

Enron's insistence that it need only plead an *avoidable* transfer fails for two reasons:

*First*, Enron's misconstruction of the law within this District and its dependence on poorly-reasoned decisions elsewhere regarding section 550(a) does not trump the statutory text. Section 550(a) uses the word "avoided," not "avoidable." Although that should end the matter, the substantial and well-reasoned body of case law construing section 550(a) to mean precisely what it says and the pertinent legislative history silences any further debate on this point.

*Second*, even if Enron only has to plead an *avoidable* transfer to recover under section 550(a), the Complaint *still* fails to allege facts that establish the avoidability of the initial transfer that occurred here because (1) the statue of limitations under section 546(a) of the Bankruptcy Code for avoiding such transfers expired on December 2, 2003

(two years after the commencement of Enron's chapter 11 case), and (2) the initial transferee, Holding I LP,[1] no longer exists.

For all of these reasons, this Court should dismiss Enron's claims against CDP.[2]

## Argument

### I.

### THE SECTION 550 CLAIM FAILS BECAUSE ENRON DOES NOT, AND CANNOT, PLEAD AN *AVOIDED* TRANSFER UNDER SECTION 550(a) OF THE BANKRUPTCY CODE

As CDP demonstrated in its Motion, the Complaint fails to state a claim for recovery from CDP under section 550(a) because the Complaint fails to allege an *avoided* transfer under section 548 of the Bankruptcy Code, as section 550(a) requires. Specifically, Enron has not alleged the avoidance of the initial transfer – the transfer of the January Put Payment from Enron to Holding I LP. (Indeed, as CDP demonstrated in the Motion, Enron cannot avoid that transfer now and thus, that transfer can never qualify as "avoidable.")

In response, Enron maintains that (1) section 550(a) does not require it to allege an *avoided* transfer but only to establish an *avoidable* transfer (though Enron fails to show how it satisfies even that standard), and (2) the Complaint states a claim under section 550(a) because the Complaint conclusorily alleges the avoidability of the initial

---

[1]  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

[2]  Because the claim for recovery under section 550 (the "Section 550 Claim") fails on its face, this Court should dismiss the "disallowance of claim" count as well.

transfer to Holding I LP notwithstanding that, according to Enron, Holding I LP no longer exists and Enron cannot sue it. (Enron nowhere addresses its failure to pursue any action against Holding I LP before the expiration of the section 546 statute of limitations.) Enron is wrong on both counts.

### A. Enron Must Plead an Avoided Transfer To Recover Under Section 550(a)

The Bankruptcy Code treats "avoidance" and "recovery" as distinct concepts and separate steps. Section 550 states that, to the extent "a transfer is *avoided* under [the avoidance sections of the Bankruptcy Code], the trustee may *recover* . . . the property transferred." 11 U.S.C. § 550(a) (emphasis added); *In re Burns,* 322 F.3d 421, 427 (6th Cir. 2003); *In re Cassandra,* 312 B.R. 491, 495 (Bankr. S.D.N.Y. 2004); *In re Wedtech Corp.*, 165 B.R. 140, 145 (Bankr. S.D.N.Y. 1994) *aff'd in part, rev'd in part,* 187 B.R. 105 (S.D.N.Y. 1995). Specifically, sections 544, 545, 546, 547, 548 and 549 of the Bankruptcy Code address a trustee's ability to *avoid* transfers, while section 550 addresses the trustee's ability to *recover* a transfer, once avoided. *See Burns*, 322 F.3d at 425 ("The first concept is avoidance, through which a trustee is able to nullify a . . . transfer that in some way diminished the estate. . . . The second concept is a statutory mechanism through which property may be returned to the estate."); *In re Linc Capital, Inc.*, 310 B.R. 847, 860 (Bankr. N.D. Ill. 2004) (Section 550 "enacts a two-step process of recovery").

The Bankruptcy Code also emphasizes the separateness of "avoidance" and "recovery" in other ways. Significantly, avoidance and recovery actions have different statutes of limitations. *Compare* 11 U.S.C. § 546(a) (statute of limitations for avoidance actions) *with* 11 U.S.C. § 550(f) (statue of limitations for recovery actions

measured from the time of *avoidance*). Section 550(f) provides that "an action or proceeding under this [section] may not be commenced after the earlier of one (1) year after the *avoidance* of the transfer…." Similarly, different statutory sections apply to the treatment of avoidance and recovery actions upon the dismissal of a case. *See* 11 U.S.C. §§ 349(b)(1)(B), 349(b)(2).

