18

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
(310) 407-4000 (telephone)
(310) 407-9090 (facsimile)
David M. Stern (DS-3689)
Lee R. Bogdanoff (LB-6424)
Stacia A. Neeley (SN-8727)

-and-

VENABLE LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 983-3850 (telephone)
(212) 307-5598 (fax)
Edward A. Smith (ES-2461)

Counsel for Enron Creditors Recovery Corp. f/k/a Enron Corp.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re:

ENRON CREDITORS RECOVERY CORP.,
*et al.*,

          Reorganized Debtors.
-----------------------------------------------------------x

Case No. 01-16034 (AJG)

Chapter 11

(Jointly Administered)

ENRON CREDITORS RECOVERY CORP.,

          Plaintiff,

          v.

INTERNATIONAL FINANCE CORP., *et al.*,

          Defendants.
-----------------------------------------------------------x

Adv. Pro. No. 03-93370 (AJG)

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that the undersigned counsel to Enron Creditors Recovery

Corp. f/k/a/ Enron Corp. ("Enron"), a reorganized debtor and the plaintiff in the above-captioned
adversary proceeding, hereby timely appeals[1] on behalf of Enron from the following order and
judgments of the United States Bankruptcy Court for the Southern District of New York:

| Docket No. | Title | Entry Date |
|---|---|---|
| 132 | Opinion signed on 5/18/2006 granting defendants' motions to dismiss complaint[2] | May 18, 2006 |
| 137 | Order signed on 6/5/2006 granting motions to dismiss by Caisse de Depot et Placement du Quebec and National Australia Bank | June 5, 2006 |
| 140 | Judgment signed on 8/9/2006. Judgment Index Number BC 06.0468 | August 9, 2006 |
| 156 | Judgment signed on 6/18/2007. Judgment Index Number BC 07.0089 | June 18, 2007 |

Copies of the Opinion, Order Granting Motions to Dismiss and Judgments are attached
hereto respectively as Exhibits A, B, C and D.

---

[1]   The opinion, order and judgment listed as Docket Nos. 132, 137 and 140 became appealable as final only upon entry of the orders and judgment [Docket Nos. 153, 154 and 156] disposing of the remaining claims against the remaining defendants. 28 U.S.C. § 158(a)(1); *LTV Steel Co, Inc. v. United Mine Wkrs. (In re Chateaugay Corp.)*, 922 F.2d 86, 90 (2d Cir. 1990); *Delta Air Lines, Inc. v. A.l. Leasing ll, Inc. (In re Pan Am Corp.)*, 159 B.R. 396, 400 (S.D.N.Y. 1993). Although Appellant does not seek appellate review as to the claims and defendants disposed of in judgment BC 07.0089 [Docket No. 156], to the extent necessary to perfect its appeal of the previously interlocutory opinion, order and judgment [Docket Nos. 132, 137 and 140], Appellant hereby gives notice of its appeal from judgment BC 07.0089 [Docket No. 156] as well.

[2]   The Opinion was corrected by subsequent errata orders (Docket Nos. 133 and 134). The Opinion is reported as *Enron Corp. v. Int'l Finance Corp. (In re Enron Corp.)*, 343 B.R. 75 (Bankr. S.D.N.Y. 2006)

The names of all parties to the order and judgment BC 06.0468 being appealed are as

follows:

**Appellant**:

**Enron Creditors Recovery Corp.**

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
(310) 407-4000 (telephone)
(310) 407-9090 (fax)
Attn:   David M. Stern, Esq. (dstern@ktbslaw.com)
        Lee R. Bogdanoff, Esq. (lbogdanoff@ktbslaw.com)
        Stacia A. Neeley, Esq. (sneeley@ktbslaw.com)


Venable LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10036
(212) 983-3850 (telephone)
(212) 307-5598 (fax)
Attn:   Edward A. Smith, Esq. (easmith@venable.com)

**Appellees**:

**Caisse de Depot et Placement du Quebec**

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000 (telephone)
(212) 757-3990 (fax)
Attn:   Douglas R. Davis, Esq. (ddavis@paulweiss.com)
        Stephen J. Shimshak, Esq. (sshimshak@paulweiss.com)

**National Australia Bank**

Clayman & Rosenberg
305 Madison Avenue, Suite 1301
New York, NY 10165
(212) 922-1080 (telephone)
(212) 949-8255 (fax)
Attn:   Paul S. Hugel, Esq. (hugel@clayro.com)

and

Williams & Connolly LLP
725 Twelfth Street NW
Washington, DC 20005
(202) 434-5000 (office)
(202) 434-5029 (facsimile)
Philip J. Ward, Esq. (pward@wc.com)
Helen I. Dooley, Esq. (hdooley@wc.com)


