21

BANKRUPTCY REFORM ACT OF 1978
P.L. 95-598

## HOUSE REPORT NO. 95-595

[page 1]

The Committee on the Judiciary, to whom was referred the bill (H.R. 8200) to establish a uniform law on the subject of Bankruptcies, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass. The committee amendment strikes out all after the enacting clause and inserts a new text, which appears in italic type in the reported bill.

The amendment is an amendment in the nature of a substitute for the bill, incorporating six substantive amendments adopted by the committee, and numerous technical, drafting, and style changes to the bill. A detailed description of the six amendments adopted during committee deliberations is incorporated into the description of the bill contained in this Report, which addresses itself to the amendments in the nature of a substitute. Briefly summarized, they are as follows:

The first amendment provides an alternative to the United States trustee in the appointment of private standing chapter 13 trustees. The amendment permits United States trustees, with the approval of the Attorney General, to employ private standing trustees or public assistant United States trustees to serve in chapter 13 cases.

The second amendment limits the consumer priority in § 507(5) of proposed title 11 to $2,400 per individual.

The third amendment changes section 303(b) of the bill to delete the repealer of section 4(e) of the Perishable Agricultural Commodities Act and replace the repealer with an amendment to section 4(e) of that Act to allow suspension of a license in the event of bankruptcy if the circumstances of the bankruptcy warrant. This changes current

[page 2]

law, which does not so limit the Secretary's discretion in determining whether to suspend the license in the event of bankruptcy.

The fourth amendment, agreed to by roll call vote of 18 to 13, struck certain special retirement provisions for transition service by bankruptcy judges, which were contained in sections 408 and 409 of the bill.

The fifth amendment places a $100,000 limit on contributions to the Referees' Salary and Expense Fund in chapter XI cases.

The final amendment, which was incorporated into the amendment in the nature of a substitute and not considered separately, makes the four special tax provisions contained in the proposed bankruptcy code (sections 346, 728, 1146, and 1331) inapplicable to Federal taxes.

## INTRODUCTION

### I. HISTORY

In 1970, Congress created the Commission on the Bankruptcy Laws of the United States to study and recommend changes in the bankruptcy laws.[1] The Commission became operational in June, 1971, and filed its final report with the Congress on July 30, 1973.[2] Its report was in two parts. Part I contained the Commission's findings and recommendations. Part II contained a draft of a bill to implement those recommendations. Don Edwards, Chairman of the Subcommittee on Civil and Constitutional Rights and a Member of the Commission, and

BANKRUPTCY REFORM ACT OF 1978
P.L. 95-598
[page 375]

cause different actions are required under each version in order to make a security agreement effective between the parties.

Subsection (f) creates a presumption of insolvency for the 90 days preceding the bankruptcy case. The presumption is as defined in Rule 301 of the Federal Rules of Evidence, made applicable in bankruptcy cases by sections 253 and 254 of the bill. The presumption requires the party against whom the presumption exists to come forward with some evidence to rebut the presumption, but the burden of proof remains on the party in whose favor the presumption exists.

§ 548. *Fraudulent transfers*

This section is derived in large part from section 67d of the Bankruptcy Act. It permits the trustee to avoid transfers by the debtor in fraud of his creditors. Its history dates from the statute of 13 Eliz. c. 5 (1570).

The trustee may avoid fraudulent transfers or obligations if made with actual intent to hinder, delay, or defraud a past or future creditor. Transfers made for less than a reasonably equivalent consideration are also vulnerable if the debtor was or thereby become insolvent, was engaged in business with an unreasonably small capital, or intended to incur debts that would be beyond his ability to repay.

The trustee of a partnership debtor may avoid any transfer of partnership property to a partner in the debtor if the debtor was or thereby became insolvent.

If a transferee's only liability to the trustee is under this section, and if he takes for value and in good faith, then subsection (c) grants him a lien on the property transferred, or other similar protection.

Subsection (d) specifies that for the purposes of the fraudulent transfer section, a transfer is made when it is valid against a subsequent bona fide purchaser. If not made before the case, it is considered made immediately before the case. Subsection (d) also defines "value" to mean property, or the satisfaction or securing of a present or antecedent debt, but does not include an unperformed promise to furnish support to the debtor or a relative of the debtor.

§ 549. *Postpetition transactions*

This section modifies section 70d of current law. It permits the trustee to avoid transfers of property that occur after the commencement of the case. The transfer must either have been unauthorized, or authorized under a section that protects only the transferor. Subsection (b) protects "involuntary gap" transferees to the extent of any value (including services, but not including satisfaction of a debt that arose before the commencement of the case), given after commencement in exchange for the transfer. Notice or knowledge of the transferee is irrelevant in determining whether he is protected under this provision.

§ 550. *Liability of transferee of avoided transfer*

Section 550 prescribes the liability of a transferee of an avoided transfer, and enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee. Subsection (a) permits the trustee to recover from the initial transferee of an avoided

6331

LEGISLATIVE HISTORY
P.L. 95-598

[page 376]

transfer or from any immediate or mediate transferee of the initial transferee. The words "to the extent that" in the lead in to this subsection are designed to incorporate the protection of transferees found in proposed 11 U.S.C. 549(b) and 548(c). Subsection (b) limits the liability of an immediate or mediate transferee of the initial transferee if such secondary transferee takes for value, in good faith and without knowledge of the voidability of the transfer. An immediate or mediate good faith transferee of a protected secondary transferee is also shielded from liability. This subsection is limited to the trustee's right to recover from subsequent transferees under subsection (a)(2). It does not limit the trustee's rights against the initial transferee under subsection (a)(1). The phrase "good faith" in this paragraph is intended to prevent a transferee from whom the trustee could recover from transferring the recoverable property to an innocent transferee, and receiving a retransfer from him, that is, "washing" the transaction through an innocent third party. In order for the transferee to be excepted from liability under this paragraph, he himself must be a good faith transferee. Subsection (c) is a further limitation on recovery. It specifies that the trustee is entitled to only one satisfactory, under subsection (a), even if more than one transferee is liable.

Subsection (d) protects good faith transferees, either initial or subsequent, to the extent of the lesser of the cost of any improvement the transferee makes in the transferred property and the increase in value of the property as a result of the improvement. Paragraph (2) of the subsection defines improvement to include physical additions or changes to the property, repairs, payment of taxes on the property, payment of a debt secured by a lien on the property, discharge of a lien on the property, and preservation of the property.

§ 551. *Automatic preservation of avoided transfer*

This section is a change from present law. It specifies that any avoided transfer is automatically preserved for the benefit of the estate. Under current law, the court must determine whether or not the transfer should be preserved. The operation of the section is automatic, unlike current law, even though preservation may not benefit the estate in every instance. A preserved lien may be abandoned by the trustee under proposed 11 U.S.C. 554 if the preservation does not benefit the estate. The section also preserves for the benefit of the estate any lien that is void under section 506(d). The section as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided.

§ 552. *Postpetition effect of security interest*

Under the Uniform Commercial Code, Article 9, creditors may take security interests in after-acquired property. This section governs the effect of such a prepetition security interest in postpetition property. It applies to all security interests as defined in section 101 of the bankruptcy code, not only to U.C.C. security interests.

As a general rule, if a security agreement is entered into before the case, then property that the estate acquires is not subject to the security interest created by the security agreement. Subsection (b) provides the only exception. If the security agreement extends to proceeds, product, offspring, rents, or profits of property that the debtor had