22

BANKRUPTCY REFORM ACT OF 1978
P.L. 95-598

# BANKRUPTCY REFORM ACT OF 1978

*P.L. 95-598, see page 92 Stat. 2549*

House Report (Judiciary Committee) No. 95-595, Sept. 8, 1977
[To accompany H.R. 8200]

Senate Report (Judiciary Committee) No. 95-989, July 14, 1978
[To accompany H.R.S. 2266]

Cong. Record Vol. 124 (1978)

## DATES OF CONSIDERATION AND PASSAGE

House February 1, September 28, October 6, 1978

Senate September 7, 22, October 5, 1978

The House bill was passed in lieu of the Senate bill after amending its language to contain much of the text of the Senate bill. The Senate Report (this page) and the House Report (p. 5963) are set out.

## SENATE REPORT NO. 95-989

[page 1]

The Committee on the Judiciary, to which was referred the bill, S. 2266, to establish a uniform law on the subject of bankruptcies, having considered the same, reports favorably thereon and recommends that the bill in the nature of a substitute do pass. The committee amendment strikes out all after the enacting clause and inserts a new text, which appears in italic type in the reported bill.

### PURPOSE OF THE BILL

The purpose of the bill is to modernize the bankruptcy law by codifying a new title 11 that will embody the substantive law of bankruptcy and to make extensive amendments to title 28, Judiciary and Judicial Procedure, that will encompass the structure of the revised bankruptcy courts.

### PURPOSE OF THE AMENDMENT

The amendment in the nature of a substitute reflects, testimony received by the committee and the changes that resulted. The purpose of the revised bill remains to modernize the bankruptcy law.

### INTRODUCTION

In 1970, Congress created the Commission on the Bankruptcy Laws of the United States to study and recommend changes in bankruptcy laws. The Commission became operational in June 1971, and filed its final report with Congress on July 30, 1973. Its report was in two parts. Part I contained the Commission's findings and recommendations.

LEGISLATIVE HISTORY
P.L. 95–598
[page 90]

the case, it is considered made immediately before then. Subsection (d) also defines "value" to mean property, or the satisfaction or securing of a present or antecedent debt, but does not include an unperformed promise to furnish support to the debtor or a relative of the debtor.

*Section 549. Postpetition transactions*

This section modifies section 70d of current law. It permits the trustee to avoid transfers of property that occur after the commencement of the case. The transfer must either have been unauthorized, or authorized under a section that protects only the transferor. Subsection (b) protects "involuntary gap" transferees to the extent of any value (including services, but not including satisfaction of a debt that arose before the commencement of the case), given after commencement in exchange for the transfer. Notice or knowledge of the transferee is irrelevant in determining whether he is protected under this provision.

*Section 550. Liability of transferee of avoided transfer*

Section 550 prescribes the liability of a transferee of an avoided transfer, and enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee. Subsection (a) permits the trustee to recover from the initial transferee of an avoided transfer or from any immediate or mediate transferee of the initial transferee. The words "to the extent that" in the lead in to this subsection are designed to incorporate the protection of transferees found in proposed 11 U.S.C. 549(b) and 548(c). Subsection (b) limits the liability of an immediate or mediate transferee of the initial transferee if such secondary transferee takes for value, in good faith and without knowledge of the voidability of the transfer. An immediate or mediate good faith transferee of a protected secondary transferee is also shielded from liability. This subsection is limited to the trustee's right to recover from subsequent transferees under subsection (a)(2). It does not limit the trustee's rights against the initial transferee under subsection (a)(1). The phrase "good faith" in this paragraph is intended to prevent a transferee from whom the trustee could recover from transfering the recoverable property to an innocent transferee, and receiving a retransfer from him, that is, "washing" the transaction through an innocent third party. In order for the transferee to be excepted from liability under this paragraph, he himself must be a good faith transferee. Subsection (c) is a further limitation on recovery. It specifies that the trustee is entitled to only one satisfactory, under subsection (a), even if more than one transferee is liable.

Subsection (d) protects good faith transferees, either initial or subsequent, to the extent of the lesser of the cost of any improvement the transferee makes in the transferred property and the increase in value of the property as a result of the improvement. Paragraph (2) of the subsection defines improvement to include physical additions or changes to the property, repairs, payment of taxes on the property, payment of a debt secured by a lien on the property, discharge of a lien on the property, and preservation of the property.

Subsection (e) establishes a statute of limitations on avoidance by the Trustee. The limitation is one year after the avoidance of the transfer or the time the case is closed or dismissed, whichever is earlier.