§ 550 supports the conclusion that actual avoidance of an initial transfer is required before recovery is sought from subsequent transferees."); *Contemp. Indus. Corp.* v. *Frost (In re Contemp. Indus. Corp.)*, 2001 WL 34630639, *8 (Bankr. D. Neb. Feb. 14, 2001) ("The statutory language requires the actual avoidance of the initial transfer before recovery may be sought from a subsequent transferee."); *see also Brandt* v. *Hicks, Muse & Co., Inc. (In re Healthco Int'l)*, 195 B.R. 971, 981-82 (Bankr. D. Mass. 1996) (noting, as section 550 relates to section 546(e), that "[i]f the initial transferee makes a second transfer, the property may be recovered from the later transferee only if the 'transfer is avoided' with respect to the 'initial transferee'").

Enron now appears to have abandoned its principal argument below and implicitly concedes that section 550(a) requires an "avoided," not "avoidable" transfer.[4] (Enron Br. pp. 1-22.)

## II.
### TO AVOID A FRAUDULENT TRANSFER THE TRUSTEE MUST STATE A SEPARATE CAUSE OF ACTION UNDER AN AVOIDANCE SECTION OF THE CODE WHICH MUST PRECEDE RECOVERY UNDER SECTION 550(a)

Having determined that section 550 requires an "avoided" and not "avoidable" transfer, Judge Gonzalez next addressed the relationship between avoidance and recovery. *Enron*, 343 B.R. at 82. He stated that "it is first necessary to establish that

---

[4]    Enron notes in passing that "[t]he [Decision] also focused on the difference between the term "avoided" contained in section 550(a) and "avoidable" contained in other provisions of the Bankruptcy Code (*see* 11 U.S.C. § 502(d)). 343 B.R. at 80-82 & n.3." (Enron's Br. at p. 10 n.7.). Judge Gonzalez's focus should have come as no surprise to Enron, given that Enron built nearly its entire argument before him on the contention that the word "avoided" in section 550(a) really means "avoidable."

the transfer was improper and then to establish from whom one may recover it pursuant to § 550(a)." *Id.*; *cf. Securities Investor Protection Corp.* v. *Stratton Oakmont, Inc.*, 234 B.R. 293, 312 (Bankr. S.D.N.Y. 1999) ("Once the grounds for setting aside a transfer have been shown, the Trustee faces the second hurdle of establishing a means of recovery under § 550(a)."). He went on to say that "prior to recovery, even from the initial transferee, it is necessary to establish that the transfer was improper under one of the Bankruptcy Code avoidance sections and to determine the amount of that liability." *Enron*, 343 B.R. at 82; *cf. CEPA Consulting, Ltd.* v. *New York Nat'l Bank (In re Wedtech Corp.)*, 165 B.R. 140, 145 (Bankr. S.D.N.Y. 1994) (holding that plaintiff could not recover from initial transferee without first proceeding under section 547 against officers alleged to have benefited from the transfer). Finally, he observed that "... [w]hile avoidance must be established before recovery is effectuated, the two actions may be brought simultaneously as long as the recovery is not effected until the transfer has been established as improper." *Enron*, 343 B.R. at 82; *cf. (In re Trans-End Tech., Inc.)*, 230 B.R. at 104-05 ("[T]he plain language of § 550 as well as its legislative history support the conclusion that a transfer must be avoided, rather than shown to be merely avoidable, before recovery from any transferee can be accomplished.")

On the face of the Complaint, Enron has stated only two causes of action against Caisse and NAB -- one for the recovery of *avoidable* transfers under section 550(a)(2) of the Bankruptcy Code (the Second Cause of Action) and the other for the disallowance of any claims held by Appellees under section 502(d) of the Bankruptcy Code (the Third Cause of Action). (Complaint pp. 8, 10.)

