**IV.**

**NONE OF ENRON'S ARGUMENTS ESTABLISH THE
ABILITY TO AVOID THE PUT PAYMENTS UNDER
SECTION 548(a)(1)(B) OF THE BANKRUPTCY CODE
WITHOUT INCLUDING CLO HOLDING, THE INITIAL TRANSFEREE**

As noted above in the discussion of how Enron should have proceeded before Judge Gonzalez, Enron now comes at its "sole question" from two directions: it reasons first, that the initial transferee, CLO Holding, does not qualify as a necessary party, and second, that it has the ability to sue Appellees alone to avoid the Put Payment transfers under section 548(a)(1)(B) of the Bankruptcy Code. While these separate propositions are two sides of the same "sole question" coin, for analytical purposes we consider each separately. Having presented in the previous section the reasons that compel the inclusion of the initial transferee in a fraudulent transfer cause of action under section 548(a)(1)(B), we next deal with Enron's attacks on Judge Gonzalez's conclusion on that score.

*The Section 547/550 Argument.*

Enron asserts that Judge Gonzalez's reading of section 550 would render sections 547(g), 547(i), and 550(c) unintelligible. (Enron Br. p. 17.) First, Enron claims that Congress, in section 547(g), would not have additionally allocated the burden of proof to a party against whom the trustee seeks recovery if the trustee could only pursue the initial transferee under section 550. (*Id.* at p. 17.) Second, Enron contends that requiring joinder of a non-insider initial transferee in an avoidance action against the insider beneficiary of the transfer would exonerate the insider whenever the initial transferee is protected by sections 547(i) and 550(c). (*Id.* at p. 19.) Any perceived

absurdity in the application of these sections derives from Enron's unrestrained reading

of them. In addition, Enron's construction of the statute would generate its own set of

unintended results in the application of other sections of the Bankruptcy Code.

Enron first contends that section 547(g)'s allocation of the burden of proof

to a party "against whom recovery is sought" would make no sense if the trustee could

only pursue the initial transferee under 550. (Enron Br. p. 17)[11] There are two problems

with this argument. First, section 547(g) places the burden of avoiding the transfer on the

"creditor or party in interest against whom recovery or avoidance is sought," because

section 547(b) expressly authorizes the trustee to avoid transfers made *for the benefit* of a

creditor. The creditor-beneficiary, in such circumstances, is effectively a party to the

challenged transaction and thus a proper,[12] and necessary,[13] defendant to an avoidance

---

[11]  11 U.S.C. § 547(g) provides:

> For the purposes of this section, the trustee has the burden
> of proving the avoidability of a transfer under subsection
> (b) of this section, and the creditor or party in interest
> against whom recovery or avoidance is sought has the
> burden of proving the nonavoidability of a transfer under
> subsection (c) of this section.

[12]  Judge Gonzalez in his Decision did not purport to suggest that section 550 prevents a
trustee from pursuing a beneficiary of a transfer in an action to avoid under section
547 a *preferential* transfer made for the benefit of that party. In contrast to section
547 and its reference to creditor-beneficiaries, section 548 contains no textual or
logical basis for inferring that Congress intended to create an avoidance cause of
action against a subsequent transferee. *See infra* Part V.

[13]  *Wedtech*, 156 B.R. at 145 (officers were necessary parties in an action to avoid a
transfer on the grounds that it benefited officers).

action.[14]  Because such beneficiaries, by definition, do not include transferees, a statute

limited to initial transferees would not account for them.  *See, e.g., Christy* v. *Alexander*

*& Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg,*

*Manley, Myerson & Casey),* 130 F.3d 52, 57 (2d Cir. 1997) ("[W]e know that the 'entity

for whose benefit' phrase does not simply reference the next pair of hands; it references

entities that benefit as guarantors of the debtor, or otherwise, without ever holding the

funds."); *Bonded,* 838 F.2d at 896 (same); *In re Bullion Reserve of North America,* 922

F.2d 544 (9th Cir. 1991) (same); *Securities Investor Protection Corp.* v. *Stratton*

*Oakmont, Inc.,* 234 B.R. 293, 313 (Bankr. S.D.N.Y. 1999) ("Benefit occurs without the

beneficiary ever holding the money or property, precisely because someone else received

it.").

