2

Case 1:07-cv-06597-AKH   Document 27-5   Filed 01/11/2008   Page 1 of 10



Not Reported in B.R.
Not Reported in B.R., 2001 WL 34630639 (Bkrtcy.D.Neb.)
**(Cite as: Not Reported in B.R.)**

Page 1

▶Contemporary Indus. Corp. v. Frost
Bkrtcy.D.Neb.,2001.
Only the Westlaw citation is currently available.
United States Bankruptcy Court.D. Nebraska.
In the Matter of CONTEMPORARY INDUSTRIES CORPORATION, Debtor(s)
CONTEMPORARY INDUSTRIES CORPORATION, Plaintiff(s)
v.
Terry G. FROST, et al., Defendant(s)
**No. BR 98-80382, ADV. 99-8135.**

Feb. 14, 2001.

Clay M. Rogers, Dwyer, Smith Law Offices, Michael L. Lazer, Dwyer Smith Gardner Lazer Pohren, Robert V. Ginn, Brashear & Ginn, Omaha, NE, Kelly A. McEnaney, Mintz, Levin, Cohn, Ferris Glovsky and Popeo, P.C., Richard E. Mikels, Boston, MA, Paul Bennett Bran, Washington, DC, for Debtors.
Frank M. Schepers, Lamson, Dugan & Murray, Omaha, NE, for Defendants.
Jerry L. Jensen, US Trustee's Office, Omaha, NE, Michael C. Washburn, Erickson & Sederstrom, Omaha, NE, for United States Trustees.

### MEMORANDUM
MAHONEY, Chief J.
*1 Hearing was held on Defendants' Motion to Dismiss on November 6, 2000. Appearances: Robert Ginn, Steve Turner and T. Randall Wright for the plaintiff; Michael Washburn for the Creditors' Committee; William Lamson and Frank Schepers for the defendants. This memorandum contains findings of fact and conclusions of law required by Fed. Bankr.R. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(H).

### Background

The plaintiff, Contemporary Industries Corporation ("CIC"), filed this adversary proceeding to avoid and recover cash transfers in excess of $26.5 million to its former shareholders in connection with a leveraged buyout transaction ("LBO") that was consummated on or about December 21, 1995. All of the defendants have filed a Motion to Dismiss. At the hearing on The Motion to Dismiss, one or more of the parties referred to the Chapter 11 Disclosure Statement and Plan which has been confirmed in this case. Since the contents of the plan have a direct effect upon the Motion to Dismiss, the parties were asked if the matter could be considered a Motion for Summary Judgment as permitted under Rule 12 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12 (see Fed. R. Bankr.P. 7012 incorporating Fed.R.Civ.P. 12 into the Federal Rules of Bankruptcy Procedure.) Counsel for all of the parties consented to such treatment, and counsel for the plaintiff requested additional time to submit written case citations and argument. Such request was granted and counsel for the defendants was provided additional time to reply.

The matter is now considered a Motion for Summary Judgment.

### Issues

1. Does this Court have jurisdiction to entertain this Complaint?

2. Was property of the debtor transferred to defendants as part of the LBO?

3. Are the initial transferees of the debtor's property necessary parties in this avoidance action?

### Decision

1. The confirmed Plan, Filing No. 231, at paragraph 6.12.1 requires any cause of action under 11 U.S.C. § 544 to be filed within 180 days after the confirmation date. The confirmation date was July 24, 1998, and this action was filed December 20, 1999, more than 180 days after this confirmation date. Therefore, it appears from the plain language of the confirmed plan, that this court has no jurisdiction.

2. No property of the debtor was transferred to the defendants.

3. Alternatively, if property of the debtor was transferred to the defendants, the initial transferees of such property are necessary parties to the avoidance action. Since the initial transferees have been released from any liability to the debtor, they cannot now be made parties.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.  Page 2
Not Reported in B.R., 2001 WL 34630639 (Bkrtcy.D.Neb.)
(Cite as: Not Reported in B.R.)

4. The motion to dismiss/motion for summary judgment is granted. Judgment shall be entered in favor of the defendants on all claims for relief.

*Facts*

The undisputed facts are as recited in the first Amended Complaint ("Complaint"), Filing No. 29, and as contained in the Plan that was confirmed in this case, Filing No. 231 in BK98-80382.

