3

# COLLIER ON BANKRUPTCY®

FIFTEENTH EDITION REVISED

## VOLUME D

**ALAN N. RESNICK**
*Benjamin Weintraub Distinguished Professor of Bankruptcy Law, Hofstra University School of Law;*
*Of Counsel, Fried, Frank, Harris, Shriver & Jacobson LLP, New York City*

**HENRY J. SOMMER**
*Supervising Attorney, Consumer Bankruptcy Assistance Project, Philadelphia*

EDITORS-IN-CHIEF

**LAWRENCE P. KING**
EDITOR-IN-CHIEF, 1974–2001

**LEGISLATIVE HISTORY OF THE BANKRUPTCY REFORM ACT OF 1978**



LexisNexis

# LEGISLATIVE HISTORY—PUB. L. NO. 95–598
## House Debate on Compromise Bill, 124 Cong. Rec. H11047-117 (daily ed. Sept. 28, 1978)

After the Senate adopted its amendment in the nature of a substitute to H.R. 8200 and sent the bill back to the House, the floor managers in both Houses met and agreed upon a compromise bill. This bill was adopted by the House on September 28, 1978, as an amendment in the nature of a substitute to the Senate amendment to the House bill H.R. 8200. The floor managers also agreed on a joint explanatory statement, which each published in the Congressional Record immediately following the actual floor debates on the compromise bill. This joint explanatory statement of managers explains in detail the compromises that were reached and the interpretations of the new language. It also resolves some of the differences between the House and Senate Judiciary Committee Reports. It is similar in function and purpose to the Joint Explanatory Statement of Managers that accompanies a formal Conference Report of a Committee of Conference, and its effect should be the same.

interest in such property becomes property of the estate. If the debtor holds bare legal title or holds property in trust for another, only those rights which the debtor would have otherwise had emanating from such interest pass to the estate under section 541. Neither this section nor section 545 will affect various statutory provisions that give a creditor a lien that is valid both inside and outside bankruptcy against a bona fide purchaser of property from the debtor, or that creates a trust fund for the benefit of creditors meeting similar criteria. See Packers and Stockyards Act § 206, 7 U.S.C. 196(1976).

Section 541(c)(2) follows the position taken in the House bill and rejects the position taken in the Senate amendment with respect to income limitations on a spend-thrift trust.

Section 541(d) of the House amendment is derived from section 541(e) of the Senate amendment and reiterates the general principle that where the debtor holds bare legal title without any equitable interest, that the estate acquires bare legal title without any equitable interest in the property. Examples of this are mortgages sold for which legal title has been retained for servicing. Similarly, if the debtor holds an equitable interest in property without legal title, the estate would acquire only the equitable interest of the debtor in property and not the legal title. Thus, as section 541(a)(1) clearly states, the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. To the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate except to the extent that defenses which are personal against the debtor are not effective against the estate.

Section 542(a) of the House amendment modifies similar provisions contained in the House bill and the Senate amendment treating with turnover of property to the estate. The section makes clear that any entity, other than a cus-

[H 11097]

todian, is required to deliver property of the estate to the trustee or debtor in possession whenever such property is acquired by the entity during the case, if the trustee or debtor in possession may use, sell, or lease the property under section 363, or if the debtor may exempt the property under section 522, unless the property is of inconsequential value or benefit to the estate. This section is not intended to require an entity to deliver property to the trustee if such entity has obtained an order of the court authorizing the entity to retain possession, custody, or control of the property.

The House amendment adopts section 542(c) of the House bill in preference to a similar provision contained in section 542(c) of the Senate amendment.

Protection afforded by section 542(c) applies only to the transferor or payor and not to a transferee or payee receiving a transfer or payment, as the case may be. Such transferee or payee is treated under section 549 and section 550 of title 11.

The extent to which the attorney client privilege is valid against the trustee is unclear under current law and is left to be determined by the courts on a case by case basis.

Section 543(a) is a modification of similar provisions contained in the House bill and the Senate amendment. The provision clarifies that a custodian may always act as is necessary to preserve property of the debtor. Section 543(c)(3) excepts from surcharge a custodian that is an assignee for the benefit of creditors, who was appointed or took possession before 120 days before the date of the filing of the petition, whichever is later. The provision also prevents a custodian from being surcharged in connection with payments made in accordance with applicable law.

Section 544(a)(3) modifies similar provisions contained in the House bill and Senate amendment so as not to require a creditor to perform the impossible in order to perfect his interest. Both the lien creditor test in section 544(a)(1), and the bona fide purchaser test in section 544(a)(3) should not require a transferee to perfect a transfer against an entity with respect to which applicable law does not permit perfection. The avoiding powers under section 544(a)(1),(2), and (3) are new. In particular, section 544(a)(1) overrules *Pacific Finance Corp. v. Edwards*, 309 F.2d 224 (9th Cir. 1962), and *In re Federals, Inc.*, 553 F.2d 509 (6th Cir. 1977), insofar as those cases held that the trustee did not have the status of a creditor who extended credit immediately prior to the commencement of the case.

