6



5 George 576                                                                                                                      Page 1
5 George 576, 34 Miss. 576, 1857 WL 2723 (Miss.Err. & App.)
**(Cite as: 5 George 576)**

CFREDERICK STANTON et al. v. ABNER E. GREEN et al.
Miss.Err.App 1857.

High Court of Errors and Appeals of Mississippi.
FREDERICK STANTON et al.
v.
ABNER E. GREEN et al.
October Term, 1857.

1. FRAUD: AND FRAUDULENT CONVEYANCE: CASE IN JUDGMENT.-G., a debtor in failing circumstances, on the 12th day of March, 1841, and just before a term of the Circuit Court, at which judgments for a large amount were rendered against him, sold to one F., for $30,000, payable in six small annual instalments, but without interest,-all his property, consisting of a plantation and a large number of slaves, stock, &c., worth in cash $43,000, and reserving to himself the right of possession until the 1st day of March, 1842, when the final payment fell due. F., the purchaser, resided in another State, and owned but little property, and was of doubtful solvency; he had been the overseer of G., and was very friendly with him. On the 21st of April, 1841, F. conveyed the property to W., the mother-in-law of G.,-she giving him a bond to pay the notes he had executed to G. for the purchase-money. On the 26th of April, 1841, W. conveyed the property to a trustee, who was also a relation of G.'s wife, in trust, out of its proceeds, and by a sale if necessary, to pay the six notes of G. to F., and to convey the residue to G.'s wife and children. W. was at this time an elderly lady, owning a small plantation and a few slaves, was delinquent in the payment of her debts, and frequently sued. The trustee never took actual possession of the property, but permitted G. to have the possession, and manage and use it substantially as his own. The property was assessed in the name of G., who paid the taxes on it; G. also made a sale of part of the land, to a certain creditor, for $17,000, and he and his wife joined the trustee in making a deed to the same. In 1848, this bill was filed by judgment creditors of G., attacking the conveyances as fraudulent and void as to them. G., in his answer, stated that he made the sale to F. for the purpose of preferring some of his creditors, and that the reservation of the right of possession to him until 1st March, 1842, was made because at the date of sale (12th March, 1841) both he and F. had commenced their planting operations for 1841. F. answered that he sold to W. because he became alarmed at the magnitude of his purchase, and feared that he would be unable to make the payments promptly. W. averred that she was ignorant of the sale by G. to F., until a short time after it took place, when hearing that F. was dissatisfied, she determined to purchase from him. G. and the trustee both answered that G.'s possession was as agent for the trustee. All the defendants denied any fraudulent intention, and insisted on the *bonâ fides* of the transaction. There was no proof that G. had ever applied any of the proceeds of the notes of F. to his debts. *Held*, that the several conveyances were merely colorable, and devised to secure the property to G. or his family, and were therefore fraudulent and void as to his creditors.

2. SAME: DEBTOR MAY PREFER CREDITORS BONA FIDE.-A person in failing circumstances may prefer a part of his creditors, if he do so *bonâ fide*, and without the design of securing a benefit to himself, from the property so conveyed.

3. SAME: SAME: BUT DEBTOR MUST SHOW THE BONA FIDES.-Where a debtor, in failing circumstances, and just before judgments for large amounts were rendered against him, makes a sale of his property for the purpose, as alleged by him, of preferring certain of his creditors, it is incumbent on him to show, by proof, that the sale was made *bonâ fide* for such purpose.

4. CHANCERY PRACTICE: RULE WHERE COMPLAINANT EXAMINES DEFENDANT AS A WITNESS.-It is a rule of chancery practice, that if the complainant examines as a witness, a material defendant in the cause, no decree can be rendered against that defendant, nor against his co-defendants, whose interests are so involved with his that a decree against them would affect his rights, unless the complainant's case is admitted by the answer, or the bill be taken for confessed, for the reason "that there cannot be a decree for or against a man on his own evidence,""and the complainant cannot compel the defendant to assist, and in the same cause act adversely to him."But this rule, though well settled, is extremely technical, and not to be extended beyond the strict reason upon which it is founded; and hence,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5 George 576                                                                                         Page 2
5 George 576, 34 Miss. 576, 1857 WL 2723 (Miss.Err. & App.)
**(Cite as: 5 George 576)**

where the deposition of such a defendant has been taken, if the complainant is entitled to relief upon the pleading and other evidence in the cause, the deposition will be suppressed, and a decree rendered in favor of the complainant. See 2 Daniel Ch. Pr. 1041; *Hulton* v. *Sandys*, 1 Younge, 602; *Thompson* v. *Harrison*, 1 Cox, 346; *Massey* v. *Massey*, 1 Beatty, 353; *Bradley* v. *Root*, 5 Paige, 637;*Carter* v. *Hawley*, 2 Amb. 583, note 3; Ib. 584; *Weymouth* v. *Boyer*, 1 Ves. Jr. 420.

