11

RESTATEMENT OF THE LAW THIRD

THE AMERICAN LAW INSTITUTE

RESTATEMENT OF THE LAW

# AGENCY

Volume 2

§§ 6.01 to 8.15

*As Adopted and Promulgated*

BY

THE AMERICAN LAW INSTITUTE

AT PHILADELPHIA, PENNSYLVANIA

May 17, 2005

Tables and Index



PAUL WEISS RIFKIND
WHARTON & GARRISON LLP
LIBRARY
1285 AVE OF THE AMERICAS
NEW YORK, NY 10019

ST. PAUL, MN
AMERICAN LAW INSTITUTE PUBLISHERS
2006

Mat #40528974

Inc., 863 F.Supp. 159, 162 (S.D.N.Y. 1994). Courts in other circuits, however, continue to hold ship owners vicariously liable for crew members' willful misconduct against passengers. See, e.g., Doe v. Celebrity Cruises, Inc., 394 F.3d 891 (11th Cir. 2004), cert. denied, 126 S. Ct. 548 (2005); Morton v. De Oliveira, 984 F.2d 289 (9th Cir.1993); Muratore v. M/S Scotia Prince, 845 F.2d 347 (1st Cir.1988); Jackson Marine Corp. v. M/V Blue Fox, 845 F.2d 1307 (5th Cir.1988).

## § 7.07   Employee Acting Within Scope of Employment

(1) An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment.

(2) An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

(3) For purposes of this section,

(a) an employee is an agent whose principal controls or has the right to control the manner and means of the agent's performance of work, and

(b) the fact that work is performed gratuitously does not relieve a principal of liability.

### Comment:

*a. Scope and cross-references.* Subsection (1) repeats the basic doctrine of respondeat superior stated in § 2.04 as a basis on which legal consequences of one person's actions may be attributed to another person. Subsection (2) states when an employee's tortious conduct occurs within the scope of employment for purposes of subjecting the employer to liability. Comment *b* discusses the rationale for the formulation in subsection (2), contrasting it with its counterparts in Restatement Second, Agency § 228 and in cases. Comment *c* discusses employee conduct that constitutes performance of work and is within the scope of employment. Comment *d* discusses other employee conduct that is subject to an employer's control. Comment *e* examines employees' peregrinations, that is, their travel necessitated by or otherwise in connection with their work. Comment *f* discusses the definition of employee in subsection (3).

For general discussion of respondeat superior, see § 2.04, Comment *b*.





**Ch. 7**

S. Ct. 548

*liveira, 984

Muratore v.

.2d 347 (1st

1e Corp. v.

1 1307 (5th

t

· for a

ope of

yment

or en-

oyer's

pe of

course

e any

1 con-

r and

tously

s the basic

s on which

tributed to

's tortious

ses of sub-

ationale for

1terparts in

c discusses

1d is within

ployee con-

e examines

1ted by or

1cusses the

2.04, Com-

Section 1.04(3) defines gratuitous agent.

This section is inapplicable to an employer's liability for one employee's tortious conduct toward a fellow employee, a topic being considered by Restatement Third, Employment Law, in preparation as Restatement Third, Agency, was completed. Section 7.08 covers the vicarious liability of an employer or other principal for torts committed by agents in dealing or communicating with third parties on or purportedly on behalf of the principal when actions taken by the agent with apparent authority either constitute the tort or enable the agent to conceal its commission.

*b. When tortious conduct is within the scope of employment—in general.* An employee's conduct, although tortious, may be within the scope of employment as defined in subsection (2). If an employee commits a tort while performing work assigned by the employer or while acting within a course of conduct subject to the employer's control, the employee's conduct is within the scope of employment unless the employee was engaged in an independent course of conduct not intended to further any purpose of the employer. The formulation in subsection (2) reflects the definition of scope of employment applied in most cases and in most jurisdictions.

In many cases in which an employee's tortious conduct is outside the scope of employment as stated in subsection (2), the employee's action lies beyond the employer's effective control. If an employee's tortious conduct is unrelated either to work assigned by the employer or to a course of conduct that is subject to the employer's control, the conduct is outside the scope of employment. If an employee undertakes a course of work-related conduct for the sole purpose of furthering the employee's interests or those of a third party, the employee's conduct will often lie beyond the employer's effective control. When an agent is not an employee, the principal lacks the right to control the manner and means of the agent's physical conduct in how work is performed. However, although an employer's ability to exercise control is an important element in justifying respondeat superior, the range of an employer's effective control is not the limit that respondeat superior imposes on the circumstances under which an employer is subject to liability.

An employer who is negligent or reckless in how it selects or otherwise deals with an employee is subject to direct liability as stated in § 7.05 to third parties for harm caused by the employee's tortious conduct. Thus, when tortious conduct by employees is reasonably foreseeable by an employer, the basic negligence principle stated in § 7.05 is applicable. Moreover, if an employer has a special relationship with a person, the employer owes the person a duty of reasonable

199

care with respect to risks arising within the scope of the relationship. If the employer's failure to fulfill its duty enables an employee to injure the person to whom the employer owes such a duty, the employer is subject to liability. See § 7.05, Comment *e*.

