12

# RESTATEMENT OF THE LAW
## Second

# TORTS 2d

Volume 2

§§ 281–503

*As Adopted and Promulgated*

BY

THE AMERICAN LAW INSTITUTE

AT WASHINGTON, D. C.

May 25, 1963
and
May 22, 1964

ST. PAUL, MINN.
AMERICAN LAW INSTITUTE PUBLISHERS
1965

PAUL, WEISS, RIFKIND, WHARTON & GARRISON
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
345 PARK AVENUE
NEW YORK, NEW YORK 10154

C. Neither A nor B is liable to C in an action for negligence.

2. A, a retail dealer, sells to B a hot water bag purchased from a reputable manufacturer. A believes the bag to be in perfect condition, although he has not inspected it, but the bag is defective in that the stopper will not screw in securely. As a result of this defect, C, the minor son of B, is severely scalded by hot water that leaks out of the bag. A is not liable to B or to C in an action for negligence.

e. In many situations the seller who receives his goods from a reputable source of supply receives it with the firm conviction that it is free from defects; and where a chattel is of a type which is perfectly safe for use in the absence of defects, the seller who sells it with the reasonable belief that it is safe for use and represents it to be safe for use does not act negligently. Frequently, the manufacturer's literature and salesmen and his past record of sending the seller perfectly made chattels create a reasonable belief in the seller's mind that the particular chattel he is selling is made perfectly. When the seller reasonably believes that the chattel is safe, his representation in good faith to that effect is neither fraudulent, reckless, nor negligent.

Illustration:

3. A, a retail dealer, sells to B a defective gas heater, obtained from a reputable manufacturer, which A believes to be in perfect condition, although he has not inspected it. In making the sale, and in response to B's inquiry, A says, "This heater can be used with perfect safety." The heater when used emits poisonous fumes, injuring B. A is not liable to B in an action for negligence.

## TOPIC 5. STRICT LIABILITY

§ **402 A.** Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm

See Appendix for Reporter's Notes, Court Citations, and Cross References

§ 402 A  TORTS, SECOND  Ch. 14

thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

See Reporter's Notes.

**Caveat:**

The Institute expresses no opinion as to whether the rules stated in this Section may not apply

    (1) to harm to persons other than users or consumers;

    (2) to the seller of a product expected to be processed or otherwise substantially changed before it reaches the user or consumer; or

    (3) to the seller of a component part of a product to be assembled.

**Comment:**

    *a.* This Section states a special rule applicable to sellers of products. The rule is one of strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product. The Section is inserted in the Chapter dealing with the negligence liability of suppliers of chattels, for convenience of reference and comparison with other Sections dealing with negligence. The rule stated here is not exclusive, and does not preclude liability based upon the alternative ground of negligence of the seller, where such negligence can be proved.

    *b. History.* Since the early days of the common law those engaged in the business of selling food intended for human consumption have been held to a high degree of responsibility for their products. As long ago as 1266 there were enacted special criminal statutes imposing penalties upon victualers, vintners,

brewers, butchers, cooks, and other persons who supplied "corrupt" food and drink. In the earlier part of this century this ancient attitude was reflected in a series of decisions in which the courts of a number of states sought to find some method of holding the seller of food liable to the ultimate consumer even though there was no showing of negligence on the part of the seller. These decisions represented a departure from, and an exception to, the general rule that a supplier of chattels was not liable to third persons in the absence of negligence or privity of contract. In the beginning, these decisions displayed considerable ingenuity in evolving more or less fictitious theories of liability to fit the case. The various devices included an agency of the intermediate dealer or another to purchase for the consumer, or to sell for the seller; a theoretical assignment of the seller's warranty to the intermediate dealer; a third party beneficiary contract; and an implied representation that the food was fit for consumption because it was placed on the market, as well as numerous others. In later years the courts have become more or less agreed upon the theory of a "warranty" from the seller to the consumer, either "running with the goods" by analogy to a covenant running with the land, or made directly to the consumer. Other decisions have indicated that the basis is merely one of strict liability in tort, which is not dependent upon either contract or negligence.

Recent decisions, since 1950, have extended this special rule of strict liability beyond the seller of food for human consumption. The first extension was into the closely analogous cases of other products intended for intimate bodily use, where, for example, as in the case of cosmetics, the application to the body of the consumer is external rather than internal. Beginning in 1958 with a Michigan case involving cinder building blocks, a number of recent decisions have discarded any limitation to intimate association with the body, and have extended the rule of strict liability to cover the sale of any product which, if it should prove to be defective, may be expected to cause physical harm to the consumer or his property.

*c.* On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which

§ 402 A          TORTS, SECOND          Ch. 14

it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

   *d.* The rule stated in this Section is not limited to the sale of food for human consumption, or other products for intimate bodily use, although it will obviously include them. It extends to any product sold in the condition, or substantially the same condition, in which it is expected to reach the ultimate user or consumer. Thus the rule stated applies to an automobile, a tire, an airplane, a grinding wheel, a water heater, a gas stove, a power tool, a riveting machine, a chair, and an insecticide. It applies also to products which, if they are defective, may be expected to and do cause only "physical harm" in the form of damage to the user's land or chattels, as in the case of animal food or a herbicide.

   *e.* Normally the rule stated in this Section will be applied to articles which already have undergone some processing before sale, since there is today little in the way of consumer products which will reach the consumer without such processing. The rule is not, however, so limited, and the supplier of poisonous mushrooms which are neither cooked, canned, packaged, nor otherwise treated is subject to the liability here stated.

   *f. Business of selling.* The rule stated in this Section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant. It is not necessary that the seller be engaged solely in the business of selling such products. Thus the rule applies to the owner of a motion picture theatre who sells popcorn or ice cream, either for consumption on the premises or in packages to be taken home.

   The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in that activity as a part of his business. Thus it does not apply to the housewife who, on one occasion, sells to her neighbor a jar of jam or a pound of sugar. Nor does it apply to the owner of an