14

Westlaw.

--- B.R. ----
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29
(Cite as: --- B.R. ----)

Page 1

In re Allou Distributors, Inc.
Bkrtcy.E.D.N.Y.,2007.

United States Bankruptcy Court,E.D. New York.
In re ALLOU DISTRIBUTORS, INC., al., Debtors.
Kenneth P. Silverman, as Chapter 7 Trustee of Allou Distributors, Inc., et al., Plaintiff,
v.
K.E.R.U. Realty Corp., 2165-K-R Realty Corp., Kent-Rush Realty Corp., K-R Residence Corp., D.J.R. Construction LLC, R & D Development, LLC, Chaim Dushinsky, Isaac Rabinowitz, Aaron Jacobs a/k/a Ari Jacobowitz, Bedford Wall Realty Corp., 724 Bedford LLC, Tereza LLC, "John Does 1-50," "Mary Does 1-50," "ABC Partnerships 1-50" and/or "XYZ Corporations 1-50," Defendants.
Bankruptcy No. 03-82321-ess.
Adversary No. 05-8538-ess.

Nov. 2, 2007.

**Background:** Chapter 7 trustee brought adversary proceeding against various defendants to hold them liable, as initial, immediate or mediate transferees or as entities for whose benefit transfers were made, in connection with alleged fraudulent transfers of debtor funds to finance condominium construction project. Defendants moved to dismiss.

**Holdings:** The Bankruptcy Court, Elizabeth S. Stong, J., held that:

(1) allegations in trustees complaint were sufficient to state claim to hold defendants liable as "initial transferees" by collapsing transactions that had ultimately resulted in their obtaining possession of diverted funds;

(2) trustee's amended complaint related back to date that original complaint was filed;

(3) allegations in trustees complaint were sufficient to state claim to hold defendants liable as entities for whose benefit fraudulent transfers were made;

(4) allegations in trustee's complaint were insufficient to state claim against these individual defendants;

(5) trustee's allegations were insufficient to state common law fraud claim;

(6) trustee's allegations failed to state claim for civilly conspiring to effect fraudulent conveyances; and

(7) allegations in trustee's complaint were insufficient to state claim for imposition of constructive trust.

Motion granted in part and denied in part.

**[1] Bankruptcy 51 ⟶2162**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2162 k. Pleading; Dismissal. Most Cited Cases
On motion to dismiss for failure to state claim, court's task is to assess legal feasibility of complaint, not to assay weight of evidence that might be offered in support thereof. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[2] Bankruptcy 51 ⟶2162**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2162 k. Pleading; Dismissal. Most Cited Cases
On motion to dismiss for failure to state claim, court accepts as true the well-pleaded factual allegations made by plaintiff, and must draw all reasonable inferences in plaintiff's favor. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Bankruptcy 51 ⟶2162**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2162 k. Pleading; Dismissal. Most Cited Cases
To survive motion to dismiss for failure to state claim, plaintiff must allege enough facts to state claim to relief which is plausible on its face, and nudge its claim across the line from conceivable to

--- B.R. ----  
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29  
(Cite as: --- B.R. ----)

Page 2

plausible. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[4] Bankruptcy 51 ⟐2162**

51 Bankruptcy  
    51II Courts; Proceedings in General  
        51II(B) Actions and Proceedings in General  
            51k2162 k. Pleading; Dismissal. Most Cited Cases  
To satisfy heightened federal pleading standard applicable to allegations of fraud, complaint must allege with some specificity the acts constituting fraud; conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[5] Bankruptcy 51 ⟐2162**

51 Bankruptcy  
    51II Courts; Proceedings in General  
        51II(B) Actions and Proceedings in General  
            51k2162 k. Pleading; Dismissal. Most Cited Cases  
To satisfy heightened federal pleading standard applicable to allegations of fraud, plaintiffs must allege facts that give rise to strong inference of fraudulent intent. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[6] Bankruptcy 51 ⟐2162**

51 Bankruptcy  
    51II Courts; Proceedings in General  
        51II(B) Actions and Proceedings in General  
            51k2162 k. Pleading; Dismissal. Most Cited Cases  
Fraud allegations are evaluated more liberally in bankruptcy context than in other civil actions charging fraud, in recognition of fact that it is trustee who is often making such allegations on basis of secondhand information. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[7] Bankruptcy 51 ⟐2162**

51 Bankruptcy  
    51II Courts; Proceedings in General  
        51II(B) Actions and Proceedings in General  
            51k2162 k. Pleading; Dismissal. Most Cited Cases  
Special pleading requirement mandating that fraud must be pled with particularity applies only if actual, as opposed to constructive, fraud is alleged. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[8] Bankruptcy 51 ⟐2162**

51 Bankruptcy  
    51II Courts; Proceedings in General  
        51II(B) Actions and Proceedings in General  
            51k2162 k. Pleading; Dismissal. Most Cited Cases  
To satisfy federal "notice" pleading standard, complaint need only give defendant fair notice of what claim is and the grounds upon which it rests. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

**[9] Bankruptcy 51 ⟐2162**

51 Bankruptcy  
    51II Courts; Proceedings in General  
        51II(B) Actions and Proceedings in General  
            51k2162 k. Pleading; Dismissal. Most Cited Cases  
"Notice" pleading standard sets lower bar than that required to state a claim for relief or to satisfy heightened pleading standard for allegations of fraud, and does not require plaintiff to plead legal theory, facts, or elements underlying his claim. Fed.Rules Civ.Proc.Rules 8(a), 9(b), 12(b)(6), 28 U.S.C.A.

