Section 550(a) requires the Trustee to establish that the transfer was "avoided under Section 544, 545, 547, 548, 549, 553(b), or 724(a)...."11 U.S.C. § 550(a). Once the transfer is avoided, the Trustee may pursue the actual recovery of the transfer from the initial transferee or the entity for whose benefit such transfer was made, or an immediate or mediate transferee. 11 U.S.C. §§ 550(a)(1), (a)(2).See In re Enron, 343 B.R. at 81;Savage & Assocs. P.C. v. BLR Servs. SAS (In re Teligent, Inc.), 307 B.R. 744, 749 (Bankr.S.D.N.Y.2004).

*10 Neither Section 550(a) nor any other provision of the Bankruptcy Code requires a trustee to pursue both the avoidance of the initial transfer and the recovery of the transfer in a single adversary proceeding. Nor does the Bankruptcy Code explicitly address whether a trustee must avoid a transfer in order to state a claim for recovery of the transfer from a transferee.

In In re Enron, the court considered whether recovery under Section 550(a) of a transfer of the debtor's property from a subsequent transferee requires that the transfer have previously been avoided, and concluded that "although the two actions may be brought simultaneously, the plain language of Section 550(a) requires that the transfer first be avoided, i.e., determined to be improper, prior to actual recovery from any transferee."In re Enron, 343 B.R. at 76.Thus, before the Trustee may obtain an "actual recovery" from the Movants under Section 550(a), he must first avoid the underlying initial transfers. Cf. IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.), 408 F.3d 689 (11th Cir.2005) (holding that the trustee must prove only that the transfer is avoidable in order to recover from any subsequent transferee).

The Trustee alleges that he has commenced adversary proceedings against each of the Controlled Entities and Eurofactors to set aside the initial fraudulent transfers of The Debtor's funds to them. Amended Complaint ¶ 58. The Trustee alleges that in those actions, default judgments were entered against Arrow and Kimberley. Amended Complaint ¶ 59. The Trustee also alleges that, as of the date of the Amended Complaint, SE-Roebuck, Impax, and Buy & Save were in default, and that adversary proceedings against T.J. Associates, Capital Sales, A & M, and Eurofactors were pending and contested. Amended Complaint ¶¶ 60, 61. Since the Amended Complaint was filed, a default judgment has been entered against SE-Roebuck (Adv. Pro. No. 05-8086,

Docket No. 6) and summary judgment has been entered against T.J. Associates and Capital Sales (Adv. Pro. No. 05-8519, Docket No. 13; Adv. Pro. No. 04-8364, Docket No. 11).In addition, the adversary proceeding against Eurofactors has been settled (Adv. Pro. No. 06-8329, Docket No. 5).

Here, the Trustee commenced the adversary proceedings against the Controlled Entities and Eurofactors to avoid the initial transfers before the Amended Complaint was filed. And judgments or settlements have been entered in several of these actions. Equally important, the question posed at this stage in the proceedings is whether the Amended Complaint states a claim, not whether the Trustee has established all of the elements necessary for an "actual recovery" from the Movants. For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claims for Relief under Section 550(a) on grounds that the Amended Complaint seeks only to avoid the alleged subsequent transfers and not the initial transfers is denied.

*Whether the Amended Complaint States a Claim for Recovery from the Movants as Initial Transferees Under a "Collapsing" Theory*

*11 The Trustee seeks to recover the alleged fraudulent transfers from the Movants as "initial transferees" under Section 550(a)(1). The Trustee alleges that the transfers at issue "were part of a single scheme to fraudulently transfer funds from Allou, such that the transactions should be collapsed and [the Movants] be deemed to be initial transferees of the Fraudulent Transfers, or entities for whose benefit the Fraudulent Transfers were made, pursuant to Bankruptcy Code § 550(a)(1)." Amended Complaint ¶¶ 136, 140, 148, 158.

The Movants challenge the Trustee's "collapsing" theory on several grounds. The Movants argue that the Trustee's attempt to collapse the transfers falls short because a series of transactions may be collapsed only where there appears to have been fair consideration for the initial transfer but, upon closer scrutiny, the substance of the series of transactions, taken together, indicates that the debtor did not ultimately receive fair consideration. The Movants assert that inasmuch as The Debtor made the initial transfers to the Controlled Entities for no consideration, the subsequent transfers to the Movants may be recovered only under Section

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

550(a)(2). Movants' Reply Mem. at 10.

Alternatively, the Movants argue that the Trustee's "collapsing" theory is deficient because the Trustee has not adequately alleged that the Movants were part of a scheme to defraud. Movants' Mem. at 3. The Movants argue that the Trustee's allegations of a fraudulent scheme are conclusory and speculative and do not satisfy the requirements of Rules 8(a) and 9(b).Id. They also argue that the Trustee's fraud allegations do not relate back to the Original Complaint and are barred by the statute of limitations. Movants' Mem. at 3-4.

[11] The Second Circuit has observed that "[i]t is well established that multilateral transactions may under appropriate circumstances be 'collapsed' and treated as phases of a single transaction for analysis under the [fraudulent conveyance law]."*HBE Leasing Corp. v. Frank, 48 F.3d 623, 635 (2d Cir.1995). The court has declined to "turn a blind eye to the reality" of the substance of a series of transactions in determining whether a fraudulent conveyance has been shown, and has observed:
In equity, "substance will not give way to form, [and] technical considerations will not prevent substantial justice from being done."*Pepper v. Litton, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); ... Thus, an allegedly fraudulent conveyance must be evaluated in context: "[w]here a transfer is only a step in a general plan, the plan 'must be viewed as a whole with all its composite implications.'"*Pereira v. Checkmate Communications Co. (In re Checkmate Stereo & Elec., Ltd.), 9 B.R. 585, 612 (Bankr.E.D.N.Y.1981) (quoting Buffum v. Peter Barceloux Co., 289 U.S. 227, 232, 53 S.Ct. 539, 541, 77 L.Ed. 1140 (1933)), aff'd,21 B.R. 402 (E.D.N.Y.1982).

Orr v. Kinderhill Corp., 991 F.2d 31, 35 (2d Cir.1993).See Official Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co. (In re Sunbeam Corp.), 284 B.R. 355, 370 (Bankr.S.D.N.Y.2002) ("Courts have 'collapsed' a series of transactions into one transaction when it appears that despite the formal structure erected and the labels attached, the segments, in reality, comprise a single integrated scheme when evaluated focusing on the knowledge and intent of the parties involved in the transaction.").

*12 In HBE Leasing, the Second Circuit noted that collapsing "finds its most frequent application to

lenders who have financed leveraged buyouts of companies that subsequently become insolvent," but did not limit the collapsing doctrine to such circumstances. HBE Leasing, 48 F.3d at 635.The court found that the "paradigmatic scheme" in which collapsing applies is where:
one transferee gives fair value to the debtor in exchange for the debtor's property, and the debtor then gratuitously transfers the proceeds of the first exchange to a second transferee. The first transferee thereby receives the debtor's property, and the second transferee receives the consideration, while the debtor retains nothing.

Id. But a paradigm is simply an example-it does not, by itself, define the exclusive elements of a claim to recover a fraudulent transfer based on a "collapsing" theory. See In re Sunbeam Corp., 284 B.R. at 370 ("Although the concept of 'collapsing' a series of transactions and treating them as a single integrated transaction has been applied primarily ... in the context of a failed levered buy-out ('LBO'), it has also been utilized in other contexts.").

Working from this paradigm, the HBE Leasing court identified two conditions for "collapsing" the transactions for purposes of establishing a fraudulent conveyance. The first condition identified by the court was, "in accordance with the foregoing paradigm, the consideration received from the first transferee must be reconveyed by the debtor for less than fair consideration or with an actual intent to defraud creditors." HBE Leasing, 48 F.3d at 635. (emphasis added). More generally, the first condition for collapsing a series of transactions is that the transactions, taken as a whole, diminish the value of the debtor's estate and are marked by either a transfer made by the debtor for less than fair consideration or a transfer made by the debtor with actual fraudulent intent. See id.

