15

Westlaw.

Slip Copy                                                          Page 1
Slip Copy, 2007 WL 2915004 (Bkrtcy.D.Md.)
(Cite as: Slip Copy)

**H**In re Nieves
Bkrtcy.D.Md.,2007.
Only the Westlaw citation is currently available.
    United States Bankruptcy Court, D. Maryland,
                    at Baltimore.
            In re Walter NIEVES, Debtor.
        Brian A. Goldman, Trustee, Plaintiff,
                         v.
        Edgardo Nieves, et al., Defendants.
            **Bankruptcy No. 03-64849-DK.**
            **Adversary No. 03-08292-DK.**


                    Oct. 3, 2007.

Brian A. Goldman, Goldman & Vetter, Baltimore,
MD, pro se.
Evan M. Goldman, Goldman & Goldman, P.A.,
Baltimore, MD, for Plaintiff.
Anthony G. Gorski, Annapolis, MD, Richard L.
Costella, Miles & Stockbridge P.C., Baltimore, MD,
for Defendants.

            *MEMORANDUM OF DECISION*
DUNCAN W. KEIR, U.S. Bankruptcy Judge.
**\*1** This chapter 7 case was commenced by a
voluntary petition by Walter Nieves, the Debtor, on
October 14, 2003. Thereafter, on December 17, 2003,
Brian A. Goldman, Trustee, commenced this
adversary proceeding seeking to avoid a series of
three pre-petition transfers of an 11.8 acre parcel of
real property (the "Property") .<u>FN1</u>By consent orders,
entered on August 23, 2004, and August 26, 2004,
the transfer of an interest from the Debtor to the
initial transferee, Edgardo Nieves, Jr. ("Edgardo"),
and the immediate subsequent transfer from Edgardo
to 1st Financial Mortgage Services, LLC ("1st
Financial") were avoided. Thereafter, this action has
proceeded against Defendants, Capital City Mortgage
Corp., and the trustees under the Capital City Deed of
Trust, Blake Van Leer, II and Miguel Aliaga
(hereinafter together referred to as "Capital City")
as the subsequent mediate transferee of 1st Financial.
The trial in this matter by and between the Trustee,
and Capital City was held on November 7, 2006 at
the conclusion of which the court took the matter
under advisement, and provided the parties with an
opportunity to submit post-petition briefs containing
points and authorities.

    FN1. The Property is known as 300 Willow
    Point Lane, Chester, Maryland 21619.

The court makes the following findings of fact. Prior
to August 8, 2002, the Property was owned by the
Debtor, and the Debtor's son, Michael Nieves.<u>FN2</u> On
August 8, 2002, the Debtor and his son transferred all
interests in the Property to Edgardo for zero
consideration (this transfer being hereinafter referred
to as the "Initial Transfer").<u>FN3</u>

    FN2. The deed to the Debtor, and his son
    Michael Nieves was not offered into
    evidence. Accordingly, the court makes no
    finding as to the respective interests held by
    the Debtor, and Michael Nieves in the
    Property.

    FN3. A copy of the deed effectuating the
    Initial Transfer was attached to the
    complaint filed in this adversary, and bears
    the recordation stamp of the Clerk of the
    Circuit Court for Queen Anne's County.
    That deed identifies the initial transferee as
    "Edgardo Nieves, his brother," and bears the
    recitation: "NO CONSIDERATION TAX,
    NO TITLE EXAMINATION."The Initial
    Transfer by that deed, and its avoidability,
    are not in dispute. A Consent Judgment was
    entered on August 23, 2004, avoiding that
    Initial Transfer. No party has subsequently
    raised any further dispute as to the Initial
    Transfer.

