KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California  90067
(310) 407-4000 (telephone)
(310) 407-9090 (facsimile)
David M. Stern (admitted *pro hac vice*)
Kenneth N. Klee (KK-5910)
Daniel J. Bussel (admitted *pro hac vice*)

        -and-

VENABLE LLP
The Chrysler Building
405 Lexington Avenue, 56th Floor
New York, New York  10174
(212) 983-3850 (telephone)
(212) 307-5598 (facsimile)
Edward A. Smith (ES-2461)

Attorneys for Plaintiff/Appellant
Enron Creditors Recovery Corp. f/k/a Enron Corp.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------X

In re:

ENRON CREDITORS RECOVERY CORP., *et al.*,

                    Reorganized Debtors.
---------------------------------------------------X

ENRON CREDITORS RECOVERY CORP.

                    Plaintiff,

v.

INTERNATIONAL FINANCE CORP., *et al.*,

                    Defendants.
---------------------------------------------------X

ENRON CREDITORS RECOVERY CORP.
                    Appellant,

v.

INTERNATIONAL FINANCE CORP., *et al.*,
                    Appellees.
---------------------------------------------------X

Case No. 01-16034 (AJG)

Chapter 11

(Jointly Administered)

Adversary No.:  03-93370 (AJG)

District Court

Case No. 07-06597 (AKH)

**APPELLANT'S REPLY BRIEF**

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ......................................................................... 1

II.  ENRON PRESERVED THE QUESTION OF STATUTORY CONSTRUCTION
PRESENTED IN THIS APPEAL...................................................................... 2

III.  SECTIONS 548 AND 550 DO NOT CONDITION THE LIABILITY OF
SUBSEQUENT TRANSFEREES ON SUCCESSFUL PROSECUTION OF AN
AVOIDANCE ACTION AGAINST THE INITIAL TRANSFEREE ............................. 5

IV.  THE WEIGHT OF AUTHORITY CONSTRUING BOTH THE BANKRUPTCY
CODE AND PRE-CODE LAW DOES NOT CONDITION SUBSEQUENT
TRANSFEREES' LIABILITY ON AVOIDANCE AS AGAINST THE INITIAL
TRANSFEREE ....................................................................................... 12

V.  CONCLUSION...................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*In re Acadiana Electrical Serv., Inc.*,
  66 B.R. 164 (Bankr. W.D. La. 1986) ..................................................................................8

*Aguinda v. Texaco, Inc.*,
  1994 WL. 142006 (S.D.N.Y. 1994) ....................................................................................3

*In re Arkansas Catfish Growers*,
  2007 WL. 215815 (E.D. Ark. 2007) ...................................................................................9

*Bonded Financial Services, Inc. v. European American Bank*,
  838 F.2d 890 (7th Cir. 1988) ............................................................................................13

*Cent. Va. Community College v. Katz*,
  546 U.S. 356 (2006) ............................................................................................................6

*In re Columbia Tobacco Co.*,
  121 F.2d 641 (2d Cir. 1941) ...............................................................................................5

*Composite Modules, Inc. v. Tallheimer Bros, Inc.*,
  2007 WL. 4465461 (D. Mass. 2007) ................................................................................18

*Matter of Compton Corp.*,
  831 F.2d 586 (5th Cir. 1987) ............................................................................................13

*In re Consolidated Capital Equities Corp.*,
  175 B.R. 629 (Bankr. N.D. Tex. 1994) .............................................................................13

*Deegan v. City of Ithaca*,
  444 F.3d 135 (2d Cir. 2006) ...............................................................................................4

*Emerson v. Shirley*,
  188 La. 196 (La. 1937), .....................................................................................................14

*Enron Corp. v. International Finance Corp. (In re Enron Corp.)*,
  343 B.R. 75 (Bankr. S.D.N.Y. 2006) ..................................................................................1

*In re Farmer's Market*,
  22 B.R. 71 (9th Cir. BAP 1982) ..................................................................................18, 19

*In re Flashcom, Inc.*,
  361 B.R. 519 (Bankr. C.D. Cal. 2007) .............................................................................12

*Forman v. Jeffrey Matthews Fin. Group LLC (In re Halpert & Co, Inc.)*,
    254 B.R. 104 (Bankr. D. N.J. 1999) ...............................................................17, 18

*Forseth v. Village of Sussex*,
    199 F.3d 363 (7th Cir. 2000) ...................................................................................3

*Graham Grocery Co. v. Chase*,
    84 S.E. 785 (W. Va. 1915)......................................................................................14

*H&C P'ship v. Virginia Serv. Merchandisers*,
    164 B.R. 527 (E.D. Va. 1994).................................................................................6

*In re Hall*,
    131 B.R. 213 (Bankr. N.D. Fla. 1991) ..................................................................13

*In re Hilsen*,
    119 B.R. 435 (S.D.N.Y. 1990)...............................................................................4

*IBT Int'l v. Northern (In re Int'l Admin. Svcs., Inc.)*,
    408 F.3d 689 (11th Cir. 2005) ...............................................................................13

*Kendall v. Sorani (In re Richmond Produce Co.)*,
    195 B.R. 455 (N.D. Cal. 1996) ...............................................................................6

*Krol v. Wilcek (In re H. King & Assocs.)*,
    295 B.R. 246 (Bankr. N.D. Ill. 2003) ...................................................................17

*Labram v. Havel*,
    43 F.3d 918 (4th Cir. 1995) .....................................................................................3

*Levit v. Ingersoll Rand Financial Corp. (In re V.N. DePrizio Corp.)*,
    874 F.2d 1186 (7th Cir. 1989) ................................................................................9

*Maxwell v. Mich. Fid. Acceptance Corp. (In re Maestas)*,
    354 B.R. 844 (Bankr. E.D. Wis. 2006)..................................................................19

*Murray v. Murray*,
    358 So. 2d 723 (Miss. 1978)..................................................................................18

*Nastro v. D'Onofrio*,
    263 F. Supp. 2d 446 (D. Conn. 2003) ...................................................................17

*In re National Audit Defense Network*,
    332 B.R. 896 (Bankr. D. Nev. 2005) ......................................................................8