As section 550(a)'s use of the term "avoided" ("to the extent that a transfer is *avoided* . . . the trustee may recover . . . .") rather than "avoidable" makes clear, avoidance remains a necessary precondition to section 550 recovery. *Burns,* 322 F.3d at 427 ("[S]ection 550 allows a trustee *who avoids a transfer* under section 544(a)(3) to recover the interest that was transferred . . . .") (emphasis added); *Cassandra*, 312 B.R. at 495-96 ("Under Section 550(a) of the Bankruptcy Code, a trustee may recover from an initial transferee the property *whose transfer was successfully avoided* pursuant to section 544(b), or alternatively, if the court so orders, the value of such property.") (emphasis added); *In re Morgan*, 276 B.R. 785, 789 (Bankr. N.D. Ohio 2001) ("An examination of this statutory language clearly reveals that before a trustee is entitled to recover any property previously transferred by the debtor, the trustee must first avoid the underlying transfer.")

The legislative history of section 550 confirms that "avoidance" and "recovery" involve distinct concepts:

> Section 550 prescribes the liability of a transferee of an avoided transfer, and enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee. Subsection (a) permits the trustee to recover from the initial transferee of an avoided transfer or from any immediate or mediate transferee of the initial transferee.

PL 95-598, Senate Report 95-989, p. 98.  *See also* PL 98-353, House Report 98-882, p. 50.[3]

Nowhere in its Complaint, however, does Enron allege the *avoidance* of the initial transfer from Enron to Holding I LP.  For this reason alone, the Section 550 Claim fails as a matter of law.  To deal with the decisions that straightforwardly apply the plain meaning of section 550, Enron argues that they do not correctly set forth the law – at least to the extent that they hold that a party cannot meet the pleading requirements of section 550 by alleging an "*avoidable*" (rather than an avoided) transfer.  (Response at 6.) Enron's arguments are unavailing.

### B. Enron Misstates the Law

The language of section 550(a) makes clear that the existence of an avoided, rather than a mere avoidable, transfer is a prerequisite to relief under section 550.

Section 550(a) unambiguously states:  "Except as otherwise provided in this section, *to the extent that a transfer is avoided* under sections 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred . . . ." 11 U.S.C. § 550(a) (emphasis added).  The unambiguous wording of a statute ends judicial inquiry.  *See Lamie* v. *U.S. Tr.*, 540 U.S. 526, 534 124

---

[3] Enron relies on a different portion of the legislative history of section 550(a) to suggest that Congress added the phrase "to the extent a transfer is avoided" to the statute solely to avoid the imposition of liability on transferees with valid defenses under section 548(c) or other Bankruptcy Code provisions. (Response at 8-9.) Certainly, protecting such defenses may have been one reason that Congress added the phrase, but that is beside the point: as discussed in greater detail in the Motion, in carrying out that purpose, Congress consciously chose to use the term "avoided," not the term "avoidable."  As a result of that choice, the Courts have enforced quite properly the statute as written.

S. Ct. 1023, 1030 (2004) ("[W]hen the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms."); *Conn. Nat'l Bank* v. *Germain*, 503 U.S. 249, 254 (1992).

Significantly, when it enacted the Bankruptcy Code, Congress knew that "voidable" means a hypothetical avoidance while "avoided" requires actual avoidance, and used both terms accordingly throughout the Bankruptcy Code. For example, section 544(b)(1) of the Bankruptcy Code provides that "the trustee may *avoid* any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is *voidable* under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1) (emphasis added). Section 544(b) therefore allows a trustee to avoid a transfer under the Bankruptcy Code that the trustee *could hypothetically* avoid under non-bankruptcy law. Unlike section 550(a), section 544(b) thus does not require the trustee actually to avoid the transfer under non-bankruptcy law before avoiding the transfer under bankruptcy law.

While the language of section 550(a) disposes of the matter here, numerous decisions make clear that Courts read section 550(a) to mean precisely what it says: avoidance of initial transfers precedes recovery under section 550(a). *See, e.g., Weinman* v. *Simons (In re Slack-Horner Foundries Co.),* 971 F.2d 577, 580 (10th Cir. 1992) ("Although § 550 of the Code authorizes the trustee in certain circumstances to recover the value of the property transferred from either the initial transferee or a subsequent transferee . . . in order to recover from a subsequent transferee the trustee must first have the transfer of the debtor's interest to the initial transferee avoided . . . .") (internal citations omitted).