                              KLEE, TUCHIN, BOGDANOFF & STERN
                              LLP


Dated:   Los Angeles, California
         June 22, 2007              By:  /s/ David M. Stern
                                         David M. Stern (DS-3689)
                                         Lee R. Bogdanoff (LB-6424)
                                         Stacia A. Neeley (SN-8727)
                                         1999 Avenue of the Stars, 39th Floor
                                         Los Angeles, CA 90067
                                         (310) 407-4000 (telephone)
                                         (310) 407-9090 (facsimile)


                              VENABLE LLP


Dated:   New York, New York
         June 22, 2007              By:  /s/ Edward A. Smith
                                         Edward A. Smith (ES-2461)
                                         The Chrysler Building
                                         405 Lexington Avenue
                                         New York, New York 10174
                                         (212) 983-3850 (telephone)
                                         (212) 307-5598 (fax)

                                         Counsel for Enron Creditors Recovery Corp.
                                         f/k/a Enron Corp.

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

For Publication

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ENRON CORP., *et al.* | : | Case No. 01 B 16034 (AJG) |
|  | : | Confirmed Case |
| Reorganized Debtors. | : |  |
|  | : |  |
| ENRON CORP., | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | Adv. Pro. No. 03-93370 A |
|  | : |  |
| INTERNATIONAL FINANCE CORP., *et al.*, | : |  |
|  | : |  |
| Defendants. | : |  |

## OPINION GRANTING DEFENDANTS'
## MOTIONS TO DISMISS COMPLAINT

APPEARANCES:

TOGUT, SEGAL & SEGAL, LLP
New York, New York
Counsel for the Reorganized Debtors

       By:    Howard P. Magaliff, Esq.
                  Frank A. Oswald, Esq.
                  Of Counsel

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
New York, New York
Counsel for Caisse de Depot et Placement du Quebec

       By:    Douglas R. Davis, Esq.
                  Stephin J. Shimshak, Esq.
                  James H. Millar, Esq.
                  Of Counsel

CLAYMAN & ROSENBERG
New York, New York
Counsel for National Australia Bank

> By:    Paul Hugel, Esq.
>         Of Counsel

WILLIAMS & CONNOLLY LLP
Washington, DC
Counsel for National Australia Bank

> By:    Philip J. Ward, Esq.
>         Helen I. Dooley, Esq.
>         Of Counsel

ARTHUR J. GONZALEZ
UNITED STATES BANKRUPTCY JUDGE

The issue presented is whether recovery, pursuant to 11 U.S.C. § 550(a), of a transfer of a
debtor's interest in property from a subsequent transferee requires as a prerequisite that the
transfer have previously been avoided, pursuant to the trustee's avoidance powers, against the
initial transferee. The Court concludes that although the two actions may be brought
simultaneously, the plain language of section 550(a) requires that the transfer first be avoided,
i.e., determined to be improper, prior to actual recovery from any transferee.

### Procedural Background

Commencing on December 2, 2001, and from time to time continuing thereafter, Enron
Corporation ("Enron") and certain of its affiliated entities, (collectively, the "Debtors") filed
voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the
"Bankruptcy Code"). On July 15, 2004, the Court entered an Order confirming the Debtors'
Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan") in these
cases. The Plan became effective on November 17, 2004.

2

Enron commenced this adversary proceeding by filing a complaint (the "Complaint")

seeking to avoid, pursuant to section 548 of the Bankruptcy Code, and recover, based upon

section 550(a) of the Bankruptcy Code, certain transfers made to the defendants as constructive

fraudulent transfers. Enron also seeks to disallow, pursuant to section 502(d) of the Bankruptcy

Code, any other claims the Defendants assert against the Debtors.

Various of the defendants filed motions to dismiss the Complaint, pursuant to Fed. R.

Civ. P. 12(b)(6). This Opinion addresses the motions to dismiss filed by Caisse de Depot et

Placement du Quebec ("Caisse de Depot") and National Australia Bank ("Australia Bank," and

together with Caisse de Depot, the "Defendants"). Motions to dismiss filed by other of the

defendants were addressed in a separate Opinion issued by the Court.[1]

## *Standard for dismissal*

FED. R. CIV. P. 12(b)(6) is incorporated into bankruptcy procedure by FED. R. BANKR. P.