The Complaint does not state an avoidance cause of action against the Appellees or any other party in respect of the challenged Put Payment transfers. (Complaint ¶¶ 1-61.) Rather, it requests a judgment on the Second Cause of Action (the recovery claim under 550(a)(2)) avoiding the Put Payment "pursuant to section 548(a)(1) of the Bankruptcy Code." (Complaint p. 11.) In other words, Enron seeks the remedy of avoidance under a statutory cause of action expressly limited to recovery. But section 550(a)(2) does not create a new way to avoid transfers as an ancillary remedy -- a sort of "section 548-lite" avoidance remedy -- separate and apart from the other avoidance provisions[5] of the Bankruptcy Code and separate and apart from the need under those provisions and the Bankruptcy Rules to state a separate claim against the proper defendants. *Compare* Fed R. Bankr. P. 7001(3) (adversary proceeding required "to determine the validity ... or extent of ... [an] interest in property"); with Fed.R. Bankr. P. 7001(1) (adversary proceeding required to recover money or property). The trustee may be entitled to a broad and flexible election of remedies, but the trustee can only select among those that Congress has authorized, as Congress has authorized them. *Norwest Bank Worthington* v. *Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").

The Bankruptcy Code's logical division between separate avoidance and recovery actions confirms that Congress did not intend to use section 550 to expand the trustee's rights under section 548. Section 550(a) unambiguously "enunciates the

---

[5] *See* 11 U.S.C. § 550(a) (citing sections 544, 545, 547, 548, 549, 553(b), 724(a)).

13

separation between two distinct remedies -- that of avoiding, versus that of recovering, a

transfer." H.R. Rep. No. 595, 95th Cong., 1st Sess. 375 (1977), *cited in* Enron Br. at p. 7;

*Suhar* v. *Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir. 2003) (to serving that the

remedies are provided in two different sections of the Code, and have separate statutes of

limitations); *cf. Green* v. *Bock Laundry Mach. Co.*, 490 U.S. 504, 524 (1989) (noting that

a general statutory provision does not govern if there is a more specific provision on

point).

   Not only are these two remedies distinct, but the recovery remedy remains

secondary to the avoidance remedy. *Williams* v. *Mortillaro (In re Resource, Recycling &*

*Remediation, Inc.)*, 314 B.R. 62, 69 (Bankr. W.D. Pa. 2004); *Frank* v. *McLain (In re Peet*

*Packing Co.)*, 233 B.R. 387, 397-98 (Bankr. E.D. Mich. 1999) (same); *see also Burns*,

322 F.3d at 427 (avoidance is a necessary but not sufficient condition for recovery); *Furs*

*by Albert & Marc Kaufman*, 2006 WL 3735621, at *8 (avoidance of the transfer under

section 544 is an essential element of the trustee's right to recover under section 550(a)).

Enron concedes as much, stating that "if section 548 did not empower a trustee to avoid a

transfer, section 550 -- describing from whom a transfer or its value may be recovered --

would never be in play." (Enron Br. p. 6.)

   Indeed, a recovery action under section 550(a) is available only if the

remedy of avoidance first proves inadequate. *Burns*, 322 F.3d at 427; 11 U.S.C. §

550(d). Avoidance, for example, will provide a complete remedy in and of itself, with no

need for a recovery cause of action under section 550(a)(2) where the trustee avoids a

non-possessory interest, such as an obligation of the debtor, or a lien. *Burns*, 322 F.3d at

14

427. Furthermore, the overall value that the trustee can recover is limited to the extent that the transfer has been avoided under the avoidance section. 11 U.S.C. § 550(a)); 124 Cong. Rec. H. 11,097 (Sept. 28, 1978), S 17414 (Oct. 6, 1978) (noting that "to the extent" in section 550 operates to limit the transferee's liability to the extent that a transferee is protected under a provision such as 548(c) because it gave value to the debtor), *cited in Peet Packing*, 233 B.R. at 398.

Because the availability of the recovery remedy depends on first obtaining the avoidance remedy and then establishing its inadequacy, it would be unreasonable to conclude that Congress intended to broaden the trustee's right to avoid transfers under section 548 indirectly through the recovery provision of section 550(a).