Moreover, the "party in interest" that Congress had in mind includes a

non-creditor initial transferee of a transfer made for the benefit of a creditor.  Again,

given the absolute, strict liability imposed by section 550(a) on the initial transferee, such

a party would certainly qualify as an interested party, permitted to intervene in the

avoidance action, *though not necessarily a defendant to the avoidance action,* thus fitting

the profile of a "party in interest."[15]

---

[14]  In a 2005 amendment to the Bankruptcy Code, Congress added allowing a trustee to
avoid a provision modeled after section 547 to or "for the benefit" of insiders under
employment contracts.  The inclusion of the quoted language subjects the new
version of section 548 to the same analysis of section 547 to the same limited extent
of that exception, discussed *supra* note 12.  The differences, however, are immaterial
for this appeal.  *See Wedtech,* 156 B.R. at 145, discussed *supra* note 13.

[15]  11 U.S.C. § 1109 ("A party in interest ... may raise and may appear and be heard on
any issue in a case under this chapter."); Fed. R. Bankr. P. 2018 ("In a case under the

Enron further claims that a requirement to include a non-insider initial transferee in an avoidance action against the insider beneficiary of the transfer would produce the unintended result of exonerating the insider whenever the initial transferee has the benefits provided by sections 547(i)[16] and 550(c).[17] (Enron Br. p. 19.) As discussed above in reference to Enron's 547(g) argument, section 547(b), unlike section 548(a) which operates here, expressly authorizes the trustee to avoid transfers made for the benefit of creditors -- whether or not the transfer would have been preferential as to the initial transferee. *See supra* text accompanying notes 11-14. By immunizing the

---

Code ... the court may permit any interested entity to intervene generally or with respect to any specified matter."); *Term Loan Holder Committee* v. *Ozer Group, L.L.C. (In re Caldor Corp.)*, 303 F.3d 161, 169 (2d Cir. 2002) (holding that "the phrase 'any issue in a case' plainly grants a right to raise, appear and be heard on *any issue* regardless whether it arises in a contested matter or an adversary proceeding").

[16]    Section 547(i) provides:

> If the trustee avoids under subsection (b) a transfer made between 90 days and 1 year before the date of the filing of the petition, by the debtor to an entity that is not an insider for the benefit of a creditor that is an insider, such transfer shall be considered to be avoided under this section only with respect to the creditor that is an insider.

[17] Section 550(c) provides:

> If a transfer made between 90 days and one year before the filing of the petition—
>
> (1) is avoided under section 547(b) of this title; and
>
> (2) was made for the benefit of a creditor that at the time of such transfer was an insider;
>
> the trustee may not recover under subsection (a) from a transferee that is not an insider.

initial transferee from liability in the circumstances covered by sections 547(i) and

550(c), Congress has expressed its intention that the initial transferee -- otherwise, as

discussed in Part III, above, absolutely and strictly liable for the avoided transfer -- *not* be

joined as a party to the underlying avoidance action.  Enron's reading of these sections

leads to an absurd result because it ignores Congress's obvious motivation.  To the extent

that they are distinguishable from the sections of the Bankruptcy Code applicable to this

appeal, sections 547(i) and 550(c) confirm Appellees' understanding of the Code.

Enron's interpretation would complicate as well the application of other

sections of the Bankruptcy Code that use the word "avoided."  For example, section 551

preserves for the benefit of the estate any transfer "avoided" under section 548 and the

other avoidance sections of the Bankruptcy Code.  11 U.S.C. § 551.  Adhering to the

"normal rule of statutory construction that identical words used in different parts of the

same act are intended to have the same meaning," (*Sullivan* v. *Stroop*, 496 U.S. 478, 484

(1990) (internal quotations and citations omitted)), and treating transfers merely

avoidable under those sections as preserved for the benefit of the estate, would lead to an

absurd result:  the Code expressly excludes such "avoidable" transfers from the estate

until they have actually been avoided and recovered.  *See* 11 U.S.C. § 541(a)(3); *see also*

*In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992), *discussed infra* Part V.

*Subsequent Transferee as a Necessary Party.*

Though irrelevant to the facts of this case, given Enron's failure to state

any avoidance cause of action against any party under section 548(a)(1)(B) of the

Bankruptcy Code in respect of the Put Payment transfers, Enron also claims that a

subsequent transferee is a necessary party to an avoidance action, and for that reason, it would be pointless to require the trustee to pursue the initial transferee. (Enron Br. p. 14.)