\*2 1. Plaintiff, a corporation organized under the laws of the State of Nevada, maintained its principal place of business in Omaha, Nebraska. The defendants were shareholders in CIC and its affiliates. The affiliates are identified, for purposes of this opinion, as CIP, CIMW, CIMA, CIS, and, along with CIC, are collectively referred to as the "Companies." (Complaint, para.24)

2. In October of 1995, the defendants entered into a Stock Purchase Agreement to sell all of their equity interests in the Companies to an investor group ("Investors") through a LBO. The agreed unadjusted "Purchase Price" for the seller-defendants' stock was $32.5 million which was subject to various upward and downward monetary adjustments relating to the assumption and payment of certain mortgages and certain other existing debts of the Companies. (Complaint, para.25)

3. In December of 1995, the Investors formed a Delaware corporation, Contemporary Industries Holdings, Inc. ("CIH"), as the LBO vehicle to acquire the stock of the Companies from the defendants. In addition, in December of 1995, the Investors also formed a new Delaware corporation, Convenience Corporation of America, Inc. ("CCA"), as a holding company to own 100% of the stock of CIH. (Complaint, para.26)

4. On or about December 21, 1995, CIH entered into an Amendment to Stock Purchase Agreement dated December 21, 1995, with the defendants. (Complaint, para.27)

5. Closing of the LBO occurred on or about December 21, 1995, and the funds to finance the purchase of the stock of the Companies from the defendants came from three principal outside sources: (i) loans from Bank One, Indianapolis, National Association ("Bank One"); (ii) loans from Allied Capital Financial Corporation, Allied Investment Corporation, Allied Financial Corporation II, Allied Investment Corporation II, and Allied Capital Corporation II (collectively "Allied"); and (iii) an equity investment by the Investors. (Complaint, para.28)

6. Bank One provided a revolving loan of $23 million to finance the stock acquisition and to provide working capital. CIH was the maker of the promissory note to Bank One. The note was guaranteed by the Companies. Bank One obtained a first lien upon substantially all of the assets of the Companies as security for repayment of Bank One's loans used to purchase the defendant-shareholders' stock. The Bank One loan is referred to as the "Senior Debt." (Complaint, para.29)

7. Allied provided term loans of $9 million to finance the stock acquisition, which loans were subordinate to Bank One's Senior Debt. The Companies were all co-makers of the Allied loans, and Allied was also granted security interests in substantially all the assets of the Companies, subordinate to Bank One's Senior Debt, as security for repayment of the Allied loans. Allied's loans are referred to as the "Subordinated Debt." (Complaint, para.30)

8. The Investors made an $8 million equity investment to complete the stock acquisition and to provide some operating capital for the Companies' business. The Investors' $8 million equity investment is referred to as the "Equity Contribution." (Complaint, para.31)

\*3 9. The $38 million obtained from Bank One, Allied, and the Investors to finance the purchase of the defendant-shareholders' stock through the LBO was used, apparently by CIH,[FN1] the buyer, to pay the defendants for their shares of stock in CIC, CIP and CIS, with the balance of $7.5 million paid to satisfy outstanding bank and mortgage debts of the Companies and approximately $2 million to satisfy the brokers' fees and the related transaction costs of the LBO. (Complaint, para.33)

> FN1. This assertion, that CIH used the funds, must be inferred from the terminology used in the Complaint.

10. In order to finance the LBO, the defendants

Not Reported in B.R. Page 3
Not Reported in B.R., 2001 WL 34630639 (Bkrtcy.D.Neb.)
(Cite as: Not Reported in B.R.)

intended or understood that the Companies would grant blanket liens on all of their assets to Bank One and Allied as security for repayment of the more than $30 million in Senior Debt and Subordinated Debt that was incurred for the purpose of enabling the defendant-shareholders to sell their stock in CIC and its affiliates to the Investors through CIH as the acquisition vehicle. (Complaint, para.34)

11. After the LBO, in March, 1997, CIS, CIP, CIMW, and CIMA were all merged into CIC. (Complaint, para 35)

12. Within a relatively short time after the LBO, CIC began to experience significant cash flow and financial problems. (Complaint, para.36)