The House amendment deletes section 544(c) of the House bill.

Section 545 of the House amendment modifies similar provisions contained in the House bill and Senate amendment to make clear that a statutory lien may be avoided under section 545 only to the extent the lien violates the perfection standards of section 545. Thus a Federal tax lien is invalid under section 545(2) with respect to property specified in sections 6323(b) and (c) of the Internal Revenue Code of 1954. As a result of this modification, section 545(b) of the Senate amendment is deleted as unnecessary.

Section 546(a) of the House amendment is derived from section 546(c) of the Senate amendment. Section 546(c) of the House amendment is derived from section 546(b) of the Senate amendment. It applies to receipt of goods on credit as well as by cash sales. The section clarifies that a demand for reclamation must be made in writing anytime before 10 days after receipt of

the goods by the debtor. The section also permits the court to grant the reclaiming creditor a lien or an administrative expense in lieu of turning over the property.

No limitation is provided for payments to commodity brokers as in section 766 of the Senate amendment other than the amendment to section 548 of title II. Section 547(c)(2) protects most payments.

Section 547(b)(2) of the House amendment adopts a provision contained in the House bill and rejects an alternative contained in the Senate amendment relating to the avoidance of a preferential transfer that is payment of a tax claim owing to a governmental unit. As provided, section 106(c) of the House amendment overrules contrary language in the House report with the result that the Government is subject to avoidance of preferential transfers.

Contrary to language contained in the House report, payment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when the check is delivered for purposes of sections 547(c)(1) and (2).

Section 547(c)(6) of the House bill is deleted and is treated in a different fashion in section 553 of the House amendment.

Section 547(c)(6) represents a modification of a similar provision contained in the House bill and Senate amendment. The exception relating to satisfaction of a statutory lien is deleted. The exception for a lien created under title 11 is deleted since such a lien is a statutory lien that will not be avoidable in a subsequent bankruptcy.

Section 547(e)(1)(B) is adopted from the House bill and Senate amendment without change. It is intended that the simple contract test used in this section will be applied as under section 544(a)(1) not to require a creditor to perfect against a creditor on a simple contract in the event applicable law makes such perfection impossible. For example, a purchaser from a debtor at an improperly noticed bulk sale may take subject to the rights of a creditor on a simple contract of the debtor for 1 year after the bulk sale. Since the purchaser cannot perfect against such a creditor on a simple contract, he should not be held responsible for failing to do the impossible. In the event the debtor goes into bankruptcy within a short time after the bulk sale, the trustee should not be able to use the avoiding powers under section 544(a)(1) or 547 merely because State law has made some transfers of personal property subject to the rights of a creditor on a simple contract to acquire a juidicial lien with no opportunity to perfect against such a creditor.

Section 548(d)(2) is modified to reflect general application of a provision contained in section 766 of the Senate amendment with respect to commodity

brokers. In particular, section 548(d)(2)(B) of the House amendment makes clear that a commodity broker who receives a margin payment is considered to receive the margin payment in return for "value" for purposes of section 548.

Section 549 of the House amendment has been redrafted in order to incorporate sections 342(b) and (c) of the Senate amendment. Those sections have been consolidated and redrafted in section 549(c) of the House amendment. Section 549(d) of the House amendment adopts a provision contained in section 549(c) of the Senate amendment.

Section 550(a)(1) of the House amendment has been modified in order to permit recovery from an entity for whose benefit an avoided transfer is made in addition to a recovery from the initial transferee of the transfer. Section 550(c) would still apply, and the trustee is entitled only to a single satisfaction. The liability of a transferee under section 550(a) applies only "to the extent that a transfer is avoided". This means that liability is not imposed on a transferee to the extent that a transferee is protected under a provision such as section 548(c) which grants a good faith transferee for value of a transfer that is avoided only as a fraudulent transfer, a lien on the property transferred to the extent of value given.

Section 550(b) of the House amendment is modified to indicate that value includes satisfaction or securing of a present antecedent debt. This means that the trustee may not recover under subsection (a)(2) from a subsequent transferee that takes for "value", provided the subsequent transferee also takes in good faith and without knowledge of the transfer avoided.

Section 550(e) of the House amendment is derived from section 550(e) of the Senate amendment.

Section 551 is adopted from the House bill and the alternative in the Senate amendment is rejected. The section is clarified to indicate that a transfer avoided or a lien that is void is preserved for the benefit of the estate, but only with respect to property of the estate. This prevents the trustee from asserting an avoided tax lien against after acquired property of the debtor.

Section 552(a) is derived from the House bill and the alternative provision in the Senate amendment is rejected. Section 552(b) represents a compromise between the House bill and the Senate amendment. Proceeds coverage, but not after acquired property clauses, are valid under title 11. The provision allows the court to consider the equities in each case. In the course of such consideration the court may evaluate any expenditures by the estate relating to proceeds and any related improvement in position of the secured party. Although this section