5. SAME: FRAUDULENT VENDEE A MATERIAL DEFENDANT, AND CANNOT BE EXAMINED AS A WITNESS.-A fraudulent conveyance to defeat or hinder creditors, though void as to them, is good as between the parties, and the fraudulent vendee is, therefore, liable for the purchase-money, even if the conveyance should be set aside at the instance of a creditor; hence, he is a material defendant, whose rights would be affected by a decree annulling the sale, and if examined by the complainant in relation to the fraud, a decree cannot be rendered for the complainant, unless his answer confess the complainant's case, or the bill be taken for confessed, or there be other proof in the record, sufficient to entitle the complainant to relief, without reading the deposition of such defendant.

6. SAME: PURCHASER RELYING ON WANT OF NOTICE: MUST DENY IT.-To entitle a party to protection as purchaser without notice, he must deny notice fully and particularly, whether the defence be set up by plea or answer. See 2 Lead. Cas. Eq. pt. 1, 85, 86; *Gallatin* v. *Cunningham*, 8 Cow. 361, 394; see also *Servis* v. *Beatty*, 32 Miss. R. 52.
West Headnotes
**Fraudulent Conveyances 186** ⟲115(1)

186 Fraudulent Conveyances
    186I Transfers and Transactions Invalid
        186I(J) Preferences to Creditors
            186k115 Right of Debtor to Prefer Creditor
                186k115(1) k. In General. Most Cited Cases
A debtor in failing circumstances, or insolvent, may bona fide prefer one creditor to another.

**Fraudulent Conveyances 186** ⟲146(1)

186 Fraudulent Conveyances
    186I Transfers and Transactions Invalid
        186I(K) Retention of Possession or Apparent Title by Grantor
            186k146 Possession by Husband, Wife or Other Relatives
                186k146(1) k. In General. Most Cited Cases
A. sold all his property to a friend for very much less than its value, and took in payment notes without interest, reserving the right of possession. The friend, who was a person of no property, conveyed it to A.'s mother-in-law, an elderly lady of no property. She conveyed it in trust to pay the notes out of the proceeds, the balance to go to A.'s wife and children. A. always occupied and managed it, was taxed and paid the taxes on it, and afterwards, jointly with his wife, sold part to a former creditor. There was no proof that A. had ever applied any part of the notes given to pay his debts. Held, that the whole transaction was colorable only, and for the benefit of A.'s family, and therefore creditors were allowed to avoid it by a bill filed seven years after the first conveyance.

**Fraudulent Conveyances 186** ⟲177

186 Fraudulent Conveyances
    186II Rights and Liabilities of Parties and Purchasers
        186II(A) Original Parties
            186k173 Mutual Rights and Liabilities of Parties
                186k177 k. Payment and Recovery of Consideration. Most Cited Cases
A sale fraudulent as to creditors is valid between the parties, and therefore the vendee must pay his notes given for the price, though the property be taken from him by the grantor's creditors.

**Fraudulent Conveyances 186** ⟲255(4)

186 Fraudulent Conveyances
    186III Remedies of Creditors and Purchasers
        186III(G) Parties
            186k254 Defendants
                186k255 In General
                    186k255(4) k. Grantee as Defendant. Most Cited Cases
The grantee is a necessary party to an action by the grantor's creditors to set aside a conveyance as fraudulent.

**Fraudulent Conveyances 186** ⟲266(2)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

186 Fraudulent Conveyances
    186III Remedies of Creditors and Purchasers
        186III(H) Pleading
            186k266 Plea or Answer, and Subsequent Pleadings
                186k266(2) k. Denials and Admissions. Most Cited Cases

In order to entitle a party to protection as a purchaser without notice, he must deny notice fully and particularly, whether the defense be set up by plea or answer.

**Fraudulent Conveyances 186 ⟶279**

186 Fraudulent Conveyances
    186III Remedies of Creditors and Purchasers
        186III(I) Evidence
            186k270 Presumptions and Burden of Proof
                186k279 k. Reservations and Trusts for Grantor. Most Cited Cases

Where an insolvent makes a sale of his property for the purpose of preferring certain of his creditors, it is incumbent on him to show that the sale was bona fide, and not on any secret trust.