In contrast, respondeat superior subjects an employer to vicarious liability for employee torts committed within the scope of employment, distinct from whether the employer is subject to direct liability. An employer's ability to exercise control over its employees' work-related conduct enables the employer to take measures to reduce the incidence of tortious conduct. It may be difficult, after the fact of an employee's tortious conduct, to identify an instance of negligence on the part of the employer. This may be so even when, before the fact of the employee's tortious conduct, steps were available to the employer that, if taken, would have prevented the tort. In contrast, when an employee's tortious conduct is outside the range of activity that an employer may control, subjecting the employer to liability would not provide incentives for the employer to take measures to reduce the incidence of such tortious conduct. Moreover, for an employer to insure against a risk of liability, whether from third-party sources or its own assets, the risk must be at least to some degree ascertainable and quantifiable.

In assessing the scope of employment limitation on respondeat superior, it is helpful to recognize that the range of tortious conduct by employees to which the doctrine is relevant is not all-encompassing. Respondeat superior is not the sole basis for liability when an employer itself is at fault, see §§ 7.04, 7.05, and 7.06, nor is it the sole basis for vicarious liability when an employee's apparent authority enables the employee to commit a tort, see § 7.08.

Respondeat superior is a basis for vicarious liability when an identifiable employee-actor commits a tort in an interaction with a third party. An important doctrine in contemporary tort law—strict liability for defectively manufactured products—allocates residual risk to manufacturers and other sellers of products without regard to whether the defect was caused by an employee acting within the scope of employment. See Restatement Third, Torts: Products Liability. A manufacturer may not defeat this allocation of residual risk by demonstrating that a defect occurred in a particular unit of a product because of action by an employee that could be characterized as a departure from the scope of employment, such as deliberate sabotage. Moreover, it is not necessary for a plaintiff in a manufacturing-defect case to establish the converse, that is, that tortious conduct on the part of an identifiable employee or employees acting within the scope of employment produced the defect. Such a showing is not required in cases in which a product is alleged to be defective on the basis of its



Ch. 7

relationship.
employee to
a duty, the

· to vicarious
employment,
liability. An
work-related
ce the inci-
e fact of an
egligence on
re the fact of
he employer
ast, when an
ivity that an
ty would not
o reduce the
employer to
ty sources or
ascertainable

n respondeat
us conduct by
ncompassing.
en an employ-
the sole basis
iority enables

ility when an
action with a
rt law—strict
s residual risk
out regard to
thin the scope
ts Liability. A
isk by demon-
of a product
acterized as a
rate sabotage.
acturing-defect
uct on the part
n the scope of
ot required in
the basis of its

design or a manufacturer's failure to provide appropriate warnings to consumers of the product. The functional consequence is that respondeat superior is not relevant to outcomes in products-liability cases. Disaggregating the complex of human calculation, misjudgment, and foible that may have contributed to a defective product is not relevant to products-liability cases. A manufacturer or other seller is subject to liability in such cases without regard to whether its employees' contributions to the defective product stemmed from conduct within the scope of their employment.

In situations to which respondeat superior is relevant, tortious conduct by an employee takes place in the context of an identifiable employee-actor's interaction with a third party. This fact alone is insufficient to justify subjecting the employer to vicarious liability. An employer does not assume the role of insurer against all harm suffered by third parties with whom its employees may interact. Nor is it sufficient that an employer might have taken additional measures to control the employee, unless the employer was negligent in failing to take such measures. See § 7.05.

Under subsection (2), an employee's tortious conduct is outside the scope of employment when the employee is engaged in an independent course of conduct not intended to further any purpose of the employer. An independent course of conduct represents a departure from, not an escalation of, conduct involved in performing assigned work or other conduct that an employer permits or controls. When an employee commits a tort with the sole intention of furthering the employee's own purposes, and not any purpose of the employer, it is neither fair nor true-to-life to characterize the employee's action as that of a representative of the employer. The employee's intention severs the basis for treating the employee's act as that of the employer in the employee's interaction with the third party.

The formulation of the scope-of-employment doctrine in subsection (2) differs from its counterparts in Restatement Second, Agency §§ 228 and 229 because it is phrased in more general terms. Under Restatement Second, Agency § 228(1)(b), conduct falls within the scope of employment when it "occurs substantially within the authorized time and space limits." This formulation does not naturally encompass the working circumstances of many managerial and professional employees and others whose work is not so readily cabined by temporal or spatial limitations. Many employees in contemporary workforces interact on an employer's behalf with third parties although the employee is neither situated on the employer's premises nor continuously or exclusively engaged in performing assigned work. Moreover, under § 228(1)(c), conduct is not within the scope of employment unless "it is actuated, at least in part, by a purpose to serve"

201

the employer. Under § 228(2), conduct is not within the scope of employment if it is "too little actuated by a purpose to serve" the employer. Under § 235, conduct is not within the scope of employment "if it is done with no intention" to perform an authorized service or an incidental act. These formulations are not entirely consistent; an act motivated by *some* purpose to serve the employer could still be "*too little actuated*" to be within the scope of employment.