**[10] Bankruptcy 51 ⟐2724**

51 Bankruptcy  
    51V The Estate  
        51V(H) Avoidance Rights  
            51V(H)2 Proceedings  
                51k2724 k. Pleading. Most Cited Cases  
While, under Bankruptcy Code provision governing trustee's ability to recover from transferees on avoided transfer, transfer must be avoided before there can be any actual recovery from transferee, allegations in Chapter 7 trustee's complaint were sufficient to state claim for recovery from initial, or immediate or mediate, transferees, though trustee, in a separate avoidance proceeding, had not yet succeeded in avoiding each of challenged transfers. 11 U.S.C.A. § 550(a); Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[11] Bankruptcy 51 ⟐2645.1**

51 Bankruptcy

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                                                 Page 3
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29
(Cite as: --- B.R. ----)

51V The Estate
    51V(F) Fraudulent Transfers
        51k2645 Nature and Form of Transfer
            51k2645.1 k. In General. Most Cited Cases

Multilateral transactions may, under appropriate circumstances, be collapsed and treated as phases of single transaction, for purpose of fraudulent transfer claim. 11 U.S.C.A. § 548.

[12] Bankruptcy 51 €⎯2645.1

51 Bankruptcy
    51V The Estate
        51V(F) Fraudulent Transfers
            51k2645 Nature and Form of Transfer
                51k2645.1 k. In General. Most Cited Cases

Fraudulent transfer claim may be alleged on theory that it is appropriate to "collapse" series of transactions, where (1) these transactions, taken as whole, diminish value of debtor's estate and are marked by either a transfer made by debtor for less than fair consideration or transfer made by debtor with actual fraudulent intent; and (2) party from whom recovery is sought had actual or constructive knowledge of entire scheme that renders the transfer fraudulent. 11 U.S.C.A. § 548.

[13] Bankruptcy 51 €⎯2645.1

51 Bankruptcy
    51V The Estate
        51V(F) Fraudulent Transfers
            51k2645 Nature and Form of Transfer
                51k2645.1 k. In General. Most Cited Cases

      **Bankruptcy 51 €⎯2724**

51 Bankruptcy
    51V The Estate
        51V(H) Avoidance Rights
            51V(H)2 Proceedings
                51k2724 k. Pleading. Most Cited Cases

Courts should look to substance, as well as to form, of series of transactions to determine whether fraudulent transfer claim has been pleaded or proved. 11 U.S.C.A. § 548.

[14] Bankruptcy 51 €⎯2724

51 Bankruptcy
    51V The Estate
        51V(H) Avoidance Rights
            51V(H)2 Proceedings
                51k2724 k. Pleading. Most Cited Cases

Chapter 7 trustee's complaint sufficiently alleged that ultimate recipients of diverted funds had actual or constructive knowledge of scheme by debtors' principals to fraudulently divert corporate funds for purpose of constructing condominiums, as required to hold these recipients liable as "initial transferees" of alleged fraudulent transfers by collapsing transactions that ultimately resulted in their obtaining possession of funds; trustee alleged motive and opportunity and stated facts sufficient to constitute strong circumstantial evidence of conscious misbehavior or recklessness, based on defendants' receipt of some 90 transfers, from seven different entities, that were not known to be involved in development or construction of condominiums. 11 U.S.C.A. § 550(a).

[15] Bankruptcy 51 €⎯2157

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2157 k. Limitations and Time to Sue; Computation. Most Cited Cases

Federal Rule of Civil Procedure governing relation back of amended pleadings does not set high bar for relation back, as long as the claims attempted to be asserted in new complaint share a reasonable measure of common ground with allegations of original pleading. Fed.Rules Civ.Proc.Rule 15(c), 28 U.S.C.A.

[16] Bankruptcy 51 €⎯2157

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2157 k. Limitations and Time to Sue; Computation. Most Cited Cases

In order for amended pleading to relate back, original pleading must provide "adequate notice" only of the general fact situation, and not of the particulars, of amended claim. Fed.Rules Civ.Proc.Rule 15(c), 28 U.S.C.A.

[17] Bankruptcy 51 €⎯2157

51 Bankruptcy

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----  
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29  
**(Cite as: --- B.R. ----)**

Page 4

51II Courts; Proceedings in General  
    51II(B) Actions and Proceedings in General  
        51k2157 k. Limitations and Time to Sue; Computation. Most Cited Cases  
Amended pleading will not relate back, where there is no common ground between allegations of original complaint and those of amended pleading, such that "unfair surprise" would result, and the repose offered by statutes of limitation would be an empty promise, were pleading to relate back. Fed.Rules Civ.Proc.Rule 15(c), 28 U.S.C.A.

[18] Bankruptcy 51 €═2722

51 Bankruptcy  
    51V The Estate  
        51V(H) Avoidance Rights  
            51V(H)2 Proceedings  
                51k2722 k. Time Limitations; Computation. Most Cited Cases  
Chapter 7 trustee's amended complaint to hold defendants liable as initial transferees, or as immediate or mediate transferees, of alleged fraudulent transfers related back to date that original complaint was filed, where same individuals, entities, properties and transfers were the basis for allegations in original and amended complaints. Fed.Rules Civ.Proc.Rule 15(c), 28 U.S.C.A.

[19] Bankruptcy 51 €═2724

51 Bankruptcy  
    51V The Estate  
        51V(H) Avoidance Rights  
            51V(H)2 Proceedings  
                51k2724 k. Pleading. Most Cited Cases  
Allegations in Chapter 7 trustee's complaint, regarding alleged scheme by debtors' principals to fraudulently divert corporate funds to controlled entities with knowledge that they would then be transferred to other entities for purposes of funding condominium construction project, were sufficient to state claim against these other entities as parties for whose benefit fraudulent transfers were made, on theory that initial transfers were made with knowledge and intent that funds would ultimately reach these other entities, notwithstanding contention that other entities were at most subsequent transferees and, as such, could not be entities for whose benefit transfers were made. 11 U.S.C.A. § 550(a)(1).

[20] Bankruptcy 51 €═2724

51 Bankruptcy  
    51V The Estate  
        51V(H) Avoidance Rights  
            51V(H)2 Proceedings  
                51k2724 k. Pleading. Most Cited Cases  
Allegations in Chapter 7 trustee's complaint, describing alleged scheme by debtors' principals to fraudulently divert corporate funds to controlled entities, from which they would then be transferred to other entities for purposes of funding condominium construction project, and identifying date and amounts of transfers from controlled entities to several of these other entities, sufficiently traced funds from debtors to these other entities to state claim against the other entities, as immediate or mediate transferees of initial fraudulent transfers. 11 U.S.C.A. § 550(a)(2).