The second condition identified by the court was "the transferee in the leg of the transaction sought to be voided must have actual or constructive knowledge of the entire scheme that renders her exchange with the debtor fraudulent."Id. As the court found:

The case law has been aptly summarized in the following terms:
"In deciding whether to collapse the transaction and impose liability on particular defendants, the courts have looked frequently to the knowledge of the defendants of the structure of the entire transaction

and to whether its components were part of a single scheme."

*HBE Leasing*, 48 F.3d at 635-36 (quoting *In re Best Prods. Co.*, 168 B.R. 35, 56-57 (Bankr.S.D.N.Y.1994)).

The Second Circuit described the constructive notice needed to satisfy this condition:
[T]he transferee need not have actual knowledge of the scheme that renders the conveyance fraudulent. Constructive knowledge of fraudulent schemes will be attributed to transferees who were aware of circumstances that should have led them to inquire further into the circumstances of the transaction, but who failed to make such inquiry.

*13*HBE Leasing*, 48 F.3d at 636.The court observed that "[t]here is some ambiguity as to the precise test for constructive knowledge in this context."*Id.*

[12] Thus, a claim for a fraudulent transfer may be alleged based on "collapsing" a series of transactions where the transactions, taken as a whole, diminish the value of the debtor's estate and are marked by either a transfer made by the debtor for less than fair consideration or a transfer made by the debtor with actual fraudulent intent, and the party from whom recovery is sought had actual or constructive knowledge of the entire scheme that renders the transfer fraudulent.

The Movants argue that a series of transactions may be collapsed only where the series begins, like the "paradigm" in *HBE Leasing,* with a transfer by a debtor that appears to be for fair consideration, but upon closer scrutiny provides no value to the debtor. Movants' Mem. at 7-8. The Movants argue that "when a debtor makes a transfer of funds for no consideration (which is avoidable as a fraudulent conveyance) and the funds are thereafter 'washed' through other entities in a series of subsequent transfers, 'collapsing' may not be used in order to convert a 'subsequent transferee' into an 'initial transferee.' " Movants' Mem. at 8. They argue that under this "wash" scenario, "a claim lies against the initial recipient under § 550(a)(1) as the 'initial transferee' and against the subsequent recipients as the 'mediate or intermediate transferee' under § 550(a)(2)." Movants' Mem. at 8-9. The Movants note that a subsequent recipient of a transfer may be subject to a claim under Section 550(a)(1) where the

initial recipient was a "mere conduit," [FN6] and suggest that where the initial transfer by a debtor is for no consideration, only the "mere conduit" theory, not a "collapsing" theory, supports a recovery under Section 550(a)(1) from a subsequent transferee. Movants' Mem. at 9.

But as indicated above, *HBE Leasing* and other authorities do not limit recovery under a "collapsing" theory to situations where the initial transfer in the series of transactions appears to be, but is not, for value. Rather, these authorities establish two conditions for the statement of a claim for collapsing a series of transactions: that the transactions, taken as a whole, are marked by either a transfer made by the debtor for less than fair consideration or one made by the debtor with actual fraudulent intent; and that the transferee from whom recovery is sought had actual or constructive knowledge of the entire scheme. *See, e.g., Orr*, 991 F.2d at 35;*In re Sunbeam Corp.*, 284 B.R. at 370;*In re Best Prods. Co.*, 157 B.R. 222, 229 (Bankr.S.D.N.Y.1993).*See also* pp. ---- - ----, *supra*.

[13] And the authorities relied upon by the Movants, which arise in the context of whether an initial transferee was a "mere conduit" that was unable to exercise dominion and control over the assets transferred by the debtor, do not preclude the "collapsing" theory advanced by the Trustee. *See* Movants' Mem. at 8-10. Rather, they confirm that courts should look to the substance, as well as the form, of a series of transactions to determine whether a fraudulent transfer claim has been pleaded or proved.

*14 For example, in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988), the trustee sought to recover $200,000, from a bank as the initial transferee. There, the bank received a check from the debtor and followed the debtor's instructions to deposit the funds in the account of the debtor's principal. *Bonded Fin. Servs., Inc.*, 838 F.2d at 891.The debtor's principal then applied the funds to pay down the balance of his personal loan. *Id.* The court held that the debtor's principal, not the bank, was the initial transferee, and that the bank was not a transferee at all but merely a financial intermediary or conduit. *Bonded Fin. Servs., Inc.*, 838 F.2d at 893.The court reasoned that "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes. When A gives a check to B as agent for C, then C is the 'initial

--- B.R. ----
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29
**(Cite as: --- B.R. ----)**

Page 17

transferee'; the agent may be disregarded."*Id.*

Similarly, in *Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey),* 130 F.3d 52 (2d Cir.1997), the Second Circuit declined to hold that the first entity to receive a transfer from a debtor is necessarily the "initial transferee." There, the debtor prepaid the premium for a three-year extension of its malpractice insurance before filing for bankruptcy. *In re Finley, Kumble,* 130 F.3d at 53.The court found that the premium could not be recovered from the insurance broker because, despite the broker's participation in the selection of the insurance carrier, the broker was a "mere conduit" of the premium payment.*In re Finley, Kumble,* 130 F.3d at 58.

In *IBT International, Inc. v. Northern (In re International Administrative Services, Inc.),* 408 F.3d 689 (11th Cir.2005), the trustee sought to avoid and recover funds that were transferred more than one hundred times among twenty-three entities through multiple transactions. *IBT Int'l, Inc.,* 408 F.3d at 696.The trustee commenced an adversary proceeding seeking to avoid the various transfers but did not name the initial transferees-the attorney and firm who formulated the plan-as defendants. *Id.* The bankruptcy court and district court ruled in favor of the trustee and the defendants appealed, arguing that the trustee should have first avoided the transfer to the initial transferees.*IBT Int'l, Inc.,* 408 F.3d at 698.The Eleventh Circuit declined to deem the initial transferees as conduits. *IBT Int'l, Inc.,* 408 F.3d at 706.The court held that "Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers," but rather "once a plaintiff proves that an avoidable transfer exists he can then skip over the initial transferee and recover from those next in line."*IBT Int'l, Inc.,* 408 F.3d at 706, 708.

Finally, in *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors,* 926 F.2d 1248 (1st Cir.1991), the court found that transfers to initial transferees in a "sham" transaction were void under Section 548(a)(1), and that the subsequent transferee was the "entity for whose benefit [the initial] transfer was made" under Section 550(a)(1).*Max Sugarman Funeral Home, Inc.,* 926 F.2d at 1256.Alternatively, the court found that the transfers could be recovered from the subsequent transferee under Section 550(a)(2).*Id.* The court concluded that "[under

Bankruptcy Code § 550(a)(1), the trustee in bankruptcy is entitled to recover from [the subsequent transferee] for the benefit of the debtor estates" all assets transferred through the initial transfers and the subsequent transfers. *Max Sugarman Funeral Home, Inc.,* 926 F.2d at 1257.

*15 Here, the Trustee is not seeking to recover from the Defendants as initial transferees by deeming the Controlled Entities and Eurofactors "mere conduits" under the dominion and control test. Rather, the Trustee is seeking to collapse the series of transactions ending with transfers to the Movants and to state a claim to recover from them under Section 550(a)(1) as initial transferees. As the Trustee notes, "the issues of whether the transfers should be collapsed and whether a party is a 'mere conduit' are different issues involving different analyses."Plaintiff's Mem. at 20 n. 23.

Viewed in this light, it is clear that the Trustee has adequately alleged that the transactions at issue, taken as a whole, satisfy the first condition for collapsing-that is, they diminished the value of the Debtor's estate and were marked by a transfer by the Debtor for less than fair consideration or a transfer by the Debtor with actual fraudulent intent. Accordingly, the Movants' challenge to the Trustee's "collapsing" theory, and the Section 550(a)(1) claim, turns on whether the Trustee has adequately alleged that the transactions at issue, taken as a whole, satisfy the second condition for collapsing-that is, whether the Movants had actual or constructive knowledge of the entire scheme that renders them fraudulent.

*Whether the Amended Complaint Adequately Alleges that the Movants Had Actual or Constructive Knowledge of a Scheme To Defraud the Debtor*

As discussed above, to satisfy Rule 9(b)'s pleading requirements " 'a complaint must allege with some specificity the acts constituting fraud ... conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough.'" *In re Actrade Fin. Techs. Ltd.,* 337 B.R. at 801.*See* pp. ---- - ----, *supra.*Fraud allegations are more liberally evaluated in bankruptcy cases because "it is often the trustee, a third party, who is pleading fraud on secondhand information."*In re O.P.M. Leasing Servs., Inc.,* 32 B.R. at 202.