Shortly thereafter on March 19, 2003, Walter Nieves
filed a Chapter 13 bankruptcy case, No. 03-54584-SD
in the United States Bankruptcy Court for the District
of Maryland. That case was dismissed on August 8,
2003 (subsequent to all of the transfers which are the
subject of this adversary proceeding). Meanwhile, on
April 24, 2003, Edgardo transferred all interest in the
Property to 1st Financial by a deed dated April 10,
2003, and bearing a recordation stamp evidencing
recordation at 2:05 p.m. on April 24, 2003.<u>FN4</u>That
deed recited an alleged consideration of $18,000.00
(this transfer being hereinafter referred to as the
"Second Transfer"). The deed has no
acknowledgment (notarization), which is a
requirement for the deed to be effective under

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Section 4-101(a)(1) of the Real Property Article of the Maryland Annotated Code. 1st Financial previously had been registered as a limited liability company at the State Department of Assessments and Taxation ("SDAT") of Maryland, and was owned, or controlled by Michael R. Nastasi, a friend of the Debtor and Edgardo. At the time of the Second Transfer, 1st Financial was not a valid entity as its charter had been forfeited on October 5, 2001. Articles of Reinstatement were filed with SDAT on April 30, 2003, but were delayed in posting by SDAT for non-payment of required fees, and the Articles of Reinstatement were subsequently voided by the State of Maryland on May 7, 2003, effective April 30, 2003. (Pl.'s Ex. 9.) Accordingly, the court finds that at all times relevant to the matter before the court, 1st Financial was not a legal entity.

FN4. Pl.'s Ex. 18.

**\*2** On May 29, 2003, 1st Financial borrowed $155,000.00 from Capital City. The obligation of 1st Financial to Capital City was documented by a Promissory Note, and the repayment obligation thereunder was secured by a Deed of Trust from 1st Financial to Blake Van Leer, II, and Miguel Aliaga, trustees, conveying legal title to the trustees for the benefit of Capital City (the transfer by the Deed of Trust from 1st Financial for the benefit of Capital City is hereinafter referred to as the "Third Transfer").FN5 The Court (Derby, J.) observed in its order denying a motion filed by Capital City to compel plaintiff to turnover all proceeds from the sale of the Property, FN6

FN5. The Promissory Note and Deed of Trust are Capital City Exhibits 1 and 2.

FN6. In effect the motion requested summary judgment in favor of Capital City.

The deed of trust contains a deficient notary certificate because it fails to identify the individual who appeared and who signed the deed of trust on behalf of 1st Financial Services LLC. If one looks at the language of the certification on the deed of trust and compares it to the approved form of certificate that one finds in the State Government Article of the Annotated Code of Maryland at section 19-107, one sees that it omits an entire line which should contain the name of the individual who is represented as the officer authorized to sign on behalf of the LLC.

Consequently, the notary certificate is defective and that makes the deed defective. If one goes to the Real Property Article 4-101(a)(1), it requires that a deed containing the names of the grantor and the grantee, and a description of the property is sufficient if executed and acknowledged. Well, this acknowledgment is not in accordance with the requirements of Maryland law.
*Memorandum and Order Denying Motion to Compel Distribution of Sale Proceeds to Secured Creditors,* at 4. Additionally, the Deed of Trust does not contain an affidavit of consideration, and disbursement, which is required for a deed of trust under Maryland law. *See*Md Code Ann.Real Prop § 4-106(a). Capital City recorded the Deed of Trust in the Land Records for Queen Anne's County, Maryland on June 30, 2003.FN7

FN7. The record contains no evidence as to the use of the proceeds of the Capital City loan. The schedules filed by the Debtor reflect no assets which in any way appear attributable to any portion of those proceeds.

The repayment obligation terms set forth in the Promissory Note required that 1st Financial make monthly payments of interest only, for one year. The entire balance of repayment of principal, and any unpaid interest became due at the end of that year. Furthermore, the Promissory Note did not permit recourse by Capital City against 1st Financial for any nonpayment. Thus Capital City's sole source to recover the loan in the event of non-payment was by way of execution (foreclosure) against the Property pursuant to the terms of the Deed of Trust.

There was no prior relationship by and between Capital City, and 1st Financial or its principals, nor between Capital City and Edgardo or the Debtor. (Trial Tr. 60:1-12, Dec. 29, 2006; Trial Tr. 61:13-25.) Capital City did not request or consider any financial information as to the assets, or income of 1st Financial, or its principal, Michael Nastasi, in its decision to make the loan. In addition, there is no credible evidence that Capital City requested, or obtained a credit report for either 1st Financial, or Mr. Nastasi. Capital City also did not have, and did not consider any information as to whether there were any other assets belonging to 1st Financial from which repayment might be recovered.