*Ouerbacker, Gilmore Co. v. White,*
   6 Ky. L. Rep. 739 (1885) ...................................................................................15

*In re Phillips,*
   379 B.R. 765 (Bankr. N.D. Ill. 2007) ...............................................................12

*Phipps v. Sedgwick,*
   95 U.S. 3 (1877) ................................................................................................13

*Rivera v. Flav-O-Rich,*
   876 F. Supp. 373 (D.P.R. 1995) .......................................................................15

*Seixas v. King,*
   2 So. 416 (La. 1887) .........................................................................................15

*Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC),*
   340 B.R. 829 (Bankr. E.D. Mich. 2006) ..........................................................10

*In re Slack-Horner Foundries Co.,*
   971 F.2d 577 (10th Cir. 1992) ..........................................................................13

*Stanton v. Green,*
   34 Miss. 576 (1857) ..........................................................................................14

*Suhar v. Burns (In re Burns),*
   322 F.3d 421 (6th Cir. 2003) ..............................................................................6

*TRW Inc. v Andrews,*
   534 U.S. 19 (2001)............................................................................................11

*Vintero Corp. v. Corporacion Venezolana de Fomento,*
   675 F.2d 513 (2d Cir. 1982)................................................................................4

## FEDERAL STATUTES AND RULES

11 U.S.C. § 544................................................................................................12

11 U.S.C. § 547.......................................................................................9, 10, 11

11 U.S.C. § 548 ......................................................................................... *passim*

11 U.S.C. § 550 ......................................................................................... *passim*

11 U.S.C. § 551.............................................................................................9, 10

Fed. R. Civ. P. 19............................................................................................18

## MISCELLANEOUS

5 COLLIER ON BANKRUPTCY ¶ 550.02(1) (15th Rev. Ed. 2007) ......................................................8

5 COLLIER ON BANKRUPTCY ¶ 551.01(1) (15th Rev. Ed. 2007) ....................................................10

JOHN W. SMITH, THE EQUITABLE REMEDIES OF CREDITORS (1899) .......................................15, 16

Enron Creditors Recovery Corp., formerly Enron Corp. ("Enron" or "Appellant"), respectfully submits this reply brief (the "Reply") in support of Appellant's Opening Brief ("Opening Br.") and its appeal from the Bankruptcy Court's order and judgments (collectively, the "Judgment") granting the motions to dismiss of Caisse de dépôt et placement du Québec ("Caisse") and National Australia Bank ("NAB," and with Caisse, "Appellees").[1]

## I.

## PRELIMINARY STATEMENT

As articulated in Enron's Opening Brief, the only question presented on this appeal is whether sections 548 and 550 of the Bankruptcy Code make suing and prevailing against the initial fraudulent transferee a predicate to relief against a subsequent transferee.  The Bankruptcy Court answered in the affirmative, dismissing Enron's Complaint because it did not seek avoidance against, or name, the initial transferee, CLO Holding, a dissolved Enron affiliate. *Enron Corp. v. International Finance Corp. (In re Enron Corp.)*, 343 B.R. 75, 84 (Bankr. S.D.N.Y. 2006).  Relying on the language of the applicable Bankruptcy Code sections, the structure of the Bankruptcy Code, long-standing policy and a majority of cases that have addressed the same question, Enron's Opening Brief contended, as we contend here, that the Bankruptcy Code gives an estate representative seeking to avoid and recover fraudulent transfers a choice of defendants, each of whose liability is independent, subject to the constraints that only one satisfaction may be obtained, 11 U.S.C. § 550(a) & (d), and that the estate representative must prove avoidance and recovery against each defendant.

Rather than respond directly to Enron's arguments, Appellees attack Enron for allegedly making arguments not advanced below (Appellees' Br. at 1-2 & 16-17); contend incorrectly that

---

[1]    We employ the same short term conventions and abbreviations as in the Opening Brief.  The *Brief of Appellees Caisse de dépôt et placement du Québec and National Australia Bank* filed herein is cited as "Appellees' Br. at ____."  Additionally, new cases not published in official reporters and treatises are included in the *Appellant's Supplemental Appendix* filed herewith ("Supp. App. at Tab ___").

the Complaint does not seek to avoid and recover the transfers as to them (*id.* at 2, 5, 8, 13 & 33); falsely assert that Enron's position is unprecedented (*id.* at 3 & 44); cite to a large number of irrelevant, often ancient, cases and treatises (*id.* at 19-21, 34-35 & n.25); and generally argue that a decision in Enron's favor would produce by illogical extension a variety of results that would do violence to the bankruptcy process.  *Id.* at 24, 35-36 & 41.  This Court should reject each of these arguments.

There is no basis in the record to support Appellees' relentlessly repeated assertion that the issue on appeal was not properly presented to Judge Gonzalez or that no appeal lies from his determination of that issue.  As discussed in Part II, below, the question presented in this appeal was asserted, litigated and passed upon by Judge Gonzalez, and thereby preserved.  Enron's interpretation of the interplay between Bankruptcy Code sections 548 and 550 is supported by substantial precedent (Opening Br. at 9 n.6) and logic (*id.* at 8-19).  By contrast, the pastiche of authorities cited by Appellees are either off-point, ancient or both.  *See* Part IV, below.  Finally, to the extent policy plays a role, Appellees' statutory construction would lead to far more pernicious results than just requiring that an estate representative perform a meaningless act in order to proceed against subsequent transferees who are the real defendants.  In many cases, such a requirement would leave innocent creditors at the mercy of fraudulent transferees, who could readily defeat recovery of an otherwise avoidable fraudulent transfer by the complex structuring of the transfer through intermediaries not amenable to suit.  Fortunately, as demonstrated in Enron's Opening Brief and as further shown below, neither the language nor logic of the pertinent Bankruptcy Code provisions dictates such a result.

## II.

## ENRON PRESERVED THE QUESTION OF STATUTORY CONSTRUCTION PRESENTED IN THIS APPEAL

Appellees contend this Court need never reach the merits of this appeal because Enron's Complaint and the arguments Enron marshaled in the Bankruptcy Court against dismissal were deficient in preserving the cornerstone issue.