As noted in the Motion, the Tenth Circuit's decision in *Slack-Horner Foundries* illustrates the workings of section 550. There, the chapter 11 trustee sought to avoid and recover on fraudulent transfer grounds the transfer of a tax deed. *Slack-Horner Foundries*, 971 F.2d at 578-79. Though, under state law, the tax deed transfers went from the debtor to the state and then from the state to the new buyer, the chapter 11 trustee had not named the state as a defendant in the case or otherwise avoided the transfer to the state. *Id.* at 579-80. In holding that the trustee failed to state a claim under section 550 against the buyer because it failed to avoid the transfer against the state, the Tenth Circuit noted:

> The deed to the property was issued by the state and shows that the property was granted by the state to Simons [the buyer]. The trustee may not set aside such a transfer of property by the state as fraudulent without bringing the state into the action.

*Slack-Horner Foundries*, 971 F.2d at 580, 581 n.1 ("The trustee may not bypass the interest of the state in the property by characterizing the transaction as a transfer of the debtor's interest to Simons.").

Enron attempts to distinguish *Slack-Horner Foundries* by saying that "[i]n holding that the trustee must avoid the transfer against the initial transferee first, the court cited the state's fundamental interest in collecting taxes, which is clearly not an issue in this case." (Response at 8.) Even a cursory reading of *Slack-Horner Foundries* makes clear though, that the decision does not turn on this fact nor even on the identity of the initial transferee; the state's fundamental interest in collecting taxes on property simply provided further support for the court's determination that a tax lien foreclosure constitutes a transfer and that the state served as the initial transferee. *Slack-Horner Foundries*, 971 F.2d at 581. *Slack-Horner Foundries* reaffirms the statutory directive of

section 550 that a trustee or debtor-in-possession must first avoid an initial transfer before seeking recovery from an immediate (that is, subsequent) transferee. *Id.* at 580 ("in order to recover from a subsequent transferee the trustee must first have the transfer of the debtor's interest to the initial transferee *avoided* . . . .") (emphasis added).  As such, *Slack-Horner Foundries* remains directly on point.  Like the trustee in *Slack-Horner Foundries*, Enron attempts to recover from CDP (at best, a subsequent transferee), without having first avoided the initial transfer to Holding I LP.

In response to the text of section 550(a) and the body of case law reading it to require an "avoided" transfer, Enron cites to only a handful of contrary decisions.  These decisions do not bind this Court and, in any case, this Court should give them no weight. *Crafts Plus+, Inc.* v. *Foothill Capital Corp. (In re Crafts Plus+, Inc.)*, 220 B.R. 331 (Bankr. W.D. Tex. 1998), for instance, involved a transfer by a debtor to a non-creditor third party for the benefit of a creditor of the debtor.  Specifically, in partial satisfaction of an agreement between the debtor and Ben Franklin Stores, Inc. ("BFSI"), under which the debtor owed BFSI $16 million, the debtor transferred $5 million to Foothill Capital Corp. ("Foothill"), a secured creditor of BFSI. *In re Crafts Plus+*, 220 B.R. at 332.  In its bankruptcy case, the debtor sued *the initial transferee*, Foothill, to recover as a preferential transfer the $5 million that it had received from the debtor. *Id.* at 332-33.  The court allowed the debtor to proceed with its case against Foothill, the initial transferee of the $5 million, even though the debtor had not named BFSI, the entity for whose benefit the debtor made the transfer within the meaning of section 547(b), as a

defendant. *Id.* at 338. The facts of *Crafts Plus+* clearly differ from those here, where Enron chose not to sue the initial transferee.[4]

Enron also cites *In re Advanced Telecommunication Network, Inc.*, 321 B.R. 308 (Bankr. M.D. Fla. 2005), another inapposite decision. In *Advanced Telecommunications Network*, the bankruptcy court found the defendants the initial transferees of the disputed funds, an allegation which Enron cannot make here. 321 B.R. at 326. The discussion of subsequent transferees in that case amounts to nothing more than *dicta* and appears to rest on New Jersey law which "specifically allows a plaintiff to choose which transferee to pursue — the initial transferee or those later in line." *Id.* at 329. As such, *Advanced Telecommunication Network* has no persuasive force.