7012(b). In considering a FED. R. CIV. P. 12(b)(6) motion to dismiss for failure to state a claim

for relief, the court accepts as true all material facts alleged in the complaint and draws all

reasonable inferences in favor of the plaintiff. *Walker v. City of New York*, 974 F.2d 293, 298

(2d Cir. 1992). The motion to dismiss is granted only if no set of facts can be established to

---

[1] In Count I of the Complaint, Enron alleges that certain transfers of the debtor's interest in property are avoidable as constructive fraudulent transfers pursuant to section § 548(a)(1)(B) of the Bankruptcy Code and recoverable under section 550(a)(1). In Count II of the Complaint, Enron alleges that other transfers are avoidable as constructive fraudulent transfers, pursuant to section 548(a)(1)(B) of the Bankruptcy Code, and recoverable from certain of the Defendants as mediate transferees pursuant to section 550(a)(2). In Count III of the Complaint, Enron seeks disallowance, pursuant to section 502(d) of the Bankruptcy Code, of any other claims against the Debtors asserted by the Defendants, as recipients of avoidable transfers. This Opinion does not address Count I of the Complaint as Enron has not alleged any such transfers to Caisse de Depot or Australia Bank. Rather, that aspect of the Complaint was addressed in a separate Opinion that was issued by the Court addressing the motions to dismiss filed by other defendants. *See Enron Corp. v. International Finance Corp., et al.*, No. 03-93370, 2006 WL 1149532 (Bankr. S.D.N.Y. May 2, 2006).

entitle the plaintiff to relief. *Id.*

In considering such a motion, although a court accepts all the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 106 S. Ct. 2932, 2944 92 L. Ed. 2d 209 (1986). Thus, where more specific allegations of the complaint contradict such legal conclusions, "[g]eneral, conclusory allegations need not be credited." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). Rather, to withstand a motion to dismiss, there must be specific and detailed factual allegations to support the claim. *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000).

"Although bald assertions and conclusions of law are insufficient, the pleading standard is nonetheless a liberal one." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998). Pursuant to FED. R. CIV. P. 8(a), which is made applicable to adversary proceedings by FED. R. BANKR. P. 7008, in asserting a claim, the pleader need only set forth a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of the statement is to provide "fair notice" of the claim and "the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99,103, 2 L. Ed. 2d 80 (1957). The simplicity required by the rule recognizes the ample opportunity afforded for discovery and other pre-trial procedures which permit the parties to obtain more detail as to the basis of the claim and as to the disputed facts and issues. *Id.* 355 U.S. at 47-48, 78 S. Ct. at 103. Based upon the liberal pleading standard established by FED. R. CIV. P. 8(a), even the failure to cite a statute, or to cite the correct statute, will not affect the merits of the claim. *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir. 1997). In considering a motion to dismiss, it is not the legal theory but, rather, the factual allegations that

4

matter. *Id.*

In reviewing a FED. R. CIV. P. 12(b)(6) motion, a court may consider the allegations in the complaint; exhibits attached to the complaint or incorporated therein by reference; matters of which judicial notice may be taken; *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); and documents of which plaintiff has notice and on which it relied in bringing its claim or that are integral to its claim. *Cortec Indus. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). However, mere notice or possession of the document is not sufficient. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Rather, a necessary prerequisite for a court's consideration of the document is that a plaintiff relied "on the terms and effect of a document in drafting the complaint." *Id.* As such, the document relied upon in framing the complaint is considered to be merged into the pleading. *Id.* at 153 n.3 (citation omitted). In contrast, when assessing the sufficiency of the complaint, a court does not consider extraneous material because considering such would run counter to the liberal pleading standard which requires only a short and plain statement of the claim showing entitlement to relief. *Id.* at 154. Nevertheless, in considering a Rule 12(b)(6) motion, a court may consider facts as to which the court may properly take judicial notice under FED. R. EVID. 201. *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 357 (S.D.N.Y. 2003), *citing, Chambers*, 282 F.3d at 153.

To survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not prove them. *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999). A court's role in ruling on a motion to dismiss is to evaluate the legal feasibility of the complaint, not to undertake to weigh the evidence which may be offered to support it. *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

Thus, for the purposes of the Motion to Dismiss, the Court accepts as true all of the material allegations in the Complaint filed by Enron. As such, most of the following facts are taken from the Complaint and accepted as true solely for the purposes of the motions to dismiss.