### III.
### ENRON NEEDED TO AVOID THE INITIAL TRANSFER AGAINST CLO HOLDING, THE INITIAL TRANSFEREE, THROUGH A SEPARATE CAUSE OF ACTION OR PROCEEDING UNDER SECTION 548(a)(1)(B)

After concluding that section 550(a) required an avoided, not avoidable transfer, and after concluding that avoiding a transfer required a separate action under one of the Bankruptcy Code's avoidance sections, Judge Gonzalez next turned to the matter of the necessary parties to an avoidance action on the facts before him. He stated:

> It is not clear how a determination can be made concerning the propriety of the transfer or the amount of the liability on the initial transfer absent the participation of the initial transferee. That is because it is not clear who would have knowledge of the defenses available to the initial transferee. Upon consideration of the initial transferee's defenses and once the amount of its liability is established, that amount can be sought from any of the transferees, including subsequent transferees.

15

*Enron*, 343 B.R. at 82.  Applying this reasoning to the facts of this case, he concluded:

> However, the plain language of section 550(a) requires that the transfer first be established as improper and avoided under one of the avoidance sections of the Bankruptcy Code prior to actual recovery from any transferee.  Thus, because the complaint does not seek to initially avoid the transfer as against the initial transferee, the Complaint seeking recovering from the Defendants [the Appellees] is properly dismissed as against them.

*Id.* at 84.

These two passages go to the heart of Enron's arguments on this appeal.  Indeed, Enron describes as the "sole question" on this appeal whether the trustee must first seek avoidance against the initial transferee.  (Enron Br. p. 2.)

Enron raises this "sole question" for the first time here.  It committed virtually all of its energy below to an entirely different "sole question" -- the distinction between "avoided" and "avoidable."  Its experienced counsel never raised the "sole question" in response to the arguments of Caisse and NAB on this very point.  (Mot. to Dismiss of Caisse pp. 5-8; Mot. to Dismiss of NAB pp. 5-7.)  Thus, before any consideration of the merits of Enron's various responses to the "sole question," this Court must first examine whether Enron has preserved the issue, for "it is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal."  *Greene* v. *United States*, 13 F.3d 577, 586 (2d Cir. 1994), *quoted in Allianz Ins. Co.* v. *Lerner*, 416 F.3d 109, 114 (2d Cir. 2005).  Though the rule is prudential rather than jurisdictional, *Sniado* v. *Bank Austria AG*, 378 F.3d 210, 213 (2d Cir. 2004) (per curium), no manifest injustice would result if this Court declined to consider this pre-existing but newly-asserted basis for reversing the Opinion below.

Enron's decision to put all of its eggs in the "avoided/avoidable" basket, and to leave unanswered the full range of Appellees' arguments, did not preclude Judge Gonzalez from considering those arguments, but it should preclude Enron from answering them now, rather than earlier. Enron could have easily made its arguments on section 548 in its response to the Appellees' motions to dismiss and at oral argument -- either contesting the need to avoid the Put Payment transfers against CLO Holding, the initial transferee, on a basis other than the one chosen ("avoided" means "avoidable"), or claiming statutory authorization to avoid the Put Payment transfers under section 548 against Appellees alone, as subsequent transferees. For these reasons, this Court should decline consideration of Enron's "sole question."

In any case, none of the multiple arguments that Enron raises on the new "sole question" are availing. Before turning to those arguments, though, we wish to elaborate a bit more on the soundness of Judge Gonzalez's conclusion that an avoidance action must include the initial transferee. The reasons are several.

First, while section 550 provides defenses to subsequent transferees, it provides no defenses to the initial transferee of the debtor's funds or property; section 550 treats the initial transferee as absolutely liable for transfers avoided under

17

section 548. 11 U.S.C. § 550(b)[6]; *Carol* v. *Tese-Milner (In re Red Dot Scenic, Inc.)*, 351

F.3d 57, 58 (2d Cir. 2003); *see also, e.g.*, *Christy* v. *Alexander & Alexander of New York,*

*Inc.* (*In re Finley, et al.*), 130 F.3d 52, 57 (2d Cir. 1997) (same); *Schaffer* v. *Las Vegas*