Contrary to Enron's hypothesis, Congress[18] and courts[19] agree that a subsequent transferee generally does not qualify as a necessary party to an avoidance action, particularly where, as here, the trustee does not seek to avoid a transfer of identifiable property in the subsequent transferee's possession.[20] (Complaint ¶¶ 1-61.) Under section 550 of the Bankruptcy Code, a *prima facie* case for recovery against a non-party to the avoidance action requires only that the trustee establish as an element of the 550(a) recovery cause of action the existence of an *avoided* transfer. *Furs by Albert &*

---

[18]  The separate statute of limitations on a recovery action is triggered only *after* a transfer is avoided (11 U.S.C. §§ 546(a), § 550(f)), indicating that Congress presupposed non-joinder of the subsequent transferee in the action to avoid the transfer. *See supra* Part III (explaining that the subsequent transferee may be only be capable of identification through discovery in the prior avoidance action).

[19]  Courts typically permit a subsequent recovery action against non-parties to the avoidance action. *See, e.g.*, *Silverman* v. *K.E.R.U. Realty Corp., et al. (In re Allou Distribs., Inc.)*, ---B.R.---, 2007 WL 3306903, at *10 (Bankr. E.D.N.Y. Nov. 2, 2007) (trustee's allegation of separate pending avoidance actions against initial transferees was sufficient to preserve its claim against subsequent transferees under section 550); *Goldman* v. *Nieves (In re Nieves)*, 2007 WL 2915004, at *4 (Bankr. D. Md. Oct. 3, 2007) (slip op.); *In re Resource, Recycling & Remediation, Inc.*, 314 B.R. 62 (Bankr. W.D. Pa. 2004); *In re Sawran*, 359 B.R. 348 (Bankr. S.D. Fla. 2007); *In re Clark*, 289 B.R. 474 (Bankr. M.D. Fla. 2003).

[20]  For the same outcome in analogous legal contexts, *see, e.g.*, *U.S. Nat'l Bank of Portland* v. *Meyer*, 321 P.2d 1054, 1060 (Or. 1958) (in a suit for cancellation by grantor against grantee, a subsequent grantee's "rights, if any, are not affected by the decree"); *Bennett* v. *First Nat. Bank of Glens Falls*, 536 N.Y.S.2d 591, 594 (N.Y.A.D. 3 Dept. 1989) (refusing to join the subsequent transferee, not a party to the contract, in an action for specific performance to enforce alleged contract for the sale of real property).

*Marc Kaufman*, 2006 WL 3735621, at *8. The trustee does not need to establish the

*avoidability* of the transfer, or that the transfer was even *properly* avoided. *See, e.g., In*

*re Sufolla, Inc.*, 2 F.3d 977, 982 (9th Cir. 1993), *cited in Kendall* v. *Sorani (In re*

*Richmond Produce Co.)*, 195 B.R. 455, 463 (N.D. Cal. 1996) (holding that section 550

does not require the trustee to satisfy each element of section 547 (or 548) with respect to

the party from whom recovery is sought).

      As for Enron's solicitude for the due process rights of subsequent

transferees (Enron Br. p. 14), section 550 circumscribes any due process concerns.

Ordinary principles of issue preclusion do not apply to the situation because the trustee

need only establish an *avoided* transfer, thus permitting the subsequent transferee to

defend against the *recovery* action satisfies due process:

> The Court's order . . . voiding [a deed to an initial
> transferee] did not deprive [the subsequent transferee] of
> any property. The effect of the order was to put the Trustee
> in Bankruptcy in a position to challenge [subsequent
> transferee's] title by bringing this [recovery action]. If the
> property is to be taken from [the subsequent transferee], it
> will be done through this proceeding, of which [the
> subsequent transferee] had notice and in which she has
> been afforded a full opportunity to be heard.

*Matter of Claxton*, 30 B.R. 199, 207 (Bankr. E.D.Va. 1983).[21] The particular theory

under which a transfer has been avoided is irrelevant to the liability of the transferee from

whom the trustee seeks to recover the property. *Hooker Atlanta (7) Corp.* v. *Hocker (In*

*re Hooker Invs., Inc.*, 155 B.R. 332, 337 (Bankr. S.D.N.Y. 1993)), *cited with approval in*

*In re Smoot*, 265 B.R. 128, 139 (Bankr. E.D. Va. 1999). Rather, once the trustee has

---

[21]  A case under 67(d) of the Bankruptcy Act.

submitted evidence that a transfer was avoided, the subsequent transferee has an opportunity to persuade the court that the subsequent transferee's entitlement is superior to the estate's because it gave for value and in good faith.