13. In April, 1997, the Investors made a loan of $2 million to CCA and Allied forgave accrued interest on the Subordinated Debt in exchange for CCA's agreement to issue certain senior preferred shares in CCA to Allied. (Complaint, para.38)

14. Despite the Senior Debt, Subordinated Debt, Equity Contribution, and the April, 1997, loan, CIC continued to have insufficient capital and cash flow. In October, 1997, the Investors and Allied each made additional loans of $500,000.00 to CIC. This $1 million in additional financing is referred to as the "October, 1997 loan." (Complaint, para.39)

15. Continuing insufficient capital and cash flow required CIC to obtain additional funding. Allied made a further loan of $750,000.00 to CIC in December, 1997, secured by a first lien on CIC's headquarters building. This loan is referred to as the "December, 1997, HQ loan." (Complaint, para.40)

16. On February 17, 1998, ("Petition Date"), approximately twenty-six months after the LBO closing, CIC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nebraska ("Court"). (Complaint, para.44)

17. During the bankruptcy case, Bank One, Allied, the Investors and CIH have been granted court-approved releases through the order confirming the Chapter 11 Plan.[FN2]

> FN2. The Plan, Filing No. 231, at paragraphs 6.13.1, 6.13.2, 6.13.3, and 6.13.4, and Order Confirming the Plan in BK98-80382, Filing No. 280.

*The Relief Requested*

This complaint was filed to avoid a fraudulent transfer and to recover property or its value for the benefit of the estate pursuant to 11 U.S.C. § 544 and 11 U.S.C. § 550, using the Nebraska Uniform Fraudulent Transfer Act ("NUFTA"), Neb.Rev.Stat. §§ 36-701-712 (1996). In Count No. V, the Complaint asserts that the cash transfers to the defendants constitute excessive and/or illegal distributions under applicable non-bankruptcy law. In addition, the Complaint asserts, at Count No. VI, that the transfer of approximately $26.5 million in cash made to the defendants unjustly enriched each defendant to the extent of their receipt of such transfers or the proceeds thereof. Under both counts, the plaintiff requests damages in the aggregate amount of the actual transfers that each defendant received.

*Motion to Dismiss*

**\*4** The defendants filed a Motion to Dismiss, Filing No. 34, asserting that the Complaint does not allege that the cash transferred to the defendants originated from or was transferred by the debtor and that the Complaint does not seek to set aside any transfer of property of the debtor to any of these defendants. The movants claim that the only transfer of property by CIC consisted of the granting of liens on CIC's assets and that the plaintiff has failed to avoid such transfers. Defendants claim, as a matter of law, that the avoidability and avoidance of those transfers are conditions precedent to any action against the defendants. Defendants, therefore, argue that the Complaint fails to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) (see Fed. R. Bankr.P. 7012(b) incorporating Fed.R.Civ.P. 12 in its entirety to bankruptcy adversary proceedings).

Additionally, the defendants raise, as grounds for dismissal, the failure to join CIH, Bank One, Allied, and the Investors, allegedly necessary and indispensable parties to whom and for whose benefit certain of the transfers alleged in the Complaint were made. Once again, it is the position of defendants that, as a condition precedent to avoiding any transfers by the debtor, CIH, Bank One, the Allied

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.  
Not Reported in B.R., 2001 WL 34630639 (Bkrtcy.D.Neb.)  
**(Cite as: Not Reported in B.R.)**

Page 4

entities, and the Investors are necessary and indispensable parties and failure to join such parties is fatal and the Complaint must be dismissed pursuant to Fed.R.Civ.P. 19. (Referenced in Fed.R.Civ.P. 12(b)(7)) which is made applicable in adversary proceedings by Fed. R. Bankr.P. 7012(b)).

Finally, with regard to Counts V and VI, defendants state that the plaintiffs have failed to state a claim upon which relief can be granted. Defendants request dismissal pursuant to Fed.R.Civ.P. 12(b)(6). (Made applicable in adversary proceedings by Fed. R. Bankr.P. 7012(b)).