**Equity 150 ⟶352**

150 Equity
    150VI Taking and Filing Proofs
        150k351 Examination of Witnesses
            150k352 k. In General. Most Cited Cases

Though the complainant cannot have a decree against a material defendant whom he has examined as a witness to prove his case, nor against any other defendant a decree against whom would affect the witness' rights, yet this rule is technical; and therefore, though the complainant has taken the deposition of such a party, he may suppress it and have a decree against him, if he can prove his case by other evidence.

**Witnesses 410 ⟶83**

410 Witnesses
    410II Competency
        410II(B) Parties and Persons Interested in Event
            410k82 Parties of Record in Civil Actions and Proceedings
                410k83 k. In General. Most Cited Cases

A fraudulent vendee, being a material defendant in an action to set aside the sale, cannot be examined as a witness to prove the fraud.

*1 ERROR to the Superior Court of Chancery. Hon. Charles Scott, chancellor.

This case is very fully stated in the opinion of the court.

*G. M. Davis*, for plaintiffs in error.
*H. T. Ellett, John B. Coleman, John T. McMurran*, and *Ralph North*, for defendants in error.
HANDY, J., delivered the opinion of the court.
This bill was filed in the District Chancery Court at Natchez, by the plaintiffs in error, as judgment creditors of Abner A. Green, to vacate certain conveyances, made by him and the other defendants for the purpose of hindering or defrauding his creditors.

The bill alleges in substance that Abner A. Green, with the intent to secrete a large amount of personal and real estate which he owned in Jefferson county, and to secure it to his own use, in fraud of the plaintiffs in error and his other numerous creditors, on the 12th of March, 1841, executed a pretended deed for the property to one Stephen M. Ford, then and since residing in Louisiana, for the feigned consideration of thirty thousand dollars, conveying the property to Ford absolutely, with a stipulation in the deed that possession was to be delivered to him on the 1st of March, 1842. That the consideration stated in the deed was false and colorable, and that Ford neither paid nor secured anything to be paid therefor, and was insolvent and without means or credit to make such a purchase *bonâ fide* at the time, and that certain notes which he gave for the purchase-money, as was pretended, were merely colorable. That after the execution of the deed there was no change of possession, and that Green continued in the possession and use of the property as though the conveyance had not been made. It is further alleged, that in order to carry out the same fraudulent purpose, and before the deed was filed for registration, on the 21st of April, 1841, Ford executed a deed for the same property to Nancy A. Wood, of Adams county, the mother-in-law of Green, for the nominal consideration of thirty thousand dollars, to which deed, in order to give color of consideration for it, there was annexed a memorandum stating that Ford had given to Green his six promissory notes, each for $5000, payable 1st of May (March), 1842, 1843, 1844, 1845, 1846, and 1847, bearing interest; and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that Nancy A. Wood had given her bond to Ford, binding herself to pay these notes at maturity, and that a lien was to be retained on the property to secure the payment. And in four days after the date of this last deed, in furtherance of the same fraudulent purpose, on the 26th of April, 1841, Nancy A. Wood, for the nominal consideration of thirty thousand dollars, executed a deed conveying the same property to Wiley M. Wood, her brother-in-law, and the uncle of Green's wife, in trust, out of the proceeds of the property, and by the sale of it, if necessary, to pay the six notes of Ford to Green, and to convey the residue of the property remaining thereafter to her daughter, Sarah Green, the wife of Green, and her children, to be considered as an advancement to her; which deed, as well as that from Ford to Nancy A. Wood, was not filed for registration until the 7th July, 1842. It is further alleged that Wiley M. Wood never accepted the trust or executed its provisions; that Green has ever since continued in the use and enjoyment of the property, treating it as his own, without any control or interference by Wiley M. Wood, who has not paid or undertaken to pay any of the notes.

*2 The bill also charges that a conveyance made by Nancy A. Wood, to the wife of Green, of other slaves, is fraudulent, and that those slaves are the property of Green, and subject to his debts; but that part of the bill is not insisted upon, and is not necessary to be noticed.

The answers all deny the charges of fraud in any of the deeds or transactions connected with them, or that Ford was insolvent and unable to make the purchase. They allege that his reason for conveying the property to Nancy A. Wood, was, that after the purchase he feared he would not be able to pay the purchase-money promptly; and Nancy A. Wood states that, learning of his dissatisfaction, shortly after the sale was made to him, she proposed to purchase from him, which was carried out,-she executing to him her bond to pay the notes, and he retaining a lien upon the property as a security; that she knew the circumstances which caused the sale, and determined to purchase the property, if she could, for the benefit of her daughter and her children; and after her purchase, that she conveyed the property to Wood, her brother-in-law, in order to carry out her purpose; that she made the purchase without Green's knowledge or consent. She admits that no change of possession took place, and that Green remained in possession until about the 5th of July, 1842, and has since been in possession, as agent for Wiley M.