In contrast, under subsection (2) of this section, an employee's conduct is outside the scope of employment when it occurs within an independent course of conduct intended to serve no purpose of the employer. Most cases apply the standard stated by this section.

Alternative formulations avoid the use of motive or intention to determine whether an employee's tortious conduct falls within the scope of employment. These tests vary somewhat in how they articulate the requisite tie between the tortfeasor's employment and the tort. In general, such a tie is present only when the tort is a generally foreseeable consequence of the enterprise undertaken by the employer or is incident to it. In this context, "foreseeability" means that, in the context of the employer's particular enterprise, the employee's conduct is not so unusual or startling that it seems unfair to include the loss resulting from it in the employer's business costs. This is a separate inquiry from whether an employer acted negligently. One test directs the trier of fact to determine whether an employee's tort was "engendered by the employment," or an "outgrowth" of it, or whether the tort arose out of a personal dispute or other causative factor unrelated to employment. An alternative looks to whether the employment furnished the specific impetus for a tort or increased the general risk that the tort would occur. These tests leave to the finder of fact the challenge of determining whether a tortfeasor's employment did more than create a happenstance opportunity to commit the tort.

Although formulations that focus on an employee's intention may be difficult to apply in some cases, formulations based on assessments of "foreseeability" are potentially confusing and may generate outcomes that are less predictable than intent-based formulations. "Foreseeability" has a well-developed meaning in connection with negligence and to use it, additionally, to define a different boundary for respondeat superior risks confusion. Moreover, references to "foreseeability" in the respondeat superior context tend to conflate the foreseeable likelihood, from an employer's standpoint, that mishaps and slippage will occur in connection with the performance of assigned work, with the possibility that the work may lead to or somehow provide the occasion for intentional misconduct that is distinct from an employee's actions in performing assigned work. To be sure, the latter possibility is indeed always "foreseeable," given human frailty, but its occurrence



scope of
erve" the
ployment
ice or an
t; an act
ll be "*too*

mployee's
within an
se of the
s section.
tention to
vithin the
ey articu-
t and the
. generally
: employer
hat, in the
's conduct
le the loss
a separate
est directs
as "engen-
ether the
· unrelated
nployment
eneral risk
of fact the
t did more

ntion may
ssessments
erate out-
ns. "Fore-
negligence
· responde-
eability" in
oreseeable
d slippage
work, with
provide the
employee's
· possibility
occurrence

is not a risk that an employer can effectively control and its occurrence may be related causally to employment no more than to other relationships and circumstances in an errant employee's life more generally.

Moreover, a "foreseeability" formulation for imposing vicarious liability may penalize an employer who has taken reasonable precautions against employee misconduct to the extent it enables a plaintiff to demonstrate that the employer did indeed foresee the risk of misconduct. Attaching such a penalty to the taking of reasonable precaution against the risk of harm to third parties to whom an employer owes a duty of care is inconsistent with a central objective of contemporary negligence law, which is to create incentives toward efficient measures to reduce the occurrence of torts. See generally Restatement Third, Torts: Liability for Physical Harm § 3 (Proposed Final Draft No. 1, 2005) (defining negligence as a person's failure to exercise "reasonable care under all the circumstances," including the foreseeable likelihood that conduct will result in harm, the foreseeable severity of that harm, and the burden on the person and others of taking precautions to eliminate or reduce the possibility of harm). Nonetheless, formulations focused on "foreseeability" may be appropriate in some circumstances, such as an alignment in interest between employer and employee conducive to employee testimony that no intention to serve the employer actuated the employee's tortious conduct.

Whether an employee acted within the scope of employment in committing a tort is also relevant in statutory contexts. The common-law test of scope of employment may be relevant but not dispositive in determining whether an employee's literary, artistic, or other creative work constitutes a work for hire for purposes of federal copyright legislation. Coverage determinations under workers'-compensation statutes require assessments with elements that may overlap with but are distinct from the definition of scope of employment.

*c. Conduct in the performance of work and scope of employment.* An employee's conduct is within the scope of employment when it constitutes performance of work assigned to the employee by the employer. The fact that the employee performs the work carelessly does not take the employee's conduct outside the scope of employment, nor does the fact that the employee otherwise makes a mistake in performing the work. Likewise, conduct is not outside the scope of employment merely because an employee disregards the employer's instructions.

**Illustrations:**

1. P, who writes bail bonds, employs A as a bond "runner." A's assigned work is to locate persons for whom P has written

203