[21] Bankruptcy 51 €═2701

51 Bankruptcy  
    51V The Estate  
        51V(H) Avoidance Rights  
            51V(H)1 In General  
                51k2701 k. Avoidance Rights and Limits Thereon, in General. Most Cited Cases

Bankruptcy 51 €═2726.1(1)

51 Bankruptcy  
    51V The Estate  
        51V(H) Avoidance Rights  
            51V(H)2 Proceedings  
                51k2725 Evidence  
                    51k2726.1 Burden of Proof  
                        51k2726.1(1) k. In General. Most Cited Cases  
In order prove claim to hold party liable as immediate or mediate transferee on avoided funds transfer, plaintiff must carry burden of establishing that funds at issue are property of the estate; however, burden is not so onerous as to require dollar-for-dollar accounting of exact funds at issue. 11 U.S.C.A. § 550(a)(2).

[22] Bankruptcy 51 €═2724

51 Bankruptcy  
    51V The Estate  
        51V(H) Avoidance Rights  
            51V(H)2 Proceedings

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

51k2724 k. Pleading. Most Cited Cases
In order state claim to hold party liable as immediate or mediate transferee on avoided funds transfer, plaintiff must allege sufficient facts to show, if proved, that funds at issue originated with debtor; however, just as dollar-for-dollar accounting is not required at proof stage, it is not required at pleading stage either. 11 U.S.C.A. § 550(a)(2).

**[23] Bankruptcy 51 ⇐⇒2724**

51 Bankruptcy
    51V The Estate
        51V(H) Avoidance Rights
            51V(H)2 Proceedings
                51k2724 k. Pleading. Most Cited Cases
Allegations in Chapter 7 trustee's complaint, describing alleged scheme by debtors' principals to fraudulently divert corporate funds to controlled entities, from which they would then be transferred to other entities for purposes of funding condominium construction project that otherwise would have been financed by individual defendants, were insufficient to state claim against these individual defendants to hold them liable on alleged fraudulent transfers as initial, immediate or mediate transferees or as entities for whose benefit transfers were made, where trustee's complaint did not identify any specific transfer from debtors or any controlled entity to either of the individual defendants, but simply alleged, in conclusory terms, that individual defendants had personally received millions of dollars as result of their interests in transferees. 11 U.S.C.A. § 550(a); Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[24] Bankruptcy 51 ⇐⇒2724**

51 Bankruptcy
    51V The Estate
        51V(H) Avoidance Rights
            51V(H)2 Proceedings
                51k2724 k. Pleading. Most Cited Cases
Regardless of whether Chapter 7 trustee could ultimately satisfy burden of proof, allegations in trustee's complaint, that realty company, by executing mortgage and granting lien on property to entity that was not the source of the $2 million in debtor funds used to acquire this property, had thereby participated in "chain of transfers" which had the effect of transferring property fraudulently acquired with debtor's assets, and was thus a transferee in chain of fraudulent transfers, were sufficient to state claim against realty company under Bankruptcy Code provision governing liability of transferees on avoided transfers. 11 U.S.C.A. § 550(a).

**[25] Bankruptcy 51 ⇐⇒2162**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2162 k. Pleading; Dismissal. Most Cited Cases
Allegations in Chapter 7 trustee's complaint against parties who had allegedly participated in scheme to divert debtor funds were insufficient to state common law fraud claim under New York law, absent any allegation that defendants had made material false representation to debtor or that debtor relied to its detriment on that misrepresentation.

**[26] Fraud 184 ⇐⇒3**

184 Fraud
    184I Deception Constituting Fraud, and Liability Therefor
        184k2 Elements of Actual Fraud
            184k3 k. In General. Most Cited Cases
To state claim for fraud under New York law, plaintiff must allege: (1) that defendant made a material false representation; (2) that defendant intended to defraud plaintiff thereby; (3) that plaintiff reasonably relied on representation; and (4) that plaintiff suffered damage as result of such reliance.

**[27] Bankruptcy 51 ⇐⇒2724**

51 Bankruptcy
    51V The Estate
        51V(H) Avoidance Rights
            51V(H)2 Proceedings
                51k2724 k. Pleading. Most Cited Cases
Allegations in Chapter 7 trustee's complaint, regarding alleged scheme by debtors' principals to fraudulently divert corporate funds to controlled entities with knowledge that they would then be transferred to other entities in which individual defendants had interest for purposes of funding condominium construction project, were insufficient to state claim against individual defendants for civilly conspiring to effect fraudulent conveyances; while trustee alleged sufficient facts to give rise to inference that individual defendants knew of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fraudulent scheme, trustee failed to allege any overt act by individual defendants that furthered alleged fraudulent transfers themselves.

**[28] Conspiracy 91 ⇌1.1**

91 Conspiracy
    91I Civil Liability
        91I(A) Acts Constituting Conspiracy and Liability Therefor
            91k1 Nature and Elements in General
                91k1.1 k. In General. Most Cited Cases
Under New York law, claim for civil conspiracy to commit tortious act may not be asserted in vacuum; rather, claim is available only if there is evidence of underlying, actionable tort.

**[29] Conspiracy 91 ⇌1.1**

91 Conspiracy
    91I Civil Liability
        91I(A) Acts Constituting Conspiracy and Liability Therefor
            91k1 Nature and Elements in General
                91k1.1 k. In General. Most Cited Cases
When there is underlying tort, elements of civil conspiracy are: (1) corrupt agreement between two or more persons; (2) an overt act; (3) their intentional participation in furtherance of plan or purpose; and (4) resulting damages.

**[30] Conspiracy 91 ⇌9**

91 Conspiracy
    91I Civil Liability
        91I(A) Acts Constituting Conspiracy and Liability Therefor
            91k9 k. Conspiracy to Defraud. Most Cited Cases
Claim may be stated under New York law for conspiracy to commit fraudulent conveyance.