Rule 8(a) is satisfied if the complaint provides " 'fair notice' of the claim and 'the grounds upon which it

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

rests.'"*In re 360Networks (USA), Inc.,* 367 B.R. at 432.*See* p. ----, *supra.*

The Movants argue that the Trustee's allegations that they had actual or constructive knowledge of the Jacobs' fraudulent scheme to divert funds from the Debtor are "at best speculative and conclusory and, at worst, pure fabrication."Movants' Mem. at 11. For these reasons, the Movants argue that the Trustee's claims based on their alleged knowledge of the scheme do not satisfy Rule 9(b) or Rule 8(a) and must be dismissed.

In response, the Trustee points to several allegations in the Amended Complaint and urges that they show that the Movants, and in particular the Individual Defendants, were aware of and participated in the "overall scheme" to fund the construction of the Kent Avenue Condominiums with funds that were fraudulently diverted from the Debtor. Plaintiff's Mem. at 22.

**\*16** A review of the Amended Complaint shows that the Trustee alleges that some $7 million was transferred, by wire transfer or check, from the Controlled Entities to DJR Construction and K-R Residence in some 90 transfers. *See* Amended Complaint ¶¶ 81-85, 90, 94. The Amended Complaint also states that the transfers came from seven different entities, none of which was involved in the Kent Avenue Condominiums. *See* Amended Complaint ¶¶ 83, 90, 94. And the Amended Complaint states that the funds were deposited into a bank account for which the Individual Defendants were the authorized signatories. *See* Amended Complaint ¶ 85. The Amended Complaint states that the Individual Defendants' failure to question the source of these funds provides a basis to infer that they knowingly participated in the Jacobs' fraudulent scheme. Amended Complaint ¶¶ 86, 96.

The Amended Complaint further alleges that the Individual Defendants incorrectly stated in the offering plans for the Kent Avenue Condominiums that they were the sole principals of K-R Residence and did not disclose that Aaron Jacobs a/k/a Ari Jacobowitz was the president of K-R Residence. Amended Complaint ¶ 100. The Amended Complaint states that this information was withheld from the public record to make it more difficult for anyone to discover the Jacobs' involvement with the selling agent of the condominium project. Amended Complaint ¶ 101. The Amended Complaint states that

the Individual Defendants should have questioned the transfers of the R & D Leased Units and the R & D Units by Kent-Rush Realty for less than fair consideration. Amended Complaint ¶¶ 112-15, 118.

And the Amended Complaint states that several of the entities involved in the transactions and transfers, including Kent-Rush Realty, DJR Construction, K-R Residence, and 2165 K-R Realty, were formed on the same day that the agreement relating to the construction of the Kent Avenue Condominiums was entered into by Chaim Dushinsky and Herman Jacobs. Amended Complaint ¶¶ 81, 130.

[14] Here, a review of the Amended Complaint shows that the Trustee adequately alleges that the Movants had actual or constructive knowledge of the Jacobs' fraudulent scheme to divert funds from the Debtor for the purpose of funding the Kent Avenue Condominiums. The Amended Complaint states a motive and opportunity to participate in the alleged fraud-that is, the financial motive to profit from the construction project involving companies owned or controlled by the Individual Defendants. *See* In re White Metal Rolling & Stamping Corp., 222 B.R. at 428.

Alternatively, the Amended Complaint states facts sufficient to "constitute strong circumstantial evidence of conscious misbehavior or recklessness."*Id.* The Amended Complaint states that the Movants received some 90 transfers, from seven different entities that were not known to be involved in the development or construction of the Kent Avenue Condominiums, and that the Movants were aware of, but did not question, the transfer of valuable condominium units by Kent-Rush Realty to K-R Residence and R & D Development for less than fair consideration.

**\*17** And similarly, the Amended Complaint meets the low threshold established by Rule 8(a) as to these claims, because it states facts sufficient to put the Movants on notice of the claims against them and the legal theories upon which those claims are based.

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claims for Relief under Section 550(a)(1) on grounds that the Amended Complaint does not satisfy the requirements of Rule 9(b) and Rule 8(a) is denied. And for these same reasons, the Movants' request for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29
**(Cite as: --- B.R. ----)**

Page 19

dismissal of the Trustee's Claims for Relief under Section 550(a)(1) on grounds that the Amended Complaint does not adequately allege a claim under a "collapsing" theory is denied.

*Whether the Claims Arising Out of an Alleged "Scheme" Are Barred by the Statute of Limitations*

The Movants argue that the Trustee's fraudulent conveyance claims based on a scheme to defraud are barred by the statute of limitations. Movants' Mem. at 15-17. They argue that these allegations do not relate back to the Original Complaint because the Original Complaint did not put them on notice of the Trustee's theory that they engaged in a scheme fraudulently to transfer funds from the Debtor, and that the Trustee has asserted that they were participants in such a scheme for the first time in the Amended Complaint. *Id.*

The Trustee asserts that his claims are timely and relate back to the Original Complaint as required by Rule 15(c). He also argues that Rule 15(c) does not require the new claims to have been asserted in the original pleading, because a single transaction or occurrence can give rise to many claims. Plaintiff's Mem. at 8. Alternatively, the Trustee argues that even if these claims do not relate back to the Original Complaint, the doctrine of equitable tolling precludes their dismissal. Plaintiff's Mem. at 14. He argues that the statute of limitations may be equitably tolled when fraud has been concealed or is of such character as to conceal itself, until the fraud is discovered by or becomes known to the party seeking relief. *Id.*

The amendment of a pleading is governed by Rule 15(c), which provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."FED.R.CIV.P. 15(c)(2). As the Second Circuit has observed:
The purpose of 'Rule 15 'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'"..."For a newly added action to relate back, 'the basic claim must have arisen out of the conduct set forth in the original pleading....' " Under Rule 15, "the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original

pleading."Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs.
**\*18** In contrast, even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an "entirely distinct set" of factual allegations will not relate back.

*Slayton v. American Express Co.,* 460 F.3d 215, 228 (2d Cir.2006) (citations omitted).*See Contemporary Mission, Inc. v. N.Y. Times Co.,* 665 F.Supp. 248, 255-56 (S.D.N.Y.1987) (holding that a claim relates back under Rule 15(c) if the "general fact situation alleged in the original pleading" provided adequate notice of the new allegations), *aff'd,*842 F.2d 612 (2d Cir.1988), *cert. denied sub nom.O'Reilly v. N.Y. Times Co.,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988); *In re Chaus Sec. Litig.,* 801 F.Supp. 1257, 1263 (S.D.N.Y.1992).

In addition, the Second Circuit has found that where fraud is alleged, a new claim will relate back if there is "sufficient commonality" between the new claim and the matters alleged in the original pleading to avoid "unfair surprise" to the defendant. *Benfield v. Mocatta Metals,* 26 F.3d 19, 23 (2d Cir.1994).

[15][16][17]Rule 15(c) does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations of the original pleading. Rule 15(c) requires only that they arise out of the same "conduct, transaction, or occurrence ... attempted to be set forth" in the original complaint, but those original allegations do not need to have been sufficient, on their own, to state a claim. FED.R.CIV.P. 15(c)(2). As courts have found, "adequate notice" not of the particulars but of the "general fact situation" is all that is required. *Contemporary Mission, Inc.,* 665 F.Supp. at 255-56.But if there is no common ground between the allegations of the original complaint and those of the amended pleading, then "unfair surprise" would be the result, the repose offered by statutes of limitation would be an empty promise, and relation back must be denied. *Benfield,* 26 F.3d at 23.

[18] Here, the Original Complaint alleged that "[m]illions of dollars of Allou funds were fraudulently diverted from Allou through certain Jacobs controlled entities, as detailed herein, to DJR with the knowledge of Ari [Jacobowitz] and DJR's other principals, Defendants Dushinsky and

Rabinowitz."Original Complaint ¶ 2. The Original Complaint also alleged:

Upon information and belief, [the Individual Defendants] knew that millions of dollars were being paid directly to DJR and K-R Residence from entities other than Kent-Rush Realty, the purported owner of the Kent-Rush Property and knew, or should have known, that the DJR Construction Transfers, the K-R Residence Transfers and the R & D Development Transfers were fraudulent.