**\*3** Capital City did request and receive a certificate of good standing for 1st Financial dated April 30,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2915004 (Bkrtcy.D.Md.)
(Cite as: Slip Copy)

2003, but made no effort to obtain a more current certificate at the time the loan was made on May 29, 2003. In addition, Capital City obtained from Paramount Title and Escrow, LLC (hereinafter "Paramount Title") a title insurance commitment for the Property. (Capital City Ex. 7). Capital City held no interest in Paramount Title. The title insurance commitment by Paramount Title simply identifies the parties to the Deed of Trust, the Property description, and commits to insure fee simple title. The title insurance commitment discloses no information indicating that any records search was undertaken by Paramount, and no information as to the results of any such search. Given the abundance of serious negative information that the title, and corporate registration records contained, the court draws the inference that little, or no effective records search was undertaken.

Nor is there any evidence that Capital City required any search of records. The testimony of Mr. Nash indicates that Capital City did not perform a search. Instead, Mr. Nash's testimony and the exhibits support a finding that Capital City was willing to enter into the transaction solely upon the basis of its valuation of the Property, and the title insurance commitment.[FN8]

> FN8. In its earlier Motion to Compel (summary judgment) Capital City alleged it conducted a title search on the Property and the title search revealed at that time that 1st Financial owned the Property free and clear of encumbrances and that 1st Financial was the true owner. In its post-trial Memorandum, Capital City declares, "Mr. Nash testified that he never reviewed a title report on the Property ..." (Capital City Post-Trial Memorandum at para. 21.) As demonstrated by the recordation stamp on Plaintiff's Exhibit 18, the deed to 1st Financial was not recorded in the land records of Queen Anne's County until after the time of the Commitment Date on the title insurance commitment. *See* Capital City Ex. 7.

Among other facts that would have been revealed by a properly conducted search of the public record concerning the Property, are the fact that within the previous three years, the Property had been conveyed by a no consideration deed from the Debtor to a party identified in the deed as Debtor's brother. A grantor

of that Initial Transfer filed a bankruptcy case six months after the no consideration deed. There was no indication of a record title in favor of the borrower, 1st Financial, in as much as the deed of the Second Transfer was unrecorded at the time of the title insurance commitment. If Capital City had obtained the deed in favor of its borrower prior to the closing of the loan, that deed reflected a consideration paid for the transfer that was significantly less than the amount of the loan being made solely upon the credit support of the Property. Further that deed had no acknowledgment as stated hereinabove. A search of the SDAT records done more closely to the time of the advancement of the loan would have reflected that no certificate of good standing was in existence, and 1st Financial's charter remained revoked.[FN9] Accordingly, the court finds that a reasonable inquiry under the circumstances would have revealed that the borrower, and grantor of the Deed of Trust was not a legal entity.

> FN9. Henry I. Louis, Esq., the Plaintiff's expert, testified as to the need to acquire an updated certificate of good standing shortly before closing. Mr. Louis also pointed out a disparity between the spelling of the borrower's name in the Deed of Trust, Plaintiff's Exhibit 12, in which it appears as "*First* Financial Mortgage Services, LLC" (emphasis added), and the good standing certificate as of October 11, 2006, Plaintiff's Exhibit 9, which recites "*1st* Financial Services, LLC." (emphasis added). (Trial Tr. 75:10-24, 76:20-77:4, Dec. 29, 2006).

No payments were received for the interest as due under the note, and the entire balance of the loan became due at the end of the one year term. On June 21, 2004, the Court entered a Consent Order in the related adversary proceeding No. 04-1429-SD, authorizing the Trustee (Plaintiff) to sell the interest of Michael Nieves in the Property pursuant to 11 U.S.C. Section 363(h)[FN10] with all liens, and interests attaching to the proceeds. In this adversary proceeding, on August 19, 2004, the Court entered a Stipulation, and Consent Order authorizing the Trustee to offer the Property for sale, free, and clear of the interests of Capital City, provided that $300,000 of any proceeds of sale would be held in escrow subject to further orders of this Court.

> FN10. Hereafter, all code sections refer to the United States Bankruptcy Code found at

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                        Page 4
Slip Copy, 2007 WL 2915004 (Bkrtcy.D.Md.)
**(Cite as: Slip Copy)**

Title 11 of the United States Code unless otherwise noted.