The alleged deficiency of the Complaint is that it "does not state an avoidance cause of action against the Appellees or any other party in respect of the challenged Put Payment transfers." Appellees' Br. at 13. The record establishes otherwise. The Second Cause of Action incorporates all the preceding paragraphs (Complaint, ¶¶ 46 *et seq.,* App. at Tab 1, pp. 8-10), including paragraph 4 which provides that "Enron brings this action to ***avoid*** and recover transfers made, directly or indirectly, to the Defendants…." (Emphasis added). The operative allegations of the Second Cause of Action track the elements of Bankruptcy Code section 548 (Complaint, ¶¶ 51-54), and the prayer, consistent with the preceding (App. at Tab 1, p. 11), *inter alia,* "requests entry of judgment … on the second cause of action, ***avoiding and setting aside the Put Payments pursuant to section 548(a)(1)(B) of the Bankruptcy Code*** …." (emphasis added).

To be sure, the label attached to the Second Cause of Action (*id.* at p. 8) did not mention avoidance or Bankruptcy Code section 548 – and it should have – but:

> Legal labels characterizing a claim cannot, standing alone, determine whether it fails to meet this extremely modest standard. Even where such a label reflects a flat misapprehension by counsel respecting a claim's legal basis, dismissal on that ground alone is not warranted so long as any needed correction of legal theory will not prejudice the opposing party…. All that is required is that the pleaded claim afford the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved.

*Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1995) (internal quotation marks omitted); *accord, Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) ("Labels do not matter."); *Aguinda v. Texaco, Inc.*, 1994 WL 142006, *6 (S.D.N.Y. 1994)[2] ("Were facts supporting a claim to be established, the label would not be controlling, since under Fed.R.Civ.P. 8(f), 'All pleadings shall be so construed as to do substantial justice.'"). Supp. App. at Tab 27. Regardless, the paragraphs preceding the Second Claim For Relief – and incorporated into that

---

[2]    Supp. App. at Tab 26.

claim – the elements pled in that claim, and the prayer, make clear that Enron sought avoidance under section 548.

The record before the Bankruptcy Court likewise leaves no doubt that the parties understood that, labels notwithstanding, Enron was seeking *both* to avoid and recover the Put Payments against Appellees. For example, in its reply in support of dismissal, NAB addressed the precise issue, stating: "Enron's fall-back argument – that it can both avoid the initial transfer and pursue recovery in this action without joining [CLO] Holding I as a party – is not well-founded." App. at Tab 8, p.9; *see also id.* at p. 10 n.3 (arguing that Enron's authorities failed to stand for the principle that the initial transferee was not "a necessary and indispensable party in an ***avoidance action***") (emphasis added).

Appellees' argument that Enron did not make the argument it asserts here to the Bankruptcy Court not only is incorrect as a matter of fact, it is irrelevant as a matter of law. Enron made the argument it is making here in opposition to the motions to dismiss (App. at Tab 3, p. 9, at Tab 4, and at Tab 7, pp. 9-10).[3] However, even if the record (both the Complaint and the briefs in support of and in opposition to dismissal) did not demonstrate that Enron made the contentions it advances on appeal, this Court still can, and Enron submits should, consider the question of statutory construction that comprises the only issue on this appeal. *Deegan v. City of Ithaca*, 444 F.3d 135, 144 (2d Cir. 2006) ("[W]e will exercise our discretion to review its merits because the question presented is purely legal and requires no further development of the record.") (internal quotation marks omitted); *Vintero Corp. v. Corporacion Venezolana de Fomento*, 675 F.2d 513, 515 (2d Cir. 1982) ("Arguments made on appeal need not be identical to those made below, however, if the elements of the claim were set forth and additional findings of fact are not required.... Therefore when a party raises new contentions that involve only

---

[3]    The focus of the argument here is, to be sure, different from that made below. Not only have there been new cases decided, but like any credible advocates, we have learned from a negative result how to better frame our case.

questions of law, an appellate court may consider the new issues."); *accord In re Hilsen*, 119 B.R. 435, 439 (S.D.N.Y. 1990) ("A district court sitting in a bankruptcy appeal has the power to consider any issue presented by the record on appeal, even if the issue was not presented to the bankruptcy court.").

In sum, the record below and the governing law firmly establish that the issue now before the Court is properly presented.

### III.

### SECTIONS 548 AND 550 DO NOT CONDITION THE LIABILITY OF SUBSEQUENT TRANSFEREES ON SUCCESSFUL PROSECUTION OF AN AVOIDANCE ACTION AGAINST THE INITIAL TRANSFEREE

The lynchpin of Appellees' argument on the merits is their constant refrain that section 548 exclusively governs the liability of initial transferees and that section 550 exclusively governs the liability of subsequent transferees. Appellees claim, repeatedly, as if restating the contention will make it true, that Enron's avoidance case against Caisse and NAB fails as a matter of law because section 548, the avoidance section, deals exclusively with initial transferees.[4]

---

[4]    *See* Appellees' Br. at 3 ("[S]ection 548 does not contain any express or implied cause of action against a subsequent transferee alone. The statutory text plainly deals with the initial transferee and the rights of the initial transferee."); *id* at 9 ("[N]o basis exists under the letter of section 548(a)(1)(B), under the cases construing it, or in the decades of practice under the Bankruptcy Code and Bankruptcy Act, for finding a cause of action against a subsequent transferee alone to avoid a transfer made to an initial transferee."); *id*. at 13 ("In other words, Enron seeks the remedy of avoidance under a statutory cause of action expressly limited to recovery."); *id*. at 33 ("No textual evidence supports the conclusion that section 548 concerns subsequent transferees at all"); *id*. at 44 ("In sum, section 548 provides no indication that Congress intended to create a cause of action for avoidance against a subsequent transferee."). It would be one thing if the relevant provisions of the Bankruptcy Code (sections 548 and 550) stated as much, or if the legislative history to those provisions indicated that Congress intended such a result. But neither is the case. By its terms, section 548 is not just limited to actions for avoidance against "initial transferees." Had that been Congress' intent, the statute undoubtedly would have said that. *See In re Columbia Tobacco Co.*, 121 F.2d 641, 643 n.1 (2d Cir. 1941) (noting the well-established "'it-would-have-been-very-easy-to-say-so' rule" of bankruptcy statutory construction) (citations omitted).