Enron recently submitted a letter to this Court seizing upon the Eleventh Circuit's decision in *IBT International, Inc.* v. *Northern* (*In re International Administrative Services, Inc.*), 2005 U.S. App. LEXIS 7593 (11th Cir. May 3, 2005). That case involved efforts by the debtor, International Administrative Services ("IAS"), and its founder/sole shareholder, Charles Givens, to shield assets from creditors under an

---

[4] As for the case from the Northern District of California, *Kendall* v. *Sorani (In re Richmond Produce Co., Inc.)*, 195 B.R. 455 (N.D. Cal. 1996), that decision fails to reconcile its holding with section 550(a)'s use of the term "avoided" rather than "avoidable." At least one other bankruptcy court has rejected the decision because it contradicts the plain language of Section 550. *See Greenwald* v. *Latham & Watkins (In re Trans-End Tech., Inc.)*, 230 B.R. 101, 104 (Bankr. N.D. Ohio 1998) ("The Court, however, declines to follow the reasoning of the *Richmond Produce* court."). Moreover, the bankruptcy court in *Richmond Produce* found fraudulent the initial transfer to the debtor's principal. 195 B.R. at 463. Here, Enron has not made and cannot make any attempt to avoid the initial transfer to Holding I LP as fraudulent. Thus, as noted below, in this case, Enron cannot even allege an "avoidable" transfer.

"asset protection plan,"[5] designed to launder assets "through a tangled and complex web of multi-step international transactions." *Id.* at *5. After the filing of IAS's bankruptcy case, IAS assigned its right to pursue avoidance actions to the Official Committee of Unsecured Creditors (the "Committee"). The Committee attempted to unravel the "knotted trail of transfers," but Givens and his associates hampered those efforts by delaying document production, losing records of assets transfers, and withholding discovery responses. *Id.* at *6.

Against this factual backdrop, the Eleventh Circuit strained impermissibly to substitute a result-oriented interpretation of section 550(a) for its plain meaning. That interpretation permitted the Committee to recover transfers from mediate transferees without avoiding the initial transfer. In doing so, the Eleventh Circuit admitted that "[w]e are mindful that our reading of § 550(a) does not embrace a strict construction [of that section.]" *Id.* at *41. While the Circuit Court suggested that its interpretation of section 550(a) addressed the purported ambiguity of the words "to the extent that a transfer is avoided," its conclusion that a strict interpretation of section 550(a) would produce a "harsh and inflexible result" and permit "any streetwise transferee [to] simply re-transfer the money or asset in order to escape liability" drove the decision. *Id.* at *33, * 41.

However desirable the result, these concerns do not give the Court license to disregard the unambiguous language of section 550(a). When a statute is "coherent and consistent, there generally is no need for a court to inquire beyond the plain language

---

[5] IAS and Givens retained the services of David Tedder, a self-proclaimed expert in asset protection, to formulate an "asset protection plan" to shield assets from creditors when it became apparent that IAS had significant exposure to liability in ongoing litigation. Givens (and IAS) implemented the plan by transferring assets "more than

of the statute." *Term Loan Holder Comm.* v. *Ozer Group, L.L.C.* (*In re The Caldor Corp.*), 303 F.3d 161, 168 (2d Cir. 2002) *quoting United States* v. *Ron Pair Enters.*, 489 U.S. 235, 240-41, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989). In its determination to produce a preferred outcome (transfer avoidance and collapse of a transfer scheme), the Eleventh Circuit deviated from its judicial role and chose to ignore the plain and unambiguous language of section 550(a).[6] This Circuit does not condone tortured reading and judicial rewriting to achieve a result at variance with the letter of a statute. *See Caldor*, 303 F.3d at 176 ("[W]e do not sit to assess the relative merits of different approaches to various bankruptcy problems. It suffices that the natural reading of the text produces the result we announce….") (internal quotation marks and citation omitted); *Bell* v. *Bell* (*In re Bell*), 225 F.3d 203, 219 (2d Cir. 2000) ("[W]e must enforce what Congress has commanded whether or not we agree with its policy choices.").

Nor do Enron's efforts to "spin" bankruptcy court decisions in this District to support its contention that an "avoidable" transfer remains recoverable from a

---

one hundred times among twenty three different entities." *Id.* at *5. This is a far cry from the transfers alleged in this case.