*FACTS*

Prior to filing for bankruptcy protection, in approximately December 1999, Enron monetized a portfolio of loan facilities owned by Enron North America Corp. ("ENA") and certain other Enron affiliates in a transaction known as a "collateralized loan obligation" ("CLO"). In connection with the CLO transaction, several entities were formed including a limited partnership, ENA CLO I Holding Company I L.P. ("CLO Holding"), and a trust, ENA CLO I Trust (the"CLO Trust"). As part of the CLO transaction, the contents of the portfolio of loan facilities were transferred to CLO Holding. The CLO Trust issued several classes of notes with maturities in 2014 (the "CLO Notes"). The proceeds of the CLO Notes were used to purchase the sole limited partnership interest in CLO Holding. Security for the Notes was provided by CLO Trust's limited partnership interest in CLO Holding, without recourse to CLO Trust or any other entity. Thus, the source of funds from which the CLO Trust could make payments to holders of the CLO Notes was CLO Holding. Repayment of the CLO Notes was dependent upon payment to CLO Holding by the obligors of the collateralized loans included in the portfolio of loan facilities.

In 2000, the value of CLO Holding's portfolio of loan facilities declined and in September 2000, Enron provided credit support for the Notes by granting a "put option" to CLO Holding. Pursuant to the put option, Enron was obligated to purchase from CLO Holding up to $113 million in defaulted portfolio loans. Enron did not receive a premium payment in return for

6

its granting of the put option. In December 2000 and, again, in June 2001, CLO Holding exercised its rights pursuant to the put option. CLO Holding transferred the funds received as a result of exercising its rights under the put option (the "Put Transfers") to the CLO Trust. In turn, the CLO Trust transferred the Put Transfers to certain holders of CLO Notes, including Caisse de Depot and Australia Bank. In exchange, these subsequent transferees of the Put Transfers transferred their CLO Notes to Enron.[2]

As previously noted, Enron commenced this adversary proceeding seeking to avoid and recover the Put Transfers. Relevant to the instant Defendants, in Count II of the Complaint, Enron alleges that the Put Transfers are avoidable, pursuant to section 548(a)(1)(B) of the Bankruptcy Code, as constructive fraudulent transfers of the Debtor's interest in property and recoverable from the Defendants as mediate transferees pursuant to section 550(a)(2). In Count III of the Complaint Enron seeks disallowance, pursuant to section 502(d) of the Bankruptcy Code, of any other claims against the Debtors asserted by the Defendants, as recipients of avoidable transfers.

The Defendants filed their motions to dismiss in which they seek to dismiss Counts II and III of the Complaint as filed against them alleging that as mediate, or subsequent, transferees of the Put Transfers, the transfers of a debtor's interest in property must be avoided under the Bankruptcy Code against the initial transferee prior to Enron seeking recovery from them pursuant to section 550(a) of the Bankruptcy Code. In addition, the Defendants argue that

---

[2]The portfolio of loan facilities continued to decline in value as a result of payment defaults on the underlying loans. In spring 2001, Enron purchased all of the then-outstanding CLO Notes from certain of the other defendants in this adversary proceeding at face value plus accrued interest. Thus, the price Enron paid to purchase the CLO Notes was above market value. In exchange, those defendants transferred their CLO Notes to Enron or ENA through certain intermediaries. As previously noted, those transactions involving particular intermediaries were addressed in a separate Opinion issued by the Court.

7

because the avoidance claims fail, therefore, Count III of the Complaint seeking disallowance,

pursuant to 11 U.S.C. § 502(d), of any other claims of the Defendants against the Debtors also

must be dismissed as that count is derivative of and dependent upon the viability of the claims

based upon avoidance.

Enron opposes the motions to dismiss the Complaint arguing that they may seek recovery

from mediate transferees regardless of whether they have first avoided the transfers as to the

initial transferee. Rather, Enron contends that it must merely establish that the transfers are

avoidable.

A hearing on this matter was held on April 27, 2006.