*Hilton Corp. (In re Video Depot, Ltd.)*, 127 F.3d 1195, 1197-99 (9th Cir. 1997) (The

"trustee's right to recover from the initial transferee is absolute."). Section 548, though,

provides defenses to the initial transferee, to the extent that the initial transferee gives

value to the debtor and takes in good faith. 11 U.S.C. § 548(c).[7] The allocation of

defenses between these two sections of the Bankruptcy Code -- section 548 (defenses for

the initial transferee); and section 550 (defenses only for subsequent transferees, but not

the initial transferee) --evinces Congress's intent that a proceeding to avoid a transfer

---

[6] Section 550(b) provides:

> The trustee may not recover under section (a)(2) of this
> section from--
>
> (1) a transferee that takes for value, including satisfaction
> or securing of a present or antecedent debt, in good faith,
> and without knowledge of the voidability of the transfer
> avoided; or
>
> (2) any immediate or mediate good faith transferee of such
> transferee.

[7]    Section 548(c) provides:

> Except to the extent that a transfer or obligation voidable
> under this section is voidable under section 544, 545, or
> 547 of this title, a transferee or obligee of such a transfer or
> obligation that takes for value and in good faith has a lien
> on or may retain any interest transferred or may enforce
> any obligation incurred, as the case may be, to the extent
> that such transferee or obligee gave value to the debtor in
> exchange for such transfer or obligation.

under section 548 always include the initial transferee. Having given the initial transferee the opportunity to assert defenses under section 548, Congress felt no need to give the initial transferee the ability to assert defenses in a recovery action under section 550. By contrast, the Code provides subsequent transferees affirmative defenses to recovery of an avoided transfer precisely because a subsequent transferee is not a proper defendant to the avoidance cause of action. 11 U.S.C. § 550(b). By imposing absolute, strict liability for recovery of an avoided transfer on an initial transferee, but not a subsequent transferee, Congress intended the trustee to pursue the initial transferee as a matter of course. *CF. Wedtech*, 165 B.R. at 145 (action could not proceed without officer beneficiaries of transfer because a determination under section 547 that officers had been preferred would subject them to absolute liability under 550(a) without the ability to assert any defenses).

Second, that Congress would presuppose the joinder of the initial transferee comes as no surprise, given the larger historical context of avoidance actions. It was "well settled that in a suit to annul a sale or any other transaction on the ground of fraud all who were parties to the transaction must be made parties to the suit." *Emerson* v. *Shirley*, 175 So. 909, 910 (La. 1937); *Graham Grocery Co. et al.* v. *Chase et al.*, 84 S.E. 785 (W. Va. 1915) ("The object of the suit is to get rid of a fraudulent conveyance. The conveyance is the wrong complained of, and nobody but the grantor and grantee are interested in this question."); JOHN W. SMITH, LL.D., THE EQUITABLE REMEDIES OF CREDITORS IN RELATION TO FRAUDULENT CONVEYANCES, TRANSFERS, MORTGAGES, JUDGMENTS, AND ASSIGNMENTS 79 (1899) (observing that "all parties implicated in the

19

alleged fraud or participating in the act or transaction complained of" must generally be named as defendants).

Courts often adhered to this principle even where the initial transferee had transferred the property to someone else. *See, e.g.*, *Stanton* v. *Green*, 34 Miss. 576 (1857), *available at* 1857 WL 2723, at *4 (initial grantee who had since conveyed property was a necessary party defendant in a suit to set aside conveyance of real estate because transfers would remain valid and binding between the parties, and, as a party to the fraud, no release was available to the initial transferee); *Seixas* v. *King*, 2 So. 416 (La. 1887) (wife held a necessary party defendant where debtor husband conveyed property to her and she conveyed it to another party); *Ouerbacker, Gilmore & Co.* v. *White*, 6 Ky. L. Rep. 739 (1885) (abstract) ("The grantee is a necessary party to an action to set aside a conveyance as fraudulent, although he has assigned the property conveyed for the benefit of his creditors, and where the plaintiff has dismissed the action as to the grantee, the court has no jurisdiction to inquire into the alleged fraud.").