In effect, the 550(b) defense operates as a statutory protection for subsequent transferees not represented in the avoidance action.[22] *Cf. Miller & Lux, Inc. v. Nickel*, 141 F.Supp. 41, 46 (C.D. Cal. 1956) (subsequent transferee who has acquired interests in the property alleged to have been fraudulently transferred to defendants was not a necessary party because the court could frame its decree so as to protect the interests of those absent parties). Again, section 550(b) does not protect initial transferees and parties for whose benefit the transfer is made because the comparable protections were already available in section 548(c). *See supra* Part III; *cf. In re Flashcom, Inc.*, 361 B.R. 519, 522 (Bankr. C.D. Cal. 2007) (noting that the trustee would only have to establish that the entities had received some benefit from the avoided transfer to hold them absolutely liable for it).

Nor is it unusual for courts to give effect to judgments in proceedings against parties that did not participate in the earlier proceeding. Under state law, the initial transferee does not have to be named in the antecedent action for money damages

---

[22] Section 550(b) provides:

The trustee may not recover under section (a)(2) of this section from –

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

that gives a creditor standing to assert the fraudulent conveyance claim. *Sklaroff* v.

*Rosenberg*, 125 F. Supp. 2d 67, 74 (S.D.N.Y. 2000) (applying New York law); *see also*

*Duckworth* v. *Allis-Chalmers Mfg. Co.*, 150 So. 2d 163, 209-10 (Miss. 1963) (grantees

are not necessary parties to the suit on the debt) (citing *Taylor* v. *Webb*, 54 Miss. 36

(1876)).

**V.**

**SECTION 548 OF THE BANKRUPTCY CODE DOES
NOT CONTAIN ANY EXPRESS OR IMPLIED CAUSE
OF ACTION AGAINST A SUBSEQUENT TRANSFEREE**

Turning to the other side of Enron's "sole question" coin, Enron maintains

that it can avoid the Put Payment transfers made to CLO Holding in an action under

section 548(a)(1)(B) of the Bankruptcy Code against the Appellees, as subsequent

transferees, alone. As in its argument that it need not sue CLO Holding, the initial

transferee, in making this argument Enron enters the realm of requesting an advisory

opinion since it has not brought a cause of action under section 548(a)(1)(B) against CLO

Holding or Appellees. *See supra* Part III. Enron chose instead to bring its Second Cause

of Action, on its face a recovery action under section 550(a)(2), a provision that does not

include avoidance under section 548(a)(1)(B) as an ancillary remedy. Putting that

insurmountable obstacle aside, Enron finds license in perceived statutory silence, and

comfort in its over-stated assertion that section 548, as an avoidance provision, *only*

concerns transfers.

No textual evidence supports the conclusion that section 548 concerns

subsequent transferees at all. Nor has Enron identified a single precedent in the 30-year

history of the Bankruptcy Code or the even longer history of practice under the

33

Bankruptcy Act in which a court held that a trustee could avoid a fraudulent transfer under section 548(a)(1)(B) or its predecessor against a subsequent transferee, alone.

Section 548 authorizes "[t]he trustee [to] avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition." 11 U.S.C. § 548(a)(1).[23]  The focus in section 548 is on the timing of, and value received for transfers of the debtor's property from the debtor or its bailee to the initial transferee. *See, e.g., FCC* v. *GWI PCS 1 Inc., et al. (In re GWI PCS 1 Inc.),* 230 F.3d 788, 805 (5th Cir. 2000), *cert. denied,* 533 U.S. 964 (2001) (describing elements of the cause of action that pertain either to events that transpired between the debtor and initial transferee or to characteristics of the debtor); *Burroughs* v. *Fields,* 546 F.2d 215, 218 (7th Cir. 1976) (same, interpreting former 11 U.S.C. § 107 (Bankruptcy Act of 1898, § 67), the predecessor to 11 U.S.C. § 548)).  Once transferred to a subsequent transferee, property can no longer be property of the debtor until after a judicial determination that it is;[24] thus there can be no *subsequent* transfer of property of the debtor and subsequent transfers will always fall outside the scope of section 548.[25]

---

[23]  This language is from the pre-2005 version of section 548 applicable to this adversary proceeding.  *See supra* note 14.

[24]  *See infra* Part V.

[25]  Thus, to state a claim for recovery from a subsequent transferee under section 550 the trustee need only allege the subsequent transferee's status as such and allege that the *initial* transfer was avoided under section 548.  It is unnecessary, and there is really no statutory basis, to *avoid* the subsequent transfers.

Contrary to Enron's assertion that section 548 *only* involves transfers, section 548(c) contains a principal defense to a fraudulent transfer claim -- a defense unavailable to an *initial* transferee under section 550.  Section 548(c) provides:

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, *to the extent* that *such transferee* or obligee gave value *to the debtor* in exchange for such transfer or obligation.