*Conclusions of Law and Discussion*

A. *Jurisdiction*

The Plan requires any causes of action to be filed within 180 days of the Confirmation Date, a defined term. "Confirmation Date" is the date on which the Confirmation Order is docketed. (Plan, Filing No. 231, para. 1.35.) The order confirming the Plan at page 8, paragraph 10(ii), retains jurisdiction in the bankruptcy court for the court to hear and determine actions brought prior or subsequent to the Effective Date, a defined term that is later than the Confirmation Date.[FN3] The Confirmation Order does not purport to amend the terms of the Plan concerning the date for filing a Complaint under 11 U.S.C. § 544. Therefore, the Order does not retain jurisdiction to entertain the action filed more than 180 days after the Confirmation Date. However, because the parties have not discussed this issue of jurisdiction either in the moving papers, at the hearing or in the supplemental briefs, this Memorandum shall also rule on the merits of the Motion.

> FN3. Plan, Filing No. 231, para. 1.50. "Effective Date" shall mean the later of: (i) the date on which there are sufficient funds in the Administrative, Priority and Unsecured Creditor Distribution Fund to pay all Claims that are required to be paid on the Effective Date, or (ii) 20 days after the Confirmation Order has been entered without any stay pending appeal having been issued.

B. *Avoidance Action*

This action is brought pursuant to 11 U.S.C. §§ 544 and 550, and NUFTA and common law claims of unjust enrichment and statutory claims of illegal distribution.

*5 At the hearing on the motion, it was agreed that the Motion to Dismiss may be treated as one requesting summary judgment. Summary judgment is appropriate where the record shows no issue of genuine fact and the moving party is entitled to judgment as a matter of law. *Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir.1997) (quoting Fed.R.Civ.P. 56(c)).*Williams v. Marlar (In re Marlar),* 252 B.R. 743 (8th Cir.BAP2000); See also Fed. R. Bankr.P. 7056. (Making Fed.R.Civ.P. 56 applicable to bankruptcy adversary proceedings.)

The Bankruptcy Code, at 11 U.S.C. § 544(b)(1) provides that the debtor-in-possession, exercising the powers of a trustee, may avoid any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim. There were one or more creditors holding unsecured claims against CIC when the transactions occurred on December 21, 1995. Section 544(b)(1) gives the debtor-in-possession the power to avoid a transfer that is voidable under non-bankruptcy law, which, in this case, is found in NUFTA. Neb.Rev.Stat. §§ 36-701-712.

The debtor-in-possession, exercising state law avoidance powers under 11 U.S.C. § 544 receives the benefit of a state law statute of limitations, which, in the case of the NUFTA, is four years from the date of the transfer.Neb.Rev.Stat. § 36-710. The debtor-in-possession receives this benefit if the action under Section 544 is commenced not later than two years after the entry of the order for relief. 11 U.S.C. § 546(a)(1)(A).

This adversary proceeding was filed within two-years from the entry of the order for relief and within four years from the transactions complained of.

B(1). *Transfer of Property of Debtor*

The Complaint alleges one or more transfers of property of the debtor are avoidable under the NUFTA. As summarized in the *Facts* section above, at paragraphs 6 and 7, the only transfers of property of the debtor that took place concerning the LBO were the granting of liens on all of the assets of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 2001 WL 34630639 (Bkrtcy.D.Neb.)
**(Cite as: Not Reported in B.R.)**

Page 5

Companies as security for repayment of Bank One's loans to CIH, and the similar, but subordinate, security interest granted to Allied as security for repayment of the Allied loans. Those transfers do not appear to be the subject matter of this adversary proceeding.

This matter was originally brought on a Motion to Dismiss and, as the Plaintiff asserts, when considering a Motion to Dismiss, the Court must construe the allegations in the light most favorable to the plaintiff, and must accept them as true for purposes of the motion. _Hishon v. King & Spaulding,_ 467 U.S. 69, 73, 1104 S.Ct. 2229, 2232, 81 L.Ed.2d 59, (1984); _Jenkins v. McKeithen,_ 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Moreover, if the matter was to be decided only on a Motion to Dismiss, plaintiff is correct that the Complaint should not be dismissed unless it appears that the plaintiff could prove no set of facts in support of its claim. _Id.;_ see also _Conley v. Gibson,_ 355 U.S. 41, 8 S.Ct. 99, 2 L.Ed.2d 80, (1957). However, at the hearing on the Motion to Dismiss, the parties consented to the Motion to Dismiss being treated and ruled upon as a Motion for Summary Judgment.