Wood; but that, by the terms of the deed to Ford, possession was reserved to Green until 1st March, 1842. She further states, that four of the notes have been paid; that by the proceeds of the crops, and a sale of part of the land conveyed by Green and wife and Wiley M. Wood to the two Bakers (to whom Green was indebted as their guardian) about $17,000 have been paid by means of the property, which, with payments made by her out of her own funds, reduced the debt due upon the notes to about $7837 33.

Green states that his object in making the deed to Ford, was to prefer creditors; that the reason why it was specified in the deed that possession was not to be given until 1st March, 1842, was that he and Ford had both commenced their planting operations for 1841, and therefore possession was not to be given until March, 1842. He denies all knowledge of Ford's sale to Nancy A. Wood, but was gratified at it, and all knowledge or participation in the deed from her to Wiley M. Wood. He states that, after 1st March, 1842, he held possession subject to Wood's right, until 5th July, 1842, when Wood took actual possession, and had absolute control, but that Green and his family occupied the dwelling-house, and he remained on the place, as agent of Wood. He denies that he has since received the proceeds or profits to his own use, and alleges that Nancy A. Wood was able to pay for the property without embarrassing herself.

Ford states that he executed the notes, and also gave a mortgage on the property, and that he was able to make the purchase; but became alarmed at the magnitude of the purchase, and therefore sold to Nancy A. Wood, wishing to discharge himself from it; and that this was done without any agreement with Green.

*3 Wiley M. Wood states that he accepted the trust on the 5th July, 1842, on which day Green delivered possession to him, and he appointed Green agent to manage the property, with full power to apply the proceeds to the payment of the notes, which he has done accordingly, but denies that Green holds possession for his individual use and benefit. He states that, in November, 1845, in pursuance of the power conferred upon him by the trust deed, and for the benefit of the holder of the notes, he conveyed to Thomas and Edward Baker, the larger and most valuable part of the land, for the sum of $17,000, in cash, which was applied to the payment of the notes, and that Green, as his agent, applied the net proceeds

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the property, amounting to $9246 45, to the same, and these payments, together with the proceeds of sales of the trust property, made by this trustee and Nancy Wood, reduced the debt to about the sum of $7837 33, in March, 1848.

After the filing of these answers, Thomas and Edward Baker were made defendants, and they filed a joint answer, stating that, in November, 1845, they purchased certain parts of the lands mentioned in the deeds in controversy, for the sum of $17,000, and received for the same a deed executed by Wiley M. Wood, Abner E. Green, and his wife, which has been duly recorded; and that the purchase was made for the purpose of liquidating in part a debt which was due them by Green, as their guardian; that he had not settled his guardian account at the date of the purchase, but in his account, subsequently settled in the Probate Court, he received credit in consideration of the purchase for the sum of $17,000; that Green was still further indebted to them in a large balance, which it was understood should be paid from the proceeds of the notes of Ford, held by Green; and afterwards, by agreement between all the parties about the 1st July, 1848, Nancy A. Wood assumed the payment of the balance due, amounting to $4781 08, in satisfaction of the claim against Green, and in consideration of her liability for the payment of the notes of Ford. And they deny all fraud charged against them, &c.

Upon these pleadings, the depositions of a great number of witnesses were taken by the parties; and under an order of court, made on the application of the complainants, the deposition of Nancy A. Wood was taken. And upon the final hearing, the vice-chancellor decreed that the deeds mentioned in the bill were fraudulent and void as to the complainants, and that the property mentioned therein should be sold, to satisfy the debts due the complainants. From that decree, the defendants took an appeal to the Superior Court of Chancery, and the decree was then reversed, and the bill dismissed; and thereupon the case is brought here by writ of error.

The first question for consideration is, whether, as the complainants thought proper to take the deposition of Nancy A. Wood, a material defendant in the cause, they can have the relief sought against her or any of her co-defendants?

*4 It appears to be clear that she is a material defendant; for, although the transactions complained of in the bill be held to be fraudulent and void as to the creditors of Green, yet they are valid and binding between the parties to them; and although Nancy A. Wood appears to have conveyed the property to a trustee for the payment of the notes of Ford, and ultimately to the use of Mrs. Green and her children, yet she admits by her answer that she is bound for the payment of those notes. She would, therefore, be bound, notwithstanding the conveyances might be vacated as to the creditors, because, as a party to the fraud, she could not avail herself of it to release herself from her obligations arising under it, and forming part of it. Hence, if the conveyances are set aside, her liability stands, but she is deprived of the security which she derives from her conveyances of the property; and it is, therefore, manifest that a decree setting aside the conveyances is positively against her interest, as it must be regarded in point of law.