**[31] Conspiracy 91 ⇌18**

91 Conspiracy
    91I Civil Liability
        91I(B) Actions
            91k18 k. Pleading. Most Cited Cases
In order to state claim for conspiracy to commit fraudulent conveyance under new York law, plaintiff must allege facts showing that conspirator committed overt act that furthered conveyance itself; it is not enough to allege that alleged conspirator was aware of fraudulent conveyance and undertook an overt act as consequence of receiving transfer.

**[32] Conspiracy 91 ⇌1.1**

91 Conspiracy
    91I Civil Liability
        91I(A) Acts Constituting Conspiracy and Liability Therefor
            91k1 Nature and Elements in General
                91k1.1 k. In General. Most Cited Cases
Under New York law, conspiracy claim should be dismissed as duplicative of other claims for relief, where overt acts alleged in support of conspiracy claim form the basis of other claims for relief.

**[33] Bankruptcy 51 ⇌2162**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2162 k. Pleading; Dismissal. Most Cited Cases
Allegations in Chapter 7 trustee's complaint, regarding alleged scheme by debtors' principals to fraudulently divert corporate funds to controlled entities with knowledge that they would then be transferred to other entities for purposes of funding condominium construction project, sufficiently alleged facts supporting application of doctrine of equitable tolling, so that trustee's claim to hold defendants liable under New York law for tortiously converting debtors' assets could not be dismissed as time-barred. N.Y.McKinney's CPLR 214.

**[34] Bankruptcy 51 ⇌2162**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2162 k. Pleading; Dismissal. Most Cited Cases
Application of doctrine of equitable tolling to prevent limitations period from running generally turns on questions of fact that are difficult to resolve on motion to dismiss for failure to state claim for relief. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[35] Trusts 390 ⇌91**

390 Trusts

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

390I Creation, Existence, and Validity
    390I(C) Constructive Trusts
        390k91 k. Nature of Constructive Trust.
Most Cited Cases
Under New York law, imposition of constructive trust generally requires a showing of the following elements: (1) confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of subject res made in reliance on that promise; and (4) unjust enrichment.

**[36] Trusts 390** ⚷91

390 Trusts
    390I Creation, Existence, and Validity
        390I(C) Constructive Trusts
            390k91 k. Nature of Constructive Trust.
Most Cited Cases
Under New York law, constructive trust is equitable remedy, and not a legal relationship.

**[37] Trusts 390** ⚷91

390 Trusts
    390I Creation, Existence, and Validity
        390I(C) Constructive Trusts
            390k91 k. Nature of Constructive Trust.
Most Cited Cases
Under New York law, constructive trust arises against entity that, by actual or constructive fraud, by duress, by abuse of confidence, or by commission of a wrong or some other form of unconscionable conduct, artifice, concealment or questionable means, either has obtained or holds legal right to property which, in equity and good conscience, it ought not to hold and enjoy.

**[38] Trusts 390** ⚷91

390 Trusts
    390I Creation, Existence, and Validity
        390I(C) Constructive Trusts
            390k91 k. Nature of Constructive Trust.
Most Cited Cases
Under New York law, imposition of constructive trust is equitable and flexible remedy.

**[39] Bankruptcy 51** ⚷2162

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General

            51k2162 k. Pleading; Dismissal. Most Cited Cases
Allegations in Chapter 7 trustee's complaint, regarding alleged scheme by debtors' principals to fraudulently divert corporate funds to controlled entities with knowledge that they would then be transferred to other entities for purposes of funding condominium construction project, were insufficient to state claim under New York law for imposition of constructive trust on assets derived from these diverted funds, where trustee failed to adequately allege existence of confidential or fiduciary relationship between defendants and debtors, existence of promise, express or implied, from defendants to debtors, or transfer by debtors to defendants made in reliance on that promise.

Ronald J. Friedman, Esq., David J. Mahoney, Esq., Silverman Perlstein & Acampora LLP, Jericho, NY, for Plaintiff, Kenneth P. Silverman, Esq., as Chapter 7 Trustee.
Nathan Schwed, Esq., Zeichner Ellman & Krause LLP, Franklyn H. Snitow, Esq., Snitow Kanfer Holtzer & Millus LLP, New York, NY, for Defendants, Kent-Rush Realty Corp., K-R Residence Corp., D.J.R. Construction LLC, R & D Development LLC, Chaim Dushinsky and Isaac Rabinowitz.

**MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART THE MOTION OF CERTAIN DEFENDANTS TO DISMISS THE AMENDED COMPLAINT**
ELIZABETH S. STONG, Bankruptcy Judge.
*1 Before the Court is the motion of certain of the above-captioned Defendants, Kent-Rush Realty Corp. ("Kent-Rush Realty"), K-R Residence Corp. ("K-R Residence"), D.J.R. Construction LLC ("DJR Construction"), and R & D Development, LLC ("R & D Development") (together, the "K-R Defendants"), and Chaim Dushinsky and Isaac Rabinowitz (the "Individual Defendants" and together with the K-R Defendants, the "Movants"), to dismiss the Amended Complaint, dated June 19, 2006 (the "Motion to Dismiss the Amended Complaint"). The Movants bring their Motion to Dismiss the Amended Complaint pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure. The Movants argue that the Plaintiff, Kenneth P. Silverman, as Chapter 7 trustee (the "Trustee") of the bankruptcy estates of Allou

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29
(Cite as: --- B.R. ----)

Page 8

Distributors, Inc., and other entities (the "Debtor"), does not satisfy the pleading threshold of Rule 8(a), does not plead fraud with the particularity required by Rule 9(b), and does not state a claim upon which relief can be granted as required by Rule 12(b)(6).

*Background*

*Procedural History*

On April 8, 2005, the Trustee filed a complaint (the "Original Complaint") against the Defendants in which he seeks to avoid as fraudulent transfers certain transfers of assets that the Trustee alleges to have originated as assets of the Debtor, and to recover the transferred property from the Defendants. Adv. Pro. Docket No. 1. On August 4, 2005, the Movants filed a Motion to Dismiss the Complaint (the "Motion to Dismiss the Original Complaint"). Adv. Pro. Docket No. 8.