Original Complaint ¶ 105. These same individuals, entities, properties, and transfers are the basis for the allegations that the Movants participated in a scheme fraudulently to transfer funds from the Debtor, and are sufficient to provide the Movants with notice of the "general fact situation" that gives rise to the Trustee's scheme allegations.

**19** For these reasons, and based on the entire record, the Movants' request for dismissal of he Trustee's Claims for Relief under Section 550(a)(1), on grounds that the allegations of a scheme do not relate back to the Original Complaint and are therefore barred by the statute of limitations, is denied.

*Whether the Amended Complaint Adequately Alleges that the Movants Are Entities for Whose Benefit the Transfers Were Made*

[19] The Movants argue that the Trustee's Section 550(a)(1) claim based on the theory that they are " 'entities for whose benefit the Fraudulent Transfers [by the Debtor] were made' " should be dismissed because under Second Circuit authority, "an ultimate recipient of funds can never be 'the entity for whose benefit' the initial transfer was made."Movants' Mem. at 10.

The Trustee responds that DJR Construction was an entity for whose benefit the transfers were made because it was the general contractor for the Kent Avenue Condominiums and received payments in that capacity. Plaintiff's Mem. at 26. The Trustee similarly argues that Kent-Rush Realty was an entity for whose benefit the transfers were made because it was required to provide financing for the construction of the Kent Avenue Condominiums and like DJR Construction, received funds which it used in that capacity. Plaintiff's Mem. at 26-27. For these reasons, the Trustee argues, these entities were each an " 'entity for whose benefit' the initial transfer[s] were

made as referred to in 11 U.S.C. § 550(a)(1)." Plaintiff's Mem. at 26. *See* Amended Complaint ¶¶ 81, 83, 90.

Under Section 550(a)(1), a trustee may recover an avoided transfer from "the initial transferee of such transfer or the entity for whose benefit such transfer was made."11 U.S.C. § 550(a)(1)."Section 550(a)(1) groups initial transferees with 'entities for whose benefit such transfer was made' and subjects both groups to strict liability."*In re Finley Kumble*, 130 F.3d at 57.The Amended Complaint states:

As a result of the fraudulent scheme, the foregoing transactions should be collapsed and each of the Defendants should be deemed to be initial transferees of the Fraudulent Transfers, or entities for whose benefit the Fraudulent Transfers were made, pursuant to Bankruptcy Code § 550(a)(1).

Amended Complaint ¶ 132.

In *Stratton Oakmont,* the court described the typical relationship among an initial transferee, a subsequent transferee, and an entity for whose benefit a transfer is made:

The quintessential example of the entity who benefits from the initial transfer is a guarantor of the debtor.... He or she is relieved of the obligation to pay the lender-which is the benefit-while the lender receives the money. As a general rule, initial transferees and entities for whose benefit the initial transfer was made are mutually exclusive.... The entity for whose benefit the initial transfer was made is also distinguished from a subsequent transferee (§ 550(a)(2)) because the former must be the intended beneficiary of the initial transfer and not someone who either benefits from the subsequent transfer of the initially transferred money or property, or benefits by happenstance from the initial transfer....

**20***Stratton Oakmont,* 234 B.R. at 314.The court also observed:At this juncture, all the Trustee needs to demonstrate is a possible legal theory such that he is allowed to go forward and put on evidence. Although this benefit theory is not explicitly stated in the Complaint, recovery under § 550(a) is not subject to a particularized pleading standard and I am allowed to consider theories that are not articulated, so long as there are facts alleged to support them.

*Stratton Oakmont,* 234 B.R. at 317-18.*See Bonded Fin. Servs., Inc.,* 838 F.2d at 895 ("The paradigm

--- B.R. ----
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29
(Cite as: --- B.R. ----)

'entity for whose benefit such transfer was made' is a guarantor or debtor-someone who receives the benefit but not the money.").

Other courts have found that, in the appropriate circumstance, a subsequent transferee may be an "entity for whose benefit [the initial] transfer was made."11 U.S.C. § 550(a)(1). For example, in _Gallant v. Kanterman (In re Kanterman), 97 B.R. 768 (Bankr.S.D.N.Y.1989), aff'd on other grounds,108 B.R. 432 (S.D.N.Y.1989),_ the court found:

[I]f the first transfer would not have been made but in contemplation of another previously agreed and nearly contemporaneous transfer, treating each stage as merely steps in a single transfer accords with and gives meaning to Congress' use of the phrase "entity for whose benefit such transfer was made" in § 550(a)(1). In such an instance, the first step is merely preliminary to the second and the first recipient is merely a conduit for the transfer of property. The second recipient is not a truly subsequent transferee.

_In re Kanterman,_ 97 B.R. at 778.

Here, the Trustee seeks to assert a Section 550(a)(1) claim on these grounds against two of the Movants, DJR Construction and Kent-Rush Realty. _See_ Plaintiff's Mem. at 26-27. The Amended Complaint states that these Defendants received or made payments in connection with agreements that were entered into in connection with the Kent Avenue Condominiums. While the agreements alleged in the Amended Complaint may have little in common with a guaranty of a debtor's obligation, which is the "quintessential" or paradigmatic example cited by certain courts that have considered the issue, neither Section 550(a)(1) nor the decisions interpreting it rule out the possibility that these relationships could give rise to liability under this theory.

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claims for Relief under Section 550(a) on grounds that the Movants are not entities for whose benefit the transfers at issue were made is denied.

_Whether the Amended Complaint States a Claim for Recovery from the Movants as Immediate or Mediate Transferees of an Initial Transferee_

[20] As an alternative theory of relief, the Trustee

seeks to recover the alleged fraudulent transfers from the Movants as immediate or mediate transferees of an initial transferee under Section 550(a)(2) of the Bankruptcy Code. _See_ Amended Complaint ¶¶ 1-6, 27-30, 45-46, 48, 51-57, 67-69, 80-96, 98-131. The Trustee alleges that the transfers at issue were made in a series of transfers from the Debtor to the Controlled Entities, and then to the Movants, and argues that the Amended Complaint sets forth these transfers and the Movants' roles in them.

*21 The Movants argue that the Trustee's Claims for Relief against them as subsequent transferees under Section 550(a)(2) should be dismissed because the Amended Complaint does not adequately trace the funds allegedly received by the Movants to the initial transfers by the Debtor. Movants' Mem. at 18-19.

As discussed above, Section 550(a)(2) of the Bankruptcy Code provides that a transfer avoided under Sections 544 or 548 can be recovered from the immediate or mediate transferee of the initial transferor. 11 U.S.C. § 550(a)(2). In _IBT International, Inc. v. Northern (In re International Administrative Services, Inc.),_ 408 F.3d 689 (11th Cir.2005), the court described the plaintiff's burden in establishing the tracing element of a Section 550(a)(2) claim:

In an action seeking recovery, the plaintiff has the burden of tracing funds it claims to be property of the estate.... Although we agree with this proposition, it is also true that proper tracing does not require dollar-for-dollar accounting.... The bankruptcy court determined that the Trustee successfully proved by a preponderance of the evidence that the $1.050 million transferred to [the defendant] from [intermediary] accounts, originated solely with [the debtor]. We cannot find that conclusion clearly erroneous. [The debtor's principal and its counsel] perpetrated a fraud that can only be described as massive. It is not fatal to the Trustee's case that dollar for dollar, the exact funds cannot be traced.

_In re Int'l Admin. Servs., Inc.,_ 408 F.3d at 708.

[21][22] That is, in order to prove a Section 550(a)(2) claim, a plaintiff must carry its burden to establish that the funds at issue are property of the estate-but this burden is not so onerous as to require "dollar-for-dollar accounting" of "the exact funds" at issue. _See id._And similarly, in order to state a Section 550(a)(2) claim, a plaintiff must allege sufficient facts to show, if proved, that the funds at issue originated with the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

debtor. But if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either.