**\*4** On June 8, 2005, in the underlying bankruptcy case, the court entered an order authorizing the Trustee to sell the Property free and clear of all liens pursuant to a contract attached to Trustee's motion with all liens, encumbrances, and other interests in the Property attaching to the proceeds. The Trustee's Report of Sale filed on May 26, 2006 discloses that the Trustee received net proceeds in the amount of $442,973.

Capital City asserts a right to the proceeds of the sale of the Property equal to the amount necessary to pay off the principal, interest at the default rate, as well as late fees. As of February 24, 2006, the total claim amount equals $304,969.43, plus a per diem fee of $193.39.<sup>FN11</sup> In the Amended Complaint, the Plaintiff brings only one cause of action against Capital City set forth in Count 5. That Count avers that Capital City is a subsequent transferee to Edgardo, and to 1st Financial. The Amended Complaint thereafter asserts that the transfer from 1st Financial to Capital City is avoidable pursuant to Section 550. No other basis for relief against Capital City is stated, and the Plaintiff has not sought to further amend the Complaint.

FN11. Pl's Ex. 14.

It is undisputed that Capital City is a mediate transferee of the initial transferee (Edgardo). As the Initial Transfer has been avoided pursuant to Section 548, the required elements are met allowing the Trustee to recover from Capital City the Property transferred, or its value pursuant to Section 550(a)(2), unless Capital City can avail itself of the defense provided in Section 550(b)(1). To be protected by this defense, Capital City has the burden to prove by a preponderance of the evidence that it received the transfer conveyed by the Deed of Trust, for value, in good faith, and without knowledge of the voidability of a prior transfer that has been avoided.<sup>FN12</sup> *See Tavenner v. Smoot (In re Smoot)*, 265 B.R. 128, 140 (Bankr.E.D.Va.1999); *Hooker Atlanta (7) Corp. v. Hooker (In re Hookier Investments, Inc.)*, 155 B.R. 332, 337 (Bankr.S.D.N.Y.1993).*But see In re Hickey*, 168 B.R. 840, 850 (Bankr.W.D.N.Y.1994).<sup>FN13</sup>

FN12. Because both the Initial Transfer and the Second Transfer have been avoided, Capital City must prove it received its transfer without knowledge of the voidability of the Initial Transfer and the Second Transfer.

FN13. To the extent that there is a split among courts as to which party carries the burden of proof under Section 550(b), this court agrees with the courts finding that the burden shifts to the transferee upon a showing that the elements of proving an otherwise avoidable transfer have been met by the trustee. The defenses set forth in Section 550(b) are analogous to affirmative defenses for which the party raising them traditionally holds the burden of proof.

As to the first requirement of the defense under Section 550(b), the court finds that Capital City received the transfer from 1st Financial for value. 1st Financial advanced the loan proceeds due under the note to the borrower (after deducting substantial fees at closing as apparently agreed to under the terms of the loan arrangement). In exchange, Capital City received the beneficial interest under the Deed of Trust to secure the sum advanced.

As to the second prong of the defense, Capital City asserts that the evidence supports a finding that it entered into the transaction and received the transfer in good faith. In arguing for such a finding, Capital City relies upon the testimony of its president, Alan W. Nash. Mr. Nash testified that he had no prior acquaintanceship, or other contact with anyone at 1st Financial including its principal Mr. Nastasi.

**\*5** The Trustee contends that three parts of the record support a finding of bad faith. The Trustee asserts that Capital City is a "hard money lender" referring to the extremely high fees and interest rates charged by Capital City for this loan. (Trial Tr. 3:8-9, Nov. 13, 2006; Trial Tr. 6:4-8.) <sup>FN14</sup> While these rates may seem exorbitant when the loan to value ratio was so modest, the Court has been apprised of no legal basis on which they could be found unlawful. Secondly, the Trustee argues that the lack of due diligence by Capital City in support of its decision to advance the loan indicates less than good faith in the making of the transaction. Thirdly, the Trustee points to all of the errors in the documents of transfer both as to the Second Transfer and the Deed of Trust. The name of 1st Financial was set down in at least three distinctly different manners often within the same document, signatures were not properly acknowledged, or there

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 5
Slip Copy, 2007 WL 2915004 (Bkrtcy.D.Md.)
**(Cite as: Slip Copy)**

was no acknowledgment, and the signer was not properly identified as to the capacity in which the signer was executing the document. This lack of diligence and defects in documents are pointed out in Mr. Louis' testimony. (Trial Tr. 75:10-24, 76:20-77:4, Dec. 29, 2006).