Appellees' misreading of section 548 and its relationship to section 550 is both stunning and essential to their argument. To begin, and contrary to Appellees' argument, section 548 never uses the words "initial transferee" and indeed never identifies the prospective defendants in an avoidance claim. Rather, the version of section 548(a)(1) in effect in this adversary proceeding begins by providing that, "[t]he trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition…," without specifying or identifying the person to whom the transfer was made or the person holding the obligation in question. This provision then lays out the basic elements of the fraudulent transfer cause of action. In specifying those elements, as recognized in the case law discussed in Enron's Opening Brief (at 6-8), section 548 is entirely agnostic on the question of the identity of the defendant (whether it be an initial or subsequent transferee) that may be subject to an action for recovery.[5]  *See, e.g., Cent. Va. Community College v. Katz*, 546 U.S. 356, 371-72 (2006) (analyzing Bankruptcy Code section 547); *H&C P'ship v. Virginia Serv. Merchandisers*, 164 B.R. 527, 530 (E.D. Va. 1994) ("avoidability is an attribute of the transfer rather than of the creditor").

Section 550, on the other hand, expressly deals with the question of who are the proper defendants to a fraudulent transfer cause of action, by specifically identifying three different potential types of defendants (initial transferees, beneficiaries, and subsequent [a/k/a mediate or immediate] transferees), and by providing that these defendants are alternatives among whom the estate representative seeking to recover a fraudulent transfer may freely choose. 11 U.S.C. § 550(a) & (d). *Kendall v. Sorani (In re Richmond Produce Co.)*, 195 B.R. 455, 463

---

[5] Appellees take remarkable creative license interpreting cases discussing sections 548 and 550, as their reference to *Suhar v. Burns (In re Burns)*, 322 F.3d 421 (6th Cir. 2003), Appellees' Br. at 14, reveals. While *Burns* does note that avoidance is a necessary, but not necessarily sufficient, precondition to recovery as a general proposition, *id*. at 427, nowhere does the court hold that avoidance *as to the initial transferee* is a necessary precondition to recovery from subsequent transferee.

(N.D. Cal. 1996) ("[Section 550] contains no language that suggests that recovery from immediate transferees is in any way dependent upon a prior action or recovery against the initial transferee.").

Read together, sections 548 and 550 require only that avoidance and recovery be established as to each transferee that is sued. Enron averred precisely that in the Complaint.[6] Enron pled that the transfer was fraudulent and should be avoided under section 548, and that Caisse and NAB were parties from whom recovery may be sought under section 550. Sections 548 and 550 require nothing more for purposes of stating a claim upon which such relief may be granted. As a result, Appellees' lengthy analysis of whether an avoidance action under section 548 is an *in rem* proceeding or something else, *see* Appellees' Br. at 37-44, is utterly beside the point: An estate representative must prove both elements of its case against a properly named defendant, whether that defendant is an initial or subsequent transferee, and if it does so, the estate may avoid and recover the transfer or its value from that defendant.

Appellees' assertion that Congress somehow "allocated" the defenses of the initial transferee to section 548 and those of the subsequent transferees to section 550 is made of whole cloth. *See* Appellees' Br. at 17-19. Section 548 erects no special defense that is solely available to initial transferees. On the contrary, any defendant is free to avail itself of any defense provided for therein. As discussed in Enron's Opening Brief (at 12-13 & 15-16), initial transferees may assert several defenses under section 550, *see e.g.* § 550(c) (non-insider defense); § 550(d) (one satisfaction); §550(e) (lien for improvements); § 550(f) (statute of limitations); and subsequent transferees may assert the defense specified in section 550(b). In short, while Bankruptcy Code sections 548 and 550 each contain defenses, those defenses are available to any transferee as to avoidance and to any eligible transferee as to recovery. The

---

[6]    *See* page 3, *supra*.

existence of these defenses in no way "evinces Congress' intent that a proceeding to avoid a transfer under section 548 always include the initial transferee." Appellees' Br. at 18-19.

In order to try to maintain logical consistency with their arbitrary reading of section 548 as being directed solely against initial transferees, Appellees contend that a subsequent transferee has *no* ability to defend a fraudulent transfer claim on any basis other than as set forth in section 550. Appellees' Br. at 30-31. This is wrong. Bankruptcy Code section 548(c), which furnishes a defense where a transferee or obligee provides value to the debtor – and upon which Appellees rely to support their contention that section 548 somehow presupposes that the initial transferee must be the defendant on an avoidance action – proves nothing of the sort. Appellees conflate the question of how to apply a defense under section 548(c) with the entirely separate question of *who* may assert it. Appellees' Br. at 35-36. To be sure, section 548(c) establishes a defense to avoidance where the transferee or obligee provides value to the debtor. *See id.* (citing authorities). But this does not mean that only the transferee that furnished value to the debtor may defend against avoidance based upon this defense; the opposite is true. An estate representative who chooses to sue a subsequent transferee must demonstrate all the elements of an avoidable fraudulent transfer under section 548 before recovering under section 550, and each defendant (Caisse and NAB included) is free to place any of those elements in issue or assert any defense under either section in this action. *See In re National Audit Defense Network*, 332 B.R. 896, 914-15 (Bankr. D. Nev. 2005); *In re Acadiana Electrical Serv., Inc.*, 66 B.R. 164, 167 (Bankr. W.D. La. 1986); 5 COLLIER ON BANKRUPTCY ¶ 550.02(1) at 550-6 (15th Rev. Ed. 2007) ("[W]hen the trustee seeks to recover the property transferred or its value under section 550(a), the recovery may be made only to the extent the transfer was avoided.").