[6] CDP notes that, even if this Court were inclined to adopt such a result-oriented approach to recovery under section 550(a), resort to that approach has no basis here. None of circumstances that gave the Eleventh Circuit pause in *International Administrative Services* are present in the instant action. Enron has alleged three straightforward transfers: the initial transfer from Enron to Holding I LP, the subsequent transfer from Holding I LP to the CLO Trust and the final transfer from the CLO Trust to CDP. This is far from the "knotted trail" of transfers alleged in *International Administrative Services*. Similarly, nowhere does Enron allege that these transfers were part of a "purge and plunder scheme" or effort to hide assets from creditors. *In re International Administrative Services, Inc.*, 2005 U.S. App. LEXIS 7593, at *6. Enron does not contend that its efforts to recover funds or obtain documents from CDP and other defendants named in the above-captioned action have been impeded or hindered by sharp practices by CDP.

subsequent transferee under section 550(a) succeed.  Enron contends that *In re Teligent,* 307 B.R. 744 (Bankr. S.D.N.Y. 1999) and *In re Trace International Holdings, Inc.,* 287 B.R. 98 (Bankr. S.D.N.Y. 2002) "suggest" that, notwithstanding the plain meaning of section 550, "a transfer must only be 'avoidable' for it to be recovered from a subsequent transferee." (Response at 7.)  Neither case offer this "suggestion" or support this proposition.

To the contrary, in *Teligent,* the bankruptcy court recognized that "[t]he Code separates the avoidance of a fraudulent transfer from the recovery of a fraudulent transfer" and noted in that regard that "[s]ection 550 restricts the trustee to the recovery of the *avoided* transfer, or its value, from the initial and subsequent transferees." *Teligent,* 307 B.R. at 749 (emphasis added).  *Trace International Holdings* also has no relevance.  While the court noted that "[i]f the trustee *proves* a fraudulent transfer claim, he can then recover the value of the transfer from . . . any subsequent transferee," the court ultimately found the defendant the initial transferee of the disputed transfer (having received it from a party that functioned as a "mere conduit") and, thus, never considered the issue here.  *Trace International Holdings,* 287 B.R. at 105-06.

\*   \*   \*

Nowhere in the Complaint does Enron allege the *avoidance* of the initial transfer to Holding I LP.  The plain, unambiguous language of section 550 and the well-reasoned case law in this District and elsewhere interpreting it make clear that recovery under section 550 requires as a threshold matter the existence of an avoided transfer.  Enron's "Section 550 Claim" must fail.

## II.

## EVEN IF SECTION 550(A) ONLY REQUIRES AN "AVOIDABLE" TRANSFER, ENRON CANNOT MAKE THAT ALLEGATION

Even if Enron were correct that section 550(a) only requires Enron to plead an avoidable initial transfer (which CDP disputes and the authorities cited above do not support), the Complaint does not (and Enron cannot) allege the avoidability of the transfer to Holding I LP. As CDP set forth in the Motion, Enron cannot succeed in a hypothetical avoidance action against the initial transferee, Holding I LP, because the statute of limitations for such an action expired on December 2, 2003 – two years after the petition date. Enron alleges in its Response that Holding I LP no longer exists.[7] (Response at 9.) Thus, the Court should dismiss the Section 550 Claim even under Enron's (erroneous) reading of the statute.

In response, Enron argues for a judicially-created "hardship exception." It says that if section 550 requires Enron to pursue Holding I LP to recover the transfer from CDP, it cannot do so because Holding I LP no longer exists. Enron then contends that if Holding I LP constitutes a "necessary party," this Court should permit Enron to proceed without the now-defunct Holding I LP as a matter of "equity and good conscience." (Response at 10.) Importantly, in its discussion of the equities of this case, Enron fails to mention that Enron itself caused the dissolution of Holding I LP and that the dissolution took place *after* the running of the statute of limitations for pursuing an avoidance claim against Holding I LP. This Court should not rewrite the statutory requirements for recovery of a transfer under section 550(a) or suspend the Rules of Civil

---

[7]  At Enron's request, on December 18, 2003, the Court authorized Enron to cause the dissolution of Holding I LP.

Procedure to accommodate infirmities caused by Enron's own actions. No *avoidable*, much less avoided, initial transfer to Holding I LP exists here.

## Conclusion

For the reasons set forth above, CDP requests that this Court (i) enter an order dismissing with prejudice the claims asserted against CDP in this adversary proceeding, and (ii) grant to CDP such other and further relief as this Court deems just and proper.

Dated: New York, New York
       June 24, 2005

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP


By:     /s/ Stephen J. Shimshak
        Stephen J. Shimshak (SS/8822)
        Douglas R. Davis (DD/0874)
        1285 Avenue of the Americas
        New York, NY  10019-6064
        Telephone:  (212) 373-3000
        Facsimile:   (212) 757-3990

Attorneys for Caisse de Depot et Placement du Quebec