### Discussion

Section 550(a) of the Bankruptcy Code provides, in relevant part, that

> Except as otherwise provided in this section, to the extent that a transfer is
> avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the
> trustee may recover, for the benefit of the estate, the property transferred, or, if
> the court so orders, the value of such property, from - -
>
> (1) the initial transferee of such transfer or the entity for whose benefit such
> transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

The alleged fraudulent transfers at issue stem from payments made pursuant to CLO

Holding's exercises of the put option. The Defendants assert that they were two-steps removed

from the alleged fraudulent transfers and, therefore, were mediate transferees. After CLO

Holding exercised the put option, Enron paid the funds to CLO Holding as initial transferee. In

turn, CLO Holding transferred the funds to the CLO Trust, an immediate transferee. The CLO

8

Trust then distributed those funds to holders of the CLO Notes, including the Defendants. As mediate transferees, the Defendants argue that pursuant to the express terms of section 550(a), recovery is only available from them after Enron avoids the initial transfer of the Debtor's interest in property. Alternatively, the Defendants argue that to recover, at a minimum, Enron must be able to show that the transfer is avoidable which it cannot do here because the statute of limitations for avoiding the transfer against the initial transferee has run.

The Defendants argue that their interpretation of section 550(a)  is further bolstered by the fact that there are two separate statutes of limitations for avoidance and recovery.  Section 546(a) sets forth the statute of limitations for an avoidance action and section 550(f) sets forth the limitation period for a recovery.  Specifically, the limitation in section 550(f) allows one year to pursue recovery, and that period starts to run once the trustee avoids the transfer sought to be recovered.  Thus, the Defendants argue, if there is no avoidance prior to seeking recovery, there is no starting point for the limitations period for recovery to commence.

Enron argues that it only need establish that a transfer to an initial transferee was avoidable under section 548(a)(1)(B) of the Bankruptcy Code to enable it to recover the transfer from a subsequent transferee without naming the initial transferee as a party.  Alternatively, Enron argues that if the initial transferee is required to be named as a defendant, equitable considerations warrant not enforcing that requirement in the instant matter because the initial transferee was dissolved.

In countering Enron's request that equity intervene, the Defendants argue that Enron's failure to bring an avoidance action against the initial transferee resulted from its own decision not to commence such action prior to the running of the statute of limitations.  In addition, to the

9

extent Enron argues, in equity, that such action could not be brought within the statute of limitations because CLO Holdings, as the initial transferee, was dissolved, the Defendants assert that Enron itself caused the dissolution.

Section 550(a) permits recovery only *to the extent that a transfer is avoided.* 11 U.S.C. § 550(a). The language of the statute is plain and requires that prior to actual recovery by a subsequent transferee, the transfer of a debtor's interest in property to the initial transferee must be avoided. *Weinman v. Simons (In re Slack-Horner Foundries Co.)*, 971 F.3d 577, 580 (10th Cir. 1992).

Enron cites *IBT Int'l Inc. v. Northern (In re Int'l Admin. Svcs., Inc.)*, 408 F.3d 689 (11th Cir. 2005), to argue that an action does not have to first be brought against the initial transferee prior to seeking recovery from subsequent transferees. In concluding that a prior action against the initial transferee was not required, the *Int'l Admin. Svcs.* court addressed its concern that "any streetwise transferee would simply re-transfer the money or asset in order to escape liability" thereby resulting in an endless chain of transfers. *Id.* at 704. The initial solution to this concern proposed by the *Int'l Admin. Svcs.* court was to "simultaneously avoid a transfer under § 544 and seek recovery under § 550." Notwithstanding this proposal, which would still result in the avoidance of the transfer prior to the actual recovery, the *Int'l Admin. Svcs.* court cited *Kendall v. Sorani (In re Richmond Produce Co., Inc.)*, 195 B.R. 455 (N.D. Cal. 1996) to support the proposition that a transfer could be recovered from a mediate transferee, irrespective of whether the initial transferee had been sued. *Int'l Admin. Svcs.*, 408 F.3d at 706, *citing*, *Richmond Produce*, 195 B.R. at 463. Thus, the *Int'l Admin. Svcs.* court concluded that a plaintiff was permitted to bypass the initial transferee and collect from subsequent transferees without

first establishing the liability of the initial transferee.

The plain language of section 550(a) of the Bankruptcy Code, however, provides that recovery may be sought "to the extent that a transfer is *avoided* under [the avoidance sections]". Thus, a prerequisite to the ultimate recovery is the actual avoidance of a transfer. Further support is found in the fact that in those sections of the Code where it was intended that a court merely determine whether a transfer was avoidable, the term "avoidable" is utilized. *See Enron Corp. v. Avenue Special Situations Fund II, LP. (In re Enron Corp.)*, 340 B.R. 180, 190 (Bankr. S.D.N.Y. 2006) (concluding that a debtor is not required to obtain a judicial order concerning the avoidance action upon which a Bankruptcy Code section 502(d) disallowance is predicated prior to seeking disallowance because section 502(d) refers to *avoidable* transfers rather than avoided transfers).