Modern courts have followed suit in holding that "the transferor and the transferee are deemed to be necessary parties to a fraudulent transfer suit." *Krol* v. *Wilcek (In re H. King & Assocs.)*, 295 B.R. 246, 293 (Bankr. N.D. Ill. 2003); *Nastro* v. *D'Onofrio*, 263 F. Supp. 2d 446, 450 (D. Conn. 2003) (same); *Forman* v. *Jeffrey Matthews Fin. Group, LLC (In re Halpert & Co., Inc.)*, 254 B.R. 104, 116 (Bankr. D.N.J. 1999) (same); *Murray* v. *Murray*, 358 So.2d 723, 725 (Miss. 1978) (grantee is necessary party in action to set aside a fraudulent conveyance); *cf. Composite Modules, Inc.* v. *Talheimer Bros., Inc.*, ---F. Supp. 2d.---, 2007 WL 4465461, at *2 (D. Mass. Nov. 28,

20

2007) (action for conversion could not proceed without "the alleged principal bad actors" whose "alleged actions" were "pivotal to [plaintiff's] theory of the case").

　　　　　　Other legal contexts also prove instructive. For example, the remedy of avoidance is typically equated with rescission,[8] which Congress would have been aware generally requires joinder of all parties to the contract to adjudicate the rights of some of the parties to the contract. *See, e.g.*, *Crouse-Hinds Co.* v. *InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980) (action seeking rescission of contract must be dismissed unless all parties to the contract -- and others having a substantial interest in it -- can be joined); *Roos* v. *Texas Co.*, 23 F.2d 171, 172 (2d Cir. 1927) ("Rescission of a contract, or declaration of its invalidity, as to some of the parties, but not as to others, is not generally permitted."), *quoted in Ward* v. *Deavers*, 203 F.2d 72, 75 (D.C. Cir. 1953); *Ryan* v. *Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) ("It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party."); *Travelers Indem. Co.* v. *Household Intern., Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991) (describing a contracting party as the "paradigm of an indispensable party"); *cf. Chanrai Invs., Inc.* v. *Clement*, 566 So. 2d 838, 840 (Fla. App. 1990) (original grantor and grantee were necessary parties to an action seeking to reform deed).

---

[8]　*Talbot Typographics, Inc.* v. *Tenba, Inc.*, 560 N.Y.S.2d 82 (N.Y. City Civ. Ct. 1990) (A creditor's action to set aside transfers and follow assets of a corporate debtor as an allegedly fraudulent conveyance is an action in equity for rescission.); *Dabney* v. *Chase Nat. Bank of City of New York*, 201 F.2d 635, 639 (2d Cir. 1953); *Hearn 45 St. Corporation* v. *Jano*, 283 N.Y. 139, 145 (1940); *cf. Transamerica Mortg. Advisors, Inc. (TAMA)* v. *Lewis*, 444 U.S. 11, 19 (1979) (describing rescission as a customary legal incident of voidness).

Third, policy considerations also support the conclusion that an action under section 548(a)(1)(B) to avoid a fraudulent transfer must include the initial transferee. Permitting the trustee to skip over interested participants in a position to prevent the fraudulent transaction at the expense of non-participants would encourage, rather than remediate, fraud. If nothing required debtors-in-possession to pursue the initial transferee alleged to have participated in the fraud (often, as in this case, an insider),[9] then they would have every incentive to pass over those parties in favor of recovering from outsiders.[10] This case suggests that very bias: rather than pursue CLO Holding, the initial transferee, Enron sought to dissolve it, then pleaded for an equitable exception if it could not persuade the Bankruptcy Court of its radical interpretation of section 550(a)(2), despite the fact that Enron had waited for the statute of limitations to elapse without pursuing the as-yet undissolved initial transferee. *Enron*, 343 B.R. at 83; Complaint ¶ 1; 11 U.S.C. §546(a)(1)(A).