11 U.S.C. § 548(c) (emphasis supplied).

Because the value must be received by the *debtor*, subsequent transferees cannot assert the defense in an action under section 548(c)(1)(B) of the Bankruptcy Code based on value that they gave to the *initial transferee*. *See, e.g.*, *Bonded*, 838 F.2d at 896-97 (beneficiary must give value to the debtor in order to receive credit); *In re M. Blackburn Mitchell Inc.*, 164 B.R. 117, 122 (Bankr. N.D. Cal. 1994) (same); *cf. In re Johnson*, 357 B.R. 136, 141-42 (Bankr. N.D. Cal. 2006) ("Unlike [section] 548(c), [section] 550(b)(1) does not expressly require that the value provided by the subsequent

---

In the light of the modern rule under section 550, which derogates from the traditional rule, Enron's fear (echoing that of the Eleventh Circuit in *In re Int'l Admin. Svcs.*, 408 F.3d at 704) that requiring the trustee to avoid the transfer to the initial transferee will create an insurmountable burden that the trustee avoid *every* transfer in the chain, is unfounded. *Compare Hyde* v. *Craddick*, 10 Rob. (LA) 387 (La. 1845) ("[W]ithout proving that the first sale and the subsequent ones down to [the last], were tainted with the same fraud and collusion, it is clear that the plaintiffs can never succeed in taking the property from Craddick's apparent ownership and possession."); *Harvey* v. *Engler*, 168 So. 81, 82 (La. 1936) (same).

35

transferee be given to the debtor. Since this requirement was expressly stated in [section] 548(c), it seems unlikely that its omission in [section] 550(b)(1) was an oversight.").

At the same time, Congress intended that the 548(c) defense would limit the total amount that the trustee could recover under section 550 from both initial and subsequent transferees. 124 Cong. Rec. H. 11,097 (Sept. 28, 1978), S 17414 (Oct. 6, 1978) (explaining that "to the extent" in section 550 means that "liability is not imposed on a transferee to the extent that a transferee is protected under a provision such as 548(c) which grants a good faith transferee for value of the transfer that is avoided only as a fraudulent transfer, a lien on the property transferred to the extent of value given"), *cited in In re Int'l Admin. Svcs., Inc.*, 408 F.3d at 706. If a subsequent transferee cannot assert the 548(c) defense because it did not provide value to the debtor, then the estate could recover the full value of the initial transfer from a subsequent transferee -- a manifest case of unjust enrichment.

Of the cases that Enron cites permitting recovery from a subsequent transferee where the trustee did not seek to avoid the transfer against the initial transferee, none did so on the basis of section 548 of the Bankruptcy Code. Many either substituted the word "avoided" for avoidable,[26] while others improperly assumed that if section 550 does not preclude the trustee from pursuing subsequent transferees to avoid a transfer, it

---

[26]   *See In re Int'l Admin. Svcs., Inc.*, 408 F.3d at 706; *Kendall* v. *Sorani (In re Richmond Produce Co.)*, 195 B.R. 455, 463 (N.D. Cal. 1996); *In re National Audit Defense Network*, 322 B.R. 896, 915-16 (Bankr. D. Nev. 2005) (following *IBT*); *Off. Comm. of Unsecured Creditors* v. *Foss (In re Felt Manufacturing Co.)*, 371 B.R. 589, 640 (Bankr. D.N.H. 2007).

must be allowed.[27]  Others considered the trustee's ability to pursue a non-transferee beneficiary of a preferential transfer under section 547, which, unlike section 548,[28] ostensibly provides a textual basis for the trustee to do so by authorizing the trustee to avoid transfers made "for the benefit of a creditor."[29]

To overcome the absence of direct textual or case law support for its assertion that section 548 permits the trustee to pursue only a subsequent transferee to avoid a transfer to an initial transferee, Enron advances the proposition that a cause of action under section 548 to avoid a transfer involves an *in rem* rather than an *in personam* proceeding.  Enron's claim is logically and theoretically flawed.  Further, the sole authority upon which Enron relies, *Central Virginia Cmty. College* v. *Katz*, 546 U.S. 356 (2006), does not stand for this proposition.