*6 The undisputed fact, as stated in the Complaint, and as argued in the briefs by the plaintiff, is that $26.5 million of the $38 million obtained from Bank One, Allied and the Investors to finance the purchase of defendant-shareholders' stock through the LBO was used to pay shareholders. Plaintiff admits that this money was not paid directly from the debtor to defendants but argues that it must have been paid from monies raised by the debtor through the pledging of all of the debtor's assets and the financial commitment of the debtor to repay the loans.

Such argument, if accepted, would require the court to leave out many of the parties to the transaction and ignore the factual and legal relationships of such parties. CIC was not a party to the stock purchase agreement, CIH was. CIH received the proceeds from the loans and equity investment. CIH maintained and exercised full dominion and control over those funds and transferred those funds to the defendants and others.

The debtor did not transfer any liens to the defendant. Instead, the debtor transferred its property, by granting security interests, to Bank One and Allied. Bank One and Allied then provided money to CIH. CIH then paid its own obligations, including its obligations under the stock purchase contract.

To avoid a transfer under NUFTA, it is necessary that the transfer sought to be avoided must have been made by the debtor. Neb.Rev.Stat. §§ 36-705-706. A transfer is defined as: "Every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."Neb.Rev.Stat. § 36-702(12). Under NUFTA, a creditor may reach assets transferred by the debtor if the transfer was fraudulent. Before there can be a fraudulent transfer under NUFTA, there must be a transfer of property in which the debtor has an interest. _Essen v. Gilmore,_ 259 Neb. 55, 60, 607 N.W.2d 829, 834 (2000).

The facts are undisputed and recited above. Nothing in the Complaint supports the claim by plaintiff that the debtor had an interest in the funds transferred by CIH to the defendants. Without such an interest by the debtor, the transfers to the defendants are not voidable under the NUFTA.

B(2). _Benefits from Transfer_

The plaintiff argues that the defendants benefitted from the transfer of property by the debtors to Bank One and Allied, even if those transfers are limited to the granting of security interests and/or the execution of promissory notes and/or guarantees. Nothing has been submitted to support the assertion. One may infer that Bank One and Allied would not have loaned money to CIH, some of which was eventually transferred to the defendants, but for the granting of the security interests on assets of CIC in favor of the lenders. However, even using such an inference, "[I]t is not enough that an entity benefit from the transfer; the transfer must have been made for his benefit."_In re Bullion Reserve of North America,_ 922 F.2d 544 (9th Cir.1991). In this case, the transfers were for the specific benefit of the _lenders_ to secure loans made to CIH.

*7 Considering the facts in the light most favorable to the plaintiff, even if one were to infer from facts alleged in the Complaint, that, upon the debtor granting liens in favor of the lender, the lender delivered funds to the debtor, and debtor thereafter transferred those funds to CIH for it to pay the defendants for their shares, the debtor did not transfer

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 2001 WL 34630639 (Bkrtcy.D.Neb.)
(Cite as: Not Reported in B.R.)

Page 6

its property to defendants. The debtor, under this scenario, transferred its property (the cash loan proceeds) to CIH. CIH used the cash to pay the obligations of CIH. (This whole scenario ignores the fact that CIC was not a co-maker of the Bank One promissory note, and, therefore, would have had no legal claim to any loan funds from Bank One.)

In another LBO case with facts analogous to those of this case, the Ninth Circuit Court of Appeals in *Lippi v. Citibank,* 955 F.2d 599 (9th Cir.1992), held that a "shell corporation," like CIH in this case, was a legitimate transferee and not a conduit for the debtor to transfer its assets to the selling shareholders. The "shell corporation" was a legitimate transferee because it exercised full dominion and control over the funds it received from the debtor when it paid its own indebtedness in addition to paying the shareholders. In *Lippi,* the trustee argued that initial transfers, such as those to the "shell corporation," were actually for the benefit of the selling shareholders and, therefore, not only avoidable, but recoverable from the shareholders under 11 U.S.C. § 550(a) as initial transferees or as entities for whose benefit the transfer had been made. The Court in *Lippi,* when interpreting Section 550(a)(1), found that, in the context of the LBO, the "shell corporation" received the debtor's property, not the shareholders.