The rule of chancery practice appears to be well established that, if a complainant examines, as a witness, a material defendant in the cause, no decree can be had against that defendant, nor against his co-defendants whose interests in the matter are involved with his, and a decree against whom would affect his interest. 2 Daniel Ch. Pr. 1041; *Hulton* v. *Sandys*, 1 Younge, 602; *Thompson* v. *Harrison*, 1 Cox, 346. To this rule there are exceptions,-that, if the complainant's case is admitted by the answer, or the bill is taken as confessed, the complainant is entitled to a decree upon bill and answer, or upon *pro confesso*, notwithstanding a material defendant has been examined by him as a witness. *Massey* v. *Massey*, 1 Beatty, 353; <u>Bradley v. Root, 5 Paige, 637</u>. Does not the reason upon which these exceptions to the general rule are founded, apply with equal force to a case where the bill is sufficiently sustained by documentary proof and the testimony of other witnesses, without reference to that of the defendant, as to a case where the bill is admitted by the answer or taken as confessed?

The reason of the general rule, that the complainant should not have a decree against a defendant whose testimony he had taken as a witness in the case is, that it would be charging him upon his own evidence (*Carter* v. *Hawley*, 2 Ambler, 583, note 3); that "the complainant should not compel him to assist, and in the same cause, act adversely to him" (*Nightingale* v. *Dodd*, 2 Ambler, 584); and because "there cannot be a decree either for or against a man upon his own evidence."*Weymouth* v. *Boyer*, 1 Ves. Jr. 420;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5 George 576
5 George 576, 34 Miss. 576, 1857 WL 2723 (Miss.Err. & App.)
**(Cite as: 5 George 576)**

Page 6

*Bradley* v. *Root, supra.* But it is laid down that you must proceed to charge him by proper allegations in the bill, and by calling upon him to answer in the usual way.

*5 Such appears to be the rule as established, though it must be confessed that it is not easy to perceive the soundness of its reason, inasmuch as it is entirely proper to make a defendant a witness for the complainant by interrogations in the bill, and thereby compel him to give evidence against himself, which is one of the primary principles upon which equity jurisdiction is founded; and as evidence can be coerced from him against himself in that way, it would appear but a difference in form to compel him to answer interrogatories not in the bill, and which might be rendered necessary by developments in the cause after the filing of the answer. But the rule appears to be well established, though it must be admitted to be extremely technical, and not to be extended beyond the strict reason upon which it is founded.

The reason of the exception in cases of confession of the allegations of the bill, by answer or *pro confesso,* is, that the testimony of the witness *is unnecessary to maintain the bill. Massey* v. *Massey, supra; Bradley v. Root, 5 Paige, 638.* It is upon the same principle that it is held that a decree cannot be had against a party examined as a witness upon the facts which he has disclosed as a witness, although a decree may be rendered against him upon facts to which he was not examined. 2 Daniel Ch. Pr. 1042; *Palmer* v. *Van Doren,* 2 Edwards Ch. Rep. 194. The same reason appears clearly to authorize a decree when the bill is sustained by other evidence independent of the testimony of the defendant who has been examined as a witness. If his testimony be entirely dispensed with, he cannot be said to be "charged upon his own evidence," nor compelled "to assist adversely to himself," nor to be compelled "to submit to a decree upon facts which he has disclosed as a witness," but his testimony is to be considered as entirely unnecessary to the cause, and as if it had never been taken. It would, indeed, appear strange that a bill should be dismissed, though amply supported by evidence which is free from objection, by the operation of a technical rule applied to a mere act of supererogation of the complainant in taking the testimony of the defendant, without which the bill was sufficiently established.

The question, therefore, appears to come fully within the reason of the exception applied to bills confessed by answer or *pro confesso,* as stated in *Massey* v. *Massey,* and if the testimony of the defendant be unnecessary, it may be suppressed or disregarded.

We are, then, to consider whether the evidence is sufficient to sustain the original decree, without any reference to the deposition of Nancy A. Wood.

And the first subject of inquiry is, whether the conveyance by Green to Ford was made with the intent to hinder or defraud Green's creditors.