On March 23, 2006, the Court, by then-Chief Judge Melanie L. Cyganowski, granted the Movants' Motion to Dismiss the Original Complaint in part. Adv. Pro. Docket No. 14 (Transcript of hearing held March 23, 2006). The Court denied the Movants' challenge to the Trustee's unjust enrichment claim, and denied the Movants' statute of limitations challenge to the Trustee's conversion claim. *Id.* The Trustee was granted leave to replead the dismissed claims. *Id.*

On June 19, 2006, the Trustee filed an Amended Complaint (the "Amended Complaint"). Adv. Pro. Docket No. 19.*See* Affidavit of Franklin Snitow, Esq., dated August 25, 2006, Exh. D (Original Complaint and Amended Complaint marked to show differences). On August 25, 2006, the Movants filed the Motion to Dismiss the Amended Complaint. A hearing was held before this Court on July 16, 2007, at which counsel for the Movants and counsel for the Plaintiff appeared and were heard. After consideration of the submissions and the arguments of counsel, and for the reasons set forth below, the Motion to Dismiss the Amended Complaint is granted in part and denied in part.

*The Amended Complaint*

The Trustee asserts that this adversary proceeding arises out of the alleged fraudulent diversion of the Debtor's assets by Victor Jacobs and his sons Herman Jacobs, Jacob Jacobs, and Defendant Aaron Jacobs a/k/a/ Ari Jacobowitz (the "Jacobs"), as the former principals of the Debtor, and their relatives and accomplices (collectively, the "Jacobs Family"). Amended Complaint ¶ 1. The Trustee asserts that the Jacobs Family orchestrated a fraudulent scheme through which they diverted at least $15,265,000, of the Debtor's assets to entities that they owned, controlled, or had an interest in, and that those entities purchased a parcel of real property and constructed a condominium project using the diverted assets. Amended Complaint ¶¶ 1-6.

*2 The Trustee asserts forty-nine claims for relief in the Amended Complaint. These claims include fraudulent transfer claims under Section 548(a)(1)(A) of the Bankruptcy Code for actual fraud and Section 548(a)(1)(B) of the Bankruptcy Code for constructive fraud.[FN1] Pursuant to Section 544(b)(1) of the Bankruptcy Code, the Trustee also asserts fraudulent transfer claims under Sections 273, 274, 275, 276, and 276(a) of the New York Debtor and Creditor Law (the "DCL").[FN2] The Trustee seeks recovery from the Defendants as initial transferees of the avoided transfers pursuant to Section 550(a)(1) of the Bankruptcy Code under a "collapsing" theory [FN3] or, in the alternative, as immediate or mediate transferees of an initial transferee under Section 550(a)(2).[FN4] The Trustee also asserts common law claims for fraud, conversion, conspiracy to commit fraudulent conveyances, and unjust enrichment, and seeks the imposition of a constructive trust.[FN5]

*Facts Alleged in the Amended Complaint*

The Trustee alleges that the fraudulent transfers were accomplished by a series of transfers from the Debtor to entities owned or controlled by Herman Jacobs or his family members, including SE-Roebuck Ltd. ("SE-Roebuck"), Arrow Distributing Corp. ("Arrow"), Buy & Save Trading Corp. ("Buy & Save"), Ever Ready First Aid Medical Supply Corp. d/b/a A & M Enterprises ("A & M"), T.J. Associates, LLC ("T.J. Associates"), Capital Sales Corp. ("Capital Sales"), Impax Trading Corp. ("Impax"), and Kimberley Trading & Holding, Ltd. ("Kimberley") (the "Controlled Entities"), and Eurofactors International Inc. ("Eurofactors"). Amended Complaint ¶¶ 48, 54.

The Trustee alleges that the Controlled Entities and Eurofactors then transferred a portion of the funds they received from the Debtor to or for the benefit of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Movants in connection with the purchase of a block of real property bordered by Kent Avenue, Rush Street, Wythe Avenue, and Morton Street, Brooklyn, New York (the "Kent Avenue Property"), and the construction of condominiums at the Kent Avenue Property (the "Kent Avenue Condominiums"). Amended Complaint ¶¶ 1, 53, 56. The Kent Avenue Condominiums consist of three separate condominiums known as the 525-535 Park Plaza Condominium, the 570-576 Park Plaza Condominium, and the 564-580 Park Plaza Condominium. Amended Complaint ¶ 97.

*The Kent-Rush Transfers*

The Trustee alleges that on December 16, 1998, the Debtor transferred $5,570,000, to an account in a Swiss bank held by Kimberley, and that between December 16, 1998, and December 29, 1998, Kimberley transferred $4,999,965, to a Swiss bank account held by Eurofactors. Amended Complaint ¶¶ 67, 68. The Trustee alleges that on December 21 and 28, 1998, the Debtor transferred $1,450,000, to Impax, and on December 28, 1998, the Debtor transferred $1,500,000, to Arrow. Amended Complaint ¶¶ 70, 71. The Trustee alleges that Kimberley, Eurofactors, Impax, and Arrow are owned or controlled by the Jacobs Family. Amended Complaint ¶ 48.

*3 The Trustee also alleges that on December 29, 1998, the day after these transfers by the Debtor were completed, some $7.5 million-$4,999,965, from Eurofactors; $1.5 million from Arrow and $1 million from Impax-was transferred to an attorney's trust account held by Leon Traube, Esq., an attorney who represented the Debtor and the Jacobs in various transactions (the "Kent-Rush Transfers"). Amended Complaint ¶¶ 73, 74. The Trustee alleges that on December 29, 1998, Kent-Rush Realty used substantially all of the Kent-Rush Transfers to purchase the Kent Avenue Property. Amended Complaint ¶ 76. The Trustee alleges that Herman Jacobs is President of Kent-Rush Realty. Amended Complaint ¶ 23, 24, 45.