Here, the Trustee alleges that funds were transferred from the Debtor to the Controlled Entities and Eurofactors, and those funds were subsequently transferred to the Defendants to fund the purchase of the Kent-Rush Property and the construction of the Kent-Rush Condominiums. Specifically, the Amended Complaint states:

Upon information and belief, from December 1998 through February 2003, at least tens of millions of dollars were fraudulently diverted from Allou to the Controlled Entities. As set forth below, a portion of these fraudulently diverted funds was transferred from the Controlled Entities to, or for the benefit of, the Defendants and used to purchase the Kent Avenue Property and construct the Kent Avenue Condominiums.

...

The funds transferred by the Controlled Entities and Eurofactors in connection with the Kent Avenue Condominiums were preceded by fraudulent transfers of funds from Allou in amounts sufficient to cover the transfers by the Controlled Entities and Eurofactors.

**\*22** Amended Complaint ¶¶ 53, 56.

More specifically, the Amended Complaint describes several transfers from the Debtor to Eurofactors and the Controlled Entities and states that those funds were used to purchase the Kent Avenue Property and construct the Kent Avenue Condominiums, all to the benefit of the Defendants to varying degrees. *See* Amended Complaint ¶¶ 67-79. In addition, the Amended Complaint describes the adversary proceedings commenced by the Trustee against the Controlled Entities and Eurofactors to avoid and recover fraudulent transfers from the Debtor, and states that some or all of these funds were transferred to the Defendants here. *See* Amended Complaint ¶¶ 58-61, 74, 76, 82, 84, 91, 93, 95. And the Amended Complaint identifies the date and amounts of the transfers from the Controlled Entities to several of the Defendants, including DJR Construction and K-R Residence. *See* Amended Complaint ¶¶ 83 (DJR Construction); 90 (DJR Construction); 94 (K-R Residence).

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's

Claims for Relief under Section 550(a)(2) on grounds that the Amended Complaint does not adequately trace the funds that they allegedly received from the Debtor is denied.

*Whether the Amended Complaint States a Claim Against the Individual Defendants for Recovery of the Individual Transfers*

[23] The Trustee seeks to recover from the Individual Defendants "millions of dollars" in unspecified fraudulent transfers. Amended Complaint ¶ 119. The Trustee reasons that the funds transferred from the Debtors "inured to the personal benefit of [the Individual Defendants] because they would otherwise have had to fund the costs of development themselves."*Id.*

The Movants seek dismissal of the claims against the Individual Defendants on several grounds. The Movants argue that "with the exception of the conclusory claim that Dushinsky and Rabinowitz received more than $1 million from K-R Residence, none of the other allegations of fraudulent transfers against Dushinsky and Rabinowitz 'identify the particular interests transferred, and they therefore do not give defendants adequate notice of the transfers challenged.'" Movants' Mem. at 26 (quoting *Gindi v. Silvershein*, 1996 WL 194304, at \*2 (S.D.N.Y.1996)). For these and other reasons, the Movants argue that the Trustee's claims do not satisfy the pleading requirements of Rule 8(a) and 9(b), and are barred by the statute of limitations contained in Section 546 of the Bankruptcy Code because they do not relate back to the Original Complaint. Movants' Mem. at 19-26.

As discussed above, Rule 9(b) requires that " 'a complaint must allege with some specificity the acts constituting fraud ... conclusory allegations that defendant's conduct was fraudulent are not enough.'"*In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 801 (quoting *Odyssey Re (London) Ltd.*, 85 F.Supp.2d at 293). This rule is applied more liberally in bankruptcy cases, because the trustee may be required to "[plead] fraud on secondhand information." *In re O.P.M. Leasing Servs., Inc.*, 32 B.R. at 202.*See* pp. ---- - ----, *supra.*Where allegations are based on information and belief, "a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard."*Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29
**(Cite as: --- B.R. ----)**

Page 23

(citations omitted).

**\*23** And Rule 8(a) requires a plaintiff to plead enough to " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"*Erickson*, 127 S.Ct. at 2200 (quoting *Bell Atlantic*, 127 S.Ct. at 1964). It "does not require a plaintiff to plead the legal theory, facts, or elements underlying his claim."*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*, 457 F.Supp.2d at 303-04 (quotations and citations omitted).*See* p. ----, *supra*.

A review of the Amended Complaint shows that the Trustee has not identified any specific transfer from the Debtor or a Controlled Entity to either of the Individual Defendants. In contrast to the allegations concerning transfers to other Movants, the Amended Complaint does not identify the source, dates, or amounts of the transfers that the Trustee claims may be recovered, under Section 550(a)(1) or Section 550(a)(2), from the Individual Defendants.

Rather, the Amended Complaint states that the Individual Defendants personally received "millions of dollars as a result of their interest in DJR, K-R Residence and R & D," and that "every single dollar transferred from Allou inured to the personal benefit of [the Individual Defendants] because they would otherwise have had to fund the costs of development themselves as DJR Construction and K-R Residence had no independent and legitimate means of income."Amended Complaint ¶ 119. The Amended Complaint also states that "[u]pon information and belief, in excess of $1,000,000, was received by K-R Residence pursuant to the K-R Residence Contract and ultimately paid to Dushinsky and Rabinowitz" and "[a]ll of the Individual Transfers represent proceeds derived from the Fraudulent Transfers."Amended Complaint ¶¶ 105, 120. But these allegations do not set forth the necessary vital statistics-the who, when, and how much-of the transfers "in excess of $1,000,000" to be recovered.

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claims for Relief against the Individual Defendants on grounds that the Amended Complaint does not adequately identify the transfers to be avoided under Section 550(a)(1) or Section 550(a)(2) is granted.[FN7]

*Whether the Amended Complaint States a Claim for*

*Recovery from Kent-Rush Realty for the Bedford Wall Transfers*

[24] The Trustee seeks to avoid and recover the value of the Bedford Wall Transfers from Kent-Rush Realty, 2165 K-R Realty Corp., Bedford Wall Realty, 724 Bedford, and Tereza under Sections 273, 274, 275, 276, and 276(a) of the DCL, as initial transferees under Section 550(a)(1), or in the alternative, as immediate or mediate transferees of an initial transferee under Section 550(a)(2).*See* Amended Complaint ¶¶ 278-99.

The Movants seek to dismiss these claims against Kent-Rush Realty on grounds that the Amended Complaint does not adequately state a claim that Kent-Rush Realty was an initial transferee, or an entity for whose benefit the alleged fraudulent transfers were made, or an immediate or mediate transferee of an initial transferee, in connection with the Bedford Wall Transfers. Movants' Mem. at 27-28. More generally, the Movants argue that the Trustee does not allege that the Bedford Wall Transfers provided "any benefit whatsoever" to Kent-Rush Realty. Movants' Mem. at 27. And the Movants also argue that the claims against Kent-Rush Realty are duplicative of other claims asserted in the Amended Complaint. Movants' Reply Mem. at 20.

**\*24** The Trustee argues:
Those claims are based on allegations that Kent Rush Realty executed a $2 million mortgage in favor of 2165 K-R (the "K-R Mortgage") in consideration for a purported loan from 2165 K-R to purchase the Kent Rush Property when, in fact, Allou, not 2165 K-R, was the source of the funds that were loaned. The K-R Mortgage, which should have been satisfied in September of 2000 and the proceeds repaid to Allou in connection with the Construction Loan obtained by Kent Rush Realty, was instead released and "spread" to cover a different property (the "Bedford Wall Property"), and thereafter assigned to Tereza, a Jacobs-affiliated entity.... [T]he result of these machinations was "to substitute the Bedford Wall Property for the Kent Rush Property in the K-R Mortgage," and "[t]he K-R Mortgage was, and still is, subject to Allou's interest therein as the actual source of the monies that funded the K-R Mortgage."

Plaintiff's Mem. at 34 (quoting Amended Complaint ¶ 123).

The Trustee argues that when Kent-Rush Realty executed a mortgage and granted a lien on the Kent-Rush Property, it participated in a "chain of transfers" that had the effect of transferring property that was fraudulently acquired with the Debtor's assets. "Thus, Kent-Rush Realty is a transferee in the chain of the Bedford Wall Transfers...." Plaintiff's Mem. at 35.