> FN14. As testified to by Mr. Nash, the default interest rate was 24% per annum. 2 points (2% of amount loaned) were also charged, plus late fees of 15% of late payments. (Trial Tr. 30:10-31:23).

As to the lack of credit underwriting, it is apparent from the facts, and the court finds that the intent of Capital City in entering into this transaction was based upon the asset value of the Property, as the loan documents exonerate the borrower from any in personam obligation to repay the loan (in exchange for an additional fee).[FN15] Where the loan is non-recourse to the borrower personally, the lack of credit underwriting as to the borrower's ability to repay the loan from other assets, or cash flow does not per se indicate bad faith in entering into what could be characterized as an asset based credit decision. The court finds that the decision to enter into the transaction was solely based upon what the lender expected a forced liquidation of the Property would yield. Given the high rate of default interest, and late charges, Capital City may have anticipated, and even hoped for a payment default where the lender was confident that it could recover all charges from the value of the collateral. Indeed, Capital City included fees and charges for a foreclosure that did not occur in its pay off statement delivered to the trustee. Upon challenge, Capital City subsequently admitted it was not entitled to those charges.

> FN15. Whether the non-recourse restriction is enforceable by 1st Financial against an action by Capital City in light of the avoidance of the Deed of Trust in this adversary proceeding, is not before this court and this court makes no finding in that regard.

In its argument against the Trustee, Capital City points to the fact that it obtained the title insurance commitment, and asserts it cannot be charged with any facts of which it did not have actual knowledge, including facts that a reasonable search would have disclosed.

The Bankruptcy Code does not define "good faith." Since it is not precisely defined, courts have determined the existence of "good faith" on a case by case basis. *See Gold v. Laines (In re Laines),* 352 B.R. 397, 406 (Bankr.E.D.Va.2005); *Smoot,* 265 B.R. at 140. Courts, including those within the Fourth Circuit, have found that good faith exists when the transferee lacks knowledge of circumstances that would induce a reasonable person to investigate. *See Bonded Fin. Serv. v. European Am. Bank,* 838 F.2d 890, 897-98 (7th Cir.1988); *Gallant v. Kanterman,* 97 B.R. 768, 779 (Bankr.S.D.N.Y.1989). The inquiry into good faith is not limited to actual knowledge from a subjective viewpoint. *See Gold,* 352 B.R. at 406;*Gallant,* 97 B.R. at 779. Instead, the inquiry includes what the transferee knew, or should have known. *Laines,* 352 B.R. at 406. The Ninth and Tenth Circuits agree that the existence of bad faith encompasses circumstances that would place a reasonable person on inquiry notice, and that a *diligent* inquiry would have revealed a fraudulent purpose. *Agricultural Research and Technology Group, Inc. v. Palm Seedlings Partners,* 916 F.2d 528, 536 (9th Cir.1990); *M & L Business Mach. Co. Inc. v. McKay,* 84 F.3d 1330,1338 (10th Cir.1996). A transferee's willful ignorance in the face of facts that cry out for an investigation does not support a finding of good faith. *Huffman v. Commerce Security Corp.,* 845 F.2d 1254, 1258 (4th Cir.1988). There is no per se duty upon a mediate transferee to investigate, if the facts and circumstances would not cause a transferee acting in good faith to inquire. In this adversary proceeding, the Court finds that a lender under the circumstances of this case would inquire as to the public record.