Appellees' assertion that Bankruptcy Code section 550(c) confirms *their* reading of the Bankruptcy Code, Appellees' Br. at 28-29, is almost incomprehensible . What is clear from section 550(c) is that Congress expressly contemplated circumstances where only subsequent transferees and beneficiaries, but not initial transferees, would have liability for

avoidance.   Before section 550(c) was enacted, courts had found, in the line of cases involving insider guarantors,[7] that recovery was proper from either the non-insider initial transferee or insider guarantor.   Congress deemed that result unfair to the non-insider initial transferee and reversed that line of authority by building a limited safe harbor protecting the non-insider initial transferee, and leaving only the insider guarantor liable.   11 U.S.C. § 550(c); *see also* 11 U.S.C. § 547(i).

By enacting the section 550(c) safe harbor for non-insider initial transferees who receive preferences that benefit insiders, Congress manifestly contemplated that the estate representative could proceed to avoid and recover the transfer solely against the insider, and not against the non-insider initial transferee, in the event that the transfer occurred outside the 90-day period.  *In re Arkansas Catfish Growers*, 2007 WL 215815, *2-*3 (E.D. Ark. 2007). Nothing in this provision in any way supports Appellees' core argument that a transfer cannot be avoided as to a subsequent transferee absent the joinder of the initial transferee.   In fact, by recognizing that someone other than an initial transferee may be sued for avoidance, section 550(c) supports precisely the opposite conclusion.[8]

Appellees' effort to enlist another provision of the Bankruptcy Code – section 551 – to shore up their contentions is equally unavailing.   Appellees' Br. at 29, 44.   Appellees cite section 551 for the proposition that only an "avoided" transfer (as opposed to an "avoidable" one) may be preserved for the benefit of the estate under this provision; Appellees correctly note that section 550(a) likewise refers to a transfer that is "avoided" under other Bankruptcy Code provisions.  *Id*.  Enron agrees that an estate representative must avoid a transfer before

---

[7]  *See e.g. Levit v. Ingersoll Rand Financial Corp. (In re V.N. DePrizio Corp.)*, 874 F.2d 1186 (7th Cir. 1989).

[8]  Had Congress believed that section 550 did not already provide for recovery against a non-initial transferee unless the initial transferee were sued, it would have had to add such a right when it created the section 550(c) defense, or that defense would have been far more expansive than intended.  Opening Br. at 18-19 (discussing *Arkansas Catfish Growers).*

proceeding to obtain recovery against a transferee under section 550. There is nothing in section 551, or any other Bankruptcy Code provision for that matter, requiring otherwise.

Indeed, to the extent section 551 is relevant in construing sections 548 and 550, this section supports Enron's contention that the Bankruptcy Code does not require avoidance against an initial transferee as a prerequisite to avoidance and recovery against a subsequent one. By its terms, section 551 cross-references, *inter alia*, section 548 and other avoidance provisions. 11 U.S.C. § 551. Like section 548, section 551 does not cross-reference section 550, dealing with the identity of a proper avoidance defendant or recovery of an avoided transfer. Like section 548, section 551 focuses solely on avoidance and preservation of the transfer, not recovery as against a particular transferee. Section 551 simply adds one more remedial arrow to the estate representative's quiver: the preservation of avoided liens for the benefit of the estate. The estate representative may choose to preserve rather than avoid the fraudulent lien in order to ensure that the benefit of the avoidance claim is realized by the estate rather than a junior lienor. 5 COLLIER ON BANKRUPTCY ¶ 551.01(1) at 551-2 (15th Rev. Ed. 2007). There is no basis to engraft on to section 551 a supposed requirement that an estate representative proceed first against an initial transferee, any more than such a requirement can be read into section 548.

Appellees also miss the point in attempting to explain away Bankruptcy Code section 547(g), cited in support of Enron's contention that avoidance of fraudulent *and* preferential transfers is not limited just to initial transferees. Opening Br. at 17, discussing *Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC)*, 340 B.R. 829, 838-39 (Bankr. E.D. Mich. 2006). Appellees observe that Bankruptcy Code section 547(b)(1) permits avoidance of a preferential transfer "to or for the benefit of a creditor." 11 U.S.C. § 547(b)(1). Building on that observation, Appellees argue that the phrase "party in interest" in section 547(g) is not intended to cover subsequent transferees, but rather, parties who might benefit from, but did not receive, a transfer. Appellees' Br. at 27. This argument violates the fundamental canon of statutory construction that "'a statute ought, upon the whole, to be so construed that, if it can be

prevented, no clause, sentence or word shall be superfluous, void or insignificant.'" *TRW Inc. v Andrews*, 534 U.S. 19, 31 (2001) (citation omitted). Since an avoidance action under section 547(b)(1) must be brought against the creditor to whom, or for whose benefit, the transfer was made, the word "creditor" in section 547(g) *already* includes a creditor for whose benefit the transfer was made. Appellees' construction, therefore, renders the phrase "party in interest" in section 547(g) pure surplus. The reference to a "party in interest" in section 547(g) must mean entities *other* than a creditor that received the transfer or for whose benefit the transfer was made, such as an initial of subsequent transferee.[9]

Finally, Appellees' claim that the subsequent transferee "operates at a tremendous disadvantage if it must defend against the avoidance action without the joinder of the initial transferee, due to unfamiliarity with the initial transfer and the unavailability of the section 548(c) defense" (Appellees' Br. at 24) is, on the facts of this case, an absurdity. Initial transferee CLO Holding was an empty shell affiliate of Enron whose sole function was to serve as intermediary between Enron and investors in the CLO Notes like Caisse and NAB. Joinder of CLO Holding would in no way affect Appellees' ability to litigate the issues of insolvency or lack of reasonably equivalent value or the existence of any good faith defense based on giving value without knowledge of the avoidability of the Put Transfers. Any information relevant to these issues not in the hands of Caisse and NAB that would be supplied by CLO Holding can be obtained in discovery of Enron which controlled its sole general partner. Indeed, if CLO Holding were a defendant, with Enron controlling its sole general partner, it is difficult to imagine that CLO Holding would or could add anything meaningful to the defense of this action. Had Enron named that entity, and obtained a (presumably default) judgment against it, those

---

[9]    Appellees' alternative contention that the reference to a party in interest in section 547(g) was intended to clarify that subsequent transferees could "intervene" "though not necessarily as a defendant" in an avoidance action (Appellees' Br. at 27) finds no support in the statute The more logical conclusion (and here sections 547(g) and 550(c) squarely point in that direction) is that Congress contemplated that an entity other than an initial transferee might be a defendant in a preference avoidance action.

actions would have had no import – legally, factually or otherwise – on the other defendants named in the Complaint.  *In re Flashcom, Inc.*, 361 B.R. 519, 522 (Bankr. C.D. Cal. 2007).  At bottom, Appellees are advocating that they are entitled to a free pass because Enron failed to do something that would have had no other effect on their legal rights.