Enron cites to the legislative history of section 550 to argue that the "to the extent that" language merely incorporates the safe harbor protections and recognizes that transfers may be avoided in part and that only the avoided portion is recoverable. If this were the sole intent, this purpose would have been accomplished by providing "to the extent that a transfer is *avoidable*." However, the plain language requires avoidance prior to actual recovery. Thus, as articulated by the Defendants, although a portion of a transfer may be protected by the safe harbor provided by section 546(e) of the Bankruptcy Code, that portion of a transfer that is not protected must be avoided before recovery can be sought from a subsequent transferee.[3]

---

[3]The Court recognizes that there has been some disagreement concerning the proper construction of the phrase "to the extent that a transfer is avoided under . . . " and, in particular, the phrase "is avoided." The Court finds that the phrase "is avoided" is a combination of the present tense of the verb "to be" and the adjective "avoided." As an adjective, "avoided" is formed from the past participle of the verb "to avoid," the same adjective form found in the adjectives "fried," "canned," "wrecked," etc. In this context, "avoided" means "having the quality of having been avoided." Therefore, the Court concludes that the trustee must avoid the transfer before damages

11

In this respect it is important to note that the Code separates the concepts of avoiding a transfer and recovering that transfer. *Savage & Assocs, P.C. v. BLR Svcs. SAS (In re Teligent, Inc.)*, 307 B.R. 744, 749 (Bankr. S.D.N.Y. 2004). *See also* The House and Senate Report to the Reform Act of 1978 to the effect that "section 550 prescribes the liability of a transferee of an avoided transfer, and enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." HR Rep No. 595, 95th Cong, 1st Sess 375-376 (1977); S Rep No. 989, 95th Cong, 2d Sess 90 (1978). Indeed, as noted by the *Teligent* court, "avoidance is merely a determination that the transfer was improper." *Teligent*, 307 B.R. at 749. Thus, it is first necessary to establish that the transfer was improper and then to establish from whom one may recover it pursuant to § 550(a). *Id.* The language in section 550(a) referencing "to the extent that a transfer is avoided" applies not only prior to recovery from subsequent transferees but also prior to recovery from the initial transferee. Thus, prior to recovery even from the initial transferee, it is necessary to establish that the transfer was improper under one of the Bankruptcy Code avoidance sections and to determine the amount of that liability. It is not clear how a determination can be made concerning the propriety of the transfer or the amount of the liability on the initial transfer absent the participation of the initial transferee. That is because it is not clear who would have knowledge of the defenses available to the initial transferee. Upon consideration of the initial transferee's defenses and once the amount of its liability is established, that amount can be sought from any of the transferees, including subsequent

---

may be recovered.

Even if, as found by one court, the legislative history suggests that the term should be read in the present perfect tense, *see Crafts Plus+, Inc. v. Foothill Capital Corp., In re Crafts Plus+, Inc.*, 220 B.R. 331, 335 (Bankr. W.D. Tex. 1998), then it would be read as "has been avoided," and this would still result in an interpretation that necessitates the actual avoidance prior to recovery from a transferee.

transferees, subject to any of their additional defenses. Nevertheless, while avoidance must be established before recovery is effectuated, the two actions may be brought simultaneously as long as the recovery is not effected until the transfer has been established to be improper.[4]

Further, allowing Enron to merely show that the initial transfer was avoidable prior to recovery rather than actually establishing that it were avoided would lead to an absurd result in the context of the two separate statutes of limitations found in sections 546(a) and 550(f). As previously noted, section 550(a) applies to the recovery from the initial transferee as well as to recovery from subsequent transferees. Section 550(f)[5] provides the applicable statute of limitations for recovery actions under section 550(a). Thus, if it were only necessary to establish that the transfer was avoidable, then the section 546(a)[6] statute of limitations for commencing an avoidance action would be rendered nugatory; as the trustee could still recover even from the initial transferee under the "avoidable" theory even though an avoidance action had not been commenced within the requisite two-year statute of limitations.[7]

---

[4]Moreover, once it is established that the initial transfer was improper, it appears - although the Court does not reach this issue - that recovery can be sought from the initial or subsequent transferees, in any order, as long as the total recovery does not exceed the amount of damages.

[5]Section 550(f) of the Bankruptcy Code provides

(f) An action or proceeding under this section may not be commenced after the earlier of - -
    (1) one year after the avoidance of the transfer on account of which recovery
    under thsi section is sought; or
    (2) the time the case is closed or dismissed.