---

[9]    11 U.S.C. § 101(31)(B)(iv) ("The term 'insider' includes -- partnership in which the debtor is a general partner."); *see* Complaint ¶ 27 (alleging that Enron was the sole member of the LLC that was the general partner of CLO Holding, the initial transferee).

[10]    A trustee's decision to forego pursuit of an initial transferee otherwise strictly liable for the avoided transfer is substantively indistinguishable from a settlement agreement or release between the debtor and the initial transferee that attempts to preserve the availability of recovery from non-parties to the agreement. Courts increasingly display hostility to such agreements. *Compare Bowers* v. *Kuse Enter., Inc. (In re Florida Hotel Props Ltd. P'ship Plan Trust Agreement)*, 172 F.3d 43 (Table), *available at* 1998 WL 957455, at *7 (4th Cir. Sept. 22, 1998) ("[G]iven the collusive potential of such agreement[s] and the subsequent risk of prejudice to the interests of non-settling parties, to accept the Trustee's assertion that its settlement … did not include [claims against non-settling parties]." (citing *Sims* v. *De Armond (In re Lendvest Mortgage, Inc.)*, 42 F.3d 1181, 1182 (9th Cir.1994))).

22

The initial transferee is also best-positioned to monitor the conduct of the debtor and to recognize and assert properly available defenses. *Schaffer* v. *Las Vegas Hilton Corp. (In re Video Depot, Ltd.)*, 127 F.3d 1195, 1197-99 (9th Cir. 1997) (noting that an "initial transferee is exposed to stricter liability than a subsequent transferee because an initial transferee is in the best position to evaluate whether the conveyance is fraudulent"); *McCloskey* v. *Wells Fargo Bank Wisconsin, NA f/k/a Norwest Bank Wisconsin, NA (In re Art Unlimited, LLC)*, 2007 WL 2670307, *5 (E.D. Wis. Sept. 6, 2007) (same). Subsequent transferees are not in the same position. *Wasserman* v. *Bressman (In re Bressman)*, 327 F.3d 229, 236 (3d Cir. 2003) (noting that while a subsequent transferee may not "close his eyes" to the presence of fraud, he has no duty to be a monitor for the benefit of the debtor's creditors), *cited in Resource, Recycling*, 314 B.R. at 71); *Bonded Financial Servs., Inc.* v. *European American Bank*, 838 F.2d 890, 897 (7th Cir. 1988) ("exposing [subsequent transferees] to risk on account of earlier delicts would make commerce harder to conduct").

Both of the situations that Enron mentions in its brief confirm this very point (Enron Br. p. 13): the principal or successor was liable not merely to facilitate recovery, but because the principal or successor was in a position to monitor and control the conduct of the agent or to prevent the injury from occurring. *See, e.g.*, Restatement (Third) of Agency § 7.07 (2006), comment b ("An employer's ability to exercise control over its employees' work-related conduct enables the employer to take measures to reduce the incidence of tortious conduct."); Restatement (Second) of Torts § 402A (1965), comment c ("[P]ublic policy demands that the burden of accidental injuries

23

caused by products intended for consumption be placed upon those who market them" and "ha[ve] undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by [them]").

As for the burden of avoidance, the initial transferee is readily identifiable. Indeed, the initial transferee *must* be identified to avoid the transfer at all. A subsequent transferee, by contrast, will frequently be unidentifiable without information acquired through discovery in the avoidance action. In addition, the trustee can in all likelihood obtain, at minimum, specific personal jurisdiction over the initial transferee, who dealt with directly with the debtor and either intended or was on constructive notice of the fraudulent transfer. *See Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 475 (1985) ("Jurisdiction is proper ... where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum.") By contrast, the subsequent transferee, not having dealt directly with the debtor, would be more likely to elude the jurisdiction of the court.

The subsequent transferee also operates at a tremendous disadvantage if it must defend against the avoidance action without joinder of the initial transferee, due to unfamiliarity with the initial transfer and the unavailability of the 548(c) defense, as discussed *infra* Part V. Consequently, a transfer only partially avoidable as against an initial transferee would be entirely avoidable against a subsequent transferee.