*Before a judicial determination, transferred property does not belong to the estate.*

Even if "[b]ankruptcy jurisdiction ... is principally *in rem* jurisdiction," *Katz*, 546 U.S. at 369, the subject of an *in rem* action is limited to property already within the court's jurisdiction.  *See, e.g., Mexican Cent. Ry. Co.* v. *Pinkney*, 149 U.S. 194

---

[27]  *In re Advanced Telecom Network, Inc.*, 321 B.R. 308 (Bankr. M.D. Fla. 2005) (holding that because "[n]othing in the language of section 550 requires a plaintiff in a fraudulent transfer adversary proceeding to avoid the transfer received by the initial transferee," the plaintiff can pursue any of the immediate or mediate transferees).

[28]  The pre-2005 version of section 548 is applicable to this adversary proceeding. *See supra* note 14.

[29]  *See In re Arkansas Catfish Growers LLC*, 2007 WL 215815 (E.D. Ark. Jan. 25, 2007); *Shapiro* v. *Art Leather, Inc. (In re Connolly N. Am. LLC)*, 340 B.R. 829 (Bankr. E.D. Mich. 2006); *In re Crafts+, Inc.*, 220 B.R. 331 (Bankr. W.D. Tex. 1998); *H&C P'Ship* v. *Virginia Serv. Merchandisers*, 164 B.R. 527 (E.D. Va. 1994); *In re Acadania Electrical Serv.*, 66 B.R 164 (Bankr. W.D. La. 1986).

(1893); *Pennoyer* v. *Neff*, 95 U.S. 714 (1877).  By contrast, the subject of an avoidance

action concerns an interest in property that does not belong to the bankruptcy estate

before a judicial determination that the property was, in fact, fraudulently transferred, and

where applicable, subsequently recovered.  *In re Colonial Realty Co.*, 980 F.2d 125, 131

(2d Cir. 1992) (citing *In re Saunders*, 101 B.R. 303 (Bankr. N.D. Fla. 1989)); *see also*

*Bank Brussels Lambert* v. *Credit Lyonnais (Suisse) S.A.*, 192 B.R. 73, 76-77 (S.D.N.Y.

1996); *U.S.* v. *Alfano*, 34 F. Supp. 2d 827, 841 (E.D.N.Y. 1999).

   In *Colonial Realty*, the Second Circuit cited three reasons for rejecting the

trustee's argument that the debtor had a continuing legal or equitable interest in

fraudulently transferred property.  First, including in the definition of property of the

estate under section 541(a)(1) property subject to a fraudulent transfer action would

render section 541(a)(3), concerning the property recovered pursuant to fraudulent

transfer actions, superfluous.  *Colonial Realty*, 980 F.2d at 131 (citing *Saunders*, 101

B.R. at 305).  Second, inclusion of the recovered property in this separate definitional

subparagraph reflects Congress's intent to exclude such property from property of the

estate until recovery.  *Id.*  Finally, administrative complexities would ensue, particularly

with respect to the enforcement of the automatic stay, from regarding fraudulently

transferred property as part of the estate prior to its recovery.  *Colonial Realty*, 980 F.2d

at 131 (citing *Saunders*, 101 B.R. at 305); *see also* 11 U.S.C. § 542 (mandating turnover

of the estate's property to the trustee by anyone in possession of it).

   *Colonial Realty* comports with cases holding that a creditor's mere claim

of entitlement to a constructive trust based on debtor's alleged fraudulent prepetition acts

is not an "equitable interest" in the debtor's property excluded from "property of estate," where no court had imposed any constructive trust on debtor's property prior to debtor's bankruptcy filing. *XL/Datacomp, Inc.* v. *Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1449 (6th Cir. 1994) ("A constructive trust is a legal fiction, a common-law remedy in equity that may only exist by the grace of judicial action."), *cited with approval in Cadle Co.* v. *Mangan (In re Flanagan)*, 503 F.3d 171, 182 (2d Cir. 2007). It also comports with the widespread understanding that transfers fraudulent as to creditors are not void *ab initio*, but voidable. *See, e.g., In re Vanity Fair Shoe Corp.,* 84 F. Supp. 533, 534 (S.D.N.Y. 1949) ("[T]he judicial gloss that 'void' in the fraudulent conveyance statutes means 'voidable' is well established." (*citing City of New York* v. *Johnson,* 137 F.2d 163 (2d Cir. 1943).)

   Other federal statutes and sections of the Bankruptcy Code confirm that the bankruptcy court's *in rem* jurisdiction over property of the estate cannot serve as the source of the court's authority to avoid the transfer before a judicial determination that the debtor has an equitable interest in the transferred property. *See State Street Bank and Trust Co.* v. *Salovaara*, 326 F.3d 130 (2d Cir. 2003) ("[C]ourts should avoid statutory interpretations that render provisions superfluous.").