As in *Lippi,* the "shell corporation," CIH, exercised full dominion and control over the funds. It paid various obligations in addition to paying the shareholders. As a matter of law, the transfer, if any, of the loan proceeds was to CIH and not to the defendants.

C. *Necessary Parties*

Separately from the conclusion of law that there was no transfer of the debtor's property to the shareholders, and, therefore, no transfer to avoid, summary judgment is appropriate because the actual transferees of property of the debtor, Bank One and Allied, and, arguably CIH, the initial transferees to whom or for whose benefit the transfers were made, have not been and cannot be joined as defendants. Since they cannot be joined as defendants, because of the releases contained in the confirmed Plan, the transfers to them cannot be avoided. Without the avoidance of such transfers, the Bankruptcy Code, at Section 550(a), precludes recovery of any property or cash proceeds from these defendants. That section provides that,

... *To the extent that a transfer is avoided,* under Section 544, ... the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from: (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any mediate or immediate transferee of such initial transferee. (Emphasis added.)

*8 The statutory language requires the actual avoidance of the initial transfer before recovery may be sought from a subsequent transferee. *Greenwald v. Latham & Watkins (In re Trans-end Technology, Inc.,),* 230 B.R. 101, 104 (Bankr.N.D.Ohio 1998). In *Trans-end Technology,* the trustee took the same position as the plaintiff in this case, that the trustee need only prove that the debtor's initial transfer to an entity analogous to either the lenders or CIH is avoidable in order to recover the transfer of funds received by the entity analogous to the defendants in this case. *In re Trans-end Technology,* 230 B.R. at 102.

The court, in *Trans-end Technology,* analyzed the plain language of Section 550(a) along with related and dependent language in Section 550(f) and Section 546. *Id.* at 104. It found that Section 550(f) provides for a one-year statute of limitations to seek recovery "*after* the avoidance of the transfer on account of which recovery under this section is sought." *Id.* at 105 (emphasis added). That limitation period in Section 550(f) can commence only upon actual avoidance of the transfer within the statute of limitations period set forth in Section 546(a), which in the case of the CIC bankruptcy, would be within two years after the entry of the order for relief. *Id.* at 104. As found in *Trans-end Technology,* if a trustee or debtor-in-possession was not required to first avoid the initial transfer before seeking recovery from a significant transferee, there would be no starting point for the statute of limitations period in Section 550(f) to begin to run. *Id.* at 104-105.

The decision of the bankruptcy court in *Trans-end Technology* is consistent with the determination by the Tenth Circuit Court of Appeals in *Weinman v. Simons (In re Slack-Horner Foundries Co.),* 971 F.2d 577 (10th Cir.1992). There, the court found that in order for the trustee to recover from a subsequent transferee, the trustee must first have the transfer of the debtor's interest to the initial transferee avoided under Section 548. *In re Slack-Horner Foundries,* 971

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06597-AKH   Document 27-5   Filed 01/11/2008   Page 8 of 10

Not Reported in B.R.
Not Reported in B.R., 2001 WL 34630639 (Bkrtcy.D.Neb.)
(Cite as: Not Reported in B.R.)

Page 7

F.2d at 580. A similar result was reached in *Cepa Consulting, Ltd. v. New York National Bank, Inc. (In re Wedtech Corp. .),* 165 B.R. 140 (Bankr.S.D.N.Y.1994), rev'd. on other grounds, 187 B.R. 105 (S.D.N.Y.1995). See also *Brandt v. Hicks, Muse & Co. (In re Health Co. Int'l., Inc.),* 195 B.R. 971, 981-82 (Bankr.D.Mass.1996); *Thompson v. Jonovich (In re Food & Fibre Protection, Ltd.),* 168 B.R. 408, 419 (Bankr.D.Ariz.1994).