It appears that this conveyance was made on the 12th of March, 1841, at which time there were suits pending against Green, amounting to upwards of $50,000, and he is admitted to have been then insolvent. He admits, in his answer, that his object in making the conveyance was to prefer creditors, and to apply the purchase-money to that purpose. It appears that the conveyance was made just before the time when he expected that large judgments would be rendered against him; and it is plain, from his admission, that his object in part was, to place his property beyond the reach of those judgments when rendered. In order to avoid the conclusion, then, that it was fraudulent as to those creditors, it would be incumbent upon him to prove that it was made *bonâ fide,* and for the purpose of preferring certain of his creditors, and without any intention of securing the property to his own benefit. This is his alleged justification for the act, and the proof of it devolves upon him. But he has adduced no competent evidence to prove that he paid any of his creditors by means of the conveyance or of the proceeds of the sale. The statements of his answer and of those of his co-defendants upon the point are incompetent, because they are not responsive to the allegations of the bill; and there is no other evidence of the fact. It is not shown that he paid any one of the numerous judgments rendered against him in suits pending at the date of the conveyance. The only attempt shown to prove the payment of any debts is in reference to the debts alleged to have been paid to the Bakers, his wards. But even if the evidence upon that point were competent, it appears that those debts were not sufficient to cover the amount of the alleged purchase-money and interest.

*6 But it appears that the alleged sale was made upon a credit of from one to six years, in annual instalments. No reason is given why, if he intended to devote all his property, without reservation of benefit

to himself, to the payment of the debts which he thought it his duty to pay to the exclusion of others, he made the sale upon such unusual credit, when it would have paid in cash the only debts which he claims to have paid. That sense of duty which impelled him to respond to their high claims, should have induced him not to render them such tardy justice.

Another circumstance of controlling force against the *bonâ fides* of the alleged sale is, that the property is shown by the disposition of the witness Payne to have been worth, in cash, at the time, exclusive of the cattle, sheep, and hogs conveyed, about $43,000. If the object was to make an actual and *bonâ fide* sale of the property, it is wholly unaccountable upon any principle of fairness to his creditors or of justice to himself, that he should have sold property worth not less than $43,000 in cash, for the sum of $30,000 upon a credit of from one to six years. Men in failing circumstances, and making sales of their property for the benefit of creditors, generally make sales upon the most advantageous terms; and the conduct of Green in making this sale upon such unusual credit, and so far below the real value of the property, is not explained, nor is there any evidence tending to show that the valuation of the property, as proved by Payne, is exorbitant. It appears to be impossible to reconcile the conveyance characterized by these circumstances, with good faith and an honest intention merely to secure certain creditors; and there is but one alternative, that it was made to secure the property in his own hands from the judgments expected shortly to be rendered against it, and to secure it to his own benefit.

There are other circumstances of a suspicious character in the transaction. The deed stipulates that possession was not to be delivered until 1st March, 1842, the explanation of which, as stated by Green, is that he had commenced his planting operations at the time of the sale, 12th March, 1841, and that Ford had done likewise. But why was the delivery of possession postponed to 1st March, 1842? That is a most unusual period of the year for a cotton planter to commence his plantation business, and the same reason which made it inconvenient to deliver possession in March, 1841, would have rendered it unsuitable to commence planting operations in March, 1842. This explanation is, therefore, improbable and unsatisfactory; and in all probability, the true explanation is found in the pressing character of the suits pending, and the necessity for making such a disposition of the property as would place it beyond the reach of the judgments, but yet would not deprive the true owner of the possession of it, nor create suspicion with the judgment creditors arising from the fact that he had made an absolute sale, but yet retained possession of the property.

*7 It appears that Ford had been the overseer for Green, and that they were on very friendly terms. If it had been the real intention of Green to make a sale of his property solely with a view of paying his preferred creditors, it is altogether improbable that he would have sold to such a person, living in another State, and then engaged as an overseer, at a price greatly below the value of the property, and without consultation with his creditors.

All these circumstances lead to the conclusion that the purpose of the conveyance was to hinder and defraud his creditors; and this is rendered still more manifest by his declarations made to Payne, about the time the conveyance was made, that his purpose was to prevent judgments that would be rendered against him, on indorsements, from sweeping his property.

Such being the purpose of Green in making the conveyance, there can be but little doubt, from the circumstances, but that Ford participated in the design. It is shown that he was on very friendly terms with Green; that he lived in another State, and was then engaged in business, and though a very improbable person to whom to make sale of such an estate, a very likely one from his remote residence, in whose hands to commit a secret and fraudulent arrangement; that he was much embarrassed in his circumstances at the time, and really unable to make such a purchase in good faith, if indeed he was not actually insolvent at the time, as is most probable from the evidence. In order to give the appearance of good faith to the alleged purchase, he states in his answer, that he executed a mortgage to secure the notes given by him for the purchase-money. But this mortgage is not produced, and is not shown to have been recorded. If it was not executed, as is not pretended in Green's answer, the attempt to make use of it to give color to the sale, convicts Ford of falsehood and fraud, and if it was executed, its suppression by Green, is suspicious and inconsistent with good faith in the transaction.