The Trustee further alleges that at the December 29, 1998, closing, Kent-Rush Realty granted a $5 million mortgage to K.E.R.U. Realty Corp. (the "K.E.R.U. Mortgage"), and a $2 million mortgage to 2165 K-R Realty Corp. (the "K-R Mortgage"), and that these and other transfers were made for no consideration. Amended Complaint ¶¶ 72, 75-78.

The Trustee finally alleges that on April 5, 2001, A & M, one of the Controlled Entities, transferred $650,000, to Kent-Rush Realty to pay development expenses for the Kent Avenue Condominiums. Amended Complaint ¶ 93.

*The DJR Construction Transfers*

The Trustee alleges that Kent-Rush Realty entered into a contract with DJR Construction to serve as general contractor for the construction of the Kent Avenue Condominiums, and that the principal of DJR Construction is Defendant Aaron Jacobs a/k/a/ Ari Jacobowitz, a Jacobs family member. Amended Complaint ¶ ¶ 80-86. The Trustee alleges that on January 19, 1999, $160,000, was transferred from Leon Traube's attorney's trust account to DJR Construction to fund operating expenses. Amended Complaint ¶ 82.

The Trustee also alleges that from February 25, 1999, to September 13, 2000, the Controlled Entities transferred to DJR Construction at least $2.93 million in thirty transfers to fund construction costs, and that from September 25, 2000, to February 7, 2003, the Controlled Entities transferred to DJR Construction at least an additional $3,435,000, in some two dozen transfers (the "DJR Construction Transfers"). Amended Complaint ¶¶ 83, 90.

The Trustee further alleges that the funds transferred by the Controlled Entities to DJR Construction originated from the Debtor. Amended Complaint ¶¶ 84, 93. The Trustee alleges that the Individual Defendants are principals of DJR Construction and that they, along with Aaron Jacobs a/k/a Ari Jacobowitz, "must have known that the transfers to DJR were made by entities that were not parties to the Construction Contract which in turn, shows their knowing participation in the fraudulent scheme." Amended Complaint ¶ 86.

*The K-R Residence Transfers-The K-R Residence Funds Transfers*

The Trustee alleges that from February 13, 1999, to August 4, 2000, the Controlled Entities transferred at least $590,000, to K-R Residence (the "K-R Residence Funds Transfers"). Amended Complaint ¶¶ 94-96. The Trustee alleges that these funds originated from the Debtor. Amended Complaint ¶

--- B.R. ----  
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29  
(Cite as: --- B.R. ----)

Page 10

95.

*4 The Trustee also alleges that Defendant Aaron Jacobs a/k/a/ Ari Jacobowitz is the President, and the Individual Defendants are principals, of K-R Residence. Amended Complaint ¶ 45. And the Trustee alleges that the Individual Defendants "must have known" that the K-R Residence Funds Transfers were from entities that were not parties to the construction contract, showing their knowing participation in a scheme to defraud the Debtor. Amended Complaint ¶ 96.

The Trustee further alleges that K-R Residence was designated in certain condominium offering plans as the sponsor and selling agent for the Kent Avenue Condominiums. Amended Complaint ¶ 99. The Trustee alleges that on July 11, 2000, Kent-Rush Realty and K-R Residence agreed that K-R Residence would receive ten percent of the net purchase price for each unit sold to third parties (the "K-R Residence Contract"). Amended Complaint ¶ 104. The Trustee further alleges that K-R Residence received over $1 million in connection with the K-R Residence Contract and paid those funds to the Individual Defendants. Amended Complaint ¶ 105.

*The K-R Residence Transfers-The K-R Residence Condominium Transfers*

The Trustee alleges that on December 5, 2002, Kent-Rush Realty transferred ten condominium units to K-R Residence (the "K-R Residence Condominium Transfers" and together with the K-R Residence Funds Transfers, the "K-R Residence Transfers"). Amended Complaint ¶ 106. The Trustee alleges that the deed reflecting the transfer of the ten condominium units was signed by Herman Jacobs as president of Kent-Rush Realty, dated December 2, 2002, and recorded on April 28, 2003, less than three weeks after the involuntary bankruptcy petitions were filed against the Debtor and three of its affiliates. Amended Complaint ¶ 107. The Trustee alleges that K-R Residence paid no consideration for the K-R Condominium Transfers and later sold one of the condominium units for $382,500. Amended Complaint ¶¶ 108, 109. The Trustee alleges, upon information and belief, that K-R Residence continues to own nine condominium units (the "K-R Units"). Amended Complaint ¶ 111.

*The R & D Development Transfers*

The Trustee alleges that on February 26, 2003, Kent-Rush Realty, as landlord, entered into 99-year renewable leases with R & D Development for four basements and sub-basements that were part of the K-R Units (the "R & D Development Leased Units") for no or less than fair consideration. Amended Complaint ¶¶ 112, 113. The Trustee alleges that the Individual Defendants are principals of R & D Development. Amended Complaint ¶ 45.

The Trustee also alleges that on February 25, 2003, and October 30, 2003, Kent-Rush Realty transferred five condominium units to R & D Development for no or less than fair consideration (the "R & D Development Units" and together with the R & D Development Leased Units, the "R & D Development Transfers"). Amended Complaint ¶¶ 114, 115. The Trustee alleges that Kent-Rush Realty continues to own two condominium units. Amended Complaint ¶ 116.

*The Transfers to the Individual Defendants*

*5 The Trustee alleges that the Individual Defendants "personally received millions of dollars as a result of their interest in DJR [Construction], K-R Residence and R & D" (the "Individual Transfers"). Amended Complaint ¶ 119. The Trustee alleges that "every single dollar transferred from The Debtor inured to the personal benefit of [the Individual Defendants] because they would otherwise have had to fund the costs of development themselves as DJR [Construction] and K-R Residence had no independent and legitimate means of income." *Id.*

The Trustee further alleges that the Individual Defendants received more than $1 million from the sale of the units by K-R Residence pursuant to the K-R Residence Contract, as well as additional amounts arising from R & D Development's interest in the R & D Units and the R & D Leased Units, "all of which are income generating properties that, upon information and belief, have been leased by R & D to third parties." Amended Complaint ¶ 119.