Here, the Trustee seeks to recover the value of the lien interest that Kent-Rush Realty placed on property that was, he alleges, acquired with funds that were fraudulently transferred from the Debtor. It may well be that the Trustee will not be able to carry the burden of proving all of the elements of a claim for recovery against Kent-Rush Realty under Section 550(a)(1) or Section 550(a)(2), or that relief under these claims will be duplicative of other relief. But here too, neither these Bankruptcy Code sections nor the decisions interpreting them preclude the possibility that the Trustee may be able to succeed on this claim.

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claims for Relief against Kent-Rush Realty arising out of the Bedford Wall Transfers is denied.

### The Forty-Fifth Claim for Relief-Common Law Fraud

[25] The Forty-Fifth Claim for Relief asserts common law fraud claims against K-R Residence, K.E.R.U. Realty Corp., 2165 K-R Realty, Kent-Rush Realty, DJR Construction, R & D Development, Aaron Jacobs a/k/a Ari Jacobowitz, the Individual Defendants and the Bedford Wall Defendants. Specifically, the Trustee alleges:

Upon information and belief, the Kent Rush Defendants, DJR, R & D, Ari, Dushinsky, Rabinowitz, and the Bedford Wall Defendants knew that the Jacobs were fraudulently diverting funds from Allou to pay for the Kent Rush Property and for the construction of the Kent Avenue Condominiums.

By reason of the foregoing, the Kent Rush Defendants, DJR, R & D, Ari, Dushinsky, Rabinowitz, and the Bedford Wall Defendants are liable to the Trustee for money damages in an amount as yet undetermined but in no event less than $15,265,000, plus appropriate interest thereon.

*25 Amended Complaint ¶¶ 300, 301.

The Movants argue that this claim should be dismissed because it does not plead fraud with particularity and does not specify the type of fraud that the Trustee is alleging. Movants' Mem. at 28. They argue that the Trustee's conclusory allegations found in other parts of the Amended Complaint about an alleged scheme do not comply with Rules 8(a) or 9(b), and that the Trustee does not describe the Movants' role in the alleged scheme. Movants' Mem. at 28.

The Trustee argues that "[a] fraud claim need not be based upon a misrepresentation or omission."Plaintiff's Mem. at 28. The Trustee further claims that the "allegations of Movants' knowledge and participation sufficiently set forth a claim that Movants 'schemed' to fraudulently divert Allou's funds," and that such allegations state "a valid claim for common law fraud."Id.

The Trustee also argues that under McClellan v. Cantrell, 217 F.3d 890 (7th Cir.2000), "[a] fraud claim need not be based upon a misrepresentation or omission."Plaintiff's Mem. at 28. In McClellan, the Seventh Circuit analyzed the term "actual fraud" in Section 523(a)(2)(A) of the Bankruptcy Code, which concerns the dischargeability of a debt obtained by "actual fraud," and held that "section 523(a)(2)(A) is not limited to fraudulent misrepresentation."McClellan, 217 F.3d at 893.The Seventh Circuit found that "actual fraud," for purposes of Section 523(a)(2)(A), encompasses "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another."Id.

[26] To state a claim for fraud under New York law, a plaintiff must allege that " '(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'"Eastman Kodak Co. v. Wachovia Bank Nat'l Ass'n, 2007 WL 2406919, at *4 (W.D.N.Y.2007) (quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., 98 F.3d 13, 19 (2d Cir.1996)).

As noted above, the Court has already determined that the Trustee has adequately alleged "facts that give rise to a strong inference of fraudulent intent" by the Movants, by alleging both motive and opportunity to participate in the alleged fraud and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"circumstantial evidence of conscious misbehavior or recklessness."*In re Enron*, 2006 WL 2400083, at *8.*See* pp. ---- - ----, *supra.* And for that reason, the Trustee's Section 550(a)(1) claim based on a "collapsing" theory has been sustained. *See* pp. ---- - ----, *supra.* But to state a fraud claim under New York law, the Trustee must also allege that the Debtor reasonably relied on a misrepresentation to its detriment. *See Eastman Kodak Co.*, 2007 WL 2406919, at *4.

Here, the Court is not evaluating the sufficiency of pleading "actual fraud" under Section 523(a)(2)(A) of the Bankruptcy Code. *Cf. Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 111 (2d Cir.2002). Nor does it appear that courts have applied the standard for establishing this element of a dischargeability claim to the question of whether all of the elements of a common law fraud claim under New York law have been alleged, including whether a material false representation must be made.

*26 Similarly, the Trustee's allegations that the Movants were aware of and participated in the overall scheme to fund the construction of the Kent Avenue Condominiums with funds that were fraudulently diverted from the Debtor do not serve to sustain his common law fraud claim. While those allegations are sufficient to establish, at the pleading stage, one of the elements of the Trustee's "collapsing" theory of recovery under Section 550(a)(1) of the Bankruptcy Code, they do not establish a claim for common law fraud. *See* pp. ---- - ----, *supra.* Rather, each of the elements of a fraud claim under New York law must be pleaded in order for the Trustee's common law fraud claim to be sustained.

Here, a review of the Amended Complaint shows that it does not state that the Movants made a material false representation to the Debtor, or that the Debtor relied to its detriment on such a misrepresentation. That is, the Trustee has not adequately alleged at least two of the four elements of a common law fraud claim. Therefore, the Amended Complaint does not sufficiently plead facts that allege a claim for relief based upon common law fraud under New York law.

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claim for Relief for common law fraud on grounds that the Amended Complaint does not state the elements of the claim is granted.

*The Forty-Sixth Claim for Relief-Conspiracy To Commit Fraudulent Conveyances*

[27] The Forty-Sixth Claim for Relief asserts a claim for conspiracy to commit fraudulent conveyances against Aaron Jacobs a/k/a Ari Jacobowitz and the Individual Defendants. Specifically, the Trustee alleges:

Beginning [in] or about late December, 1998, an agreement or understanding was entered into between and among Herman, and Defendants, Ari, Dushinsky and Rabinowitz pursuant to which Allou funds would be fraudulently conveyed through the Controlled Entities and Eurofactors to entities formed by them, namely, Kent Rush Realty, DJR and K-R Residence.

Herman and Defendants Ari, Dushinsky and Rabinowitz are co-conspirators who knew that the funds were being fraudulently conveyed from Allou and that no consideration was given by Kent Rush Realty, DJR and K-R Residence to Allou for any of these funds.

By reason of the foregoing, Ari, Dushinsky and Rabinowitz are liable to the Trustee for money damages in an amount as yet undetermined but in no event less than $15,265,000 plus appropriate interest thereon.

Amended Complaint ¶¶ 302-04.

The Movants argue that this claim should be dismissed under Rule 9(b), among other grounds, because it is conclusory and lacks the factual allegations necessary to plead a conspiracy claim. Movants' Mem. at 28-29; Movants' Reply Mem. at 17-18. The Movants also argue that the conspiracy claim should be dismissed because it is duplicative of the other claims against the Individual Defendants set forth in the Amended Complaint. Movants' Mem. at 29.

*27 The Trustee argues that the conspiracy claims should be measured under the more liberal pleading rules of Rule 8(a), and that the Amended Complaint adequately sets forth the elements of a claim against the Individual Defendants for conspiracy to commit fraudulent conveyances. Plaintiff's Mem. at 29-30. The Trustee also argues that the Amended Complaint provides notice of the basis for the Trustee's claims, and states facts from which the Individual Defendants' intentional participation in the conspiracy may be inferred. Plaintiff's Mem. at 30.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29
**(Cite as: --- B.R. ----)**

The Trustee further argues that the Movants' argument that the conspiracy claims are duplicative of other claims against the Individual Defendants is premature because they have not yet served an answer, and adds that pleading in the alternative is allowed under Rule 8(e).*Id.*

[28] Under New York law, a claim for civil conspiracy to commit a tortious act may not be asserted in a vacuum. Rather, "the claim is available 'only if there is evidence of an underlying actionable tort.'"*UniCredito Italiano SpA v. JPMorgan Chase Bank,* 288 F.Supp.2d 485, 504 (S.D.N.Y.2003) (quoting *Missigman v. USI Northeast, Inc.,* 131 F.Supp.2d 495, 517 (S.D.N.Y.2001)).*See Stratton Oakmont,* 234 B.R. at 331 (a conspiracy claim " 'is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt acts' ") (quoting *Powell v. Kopman,* 511 F.Supp. 700, 704 (S.D.N.Y.1981)); *Alexander & Alexander of N.Y., Inc. v. Fritzen,* 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 547, 503 N.E.2d 102, 103 (1986) (conspiracy allegations "are permitted only to connect the actions of separate defendants with an otherwise actionable tort.").