**\*6** In its findings of fact earlier in this opinion, the court has set forth facts which the public record clearly would have revealed upon a reasonably conducted record search, and review. The court's conclusion in this regard is supported by the testimony of the expert witness. Without the transferee searching the title under the circumstances, the transferee's assertion of lack of actual knowledge does not provide support to the transferee on its burden of to prove good faith. Such a finding would be an invitation to every knave who wished to participate in a scheme to benefit from an avoidable transfer while being shielded under the defenses of Section 550(b).[FN16] Capital City points to the title insurance commitment in arguing that Capital City should be found to have entered into the loan

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 6
Slip Copy, 2007 WL 2915004 (Bkrtcy.D.Md.)
**(Cite as: Slip Copy)**

transaction in good faith, notwithstanding that the circumstances of the transaction would compel any good faith lender to search the public records, and that such a search would have revealed many facts that would have raised a "red flag" as to the avoidability of the title assertedly held by 1st Financial.

> FN16. If a diligent record search had occurred it is likely that Capital City would not have advanced a loan to a borrower holding avoidable title. The value of the Debtor's interest in the Property would benefit Debtor's creditors. Under Capital City's argument, by not performing or reviewing a records search, Capital City should be protected and allowed to retain the transfer to the detriment of Debtor's creditors.

Facts that a reasonable search would have clearly revealed include that the Initial Transfer was made shortly before a bankruptcy case was filed by the transferor, and that transfer was to transferor's brother for no consideration. This record information would be sufficient to constitute prima facie knowledge as to the avoidability of the Initial Transfer.

As to the Second Transfer which was also avoidable (and has also been avoided), a properly conducted record search would have revealed that at the time 1st Financial approached Capital City it had no record title to the collateral Property, its deed having not been recorded, as demonstrated by the stamp of the Clerk of the Circuit Court of Queen Anne's County on Plaintiff's Exhibit 18. Further, a timely review of the records of the SDAT as to the legal existence of the borrower would have revealed that its charter was forfeited at the time of the Second Transfer, as well as at the time of the closing of the loan from Capital City. Any reasonable examination of the deed to 1st Financial would have revealed there was no acknowledgment. Additionally, based upon the knowledge of value that Capital City actually had from its property valuation, and as further evidenced by Capital City's decision to make the asset based loan, the consideration recited in a deed for the Second Transfer was nominal as compared to the value of the Property. All of these transfers were within less than three years of the date of the transaction with Capital City. [FN17]

> FN17. The statute of limitations for avoiding

a transfer for less than fair consideration, or one which is undertaken with actual intent to defraud creditors is three years in Maryland. Md.Code Ann. Cts. & Jud. Proc. § 5-101. *See also Davis v. Harris,* 185 A. 469 (Md.1936).

The Court determines that Capital City has not carried its burden under Section 550(b) as to good faith. As stated above, a lender acting in good faith under the circumstances of the 1st Financial-Capital City transaction, would ascertain the bonafides of its borrower and borrower's title by a reasonable record search. In essence, Capital City decided to acquire its interest based upon a title insurance commitment, and an outdated certificate of good standing. From the totality of the circumstances including the terms of the transaction, lack of any evidence of a reasonable record search, the glaring facts that such record search would have revealed, and without any persuasive evidence to support a finding of good faith, the court finds against the Defendant on this prong of the Section 550(b) defense.

*7 The third required prong of the defense of a mediate transferee is that the transferee received the transfer without knowledge as to the avoidability of a prior transfer.[FN18]Here, Capital City argues that knowledge is limited to the actual knowledge that its officers, and directors had concerning the prior transfers in question.

> FN18. This Court having found that the lack of reasonable inquiry under the facts and circumstances of this case is a relevant fact in considering the element of "good faith," could end its discussion at this point. However, for completeness of the record, the court will also address the element of lack of knowledge.

To the contrary, the Trustee asserts, and Capital City refutes, that Capital City is charged with the knowledge of what a reasonable inquiry would have revealed concerning the avoidability of the prior transfers. In this argument, Capital City strongly points to the reported opinion by the United States Court of Appeals for the Fourth Circuit in the case of *Mixon v. Smith,* 788 F.2d 229 (4th Cir.1986), a decision construing Section 550(b). That opinion contains the words: " 'knowledge' as used in § 550(b)(1) is not defined in the Code or in the legislative history, we conclude that it does not mean

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

'constructive notice.' " *Id.* at 232.Nevertheless, the Trustee argues that under the facts of this case, *Mixon* should not control, and Capital City should be charged with what a reasonable inquiry of the public record would have disclosed.