In any event, as discussed in Enron's Opening Brief at 13, it is a commonplace in litigation that a defendant may have to seek information through the discovery process from third-parties, and that plaintiffs may select whom to sue without regard to whether the presence or absence of a particular defendant may make another's defense more difficult.

In sum, Appellees have presented nothing to refute the statutory construction presented by Enron and supported by a majority of the case law.

## IV.

### THE WEIGHT OF AUTHORITY CONSTRUING BOTH THE BANKRUPTCY CODE AND PRE-CODE LAW DOES NOT CONDITION SUBSEQUENT TRANSFEREES' LIABILITY ON AVOIDANCE AS AGAINST THE INITIAL TRANSFEREE

Appellees' claim that "Enron discloses not a single case permitting the avoidance under section 548 or its predecessor of a fraudulent conveyance against a subsequent transferee alone," Appellees' Br. at 3; *id.* at 19, 33 & 37, is mystifying.  In fact, as Enron demonstrated in its Opening Brief at 9 n.6, there are a large number of cases, representing the clear *majority* view, that the estate representative may proceed directly against a subsequent transferee, without joining the initial transferee, in order to establish the elements of a fraudulent transfer and recover the fraudulently transferred property or its value from a subsequent transferee.[10]

In numerous other cases, courts have assumed that a direct suit against the subsequent transferee is permissible, even as they find that section 550(b) provides a safe harbor for the

---

[10]    Since Enron filed its Opening Brief, yet another court has agreed with the majority line of cases.  *In re Phillips*, 379 B.R. 765, 786 (Bankr. N.D. Ill. 2007) (decided under Illinois' fraudulent transfer law, applicable pursuant to 11 U.S.C. § 544).

subsequent transferee who takes in good faith and for value without knowledge of the voidability of the transfer. *See e.g. Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 898 (7th Cir. 1988) (avoidance action brought solely against subsequent transferee dismissed on merits based on trustee's failure to establish triable issue of fact on good faith defense); *Matter of Compton Corp.*, 831 F.2d 586, 594 (5th Cir. 1987) (recovery of preference in the form of the grant of collateral to secure letter of credit reimbursement obligation recoverable only from beneficiary of letter of credit and not the initial transfer bank issuing the letter of credit); *In re Consolidated Capital Equities Corp.*, 175 B.R. 629, 634 (Bankr. N.D. Tex. 1994) (action to avoid and recover from subsequent transferee dismissed because, among other things, plaintiff failed to prove an element of section 548 that transfers rendered debtor insolvent); *In re Hall*, 131 B.R. 213, 218 (Bankr. N.D. Fla. 1991) (trustee had standing to avoid and recover directly from mediate transferee, but court granted motion to dismiss because debtor was not insolvent).

This established view that a subsequent transferee may be held accountable for a fraudulent transfer reaches back into the development of federal fraudulent transfer law and practice under the Bankruptcy Act of 1898 and beyond. *See Phipps v. Sedgwick*, 95 U.S. 3, 9 (1877) ("the books of reports are full of cases in which real or personal property conveyed to the wife in fraud of the husband's creditors has been pursued and subjected to the payment of his debts after it had been identified in her hands, or in the hands of voluntary grantees or purchasers with notice"). Indeed, in the only modern appellate decision that Appellees can squarely rely upon, *In re Slack-Horner Foundries Co.*, 971 F.2d 577 (10th Cir. 1992), a divided Tenth Circuit departed from established precedent and practice by precluding direct suit against subsequent transferees. *See In re Int'l Admin. Svcs., Inc.*, 408 F.3d 689, 704 (rejecting *Slack-Horner* and noting that Judge Seymour's dissent in that case "neatly pointed out … that there were no other cases to support the majority's decision").

Enron does not dispute that a handful of cases, the five decisions led by *Slack-Horner*, none of which is controlling authority for this Court, reject the more broadly held view

represented by the authorities cited by Enron.  Opening Br. at 9 n.6.  Enron respectfully submits that this minority view is incorrect.  But Appellees' implication that the majority view somehow does not exist or that Enron is arguing for an unprecedented expansion of liability under the fraudulent transfer statutes is inexplicable.

Appellees note a few largely irrelevant and most assuredly obscure state cases in trying to muster support for their position that under ancient equity practices and precursor statutes to the federal bankruptcy avoiding powers the initial transferee is a necessary party in a suit directed against a subsequent transferee.  *See* Appellees' Br. at 19-20.  These cases are in the most part cited for propositions that are irrelevant or for which they do not stand.  *Emerson v. Shirley*, 188 La. 196 (La. 1937), is not even a fraudulent conveyance or creditors' rights case, but rather involves a drunken and defrauded seller's attempt to rescind his own sale for fraud.  *Id.* at 201.  *Graham Grocery Co. v. Chase*, 84 S.E. 785 (W. Va. 1915), contrary to the Appellees' position here, appears to reject the defendant's claim that a failure to join other potential defendants to a fraudulent transfer action in some way precludes judgment against the properly joined defendant with liability for fraudulent transfer even though that defendant might be entitled to contribution from the absent parties.  *Id.* at 785 ("The object of the suit is to get rid of a fraudulent conveyance.  The conveyance is the wrong complained of, and nobody but the grantor and the grantee are interested in the question.  Though not wholly foreign to it, the right of contribution among the debtors is a separate and distinct matter in which the plaintiffs have no interest, and it may be settled without litigation. It is manifestly collateral to the subject matter of the bill, and persons interested in such a liability or question need not be made parties.").  *Stanton v. Green*, 34 Miss. 576 (1857), involved not only lands and livestock but human slaves, transferred first to the planter's overseer, then in roundabout fashion to his mother-in-law, her brother-in-law and the original planter's own wife and daughter and wards, all the while the plantation remaining in the possession of the original planter.  The defense in that case was not upon the ground of a lack of necessary parties, but rather the entirely archaic doctrine that an equitable decree could not be founded in part upon testimony of the defendant compelled at deposition.  *Id.* at 579-80, 583-84