[6]Section 546(a) of the Bankruptcy Code provides

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of - -
(1) the later of - -
    (A) 2 years after the entry of the order for relief; or
    (B) 1 year after the appointment or election of the first trustee under section 702,
    1104, 1163, 1202, or 1302 of this title if such appointment or such election
    occurs before the expiration of the period specified in subparagraph (A); or
(2) the time the case is closed or dismissed.

13

Similarly, Enron's reading of section 550(a) would render the avoidance provisions nugatory, in practice even if not in theory, if one considers that interpretation in light of the statute of limitations provisions of section 550(f). If the transfer only need be "avoidable" under section 550(a) for recovery, a trustee likely would not prosecute an avoidance action directly under section 544, 545, 547, 548, 549, 553(b), or 724(a) for the simple reason that to do so would implicate an additional procedural burden - the statute of limitations provision of section 550(f)(1) - not ameliorated by a potential benefit. That is, if the trustee's pursuit of an avoidance action under those sections made the statute of limitations provision of section 550(f)(1) operative, and if under section 550(a) no such avoidance action need be brought prior to recovery under that section, then the trustee would generally not bring an avoidance action, as any such action would be unnecessary and only serve to constrain the trustee. In addition, if the trustee were not required to bring an avoidance action prior to the recovery action, there would effectively be no statute of limitations under section 550(f). If section 550(f)(1) did not apply because the trustee did not bring a prior avoidance action, the only limitation on the recovery action under section 550(a) would be section 550(f)(2). As the trustee generally determines when to seek the closing of a case, there would be in practice no statute of limitations to prevent the trustee from bringing recovery actions. The Court cannot conclude that the brief language of section 550(a) was intended to thus render the avoidance and statute of limitations provisions ineffective and meaningless. The Court notes, however, that section 546(a) would not be rendered nugatory if "avoidable" is read to include the defense of the statute of limitations. The Defendants raised this interpretation in the alternative in their briefs, asserting that the transfer at issue here is not "avoidable" because the section 546(a) statute of limitations has expired. The

14

Court recognizes that such a reading would ameliorate the concerns just expressed. However, this reading is both logically strained and legally incorrect. A statute of limitations provides a procedural defense to an action but does not resolve in any way the merits of that action. Thus, a transfer that could be avoided but for section 546(a) is nonetheless avoidable even though the trustee would be barred from bringing an avoidance action under sections 544, 545, 547, 548, or 553. Therefore, the Court does not agree that the expiration of the statute of limitations would render an otherwise avoidable transfer not avoidable.

Moreover, the distinct use of the term *avoided* in section 550(a) of the Bankruptcy Code and the term *avoidable* in section 502(d) is consistent with the differing purposes of the two sections. The use of the term avoided in section 550(a) requires that a transfer be avoided, i.e., that a transfer be found to have been improper and to determine the amount of the liability before one can rightfully seek to recover it from any party. On the other hand, the purpose of section 502(d) is to ensure that a creditor not receive any distribution from the estate prior to paying any amount owed to the estate and to prevent the estate from taking on the added burden of having to collect from a creditor. If the estate had to actually avoid a transfer before it could temporarily disallow a claim under section 502(d), it would then subject itself to the added burden of collecting any distribution made, if and when it ultimately avoided the improper transfer.

Finally, with respect to Enron's equitable argument, the Court finds that even if equitable considerations were sufficient to eliminate the statutory requirement that the transfer first be avoided - an issue which the Court does not reach - the equitable arguments presented by Enron would not warrant such relief under the circumstances presented here for the reasons advanced by the Defendants, including the fact that Enron had opportunity to bring the avoidance action

15

against the initial transferee and, further, that Enron, itself, caused the dissolution of the initial transferee, making such avoidance action against the initial transferee impossible.

*Conclusion*

An action to establish that a transfer is improper under one of the avoidance sections of the Bankruptcy Code may be brought simultaneously with an action, pursuant to section 550(a) of the Bankruptcy Code, to recover that improper transfer. However, the plain language of section 550(a) requires that the transfer first be established as improper and avoided under one of the avoidance sections of the Bankruptcy Code prior to actual recovery from any transferee. Thus, because the Complaint does not seek to initially avoid the transfer as against the initial transferee, the Complaint seeking recovery from the Defendants is properly dismissed as against them.

Counsel for Caisse is to settle an order consistent with this Opinion.