   First, the source of the bankruptcy court's subject-matter jurisdiction over a proceeding to avoid a fraudulent transfer is 28 U.S.C. § 157(b)(2)(H). *See* 28 U.S.C. § 157(b)(2)(H); *see also Resorts Int'l Fin., Inc.* v. *Price Waterhouse & Co. (In re Resorts*

*Int'l, Inc.)*, 372 F.3d 154, 161 n.5 (3d Cir. 2004). It is not implied by the Court's *in rem* jurisdiction over property of the estate.[30]

Second, that the Bankruptcy Rules require the trustee to bring fraudulent transfer and other avoidance actions as adversary proceedings, bearing all the attributes of a traditional lawsuit, further confirms that such proceedings do not arise under the bankruptcy court's *in rem* jurisdiction. *See* Fed. R. Bankr. P. 7001 & Advisory Committee's Note; *see also Adelphia Comm'ns Corp., et al.,* v. *Rigas (In re Adelphia Comm'ns Corp.)*, 285 B.R. 848, 855 (Bankr. S.D.N.Y. 2002) ("[A]dversary proceedings are in substance 'full blown lawsuits within the larger bankruptcy case,' in which rights under causes of action are adjudicated." (quoting *Term Loan Holder Comm.* v. *Ozer Group, L.L.C. (In re Caldor Corp.)*, 303 F.3d 161, 170 n.4 (2d Cir. 2002))).

Finally, if avoidable transfers were already property of the estate, section 551, preserving avoided transfers for the benefit of the estate, would be superfluous. 11 U.S.C. § 551.

To be sure, a bankruptcy court might evaluate the same elements of avoidability in the context of claims disallowance under section 502(d), which does not involve an *in personam* process. In *Granfinanciera* v. *Nordberg*, 492 U.S. 33 (1989), though, the Supreme Court distinguished the disallowance context from one seeking the recovery of property, explaining that the former merely involves the assertion of the

---

[30]  The relatively recent designation of adversary proceedings as "core proceedings" is irrelevant to whether they invoke the court's *in rem* jurisdiction. *Cf. Granfinanciera*, 492 U.S. at 60 (noting that the 1984 amendments to the Bankruptcy Code designating adversary proceedings as "core" proceedings operated as "purely taxonomic change [that] cannot alter our Seventh Amendment analysis").

avoidability claim as an equitable defense of the estate. *Id.* at 59 n.14. *In personam* process is not required because a party filing a proof of claim has subjected itself to the all the consequences that attach to an appearance, including that the court will accord equitable relief, not because the determination invokes the court's *in rem* jurisdiction. *Alexander* v. *Hillman*, 296 U.S. 222, 241-42 (1935), *cited id.*

<u>Inequity of binding initial transferee to an in rem determination.</u>

The imposition of absolute, strict liability under section 550(a) on an initial transferee for an avoided transfer underscores the illogic of Enron's claim that an avoidance determination constitutes an *in rem* proceeding. A judgment *in rem* by its nature binds all the world, including those not parties to the action. *See, e.g., Moran* v. *Sturges*, 154 U.S. 256, 282 (1894) (a suit *in rem* asserts a claim as against all the world); *Madruga* v. *Superior Court of State of California in and for San Diego County*, 346 U.S. 556, 561 (1954) (distinguishing an *in rem* proceeding from one *in personam*, where a court "acts only upon the interests of the parties over whom it has jurisdiction in personam, and it does not affect the interests of others in the world at large"). In a recovery action under section 550, an initial transferee would be bound by the *"in rem"* avoidance judgment in an action to which it was not a party, incapable of asserting any defenses under section 548(c) (since the transfer had already been avoided), and without any statutory defenses under section 550. *See infra* Part III. Congress cannot have intended such an unjust result when it granted the trustee standing to avoid fraudulent transfers and created the section 548(c) defense; yet this very potentially flows ineluctably from characterizing an action to avoid a transfer as *in rem*.

Enron, in fact, has proven unwilling to accept this logical consequence of designating a fraudulent transfer avoidance action as *in rem*. Apparently trying to have it both ways, Enron argues that due process requires that a subsequent transferee have the right to relitigate under section 550(a)(2) a fraudulent transfer avoided against an initial transferee alone. (Enron Br. p. 14.) At the same time, Enron insists that a fraudulent transfer action involves an *in rem* proceeding, (Enron Br. pp. 6-8), in which a court can bind the parties connected with the *res*, whether present or not. The two positions simply contradict each other.