The plaintiff, while reluctantly acknowledging the cited authority, argues that, when considering an LBO in the context of a fraudulent transfer action, the Court should collapse the transaction to consider the reality of the transactions. "Collapsing the transaction" in the leveraged buyout context requires a court to find that the persons or entities receiving a transfer were direct transferees who received an interest of the debtor's property as a part of the buyout. In addition, collapsing the transaction requires the court to find that the "shell corporation," in this case CIH, was a mere conduit through which the debtor's property flowed. See, *Weiboldt Stores, Inc. v. Schottenstein,* 94 B.R. 488, 500 (N.D.Ill.1988). When making such a determination, a court must look at the entire transaction, including the knowledge and intent of the parties involved in the transaction, plus the structure of the transaction, from the standpoint of the lenders, the selling shareholders, and all entities in between. *Weiboldt,* 94 B.R. at 502. In *Weiboldt,* the lenders and the selling shareholders were named as parties.

*9 The court also "collapsed" the leveraged buyout transaction in *Crowthers McCall Pattern, Inc. v. Lewis,* 129 B.R. 992 (Bankr.S.D.N.Y.1991). The creditors' committee filed an action seeking to avoid the transfers from the lending institution to the "shell corporation" and the transfer from the "shell corporation" to the target's shareholders. *Crowthers McCall Pattern,* 129 B.R. at 995. In that case, again, the lenders and the selling shareholders were named as parties, thus allowing the court to review the entire transaction and collapse it as to all participants.

The court in *Moody v. Security Pacific Business Credit, Inc.,* 127 B.R. 958, 992 (W.D.Pa.1991), aff'd, 971 F.2d 1056 (3rd Cir.1992), agreed that a leveraged buyout should be treated as "one integral transaction" because no part of the transaction would have taken place without the occurrence of all the other parts. *Moody,* 127 B.R. at 992. Both the lenders and shareholders were parties to the lawsuit which allowed the court to consider the entire transaction before collapsing it.

The case law is consistent and virtually unanimous at every court level. If a court "collapsed" the leveraged buyout transaction, both the lenders and shareholders were named as parties. See, *In re Best Products, Inc.,* 168 B.R. 35 (S.D.N.Y.1994), aff'd, 68 F.2d 26 (2nd Cir.1995); *U.S. v. Gleneagles Inv. Co., Inc.,* 565 F.Supp. 556 (M.D.Penn.1983), aff'd sub nom.*U.S. v. Tabor Court Realty Corp.,* 803 F.2d 1288 (3rd Cir.1986), cert. denied sub nom.*McClellan Realty Co. v. U.S.,* 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987); *In re Almac's, Inc.,* 202 B.R. 648 (D.R.I.1996); *Kendall v. Sorani (In re Richmond Produce Company, Inc.),* 195 B.R. 455 (N.D.Cal.1996); *Buckhead America Corp. v. Reliance Capital Group, Inc. (In re Buckhead America Corp.),* 178 B.R. 956 (D.Del.1994); *Health Co. Intern., Inc.,* 195 B.R. 971;*Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.),* 187 B.R. 315 (Bankr.C.D.Cal.1995); *Ferrari v. Barclays Business Credit, Inc. (In re Morse Tool, Inc.),* 148 B.R. 97 (Bankr.D.Mass.1992); *Aluminum Mills Corp. v. Citicorp North America, Inc. (In re Aluminum Mills Corp.),* 132 B.R. 869 (Bankr.N.D.Ill.1991); *Yoder v. T.E.L. Leasing, Inc. (In re Suburban Motor Freight, Inc.),* 124 B.R. 984 (Bankr.S.D.Ohio 1990); *Ohio Corrugating Co. v. DPAC, Inc. (In re Ohio Corrugating Co.),* 91 B.R. 430 (Bankr.N.D.Ohio 1988); *Weiboldt Stores,* 94 B.R. 488.

Here, however, the initial step in the transaction, the transfer for the Debtor to the lenders, is missing. Without this initial step, any "collapse" would disregard both the substance and form of the transaction.