But it appears that in about five weeks after the date of the conveyance, Ford conveyed the property by deed without warranty to Mrs. Wood, the mother-in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5 George 576

5 George 576, 34 Miss. 576, 1857 WL 2723 (Miss.Err. & App.)

**(Cite as: 5 George 576)**

Page 8

law of Green, for the same consideration which he had agreed to pay. His pretence for this is that he quickly became alarmed at the magnitude of his purchase, and was apprehensive that the property which he then possessed, with its income, would not enable him to make the payments agreed on. This is in the highest degree improbable. The property is proved to have been worth some thirteen to fifteen thousand dollars more in cash, than he states he agreed to pay for it on a credit of one to six years. He certainly, then, could have had no cause of alarm on account of the magnitude of his purchase. He had made a very handsome and certain speculation, with no danger whatever of loss. It is, therefore, incredible that he relinquished his title to the property for any such motive as that alleged. But his release is altogether in keeping with the original fraudulent design of placing the property beyond the reach of Green's creditors, but in such a manner as he could the most effectually have the full use and benefit of it.

*8 Considering the attitude which Ford occupied in the transaction, it is apparent that his purchase was merely formal, and in furtherance of the design of Green to place the property beyond the reach of his creditors.

The conveyance by Ford to Nancy A. Wood, and that by her to Wiley M. Wood, are the next subjects of examination.

It appears that Nancy A. Wood resided in Adams county, where she had a small plantation, an elderly lady, in very moderate circumstances, and from the year 1842 to the period of these transactions, was delinquent in paying her debts, and was sued to almost every term of the Circuit Court. In April, 1841, she was in Jefferson county, as appears from her answer, and on the 21st day of that month a conveyance of the property in controversy was made to her by Ford, she agreeing to pay his notes to Green. She states in her answer that this was done for the purpose of securing the property to her daughter, Mrs. Green, and her children, and as an advancement to them; and accordingly, on the 26th day of the same month, she conveyed the property to Wiley M. Wood, her brother-in-law, and the uncle of Mrs. Green, as trustee to pay the notes, and to convey the residue of the property to Mrs. Green and her children. The answers both of Green and Nancy A. Wood deny that the purchase was made by her, or the deed to Wiley M. Wood, with the knowledge or consent of Green. It is admitted that Green has continued in possession ever since the sale to Ford, but he is said to have had possession as the agent of Wiley M. Wood. It is alleged that nearly all the notes of Ford have been paid by means of the property and its proceeds, and some amount (which is not stated) paid by Nancy A. Wood. But neither the amount nor the fact of payment by her, of her own means, of any sum, is proved.

Notwithstanding the disguises and pretexts attempted to be put upon this part of the arrangement, its true features are too plain to admit of doubt, that it was entirely colorable and fraudulent; and this is apparent from the following considerations:-

1st. There was no change in the possession and use of the property after the conveyances, from what had previously existed. Green continued in the possession and enjoyment of it all the while, as if no conveyance had been made. He received the proceeds and profits, and applied them, as is alleged, to notes held by himself, and sold part of the property in payment of his own debts; and when the conveyances were made for the property so sold by him, he appears to have considered that his design had then been consummated, and the property secured to him; for the deeds, instead of being made by the trustee alone, in whom the legal title and right to convey was vested, as is alleged, were also executed by him and his wife. He paid taxes upon the property for several years under assessments of it as his property, and took receipts accordingly as for his own property. During all this time, Wiley M. Wood neither took possession, control, or superintendence of the property. He pretends to have left Green in possession as his agent; but it is a most extraordinary agency. He was appointed trustee, as is pretended, to take charge of the property, and, in the first instance, to pay the notes held by Green. Yet he says, in his answer, that he appointed Green his agent to manage the property, *with full power to apply the proceeds to the payment of his own notes*, thus giving the alleged creditor unlimited power over the property by which the debts were to be paid, and bestowing no attention whatever to the business himself. Green's interest as the creditor to be paid was manifestly adverse to the interest of the trust estate, according to the pretence, and he was the most unfit person who could have been selected to whom to intrust the duty of making the property productive and faithfully applying its proceeds to the payment of the debts. But it is plain from the evidence that he treated the property as his

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

own substantially, as he had always done. The alleged agency is, therefore, a mere pretext for justifying the possession of Green, when it is plain from the facts of the case, that from the commencement of the arrangement it was never intended but that he should have the possession and enjoyment of the property.

**\*9** But if Green retained possession as agent, it is evident that he derived a material benefit from it; for himself and his family were supported by it, which must have taken a considerable sum from the funds which should have been applied exclusively to the payment of the debts; and no specific account is given either by him or by the trustee, or shown by evidence, what were the avails of the property, and how they were applied to the payment of the debts, so as to show that he acted *bonâ fide* in the extraordinary relation he is alleged to have occupied towards the property.