*The Bedford Wall Transfers*

The Trustee alleges that in September 2000, Bedford Wall Realty Corp. ("Bedford Wall Realty"), Kent-Rush Realty, and 2165 K-R Realty entered into an agreement (the "Spreader Agreement") providing that

--- B.R. ----  
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29  
(Cite as: --- B.R. ----)

Page 11

a $2 million lien given to 2165 K-R Realty under the K-R Mortgage at the time of the purchase of the Kent Avenue Property would be "spread" to cover real property owned by Bedford Wall Realty located at Bedford Avenue, Brooklyn, New York (the "Bedford Wall Property"). Amended Complaint ¶ 122. The Trustee alleges that Aaron Jacobs a/k/a/ Ari Jacobowitz is a principal of Bedford Wall Realty. Amended Complaint ¶ 45.

The Trustee also alleges that at the same time, Kent-Rush Realty and 2165 K-R Realty entered into an agreement to release the Kent-Rush Property from the $2 million K-R Mortgage. Amended Complaint ¶ 122. The Trustee alleges that as a result of these transactions, the Bedford Wall Property was substituted for the Kent-Rush Property as security for the K-R Mortgage. Amended Complaint ¶ 123. The Trustee alleges that the K-R Mortgage was and still is "subject to The Debtor's interest therein as the actual source of the monies that funded the K-R Mortgage."*Id.*

The Trustee further alleges that in July 2003, Bedford Wall Realty transferred the Bedford Wall Property to 724 Bedford LLC ("724 Bedford") and "[a]t the same time, the K-R Mortgage was transferred to Tereza [LLC] by assignment of mortgage ... which assignment was executed by Herbert Greenfield...." Amended Complaint ¶ 124. The Trustee alleges that Defendants 724 Bedford and Tereza LLC ("Tereza") are owned or controlled by the Jacobs and Aaron Jacobs a/k/a Ari Jacobowitz. Amended Complaint ¶ 127. The Trustee alleges that Aaron Jacobs a/k/a Ari Jacobowitz executed the Spreader Agreement and the deed to 724 Bedford on behalf of Bedford Wall Realty, and Herman Jacobs executed the Spreader Agreement on behalf of Kent-Rush Realty. Amended Complaint ¶ 125.

*6 The Trustee alleges that the these transfers (the "Bedford Wall Transfers") were made "with the intent of placing the K-R Mortgage and the Bedford Wall Property ... beyond the reach of Allou, and its creditors."Amended Complaint ¶ 128.

*Discussion*

*The Standard for Dismissal Under Rule 12(b)(6)*

[1][2] In reviewing a complaint for sufficiency under Rule 12(b)(6), the court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."*Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984).* The court accepts as true the well-pleaded factual allegations made by the plaintiff, and "must draw all reasonable inferences in favor of the plaintiff."*Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir.1996).See Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir.2001), cert. denied,535 U.S. 1054, 122 S.Ct. 1911, 152 L.Ed.2d 821 (2002); Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.1995).*

The Second Circuit has observed that in addition to the factual allegations contained in the complaint, the court may also consider the contents of any "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in the plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."*Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.1993).*

[3] This standard requires a plaintiff to do more than simply speculate about circumstances that might conceivably give rise to a claim for relief. As the Supreme Court recently explained:
While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do,.... Factual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)....

*Bell Atl. Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (citations and quotations omitted). That is, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" in order to state a claim that survives scrutiny under Rule 12(b)(6).*Bell Atlantic, 127 S.Ct. at 1974.See Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007)* (the *Bell Atlantic* standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible"). Thus, a claim may be sustained only if the plaintiff has "nudged [its] claims across the line

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----  
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29  
(Cite as: --- B.R. ----)

Page 12

from conceivable to plausible...."*Bell Atlantic*, 127 S.Ct. at 1974.

### The Standard for Dismissal Under Rule 9(b)

*7 As a counterweight to the liberal pleading standard established by Rule 12(b)(6) and Rule 8(a), Rule 9(b) raises the bar for certain types of claims at the pleading stage. It requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake ... be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."FED.R.CIV.P. 9(b).Rule 9(b) serves several purposes, including "(1) to provide a defendant with fair notice of the claims against him; (2) to protect a defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits."*Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F.Supp.2d 275, 285-86 (S.D.N.Y.1998).*See O'Brien v. Price Waterhouse*, 740 F.Supp. 276, 279 (S.D.N.Y.1990), aff'd,936 F.2d 674 (2d Cir.1991).

[4] To satisfy Rule 9(b)'s pleading requirements " 'a complaint must allege with some specificity the acts constituting fraud ... conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough.'"*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 801 (Bankr.S.D.N.Y.2005) (quoting *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd.*, 85 F.Supp.2d 282, 293 (S.D.N.Y.2000)).

[5] Thus, "plaintiffs are required 'to allege facts that give rise to a strong inference of fraudulent intent.'"*Westdeutsche Landesbank Girozentrale v. SNC-Lavalin Constructors, Inc. (In re Enron Corp.)*, 2006 WL 2400083, at *8 (Bankr.S.D.N.Y.2006) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir.2001)).*See Securities Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr.S.D.N.Y.1999). In the bankruptcy context, courts have found that "[a] plaintiff can sufficiently allege intent (a) by alleging that a defendant had both motive and opportunity to commit fraud or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."*In re Enron Corp.*, 2006 WL 2400083, at *8.*See Nisselson v. Drew Indus. Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 428 (Bankr.S.D.N.Y.1998).