[29][30] Courts in this Circuit have recognized that "[w]here there is an underlying tort, the elements of civil conspiracy are: '(1) the corrupt agreement between two or more persons, (2) an overt act, (3) their intentional participation in the furtherance of a plan or purpose, and (4) the resulting damages.'"*Pope v. Rice,* 2005 WL 613085, at *13 (S.D.N.Y.2005) (quoting *Kashi v. Gratsos,* 790 F.2d 1050, 1055 (2d Cir.1986)).*See Eastman Kodak Co. v. Camarata,* 2006 WL 3538944, at *17 (W.D.N.Y.2006). And courts in this Circuit have similarly recognized that a claim for conspiracy to commit a fraudulent conveyance may be stated under New York law. *See, e.g., UFCW Local 174 Commer. Health Care Fund v. Homestead Meadows Foods Corp.,* 2005 U.S. Dist. LEXIS 25922, at *6 (S.D.N.Y.2005) (finding that the plaintiff stated a claim for conspiracy to commit fraudulent conveyance).

To the extent the claim sounds in fraud, the heightened pleading standard of Rule 9(b) applies. *See Pereira v. Binet (In re Harvard Knitwear, Inc.),* 153 B.R. 617, 628 n. 3 (Bankr.E.D.N.Y.1993) ("The presence of fraud as part of a conspiracy charge brings the complaint under the requirement of Fed.R.Civ.P. 9(b) that the circumstances constituting fraud be stated with particularity.").

*28 Here, the Trustee alleges that the Individual Defendants entered into "an agreement or understanding" under which "Allou funds would be fraudulently conveyed through the Controlled Entities and Eurofactors to ... Kent Rush Realty, DJR and K-R Residence."Amended Complaint ¶ 302. The Trustee also alleges that the Individual Defendants "knew that the funds were being fraudulently conveyed from Allou."Amended Complaint ¶ 303. These allegations of an agreement or understanding are supported by the Trustee's allegations that the Movants had actual or constructive knowledge of the Jacobs' fraudulent scheme to divert funds from the Debtor for the purpose of funding the Kent Avenue Condominiums. *See* pp. ---- - ----, *supra.*The Amended Complaint also states facts sufficient to show that the Debtor suffered damages resulting from the alleged conspiracy.

[31] But these allegations are not enough to establish all of the elements of the Trustee's conspiracy claim. In particular, a review of the Amended Complaint shows that it does not contain allegations sufficient to state that the Individual Defendants undertook an "overt act" in furtherance of the conspiracy. Such allegations must do more than show that the alleged conspirator was aware of the fraudulent conveyance and undertook an overt act as a consequence of receiving the transfer. Viewed another way, in order to state a claim for conspiracy to commit a fraudulent conveyance, a plaintiff must allege facts showing that the conspirator committed an overt act that furthered the conveyance itself.

[32] And even if the Amended Complaint set forth "independent overt acts undertaken in pursuit of [the] conspiracy," where those overt acts form the basis for other claims for relief, the conspiracy claim is duplicative of those claims and should be dismissed. *Stratton Oakmont,* 234 B.R. at 332.As Chief Judge Brozman found:
Since New York courts do not recognize an independent cause of action for civil conspiracy, the [conspiracy claim] can lie only if it alleges, in addition to the conspiracy, independent overt acts undertaken in pursuit of that conspiracy. Here, the overt acts alleged by the Trustee ... are already embodied in the Complaint's [other] Claims for Relief asserted against [these defendants]. Accordingly, the [conspiracy] Cause of Action is

duplicative of those claims and should be dismissed.

*Id.* (citing cases).*See Briarpatch Ltd. v. Geisler Roberdeau, Inc.,* 2007 WL 1040809, at *26 (S.D.N.Y.2007) ("where the acts underlying a claim of conspiracy are the same as those underlying other claims alleged in the complaint, the conspiracy claim is dismissed as duplicative"). Consistent with this notion, it is difficult to see how recovery by the Trustee on a well-pleaded conspiracy claim would not be entirely duplicative of relief available to the Trustee on his other claims.

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claim for Relief against the Individual Defendants for conspiracy to commit fraudulent conveyances on grounds that the Amended Complaint does not state the elements of the claim is granted.

*The Forty-Eighth Claim for Relief-Conversion*

**\*29**[33] The Forty-Eighth Claim for Relief asserts a claim against the Defendants for conversion. Specifically, the Trustee alleges that the "Defendants converted the assets of Allou that were used to pay for the Kent-Rush Property and construction of the Kent Avenue Condominiums," and that the Defendants "are liable to the Trustee for money damages in an amount as yet undetermined but in no event less than $15,265,000 plus appropriate interest thereon."Amended Complaint ¶¶ 308, 309. The Trustee also alleges that "[a]s a result of the fraudulent scheme described above, the Defendants are estopped from asserting that any portion of the claim for conversion is barred by the statute of limitations."Amended Complaint ¶ 310.

The Movants argue that this claim should be dismissed on grounds that it is time-barred under Section 214 of the New York Civil Practice Law and Rules. Movants' Mem. at 29. Section 214 provides that a conversion claim must be commenced within three years of the date of conversion. N.Y. C.P.L.R. 214. The Movants also argue that the Trustee has not set forth sufficient facts by affidavit to show that the doctrine of equitable tolling should apply. Movants' Reply Mem. at 19.

The Trustee argues that $6,151,000, of the alleged converted funds were transferred within the three-year limitations period, so that this portion of his

conversion claims is not time-barred under any circumstances. Plaintiff's Mem. at 31. The Trustee also argues that his claim to recover the remaining $9,114,000, of the alleged converted funds is not time-barred under the doctrine of equitable tolling. Plaintiff's Mem. at 32. The Trustee further argues that under *General Stencils, Inc. v. Chiappa,* 18 N.Y.2d 125, 272 N.Y.S.2d 337, 219 N.E.2d 169 (1966), courts may bar the assertion of a statute of limitations defense where the defendants' affirmative wrongdoing caused a delay between the accrual of the cause of action and the institution of the legal proceeding. Plaintiff's Mem. at 31-32. For these reasons, he argues that equitable tolling should apply and the Movants should be estopped from asserting a statute of limitations defense as to any portion of the converted funds. *Id.*

[34] The application of the doctrine of equitable tolling generally turns on questions of fact that are difficult to resolve on a motion to dismiss. As one court found, "[g]enerally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue."*Hoffkins v. Monroe-2 Orleans Boces,* 2007 WL 1288210, at *2 (W.D.N.Y., May 2, 2007).

Here, a review of the Amended Complaint shows that the Trustee has alleged sufficient facts, taken as a whole, adequately to state the grounds for application of the doctrine of equitable tolling. That is, the Amended Complaint states that "[a]s a result of the fraudulent scheme described above, the Defendants are estopped from asserting that any portion of the claim for conversion is barred by the statute of limitations."Amended Complaint ¶ 310. And for the reasons described above, the Trustee has adequately alleged that the Movants had actual or constructive knowledge of the Jacobs' fraudulent scheme to divert funds from the Debtor for the purpose of funding the Kent Avenue Condominiums. *See* pp. ---- - ----, *supra.*

**\*30** For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claim for Relief for conversion is denied.

*The Forty-Ninth Claim for Relief-Constructive Trust*

The Forty-Ninth Claim for Relief seeks the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                                  Page 28
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29
(Cite as: --- B.R. ----)

imposition of a constructive trust against all of the
Defendants. Specifically, the Trustee alleges:
The acquisition of the Kent Avenue Property and the
construction of the Kent Avenue Condominiums was
accomplished, in part, through the fraudulent
diversion of monies of Allou and in breach of the
Jacobs' fiduciary obligations to Allou and its creditors
as officers and directors of Allou.
As set forth above, each of the Defendants was
unjustly enriched as a result of the Transfers and may
not in equity and good conscience retain the benefit
of the Transfers.