On the issue of "without knowledge," does the decision of the Fourth Circuit in *Mixon* shield Capital City from a reasonable inquiry? As the Seventh Circuit stated in *Bonded Fin. Svcs, "[N]o* one supposes that 'knowledge of voidability' means complete understanding of the facts and receipt of a lawyer's opinion that such a transfer is voidable; some lesser knowledge will do."*Bonded Fin. Svcs, 838 F.2d at 898* (citing *In re Nevada Implement Co., 22 B.R. 105* (Bankr.W.D.Mo.1982). Furthermore, the court remarked that "a recipient that closes its eyes to the remaining facts may not deny knowledge."*Id.* The Third Circuit also stated that knowledge is measured by whether further inquiry would reveal facts that would alert a reasonable person to the voidability of the transfer, and that the transferee "cannot sit on his heels," and be protected. *Wasserman v. Bressman, 327 F.3d 229, 236 (3rd Cir.2003).* To the extent that Defendant's interpretation of the words in the *Mixon* opinion, identified by the Defendant, would categorically limit "knowledge" to facts of which a defendant was completely cognitive, this court cannot agree. [FN19]

> FN19. It may be that the pronouncement in *Mixon,* to which the Defendant so strenuously points, is dicta as to the determination in that case. As the Fourth Circuit stated, "Moreover, even if one were to accept the Trustee's argument that knowledge includes constructive notice, the Defendant should prevail."*Mixon, 788 F.2d at 232.*

In applying the law the court determines the facts of the case *sub judice* are significantly distinguishable from the facts in the *Mixon* case. In the *Mixon* case, the original owner/initial transferor, Clarence Mixon ("Clarence"), was not the Debtor. Rather, it was the initial transferee, John Thomas Mixon ("John Thomas") who filed the bankruptcy case after John Thomas received a clearly fraudulent transfer from his brother, Clarence. Before the bankruptcy case was filed, John Thomas released the property back to Clarence. It was this return of property (reversing the previous fraudulent transfer), that was sought to be avoided by the trustee. In effect, the trustee sought to

keep the value of the fraudulent transfer for the benefit of the creditors of John Thomas. In the meantime, and before the bankruptcy, Clarence had reconveyed the property to his father Orie Mixon ("Orie") for value. As recited by the *Mixon* court, Orie was also in financial distress, and subject to an insolvency proceeding albeit not apparently a federal bankruptcy case. The question presented in practical fact was whether the creditors of John Thomas should benefit at the expense of the creditors of Orie who had given value. The trustee in *Mixon* argued that a search of the record would have shown that the surrender of the property back to the transferor was without consideration thus allowing the Trustee to recover from the innocent subsequent transferee who in fact had received the transfer in good faith from the original owner.

**\*8** These are far from the factual circumstances before this court. Here, the original transferor is the Debtor, and as found above there are strong factual reasons why a lender proceeding in good faith for this type of transaction would have conducted and reviewed a record search. Under these facts and circumstances, the court finds that the lender in this case must be charged with what a prudent, and reasonable inquiry would have revealed. As found above, such inquiry would have revealed the avoidability of the prior transfers in question. Accordingly, the court finds that Capital City has failed to carry its burden of proof that it received the transfer without knowledge of the avoidability of the prior transfers.

In conclusion, Capital City failed to prove that it received the transfer in good faith. Capital City also failed to prove that it received the transfer without knowledge of the avoidability of the prior transfers. Upon either of these findings, the court must conclude that the Capital City is not protected by Section 550(b).

In this case the subject Property has been sold. The court finds therefore that the remedy that should be imposed under Section 550(a) is a return of the Property by the avoidance of the transfer effectuated by the Deed of Trust. The proceeds of the sale of the Property, which are being held in escrow in lieu of the Property itself, are therefore unencumbered by the security interest of such Deed of Trust as to any right of Capital City. An order consistent with this Opinion will be entered.

Slip Copy                                                                                          Page 8
Slip Copy, 2007 WL 2915004 (Bkrtcy.D.Md.)
**(Cite as: Slip Copy)**


Bkrtcy.D.Md.,2007.
In re Nieves
Slip Copy, 2007 WL 2915004 (Bkrtcy.D.Md.)

**END OF DOCUMENT**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.