& 591-92.  *Ouerbacker, Gilmore Co. v. White*, 6 Ky. L. Rep. 739 (1885), of which only an abstract is available, appears to involve the question of the liability of the transferee's assignee for the benefit of creditors, a state law analog to a bankruptcy trustee, in the event of the claimant's release of the transferee.  As such the brief abstract appears to stand for the unexceptional proposition that an assignee for the benefit of creditors stands in the assignor's shoes.  *Seixas v. King,* 2 So. 416 (La. 1887), relying on Louisiana's Civil Code, is the only one of these ancient authorities that actually refuses to impose liability on a subsequent transferee because of the plaintiff's failure to join his transferor.  Even assuming that *Seixas* represents a correct statement of the 19th century Louisiana Civil Code, because Louisiana relies upon the Napoleonic code, it (like the other Louisiana cases cited in the Appellees' Brief) may be "utilized only as a supplement to deficient legislation.  This is contrasted with a common-law system where *stare decisis* is primary authority."  *Rivera v. Flav-O-Rich*, 876 F. Supp. 373, 376 (D.P.R. 1995).

In all events the holdings of these authorities are sufficiently obscure, ambiguous and qualified to make it well-nigh impossible to draw any firm conclusions regarding the 19th century practice on the technical question of joinder.  Indeed, the very treatise to which Appellees draw the Court's attention, published only one year after the enactment of the Bankruptcy Act of 1898, JOHN W. SMITH, THE EQUITABLE REMEDIES OF CREDITORS (1899)[11], emphasizes the uncertainty regarding these issues under 19th century practice.  *See* Appellees' Br. at  19 (quoting SMITH § 60, at 79: "all parties implicated in the alleged fraud or participating in the act or transaction complained of" must *generally* be named as defendants") (emphasis added).  Nineteenth century practice on joinder of necessary, proper and indispensible parties in connection with creditors' bills in equity was a morass, as Dr. Smith himself readily acknowledges in his treatise.  *Id.* § 60, at 78 ("It is well known to every practitioner that the question of necessary and proper parties to a suit in chancery is often quite perplexing.  It is

---

[11]  Supp. App. at Tab 28.

equally so to anyone who undertakes a careful analysis of the adjudicated cases with the hope of discovering any well defined principles of general application."). Following this introduction, Dr. Smith goes on in his treatise to note that "the fraudulent grantee, *if in possession*, is particularly indispensible." *Id.* § 62, at 81 (emphasis added). Dr. Smith also suggests that other transferees who do not remain in possession may be proper but not indispensible parties. *See id.* § 61, at 80 n.1 ("The plaintiff may if he chooses to do so, join, as defendants, all who are connected with the property or the transactions to be investigated, but he is only compelled to join those in whom the legal title rests, or those who have a beneficial interest to be affected."); *id.* § 62 at 81 ("Where the suit is by a creditor against a fraudulent lienee to set aside a specific transfer on the ground of fraud, and it appears that the conveyance was absolute and, as between the parties, transferred an indefeasible title or interest, the fraudulent vendor is not a necessary party."); *id.* § 66 at 89-90 n.36 ("If, however, the court can settle the merits of the case without prejudice to the rights of others who are not parties, or if the circumstances of the cases make it impracticable to make them parties, or if the parties are unknown, the court may render a decree without them.")

Given the great uncertainty and variability that attended 19th century equity practice, the 19th century authorities are of little practical value in addressing the question of law arising under sections 548 and 550 of the Bankruptcy Code before the Court. Additionally, in this case, CLO Holding is neither in possession of the transferred property, nor does it hold any legal title or beneficial interest that would be affected by the outcome of this litigation. If Enron and its creditors were magically transported back into the 19th century, the Bankruptcy Code repealed, and chancery courts with their arcane equitable procedures grown up over centuries of practice under the Statute of 13 Elizabeth restored, it would still by no means be clear that CLO Holding

would be a necessary party in a suit in equity based on a creditors' bill to recover the proceeds of the Put Transfers from Caisse and NAB.[12]

Appellees also claim that "modern courts" adopt the view that "transferor and transferee are necessary parties to a fraudulent transfer suit," Appellees' Br. at 20-21, falsely implying that the state law of fraudulent transfer is generally thought to require joinder of all parties in the chain of transfer. The "modern courts" adopt no such principle. *Nastro v. D'Onofrio*, 263 F. Supp. 2d 446 (D. Conn. 2003), the only published federal district court case cited, Appellees' Br. at 20, actually supports Enron, not Appellees. In that case, the defendants were beneficiaries of a fraudulent transfer to a Channel Islands "asset protection" trust. The court found that it lacked personal jurisdiction over the Channel Islands trustee who was the initial transferee and remained in possession of the transferred property. The court nevertheless ordered relief against the United States beneficiaries. *Id.* at 455 ("Although the Court has the ability to provide [plaintiff] relief without enjoining the trustee, the trustee does, of course, have an interest in this litigation. However, the trust beneficiaries, who are also named as defendants … are capable of, and indeed may be obliged to assert any defenses the trustee may have to the fraudulent conveyance action. Finally, 'equity and good conscience' demand that his action go forward. D'Onofrio has transferred these certificates to an off-shore trust in Jersey, which is known as a haven for 'asset protection' trusts, in an effort to specifically thwart [plaintiff]'s effort to collect a judgment.