Dated: New York, New York
May 18, 2006

                                    **s/Arthur J. Gonzalez**
                                    UNITED STATES BANKRUPTCY JUDGE

16

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Case No. 01-16034 (AJG) |
|     ENRON CORP., *et al.,* | Chapter 11 |
|          Debtors. | Jointly Administered |
| ENRON CORP., | |
|          Plaintiff, | |
|     - against - | Adversary Proceeding<br>No. 03-93370 (AJG) |
| INTERNATIONAL FINANCE CORP., *et al.,* | |
|          Defendants. | |

## ORDER GRANTING MOTIONS TO DISMISS BY CAISSE DE DEPOT ET PLACEMENT DU QUEBEC AND NATIONAL AUSTRALIA BANK

Upon the motions to dismiss filed by Caisse de Depot et Placement du

Quebec ("CDP") and National Australia Bank ("NAB"), the Court having considered all

declarations, requests for judicial notice and other papers filed in support of or opposition

to the motions to dismiss, and the oral arguments of all counsel presented at the hearing

on April 27, 2006; and upon the Court's findings of fact and conclusions of law set forth

in its Opinion Granting Defendants' Motions to Dismiss Complaint dated May 18, 2006,

all of which are incorporated by reference as though fully set forth herein; and due and

proper notice of this order having been given to all parties;

**NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT**:

1.    The motions to dismiss by CDP and NAB be, and hereby are, GRANTED;

2.    All claims in this adversary proceeding against CDP and NAB, be and hereby are, dismissed with prejudice;

3.    That this order shall take effect immediately upon its entry; and

4.    That pursuant to Fed. R. Bankr. P. 7054 and Fed. R. Bankr. P. 9021, the Clerk of this Court is directed to enter forthwith a final judgment dismissing this adversary proceeding with prejudice as to CDP and NAB.

Dated: New York, New York
       June 5, 2006


By: **s/Arthur J. Gonzalez**
    Arthur J. Gonzalez
    UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
In re:                              :
                                    :           Chapter 11
Enron Corp., *et al.*,              :           Case No. 01-16034 (AJG)
                                    :
                Debtor.             :
                                    :
------------------------------------X
Enron Corp.,                        :
                Plaintiff,          :
                                    :           A.P. No. 03-93370 (AJG)
        against                     :
                                    :
International Finance Corp., *et al.*, :
                                    :           BC 06.0468
                Defendants.         :
------------------------------------X

## JUDGMENT

This action came on for hearing before the Court, Honorable Arthur J. Gonzalez, Bankruptcy Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

It is **Ordered and Adjudged**,

That the plaintiff take nothing and that the action be dismissed on the merits with respect to the defendants, Caisse de Depot et Placement du Quebec and National Australia Bank.

Dated at New York, New York, this Ninth day of August, 2006.

Kathleen Farrell-Willoughby
Clerk of Court

By: /s/ Anatin Rouzeau
Deputy Clerk

**EXHIBIT D**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                              :
In re:                                        :    Chapter 11
                                              :
ENRON CREDITORS                               :    Case No. 01-16034 (AJG)
RECOVERY CORP., et al,                        :    (Post Confirmation)
                                              :    Jointly Administered
            Reorganized Debtors.              :
                                              :
------------------------------------------------------------x
                                              :
ENRON CREDITORS RECOVERY CORP.,               :    Adv. Pro. No. 03-93370 (AJG)
                                              :
            Plaintiff,                         :
                                              :
      - against -                             :
                                              :    BC 07.0089
INTERNATIONAL FINANCE CORP, et. al.,          :
                                              :
            Defendants.                       :
                                              :
------------------------------------------------------------x

## JUDGMENT

       Enron Creditors Recovery Corp. and Berkeley Capital Management, LLC having entered into the Stipulation and Order Dismissing Action Against Berkeley Capital Management, LLC, and Enron Creditors Recovery Corp. and CDC Investment Management Corp. having entered into the Stipulation and Order Vacating Default Judgment and Dismissing Action against CDC Investment Management Corp.,

       It is **Ordered and Adjudged,**

       That the plaintiff take nothing and that the action be dismissed on the merits with respect to the defendants, Berkeley Capital Management, LLC and CDC Investment Management Corp., with each party to bear its own costs and expenses.

Dated at New York, New York this 18th day of June 2007.

Kathleen Farrell-Willoughby
Clerk of Court

By:  /s/ Anatin Rouzeau
Deputy Clerk