*Katz does not alter the foregoing principles.*

Enron's reliance on *Katz* -- the sole authority cited in support of its assertion that jurisdiction over an allegedly avoidable transfer is *in rem* -- is unpersuasive.

The *Katz* majority explained that a "§ 547 determination, standing alone" or in connection with a claims objection operates as a "declaration of avoidance," but the Court did not hold that an action "to avoid" a transfer was *in rem*, and further, found that "it is not necessary to decide whether actions to recover preferential transfers pursuant to § 550(a) are themselves properly characterized as in rem." *Katz*, 546 U.S. at 372. Rather, the majority's observation that "[w]hatever the appellation, those who crafted the Bankruptcy Clause would have understood it to give Congress the power to authorize courts to avoid preferential transfers and to recover transferred property" dictated the outcome in *Katz*. *Id.* Any suggestion that a section 547 determination is an *in rem* declaration is dictum, and the four dissenters squarely rejected any intimation by the

majority that such a determination could be *in rem*. *Id.* at 391 (Thomas J., dissenting)

(citing *U.S.* v. *Nordic Village Inc.*, 503 U.S. 30 (1992)).

Even reading *Katz* to mean that a section 547 determination is *in rem* does

not lead to the conclusion that an action to avoid a fraudulent transfer under section 548

is also *in rem*. Enron has failed to identify any basis for treating the two sections

identically, and there is no reason to do so. Section 547, which permits the trustee to

avoid transfers preferential as to creditors, rests on the notion that the petition date

selected by the debtor should not dictate the respective entitlements of the creditors. *See,*

*e.g.*, *Begier* v. *I.R.S.*, 496 U.S. 53, 58 (1990) (preference action prevents debtor from

favoring one creditor over the others); *Tavenner* v. *Smoot (In re Smoot)*, 265 B.R. 128,

139 (Bankr. E.D. Va. 1999) (noting that the intent is to restore the estate to the financial

condition it would have enjoyed had the transfer not occurred). The avoidance and

recovery of preferential transfers under section 547 arguably operates in furtherance of

the bankruptcy court's *in rem* jurisdiction by equitably redistributing amongst the

creditors property that had belonged to the debtor. Thomas H. Jackson, *Avoiding Powers*

*in Bankruptcy*, 36 STAN. L. REV. 725, 726 (1984) (arguing that section 547 "may best be

thought of as arranging rights among the creditors *inter se*").

In contrast to a preference action under section 547, an action to avoid a

fraudulent transfer under section 548 operates solely to augment the assets of the estate

by bringing in property that was not previously included. 11 U.S.C. § 541(a)(3) ("The

commencement of a [bankruptcy] case ... creates an estate ... comprised of ... (3) Any

interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553,

or 723 of this title."); *see also* Jackson, 36 STAN. L. REV. at 726 ("Whereas the [preference] avoiding powers … adjust the rights of creditors vis-a-vis other creditors, fraudulent conveyance law adjusts the rights of creditors vis-a-vis the debtor."). If the court determines that the transferee has not given value and must turn over the property to the estate, it is foreseeable that any claim of the transferee triggered by the estate's recovery would be disallowed under section 502(b), the court having effectively decided that the debtor has a superior interest in the property transferred. The preservation of an avoided transfer for the benefit of the estate, 11 U.S.C. § 551, and subsequent distribution to creditors in accordance with their respective entitlements as determined by federal bankruptcy law, constitutes only a secondary attribute of the avoided transfer.

In sum, section 548 provides no indication that Congress intended to create a cause of action for avoidance against a subsequent transferee. No other court has read any such cause of action into the statute. If anything, the statutory language of sections 548 and 550 confirms what Judge Gonzalez recognized, namely, that Congress considered the initial transferee a necessary party to an action to avoid a fraudulent transfer and that such an action could not proceed against any subsequent transferee, alone.

## VI.
## CONCLUSION

For the foregoing reasons, Appellees respectfully request that the decision

and judgment below be affirmed.

Dated: New York, New York
       January 11, 2008

                              Respectfully submitted,


                                 /s/ Stephen J. Shimshak
                              Stephen J. Shimshak
                              Douglas R. Davis
                              Rebecca R. Zubaty (Not yet admitted)
                              PAUL, WEISS, RIFKIND, WHARTON &
                              GARRISON LLP
                              1285 Avenue of the Americas
                              New York, NY 10019-6064
                              Telephone: (212) 373-3000

                              Attorneys for Caisse de dépôt et placement
                              du Québec and National Australia Bank