Additionally, and particularly if one assumes, as the plaintiff does, that the loan proceeds received by CIH from Bank One and Allied should be considered to be property in which CIC had an interest, CIH also was an initial transferee. CIH exercised dominion and control over the transferred funds and exercised its right to put the money to its own use. In that context, CIH, the recipient of the proceeds of the bank loans, is an initial transferee. *Kuker v. Reeves (In re Reeves),* 65 F.3d 670, 676 (8th Cir.1995); *Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890, 893 (7th Cir.1988). CIH received the funds from Bank One, Allied and Investors. It used the funds to pay the transaction costs of the LBO, certain other expenses of operation, and to complete

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R. Page 8
Not Reported in B.R., 2001 WL 34630639 (Bkrtcy.D.Neb.)
**(Cite as: Not Reported in B.R.)**

its contractual obligation to the shareholders with regard to the purchase of shares in the Companies. As in *Lippi v. Citibank*, 955 F.2d at 611, CIH was a corporation created to facilitate the transaction, was ultimately given the proceeds of various loans which it utilized to pay its own indebtedness and complete the transaction with the selling shareholders. In *Lippi v. Citibank,* the Ninth Circuit found that the "shell corporation" was not a mere conduit through which the funds flowed, but in paying its own debts and completing the stock transfer, exercised dominion and control over the funds and thus was in initial transferee within the meaning of 11 U.S.C. § 550. *Lippi,* 955 F.2d at 611.

*10 Section 550(b) permits the trustee to recover an avoided transfer from the "initial transferee" of the debtor or the "entity for whose benefit such transfer was made."The phrase "or the entity for whose benefit such transfer was made" refers to those who received a benefit as a result of the initial transfer from the debtor. It does not refer to those who receive a benefit as a result of a subsequent transfer. *In re Bullion Reserve of North America,* 922 F.2d at 547 (citing *Merrill v. Dietz (In re Universal Clearing House Co.),* 62 B.R. 118, 128 (D.Utah 1986); and *Bonded Financial Services v. European American Bank,* 838 F.2d 890, 895 (7th Cir.1988)).

The lenders and CIH are indispensable parties and cannot now be made parties. Therefore, pursuant to Fed.R.Civ.P. 19, the Complaint must be dismissed.

*Conclusion re Fraudulent Conveyance*

All claims for relief with regard to the request by the plaintiff to avoid, as a fraudulent transfer, any and all transfers of property of the debtor to the defendants are dismissed as a matter of law. Summary judgment is granted in favor of the defendants and against the plaintiff. The allegations in the Complaint, considered with the confirmed Plan, do not assert a factual or legal basis to sustain an avoidance action under 11 U.S.C. § 544 and Neb.Rev.Stat. §§ 36-701-712.

*Illegal Distributions*

Although plaintiffs assert in the Complaint and argue in the briefs that the debtor made an illegal distribution to defendants, there are no material facts in dispute concerning what happened in this case.

The debtor made no distribution of any property of the debtor to the defendants. The debtor granted a security interest in its assets to Bank One and Allied. In addition, the debtor companies either guaranteed loans made by Bank One and Allied to CIH or were co-makers of such loans. The proceeds of the loans were provided to CIH by the lenders. CIH controlled the funds. CIH entered into a stock purchase agreement with the defendants. CIH paid the contract amount to the defendants. CIH, thereafter, became the sole shareholder in the debtor.

Even if one could infer from the allegations in the Complaint that Bank One and Allied loaned the money to CIC, there is no factual or legal basis upon which one could then infer that CIC paid the defendants for their stock. CIC was not a party to the stock purchase agreement. CIC did not end up with ownership of its own stock.

That portion of the Complaint which asserts illegal distributions on the part of the debtor to its shareholders must, as a matter of law, be dismissed. Because there are no material issues of fact and the defendants are entitled to judgment as a matter of law, summary judgment shall be entered in favor of the defendants and against the plaintiff.

*Unjust Enrichment*

There are no disputed facts. CIC has no claim against the defendants, because no CIC property was received by defendants, and the receipt by defendants of payment for shares from CIH, the purchaser, does not give plaintiff a legal claim against defendants. The motion is granted and judgment shall be entered in favor of defendants and against plaintiff.

*11 Separate judgment to be entered.

*JUDGMENT*

1. The motion is granted.

2. Summary judgment is granted in favor of defendants and against plaintiff on all counts.

3. The adversary proceeding is dismissed.

See Memorandum entered this date.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                                                    Page 9
Not Reported in B.R., 2001 WL 34630639 (Bkrtcy.D.Neb.)
**(Cite as: Not Reported in B.R.)**

Bkrtcy.D.Neb.,2001.
Contemporary Indus. Corp. v. Frost
Not Reported in B.R., 2001 WL 34630639 (Bkrtcy.D.Neb.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.