2d. Nancy A. Wood was the mother-in-law of Green, residing in Adams county, but present in Jefferson county when these transactions were conducted; an elderly lady, in very limited circumstances, and most unlikely to undertake the purchase of so large an estate as that in controversy. And immediately, within five days after she made the purchase, she conveyed the property first, to pay debts due to Green, and the residue to the benefit of his wife and children. It is not shown by any competent evidence, that she paid anything on account of the purchase of her own means; for the suggestion in the answers to that effect is unsupported by proof. As to the consideration arising from her assumpsit of Ford's debt, and her liability to pay his notes to Green, that appears to be without substance. Green held the notes, and whether they were paid or not, the property was secured to the benefit of himself and his wife and children; and the arrangement was the same in effect as if he had conveyed the property to the use of his wife and children; for, immediately upon the payment of the notes, that was the destination of the property under the arrangement. He had the power at any time to cancel the notes, and thereby the property was secured to the use of his family, with all the benefit of such an arrangement to himself, and placed beyond the reach of his creditors. And if such was his purpose, a more effectual means of accomplishing the object could not have been devised, if it had been such as the law could sanction. He was insolvent, and could not hold the property in his own name; he sold it, and took and held the notes for the purchase-money; his mother-in-law becomes the purchaser of it, for the consideration of her assumpsit to pay the notes, and conveys it to a trustee to pay the notes and convey the residue to his wife and children. The security for the payment of the notes by her assumpsit is only useful as a color to the transaction. If the money was really paid upon the notes, it was done by means of the very property secured by the arrangement beyond the reach of his creditors; for he had the possession and use of the property to pay the alleged debt to himself. But it is obvious that there was no danger of the property being sold for the payment of the notes; because its proceeds were sufficient to pay them, and especially because such a course would have been against his interest and contrary to the purpose manifested by his whole conduct. He had the whole affair in his own hands, and under his own control, and might at any time have destroyed the notes, and then the entire purpose of securing the property to himself and his family would have been accomplished, as under the pretences set up it would thereupon have devolved upon his wife and children.

**\*10** The arrangement, therefore, is most palpably a plan to secure the property to the use and benefit of his family, and to place it beyond the reach of his creditors; and, notwithstanding the plausible pretexts by which it is attempted to be justified, it must be pronounced fraudulent and void as to the creditors of Green. For the law will not allow a man, under whatever pretexts and shifts, to convey his property to the use of his family and deprive his creditors of their just rights, especially when by the arrangement he secures the benefit of possession and enjoyment of it to himself. And though a man in failing circumstances may prefer his creditors, he must do so *bonâ fide*, and without the design of securing a benefit to himself from his property, by means of a conveyance made ostensibly for the benefit of his creditors.

These facts and circumstances upon which this view of the case is founded, are fully shown by the pleadings and evidence in the case, without considering the deposition of Nancy A. Wood; and the bill appears to be sustained without reference to her evidence. And it follows, that the decree of the vice-chancellor as to the conveyances to Ford, to Nancy A. Wood, and to Wiley M. Wood, was correct, throwing out of view the deposition of Nancy A. Wood, and that that decree, being sustained by sufficient evidence apart from that deposition, should

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5 George 576
5 George 576, 34 Miss. 576, 1857 WL 2723 (Miss.Err. & App.)
**(Cite as: 5 George 576)**

Page 10

have been affirmed.

It only remains to consider that part of the case which respects the conveyances made to the Bakers.

It is insisted that, though the other conveyances were fraudulent, yet that they were purchasers for a valuable consideration without notice, and are therefore entitled to protection.

But in order to entitle a party to protection as a purchaser without notice, he must deny notice fully and particularly, whether the defence be set up by plea or answer. 2 Lead. Cases in Equity, pt. 1, 85, 86; Gallatin v. Cunningham, 8 Cowen, 361, 374. And without such an averment, he cannot be treated as a purchaser without notice. Here these defendants make no such denial, and from the circumstances of their intimate connection with Green, it is palpable that they could not, with propriety, have made such a denial of notice of the transactions which have been considered as would have entitled them to protection.

Under these views of the case, the decree of the Superior Court of Chancery must be reversed, and the decree of the District Chancery Court affirmed, the deposition of Nancy A. Wood suppressed, and the costs of taking it stricken from the bill of costs.

SMITH, Ch. J., gave no opinion.
Miss.Err.App 1857.
Stanton v. Green
5 George 576, 34 Miss. 576, 1857 WL 2723 (Miss.Err. & App.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.