[6] And in the bankruptcy context, courts have evaluated fraud allegations more liberally than in other civil actions charging fraud. *See, e.g., Nisselson v. Ford Motor Co. (In re Monahan Ford Corp. of Flushing)*, 340 B.R. 1, 21 (Bankr.E.D.N.Y.2006); *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 498 (N.D.Ill.1988); *Harrison v. Entm't, Inc. (In re Rave Commc'ns, Inc.)*, 138 B.R. 390, 396 (Bankr.S.D.N.Y.1992). This is because in such cases, "it is often the trustee, a third party, who is pleading fraud on secondhand information."*Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.)*, 32 B.R. 199, 202 (Bankr.S.D.N.Y.1983). As one court found, "[s]ince a bankruptcy trustee rarely has personal knowledge of the events preceding his appointment, he can plead *scienter* based upon information and belief provided he pleads the basis of his belief."*In re White Metal Rolling & Stamping Corp.*, 222 B.R. at 428.*See Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 717 (Bankr.D.Del.2005).

*8[7] The particularity requirements of Rule 9(b) apply only if actual, as opposed to constructive, fraud is alleged. *In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 801-02.Thus, for example, Rule 9(b) does not apply to constructive fraudulent transfer claims under Section 548(a)(1)(B) and applicable state law, because such claims are not based on fraud but are based on the transferor's financial condition and the value given in exchange by the transferee. *See, e.g., In re Global Link Telecom Corp.*, 327 B.R. at 717;*In re White Metal Rolling & Stamping Corp.*, 222 B.R. at 428;*Stratton Oakmont*, 234 B.R. at 319.

### The Standard for Dismissal Under Rule 8(a)

[8] To survive a motion to dismiss under Rule 8(a), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a).*See Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)."Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"*Erickson*, 127 S.Ct. at 2200 (quoting *Bell Atlantic*, 127 S.Ct. at 1964).

As one bankruptcy court in this Circuit recently found:
The purpose of the statement is to provide 'fair

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29
(Cite as: --- B.R. ----)

Page 13

notice' of the claim and 'the grounds upon which it rests.'_Enron Corp. v. J.P. Morgan Sec., Inc. (In re Enron Corp.), 325 B.R. 671 (Bankr.S.D.N.Y.2005)_ (citing _Conley v. Gibson, 355 U.S. 41, 47[, 78 S.Ct. 99, 2 L.Ed.2d 80] (1957)_). In other words, '[Rule 8] is designed to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'_Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir.1991)_.

_Official Comm. of Unsecured Creditors of 360networks (USA), Inc. v. Pirelli Commc'ns Cables & Sys. USA LLC (In re 360Networks (USA), Inc.), 367 B.R. 428, 432 (Bankr.S.D.N.Y.2007)_.

[9]Rule 8(a) sets a lower bar than Rule 12(b)(6) or Rule 9(b), and "does not require a plaintiff to plead the legal theory, facts, or elements underlying his claim."_Koch v. Hicks (In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.), 457 F.Supp.2d 298, 303-04 (S.D.N.Y.2006)_ (quotations and citations omitted).

*The Motion to Dismiss the Amended Complaint*

*The First through Forty-Fourth Claims for Relief-Avoiding and Recovering the Alleged Fraudulent Transfers*

The First through Forty-Fourth Claims for Relief assert fraudulent transfer claims under Sections 548(a)(1)(A) and 548(a)(1)(B) of the Bankruptcy Code and Sections 273, 274, 275, 276, and 276(a) of the DCL, and seek to impose liability upon the Defendants for the transfers that are avoided. The Movants argue that these claims should be dismissed because they do not adequately state claims for recovery from the Defendants as "initial transferee[s]" under Section 550(a)(1), or alternatively, as "immediate or mediate transferee[s]" under Section 550(a)(2). Memorandum of Law in Support of Motion to Dismiss Amended Complaint ("Movants' Mem.") at 6. The Movants challenge the Trustee's Section 550(a) claims in total, and also challenge separately the Trustee's Sections 550(a)(1) and (a)(2) claims.

*Whether the Amended Complaint May State a Claim for Recovery of the Alleged Fraudulent Transfers Before the Initial Transfers Are Avoided*

*9[10] The Movants argue that all of the Trustee's Section 550(a) claims must fail because the Amended Complaint does not seek to avoid the initial transfers but seeks only to avoid the subsequent transfers, and that recovery is available only after the Trustee avoids the initial transfers of the Debtor's property. Movants' Mem. at 6. _See_ Movants' Reply Memorandum of Law in Support of Motion to Dismiss Amended Complaint ("Movants' Reply Mem.") at 8-9.

The Trustee argues that even though Section 550(a) requires that a transfer be avoided before actual recovery is made against any transferee, the Bankruptcy Code does not require that the claims to avoid and to recover a transfer be brought in a single adversary proceeding. Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss the Amended Complaint ("Plaintiff's Mem.") at 15-16.

The Bankruptcy Code provides distinct concepts and processes for avoidance of a fraudulent transfer and recovery of the avoided transfer from the transferee. _See_ 11 U.S.C. §§ 548, 550. See also _Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.), 343 B.R. 75, 81 (Bankr.S.D.N.Y.2006)_.Section 550(a) is a remedies section and defines the party from whom a trustee may seek to recover property that is fraudulently transferred or the value or proceeds of such property. Section 550(a)(1) provides that either an "initial transferee" or "the entity for whose benefit such transfer was made" is liable for an avoided transfer. 11 U.S.C. § 550(a)(1).Section 550(a)(2) provides that "any immediate or mediate transferee of such initial transferee"-that is, a subsequent transferee-may be liable for an avoided transfer. 11 U.S.C. § 550(a)(2).

The Bankruptcy Code also provides defenses to an avoidance action that may be available to a subsequent transferee. Under Section 550(b)(1), a trustee may not recover an otherwise avoidable transfer from a subsequent transferee "that takes for value, including satisfaction or securing a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided."11 U.S.C. § 550(b)(1). For these reasons, "[w]hether a 'transferee' under § 550 is an initial or subsequent transferee ... has significant consequences with respect to liability and available defenses."_Official Comm. of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relocation Servs., Inc. (In re 360networks (USA) Inc.), 338 B.R. 194, 201 (Bankr.S.D.N.Y.2005)_.