The Trustee has no adequate remedy at law.
By reason of the foregoing, the Trustee is entitled to
the imposition of a constructive trust upon the
Transfers, and all of the monies, rents, income,
proceeds and profits heretofore or hereafter received
by the Defendants in connection therewith for the full
amount of their respective liability to the Trustee as
set forth above.

Amended Complaint ¶¶ 311-14.

The Movants argue that the constructive trust claim
in the Amended Complaint should be dismissed
because the Trustee has not alleged three of the four
elements necessary to establish a claim for the
imposition of a constructive trust. Movants' Mem. at
30. Here, the Movants argue, only the final element
of unjust enrichment has been stated. *Id.*

The Trustee argues that the allegations in the
Amended Complaint that the Movants were unjustly
enriched through their use of the Debtor's assets to
finance the construction of the Kent Avenue
Condominiums are sufficient to support his
constructive trust claim. Plaintiff's Mem. at 32.
Imposition of a constructive trust, he argues, is
flexible and even "limitless," and courts will effect
such relief whenever necessary to satisfy the
demands of justice.*Id.*

[35] The imposition of a constructive trust under
New York law generally requires the following
elements to be shown: "(1) a confidential or fiduciary
relationship; (2) a promise, express or implied; (3) a
transfer of the subject *res* made in reliance on that
promise; and (4) unjust enrichment."*Superintendent
of Ins. for the State of N.Y. v. Ochs (In re First Cent.
Fin. Corp.),* 377 F.3d 209, 212 (2d Cir.2004).

[36][37] A "constructive trust is an equitable remedy,
not a legal relationship."*ESI, Inc. v. Coastal Power
Prod. Co.,* 995 F.Supp. 419, 436 (S.D.N.Y.1998).
New York law provides that a constructive trust:
arises against an entity that, by fraud (actual or
constructive), by duress or by abuse of confidence, or
by commission of a wrong or other form of
unconscionable conduct, artifice, concealment, or
questionable means, either has obtained or holds the
legal right to property which in equity and in good
conscience it ought not to hold and enjoy.

*31*Tese-Milner v. TPAC, LLC (In re
TicketPlanet.com),* 313 B.R. 46, 68
(Bankr.S.D.N.Y.2004).

[38] The imposition of a constructive trust is an
equitable and flexible remedy. For these reasons,
courts have imposed constructive trusts even where
one or more of these elements is absent, if other
circumstances signal that a constructive trust is
necessary to avoid a manifestly inequitable result.
*See, e.g., Koreag, Controle et Revision S.A. v. Refco
F/X Assocs. (In re Koreag, Controle et Revision
S.A.),* 961 F.2d 341, 353 (2d Cir.1992) ("the absence
of any one factor will not itself defeat the imposition
of a constructive trust when otherwise required by
equity"); *American Motor Club, Inc. v. Neu (In re
American Motor Club, Inc.),* 109 B.R. 595, 599
(Bankr.E.D.N.Y.1990) ("the application of a
constructive trust is flexible and limitless and courts
will effect such relief, 'whenever necessary to satisfy
the demands of justice' ") (citation omitted).

But as noted by the New York Court of Appeals,
"though as an equitable doctrine its application to
particular circumstances is susceptible of some
flexibility, to establish a constructive trust there must
be provided: (1) a confidential or fiduciary relation,
(2) a promise, express or implied, (3) a transfer made
in reliance on that promise, and (4) unjust
enrichment."*Bankers Sec. Life Ins. Soc'y v.
Shakerdge,* 49 N.Y.2d 939, 940, 428 N.Y.S.2d 623,
623, 406 N.E.2d 440, 440 (1980).

[39] Here, it has already been determined that the
Amended Complaint states a claim for unjust
enrichment, so that element of the Trustee's claim for
a constructive trust, as the Movants acknowledge, has
been alleged. But a review of the Amended
Complaint shows that the Trustee has not adequately
alleged the existence of a confidential or fiduciary
relationship between the Movants and the Debtors.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----                                                              Page 29
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29
**(Cite as: --- B.R. ----)**

Nor has the Trustee adequately alleged the existence of a promise, express or implied, by the Movants to the Debtor, or a transfer by the Debtor to the Movants made in reliance on that promise.

For these reasons, and based on the entire record, the Movants' request for dismissal of the Trustee's Claim for Relief against the Defendants for the imposition of a constructive trust on grounds that the Amended Complaint does not state the elements of the claim is granted.

### CONCLUSION

For the reasons stated herein, and based on the entire record, the Motion to Dismiss the Amended Complaint is granted in part to the extent that (i) the claims under Section 550(a)(1) and 550(a)(2) against the Individual Defendants Chaim Dushinsky and Isaac Rabinowitz are dismissed; (ii) the common law fraud claims against the Movants Kent Rush Realty, K-R Residence, DJR Construction, R & D Development, Chaim Dushinsky, and Isaac Rabinowitz are dismissed; (iii) the conspiracy to commit fraudulent conveyance claims against the Individual Defendants Chaim Dushinsky and Isaac Rabinowitz are dismissed; and (iv) the constructive trust claims against the Movants Kent Rush Realty, K-R Residence, DJR Construction, R & D Development, Chaim Dushinsky, and Isaac Rabinowitz are dismissed. The Trustee may seek leave to replead those claims within sixty days of the date of this order, and if leave is sought, the Trustee is directed to file the proposed amended complaint with his motion. In all other respects, the Motion to Dismiss is denied.

**\*32** The Trustee is directed to submit a proposed order in accordance with this Memorandum Decision.

> FN1.See Amended Complaint, Tenth Claim for Relief, Twenty-Second Claim for Relief, Twenty-Ninth Claim for Relief, Thirtieth Claim for Relief, Thirty-Sixth Claim for Relief, Thirty-Seventh Claim for Relief.

> FN2.See Amended Complaint, First through Fourth Claims for Relief, Sixth through Ninth Claims for Relief, Thirteenth through Sixteenth Claims for Relief, Eighteenth through Twenty-First Claims for Relief, Twenty-Fifth through Twenty-Eighth

Claims for Relief, Thirty-Second through Thirty-Fifth Claims for Relief, Thirty-Ninth through Forty-Second, and Forty-Fourth Claim for Relief.

> FN3.See Amended Complaint, First through Fourth Claims for Relief, Sixth through Eleventh Claims for Relief, Thirteenth through Sixteenth Claims for Relief, Eighteenth through Twenty-Third Claims for Relief, Twenty-Fifth through Thirtieth Claims for Relief, Thirty-Second through Thirty-Seventh Claims for Relief, Thirty-Ninth through Forty-Third Claims for Relief.

> FN4.See Amended Complaint, Fifth Claim for Relief, Twelfth Claim for Relief, Seventeenth Claim for Relief, Twenty-Fourth Claim for Relief, Thirty-First Claim for Relief, Thirty-Eighth Claim for Relief, Forty-Fourth Claim for Relief.

> FN5.See Amended Complaint, Forty-Fifth through Forty-Ninth Claims for Relief.

> FN6. The "mere conduit" theory is based on the premise that the conduit did not have dominion or control over the transferred property and cannot or should not be deemed a "transferee." See Stratton Oakmont, 234 B.R. at 313 ("an initial transferee has dominion and control over the res of the initial transfer, whereas a conduit has but a fleeting possessory interest therein").

> FN7. The Movants also argue that the Trustee's claims against the Individual Defendants are barred by the statute of limitations. Movants' Mem. at 19-21. The Trustee responds that the allegations of the Original Complaint put the Individual Defendants on notice of the nature of the claims against them, and also that the statute of limitations as to Section 550(a)(2) has not run. Plaintiff's Mem. at 10-14. See pp. ---- - ----, supra.The Court need not address whether the Trustee's allegations against the Individual Defendants relate back to the Original Complaint because those allegations are not sufficient to state a claim

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- B.R. ----
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.), 49 Bankr.Ct.Dec. 29
**(Cite as: --- B.R. ----)**

Page 30

      for relief.
Bkrtcy.E.D.N.Y.,2007.
In re Allou Distributors, Inc.
--- B.R. ----, 2007 WL 3306903 (Bkrtcy.E.D.N.Y.),
49 Bankr.Ct.Dec. 29

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.