---

[12]   Further complicating matters, 19th century courts of law and courts of equity exercised concurrent jurisdiction over fraudulent transfer actions. Who might be a necessary party might well turn on whether the action was legal or equitable. For example, in many jurisdictions, a judgment creditor might choose to levy directly on fraudulently conveyed property and then bring a legal action for ejectment in order to gain possession. Smith, The Equitable Remedies of Creditors § 39, at 61-62 & n.5; *id.* § 48, at 71-72. This form of relief would presumably run only against a fraudulent transferee (whether initial or subsequent) in actual possession of the fraudulently transferred property. Another form relief might take would be an action to quiet title to property asserted to have been transferred in fraud of creditors, a form of relief that might well require the joinder of many necessary parties. A third alternative would be the creditors' bill route, with the attendant ambiguities about who might be necessary and who might not, described above.

Courts have a responsibility to remedy wrongful conduct ….").  Similarly, *Krol v. Wilcek (In re H. King & Assocs.)*, 295 B.R. 246 (Bankr. N.D. Ill. 2003), and *Forman v. Jeffrey Matthews Fin. Group LLC (In re Halpert & Co, Inc.)* 254 B.R. 104 (Bankr. D. N.J. 1999), are fully consistent with Enron's reading of sections 548 and 550.  *See Krol*, 295 B.R. at 293 ("Moreover, a trustee cannot succeed in an action brought under § 548 against a party who has not received any property or benefit from either the debtor ***or the debtor's transferee, immediate or mediate***.) (emphasis added); and *Forman*, 254 B.R. at 120 (finding that a non-transferee beneficiary of a fraudulent transfer may be liable under Bankruptcy Code section 550).[13]

These "modern cases" emphasize the flexibility with which courts generally approach the question of joinder of parties, and do not support any rigid rule that would require an estate representative to avoid a transfer first against an initial transferee before proceeding against a subsequent transferee, notwithstanding the language of section 550(a) which provides the trustee with a free election among the potential defendants identified in the statute.  In exercising that flexibility, courts commonly permit plaintiffs to proceed against less than all possible defendants unless: (1) in the absence of a particular defendant complete relief cannot be accorded among those already parties or (2) absent defendants claim an interest relating to the subject of the proceeding and are so situated that the disposition of the proceeding in their absence will impair their rights or impose upon them a substantial risk of incurring double, multiple, or otherwise

---

[13]  Appellees also cite *Murray v. Murray*, 358 So. 2d 723 (Miss. 1978), and *Composite Modules, Inc. v. Tallheimer Bros, Inc.*, 2007 WL 4465461 (D. Mass. 2007) (Supp. App. at Tab 27), at this point in their discussion.  *Murray*, however, determined only that the dismissal of a prior action not involving the subsequent transferee was not *res judicata* in a later action where the transferee was joined, and in doing so noted the rule discussed by a local treatise on Mississippi equity practice to the effect that the party actually in possession of the transferred property at the time of a fraudulent transfer suit is a necessary party.  358 So. 2d at 725. *Composite Modules* involved a suit for common law conversion not fraudulent transfer. The court exercised its discretion to dismiss the suit under FED. R. CIV. P. 19 in light of the fact that a pending state court action existed in which the rights and liabilities of all parties can be determined and that proceeding with a parallel federal action against only one of the defendants would result in wasteful and duplicative litigation and the possibility of inconsistent results.  2007 WL 4465461, *2.

inconsistent obligations by reason of their claimed interest.  *In re Farmer's Market*, 22 B.R. 71, 75 (9th Cir. BAP 1982).  In this case (assuming *arguendo* that these general principles have any bearing on construing the plain language of sections 548 and 550), CLO Holding need not be joined as the initial transferee.  Avoidance of the Put Transfers can have no effect on long-dissolved CLO Holding, nor does CLO Holding hold any interest in the property transferred to Appellees the avoidance and recovery of which is sought in this action.  *See In re Farmer's Market*, 22 B.R. at 75 (holding that bank was not an indispensable party to the action because the court did "not see how the present appellants have been or will be injured by the nonjoinder of the bank").

Finally, and somewhat ironically, Appellees suggest that Enron claims that subsequent transferees are as a matter of course "necessary parties."  Appellees' Br. at 30.  Enron asserts no such thing.  Enron claims only that Bankruptcy Code section 550 gives the estate representative a free election among the potential defendants it identifies.  Nothing *precludes* an estate representative from pursuing an initial transferee under section 550(a) without naming other parties, even though the property has been subsequently transferred.  But nothing *requires* the estate representative to pursue the initial transferee when liability can be directly established against a subsequent transferee.  The fact that, as Appellees note, Appellees' Br. at 30 n.18, section 550(f) provides an additional limitations period (essentially to enable the estate representative that only learns of a subsequent transfer in the course of litigation to recover that transfer), has no bearing on whether section 548 may be timely invoked to directly avoid a transfer against a subsequent transferee.  "[A] careful reading of § 550(a) leads to the conclusion that § 550(f) applies to both the initial transferee and to subsequent transferees."  *Maxwell v. Mich. Fid. Acceptance Corp. (In re Maestas)*, 354 B.R. 844, 847 (Bankr. E.D. Wis. 2006) (rejecting argument that section 550(f) is limited to subsequent transferees because if it was "intended to be limited to subsequent transferees, it could have easily been so worded.").

# V.

## CONCLUSION

For these reasons and for those set forth in Enron's Opening Brief, Enron respectfully submits that the Bankruptcy Code does not require an estate representative to sue an initial transferee as a predicate to avoiding and recovering a fraudulent transfer from a subsequent transferee. The Judgment should be reversed and the case remanded to the Bankruptcy Court in order to permit Enron an opportunity to establish its claims for avoidance and recovery of the fraudulent transfers received by Caisse and NAB.

Dated:   New York, New York
        February 5, 2008

ENRON CREDITORS RECOVERY CORP.,
Reorganized Debtor,
By their Special Bankruptcy Litigation Counsel
KLEE, TUCHIN, BOGDANOFF & STERN LLP
By:

/s/ David M. Stern
DAVID M. STERN (admitted *pro hac vice*)
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
Telephone: (310) 407-4000

--    and    --

VENABLE LLP
By:

/s/ Edward A. Smith
EDWARD A. SMITH (ES-2461)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 307-5500

Attorneys for Plaintiff/Appellant
Enron Creditors Recovery Corp. f/k/a Enron Corp.