26

Westlaw.

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1994 WL 142006 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

▶Aguinda v. Texaco, Inc.
S.D.N.Y.,1994.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Maria AGUINDA, et al., individually and on behalf of all others similarly situated, Plaintiffs,
v.
TEXACO, INC., Defendant.
**No. 93 Civ. 7527 (VLB).**

April 11, 1994.

Joseph C. Kohn, Kohn, Nast & Graf, Philadelphia, PA, Amy Damen, Sullivan & Damen, White Plains, NY, Christobol Bonifaz, Amherst, MA, for plaintiffs.
Griffin B. Bell, King & Spalding, Atlanta, GA, and New York City, Lawrence R. Jerz, Asst. Gen. Counsel, Texaco Inc., White Plains, NY, for defendant.
George Weisz, Cleary, Gottlieb, Steen & Hamilton, New York City, for Republic of Ecuador as amicus curiae.
Cyrus Mehri, Cohen, Milstein, Hausfeld & Toll, Washington, DC, for amicus on behalf of indigenous Amazon peoples.

MEMORANDUM

VINCENT L. BRODERICK, Distict Judge.

I

 **\*1** This litigation entails allegations of environmental abuse during a period ending in 1990, including large-scale disposal of inadequately treated hazardous wastes and destruction of tropical rain forest habitats involving a substantial portion of Ecuadoran territory in the Amazon basin. Plaintiffs, Ecuadoran citizens, contend that operations of a United States-based oil company, defendant Texaco, Inc. ("hereinafter Texaco"), caused harm to indigenous peoples living in the rain forest and to their property, and to the stability of Amazon basin habitats.[FN1] Plaintiffs seek certification of a class approximated at 30,000 Ecuadorans, money damages, and equitable relief (the details of which are not spelled out).

 Texaco has moved to dismiss the complaint in its entirety and also to dismiss various specific portions of it on several grounds, including that the courts of the United States are an inconvenient forum for adjudicating such claims.

 Under Fed.R.Civ.P. 12(b), a motion to dismiss under Rule 12(b)(6) is converted into one for summary judgment under Fed.R.Civ.P. 56 if "matters outside the pleadings are presented to and not excluded by the court." This language applies to material submitted by any party.

 The parties have submitted a massive amount of material, which I am loath to ignore: that submitted on behalf of the plaintiffs in effect supplements the complaint. Courts should not "shut [their] eyes" to "informative material" absent a good reason for doing so. *Donovan v. Gingerbread House,* 536 F.Supp 627, 630 (D.Colo.1982), quoting Clark, "The Summary Judgment," 36 Minn.L.Rev. 567, 575 (1952). Accordingly, conversion of Texaco's Rule 12(b)(6) motions into motions for summary judgment would be appropriate.

 For the reasons discussed in this memorandum, decision is reserved on each of Texaco's motions. Pending further order, discovery is limited to the following:

 (a) events relating to the harm alleged by plaintiffs occurring in the United States, including specific or generalized directions initiating events to be implemented elsewhere, communications to and from the United States and discussions in the United States concerning, or assistance to or guidance for events occurring elsewhere; and

 (b) events occurring outside the United States to the extent the information can be furnished or secured voluntarily or through directives to parties in the United States to secure the information. No involuntary discovery requiring enforcement action to be taken outside the United States is authorized by this memorandum order.

 Pending resolution of Texaco's pending contentions, no default for failure to answer may be claimed. In the interim Texaco, without waiving any

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 2
Not Reported in F.Supp., 1994 WL 142006 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

of its rights, may answer the complaint, but need not unless it chooses to do so. This does not preclude any party from moving for summary judgment or for preliminary relief of any kind if appropriate.

II

Texaco's *forum non conveniens* motion is especially pertinent to plaintiffs' damage and class action claims. Consideration of *forum non conveniens* applications often challenge the court to tailor relief to the needs of the case and in the interest of justice, precedent permits this to be done where appropriate. *In re Pan Am,* Dkt. No. 93-5039 (2d Cir. Feb. 17, 1994) (Lockerbie case). Dismissal (or reinstatement) of all or part of a case may be conditioned not merely upon specific acts, but also upon subsequent events. See *Pedro Pablo Blanco v. Banco Industrial de Venezuela SA,* 997 F.2d 794 (2d Cir.1993), *aff'g* 141 B.R. 25 (S.D.N.Y.1992).

**\*2** Pursuit of individualized monetary relief for a large class of persons in a foreign country growing out of events implemented abroad presents substantial difficulties, even though those events were partially initiated in the United States.[FN2] These difficulties are sufficient to make a forum in New York inconvenient, and to cause litigation of such claims here to run counter to the goal of "just, speedy and inexpensive" judicial administration sought under Fed.R.Civ.P. 1, sentence 2, provided necessary steps are taken to assure availability of an alternate forum for such claims in Ecuador. Disputes over class membership, determination of individualized or common damages, and the need for large amounts of testimony with interpreters, perhaps often in local dialects, would make effective adjudication in New York problematic at best. Most of the factors set forth in *Gulf Oil Corp. v. Gilbert,* 330 US 501 (1947), and *Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (1981), appear to favor resolution of damage claims in Ecuador. These include access to proof, availability of witnesses, possible viewing of sites, local interest, administrative difficulties, problems of choice of law and application of foreign law. See *Sussman v. Bank of Israel,* 990 F.2d 71 (2d Cir.1993).

Appropriate caution in making any final determination requires that prior to dismissal of any part of this case on *forum non conveniens* or other grounds raised by Texaco, Texaco must:

(a) Execute a binding acceptance of personal jurisdiction over it in Ecuadoran courts and

(b) Provide binding acceptance of such jurisdiction by any Texaco subsidiaries having assets derived from the operations in Ecuador at issue, or waiver of the corporate veil by Texaco, or

(c) Post an adequate bond to cover any liability imposed by the Ecuadoran courts.

If these requisites are met, consideration may be given to (a) absolute dismissal of plaintiffs' individualized monetary and class action claims or (b) stay of litigation of such claims in this court to permit their pursuit in Ecuador.

III

As in *Pedro Pablo Blanco v. Banco Industrial de Venezuela SA,* 997 F.2d 794 (2d Cir.1993), plaintiffs and *amici* supporting plaintiffs express concerns relating to possible economically-based prejudice or even threats to them in their home country if litigation is pursued there. Although lack of impartiality in adjudication is a potential problem in all jurisdictions including those in the United States [FN3] (and is indeed a principal basis for diversity of citizenship jurisdiction [FN4]), the courts of the United States are properly reluctant to assume that the courts of a sister democracy are unable to dispense justice.

Regardless of the area, state or nation involved or the period in history, it appears that when then-current means of making a living or preserving the functioning of an industry which provides a livelihood for many persons are challenged, whether by political means, lawsuits or direct action, there is the possibility that there will ensue violence or threats of violence.[FN5] In some cases official acquiescence or participation at some level occurs. Except where (contrary to the situation here) a government or organization such as a totalitarian state, military dictatorship or private group openly employing intimidation is involved, frequently only history can assess accurately the extent, if any, that violence or threats carry the complicity of authorities, and if so at what level.

**\*3** What were called in the *Federalist Papers* ill humors [FN6] affect democratic Republics such as the United States [FN7] as well as countries with other

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1994 WL 142006 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

political systems.[FN8] Neither existence of fears of economic dislocation (well founded or otherwise) nor counter-reaction of violence or threats of violence instigated by any harboring such fears is a reproach to the nation involved or its judiciary. Nor can such concerns be contemporaneously adjudicated fairly or accurately by courts in other nations (absent overt official abuse such as that observed in former Communist or Fascist regimes and similar dictatorships). Consequently this court must seek to find the proper approach to the current litigation without rejecting, adopting, adjudicating or (even by subterranean inference) evaluating these claims at least at this time.[FN9]

A stay of the individualized monetary and class actions claims, which would ripen into dismissal unless plaintiffs are unable to pursue their individual monetary and class action claims in Ecuador, has the advantage of making it unnecessary to consider such issues.

No final determination concerning dismissal of plaintiffs' monetary and class action claims need be arrived at now, inasmuch as the preconditions mentioned above have not yet been established, nor have plaintiffs had an opportunity to consider voluntary dismissal of the damage and class action claims based on the factors discussed here.

The balance of the discussion below assumes without deciding that plaintiffs' monetary and class action claims will be voluntarily withdrawn, dismissed upon *forum non conveniens* grounds, or settled.

IV

Many of the factors discussed above which may favor dismissal of plaintiffs' individual and class action damage claims on *forum non conveniens* grounds are less applicable insofar as injunctive relief is concerned, particularly if the demand for such relief is based on allegedly initiatory events in the United States. There is no known currently ongoing litigation between the parties in Ecuador, nor is there supervision of an entity located in Ecuador, nor is there which would be disrupted were jurisdiction over such equitable claims were to be exercised by this court. See *Pedro Pablo Blanco v. Banco Industrial de Venezuela SA,* 997 F.2d 974 (2d Cir.1993).

The existence or nonexistence of events in this country which may be related to alleged injury in Ecuador may be explored based on documents or other information received in or sent from this country, minutes or recollections of consultations conducted with management in the United States, and evidentiary support from U.S. sources for types of conduct challenged by plaintiffs. Discovery of documents within the control of the defendant and of witnesses located here or on the payroll of the defendant, together with information plaintiffs can furnish without discovery may provide significant information in those respects.

In *Sequihua v. Texaco,* Civil Action # H-93-3432 (S.D.Tex. Jan. 27, 1994), the court dismissed environmental pollution claims against Texaco also involving Ecuador on grounds of comity and *forum non conveniens.* That case differs from the one at bar as set forth in plaintiffs' complaint and supplementary papers in that in *Sequihua* the "challenged activity ... occurred entirely in Ecuador," the "enforcement ... of any judgment" was assumed to be required to be pursued in Ecuador, and relevant witnesses were expected to be solely those located in Ecuador. By contrast, decision-making on the part of the defendant in the United States may or may not turn out to support some or all of plaintiffs' claims in the present case; if activities in the United States supported an equitable judgment in favor of plaintiffs it could presumably be enforced here. The factors relevant to *forum non conveniens* or comity of nations cannot adequately be evaluated in the context of possible equitable relief until discovery concerning any actionable conduct in the United States has been pursued.

**\*4** Exploration of factual information reasonably available may, however, lead to the conclusion that extensive on-site investigation or extensive testimony to be taken in Ecuador are necessary to establish or refute plaintiffs' claims. Were that to become evident, *forum non conveniens* dismissal of equitable claims as well as those for class monetary relief might become necessary, provided that the conditions described above for such dismissal were met.[FN10]

V

Texaco moves to dismiss several claims as based on the "local action" doctrine under which actions

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06597-AKH     Document 29-2     Filed 02/05/2008     Page 5 of 10

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1994 WL 142006 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

involving specific real property, including actions for trespass, creating a nuisance on land affecting nearby properties, and similar torts must be tried where the land is located. *Mississippi & Missouri R.R. v. Ward,* 67 U.S. 485 (1862); Restatement (Third) Foreign Relations Law of the United States § 602 (1987).

Further information is necessary to determine whether or not the current case falls within this category. If any injury caused by defendant's conduct is confined to specifiable real estate, the core concerns underlying the local action doctrine would be applicable. Large-scale industrial pollution in liquid form, by contrast, may spread in widening circles not limited to any specific properties. Whether or not such a description would be applicable cannot be determined without further information.

Moreover, The local action doctrine has been deemed inapplicable where the case does not require exercise of *in rem* jurisdiction, or does not involve trespass on, or determination of title to, land. *Raphael J. Musicus, Inc. v. Safeway Stores,* 743 F.2d 503 (7th Cir.1984). If discovery indicates that actionable steps were initiated in the United States, the local action concept might be inapplicable.

The proper location for federal litigation affecting real estate was also revisited by Congress in the Judicial Improvements Act of 1990, 104 Stat. 5089, which revised the basic venue statute, 28 U.S.C. 1391. The local action concept, criticized in, e.g., *Trust Co. Bank v. U.S. Gypsum,* 950 F.2d 1144, 1148 (2d Cir.1992), was never incorporated in the Judicial Code or any rule, and may have been abrogated by the 1990 restatement of § 1391, a point not raised in *Trust Co. Bank.* In revising § 1391, Congress recognized the significance of the location of property relevant to a lawsuit in determining where the case should be litigated, but specifically treated it as a nonexclusive ground for proper venue. The statute provides that both diversity and federal question suits may be brought in:

> a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated ...

This provision is identical for diversity of citizenship cases, 28 USC 1391(a)(2), and other cases 28 U.S.C. 1391(b)(2). It assumes the presence of personal jurisdiction, not questioned here.

**\*5** The location of property relevant to a case remains pertinent to transfer for convenience under 28 USC 1404(a), see *In re New York Trap Rock Corp.,* 158 B.R. 574 (S.D.N.Y.1993), or dismissal under *forum non conveniens;* appropriate application or non-application of these legal principles requires further information beyond that now available to the court.

If an act contributes to harm in a jurisdiction, it does not escape legal cognizance because the harm is only felt in the aggregate as a result of such behavior. See *Summit Health Ltd. v. Pinhas,* 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991); *Fry v. United States,* 471 U.S. 542 (1975); *Russell v. United States,* 471 U.S. 858 (1985); *Polish National Alliance v. NLRB,* 322 U.S. 643 (1944); *NLRB v. Fainblatt,* 306 U.S. 601 (1939).

It is a truism that events are not always confined to a single political jurisdiction; the physical implementation of an action is often the result of upstream decisions made elsewhere, and may have consequences extending beyond the place of implementation. *Hartford Fire Ins Co v. California,* 113 S.Ct. 2891, 115 L.Ed.2d 612 (1993); see also Griffin, "EC and U.S. Extraterritoriality: Activism and Cooperation," 17 Fordham Int'l L.J. No. 2 at 353 (1994); N.Y.Crim.Proc.Law 20.20.

Although the local action doctrine does not lead to automatic dismissal of any of plaintiffs' claims on the current record, its purposes remain relevant and might lead to dismissal of some claims if the facts as developed show that initiation and effects of the challenged behavior of the defendant were closely confined to specific real estate.

VI

Texaco moves to dismiss count VII, alleging a civil conspiracy, accurately pointing out that no such claim exists under New York law. *Brackett v. Griswold,* 112 N.Y. 454, 467, 20 N.E. 376 (1889); *Smith v. Fitzsimmons,* 180 A.D.2d 177, 584 N.Y.S.2d 692 (4th Dept.1992). New York law, however, calls for the governing substantive law to be determined based on the prevailing interests involved. See *Cooney v. Osgood Machinery* 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993); *Schultz v. BSA,* 65 N.Y.2d 189, 198, 491 N.Y.S.2d 90, 480

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06597-AKH    Document 29-2    Filed 02/05/2008    Page 6 of 10

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1994 WL 142006 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

N.E.2d 679 (1985); *Babcock v. Jackson,* 12 N.Y.2d 473, 484, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). Depending on the facts developed, this case may call for application of the law of more than one jurisdiction according to the purposes served by the legal rules involved. See *Platano v. Norm's Castle,* 830 F.Supp. 796 (S.D.N.Y.1993). The law applicable to a particular challenged event may be international law, the law of Ecuador, that of the United States, or New York, or a combination of these.

Without further elucidation of the location and nature of the underlying events challenged in the complaint, it is premature to determine what sources of law are applicable. Absent such determination it is unclear whether or not there can survive a civil conspiracy count or an equivalent aiding-and-abetting claim akin to that authorized in criminal cases by 18 USC 2. One who assists in illegal conduct or knowingly facilitates it may under some circumstances be liable, even if the "civil conspiracy" label is an inappropriate one under New York law. See *Lowen v. Tower Asset Management,* 653 F.Supp. 1542, 1551-56 (S.D.N.Y.), *aff'd* 829 F.2d 1209 (2d Cir.1987); *Morgan v. McNiff,* 797 F.Supp. 325 (S.D.N.Y.1992); Note, 99 Harv.L.Rev. 986 (1986).

**\*6** Were facts supporting a claim to be established, the label would not be controlling, since under Fed.R.Civ.P. 8(f), "All pleadings shall be so construed as to do substantial justice."

VII

Texaco moves to dismiss count VIII alleging violation of the Alien Tort statute (28 U.S.C. 1350), which was originally enacted in 1789 and by its terms is applicable to private as well as governmental actors. The Alien Tort statute provides:

The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States.[FN11]

Plaintiffs rely on the Alien Tort statute as a source of substantive law. Ordinarily governmental abuses such as official torture are the subject of suits under the Act, but the absence of such a limitation was explicitly noted as significant in *Argentine Republic v. Hess,* 488 U.S. 428, 438 (1989), and suits against non-governmental defendants have been recognized. See *United States v. Arjona,* 120 U.S. 479 (1887); *Nguyen Da Yen v. Kissinger,* 524 F.2d 11934, 1201 n. 132 (9th Cir.1975); *Adra v. Clift,* 195 F.Supp. 875 (D.Md.1961); see also *Sanchez-Espinoza v. Reagan,* 779 F.2d 202, 206 (D.C.Cir.1985); *Bolchos v. Darrell,* 3 Fed.Cas. 810 (D.S.C.1795).

No violation of a treaty has been alleged. The law of nations is, by contrast, customary in nature, to be defined by the usages, solemn commitments and clearly articulated principles of the international community. Participation of the United States in formulation of such usages, commitments and principles is, of course, of particular importance-and may indeed be necessary-where the courts of the United States are asked to enforce them.

Non-treaty international law may be treated as the "sober second thought of the community" upon which, as stated by Justice (later Chief Justice) Harlan F. Stone in "The Common Law in the United States," 50 Harv.L.Rev. 4, 25 (1936), all law ultimately rests. No single document can create it, but the unanimity of view as well as consistency with domestic law and its objectives are highly relevant. See, e.g., United Nations Universal Declaration of Human Rights (1948). Such international pronouncements, persuasive but not directly binding, which have had an important impact on such events as the dismantling of the Berlin Wall and ultimately of the Soviet dictatorship, add to the enforceable core of international law by accretion.

Although many authorities are relevant, perhaps the most pertinent in the present case is the Rio Declaration on Environment and Development (1992). Principle 2 on the first page of the document recognizes that states have "the sovereign right to exploit their own resources pursuant to their own environmental and developmental policies," but also have "the responsibility to ensure that activities within their jurisdiction or control do not cause damage to the environment of other States or areas beyond the limits of national jurisdiction."

**\*7** The Rio Declaration may be declaratory of what it treated as pre-existing principles just as was the Declaration of Independence. Plaintiffs may or may not be able to establish international recognition of the worldwide impact from effects on tropical rain forests as a result of any conduct alleged in their papers which may have been initiated in the United States.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06597-AKH    Document 29-2    Filed 02/05/2008    Page 7 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 142006 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 6

Environmental damage is recognized in the domestic law of the United States as subject to legal restrictions. See among numerous other provisions, the National Environmental Policy Act (42 U.S.C. 4321 *et seq.*); Endangered Species Act (16 U.S.C. 1532); see also 42 U.S.C. 6686-87 and 10 U.S.C. 2521 (affirmative identification of technologies vital to the national interest). Indeed, an entire title of the United States Code (Title 16) is devoted explicitly to conservation. The totality of these enactments bespeak an overall commitment to responsible stewardship toward the environment. See *Suss v. ASPCA,* 823 F.Supp. 181, 184-85 (S.D.N.Y.1993).

Even more significant, United States laws governing hazardous wastes (including among numerous provisions, 15 U.S.C. 1267 [injunctive relief]; 42 U.S.C. 6901 *et seq.*, 42 U.S.C. 9606 [abatement actions]; 49 U.S.C. App. 1471 *et seq.* [transportation]) may well prohibit the conduct alleged in the complaint if carried out in the United States. While this would not necessarily inhibit actions in the United States leading to conduct abroad permitted by foreign law, it is relevant as confirming United States adherence to international commitments to control such wastes. This tends to support the appropriateness of permitting suit under 28 U.S.C. 1350 if there were established misuse of hazardous waste of sufficient magnitude to amount to a violation of international law.

VIII

Not all conduct which may be harmful to the environment, and not all violations of environmental laws, constitute violations of the law of nations. See *Amlon Metals v. FMC,* 775 F.Supp. 668 (S.D.N.Y.1991) (involving a shipment of allegedly hazardous material to a purchaser in a foreign country). Otherwise more detailed statutes and regulations would be effectively superseded, contrary to the intention of the legislatures involved. Moreover, were conduct to occur exclusively in a foreign country, caution would be necessary where 28 U.S.C. 1350 is invoked, in order to assure that decisionmaking by other countries is not interfered with by adjudication in the United States under necessarily highly general concepts.

Unlike *Amlon,* plaintiffs claim that there was here involved a massive industrial undertaking extending over a substantial period of time and with major consequences. It is also asserted that steps in the United States were an integral part of the events at issue.

Decision concerning the possible applicability of 28 U.S.C. 1350 to this case must await additional information after further discovery focusing on events, if any, initiated or assisted in the United States which might violate international law.

IX

**\*8** Texaco seeks dismissal of the complaint on grounds of international comity, inasmuch as Ecuador, not the United States, enacts laws or regulations governing land use in that country.

Such considerations may be more relevant to choice of applicable law than to exercise of jurisdiction. See *Michie v. Great Lakes Steel,* 495 F.2d 213 (6th Cir.), *cert. denied* 419 U.S. 997 (1974).

At this point, no conflict with Ecuadoran law appears to be present. It is unclear at this stage what impact licenses or other approvals obtained in Ecuador may have on this case. Governmental permission for an activity to proceed does not necessarily protect it from lawsuits based on contentions other than the absence of any necessary approvals. An approval to proceed with an activity does not necessarily include approval of the manner in which that activity is carried out. See authorities cited, *Schmoeger v. Algonquin,* 802 F.Supp. 897 (S.D.N.Y.1992). Nor does an *ex parte* approval secured by a private party necessarily protect that party from claims that the activity violates the rights of others. *Cantor v. Detroit Edison,* 428 U.S. 519 (1976).[FN12]

Conduct abroad affecting the United States is widely regarded as being under some circumstances a proper subject of action under United States law in the courts of the United States as well as in the courts of the nation where such conduct is implemented. If more than merely preparatory steps are taken in the United States, if substantial effects are caused in the United States, exercise of jurisdiction may be appropriate. See *Hartford Fire Ins. Co. v. California,* 113 S.Ct. 2891, 125 L.Ed.2d 612, 640 (1993); *Consolidated Gold Fields PLC v. Minorco, SA,* 871 F.2d 252, 261-62 (2d Cir.1989); *Alfadda v. Feen,* 935

Case 1:07-cv-06597-AKH   Document 29-2   Filed 02/05/2008   Page 8 of 10

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1994 WL 142006 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

F.2d 475, 479 (2d Cir.1991); Karmel, "The Second Circuit's Role in Expanding the SEC's Jurisdiction Abroad,"65 St John's L.Rev. # 3 at 743 (Summer 1991).

It is unknown at this stage whether or not implementing instructions going beyond mere preparation and relating to alleged improper activity, occurred in the United States. Plaintiffs may or may not be able to adduce sufficient evidence that there has occurred destruction of rain forests and dispersal of large quantities of harmful material causing or threatening irreparable injury throughout the world, with impacts extending beyond the direct area initially affected.

It is unclear at this juncture whether or not Ecuadoran law has been violated, or whether Ecuadoran law would run counter to application of other sources of law. It is also unclear at this stage whether or not violations of whatever law turns out to be applicable to the facts established would be better pursued in the United States because of difficulties in securing personal jurisdiction in Ecuador or because of difficulties in enforcing judgments in Ecuador.

X

The Government of Ecuador has submitted an *amicus* brief in support of Texaco's motion to dismiss, arguing that exercise of jurisdiction in this case would cause a disincentive to United States firms considering investment in Ecuador:

*9 Ecuador needs foreign investment in order to stimulate its economy ... Foreign investors naturally assume that disputes relating to the development of Ecuador's natural resources are to be adjudicated by the courts of Ecuador.

*Amicus* brief at 2.

Exercise of judicial jurisdiction over events initiated in the United States and carried out abroad (whether in Ecuador or elsewhere) is, however, country-neutral in nature and cannot encourage or discourage investment in any particular country, unless the court were to find that country's courts unqualified to adjudicate relevant matters-a contention made by plaintiffs with respect to Ecuador but not now under consideration and not implicated by the issues delineated in this memorandum order.

Any disincentive caused by exercise of jurisdiction here would not be to investment in Ecuador, which could offer as much protection to foreign investors as any other country, but to conduct likely to violate applicable legal norms regardless of the site of the property affected.

Developing nations such as Ecuador benefit from foreign investment but are injured by environmental pollution. As indicated by the *amicus* brief, in order to attract investment such countries often seek to create the most favorable climate possible-just as a municipality seeking a major athletic team must frequently offer tax and other benefits to attract the team to locate there. Any differential burden imposed by or because of the situation in any particular locale, including Ecuador, may, as pointed out by the *amicus* brief, discourage such investment. For example, were this court to find that Ecuadoran courts were unable to handle fairly cases concerning events there, triggering litigation at the headquarters of an investor, investment in Ecuador might be chilled. No such finding is either made or suggested here (see part III above).

If, on the other hand, litigation at the home site of an investor is based upon conduct initiated at that home site irrespective of where carried out, no such negative effect can be expected. Indeed, the country seeking and benefitting from investment may be relieved by such litigation of the need to offend investors by imposing some environmental or other controls which, however desirable, might be resisted by the investors. The benefit derived from external nondiscriminatory restraints against counterproductive activity is akin to that foreseen for large Republics in *The Federalist No. 10* (Madison).

Ecuador's *amicus* brief stresses the respect due the laws of a country concerning its own resources, cited in the Act of Rio. No conflict between Ecuadoran and other possible sources of law has been cited. Were such a conflict to arise, weight must, of course, be given to the concern quite properly articulated by the *amicus* submission.

XI

Texaco seeks dismissal on the ground that the Government of Ecuador and its agencies now own property involved in Texaco's prior alleged misconduct and that Ecuadoran governmental activity

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06597-AKH    Document 29-2    Filed 02/05/2008    Page 9 of 10

Not Reported in F.Supp.  
Not Reported in F.Supp., 1994 WL 142006 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.)**

Page 8

is inextricably intertwined in the events at issue, thus making them indispensable parties under Fed.R.Civ.P. 19 which have not been joined, and cannot be joined because of sovereign immunity.

**\*10** The extent to which any actionable conduct falls into these categories cannot be determined absent discovery to permit definition of the actual events, if any, which are violative of law enforceable by the courts of the United States, and what relief, if any, would be appropriate. It is thus unclear at this point whether or not any indispensable parties are currently omitted from the complaint. See generally Manning v. Energy Conversion, 13 F.3d 606 (2d Cir.1994).

### XII

This dispute is not necessarily best resolved by further litigation. Were monetary claims to be abandoned or referred to Ecuadoran courts, a disposition of equitable claims beneficial to all parties might be possible if voluntary corrective measures without admission or findings of wrongdoing were feasible in regard to asserted environmental problems. The assistance of an impartial person selected by the parties might be useful in this connection.[FN13]

The assistance of the court may also be requested if desired by the parties.

SO ORDERED.

FN1. Plaintiffs have amplified the spare language of their complaint with complex further submissions which are treated as part of the complaint for present purposes.

FN2. Monetary claims as discussed in this memorandum order, unless otherwise indicated, refer to claims for money damages payable to particular persons or entities, and do not embrace any monetary aspects of equitable relief sought by plaintiffs.

FN3. See authorities cited in Heldman v. Sobol, 846 F.Supp. 285, 1994 WL 74365 (S.D.N.Y.1994).

FN4. See authorities cited, Liu v. Westchester County Medical Center, 837 F.Supp 82 (S.D.N.Y.1993).

FN5. See, e.g., P. Zausner, *Unvarnished* (1941).

FN6. See *The Federalist No. 78* (Hamilton).

FN7. See, in regard to situations in the United States concerning which sufficient distance for evaluation has ripened, W. Brown, *Altgeld of Illinois* (1924), dealing with events in the late nineteenth century in Chicago, also memorialized in V. Lindsay, *Eagle Forgotten* (1914); see also *Attorney for the Damned: Clarence Darrow* (A. Weinberg ed 1957).

FN8. See generally *The Federalist No. 10* (Madison).

FN9. Were there to be evidence that events in the United States directly or indirectly encouraged violence or threats of violence, entirely separate considerations (not necessarily relevant to the proper forum for claimed monetary or class relief) would be presented.

FN10. There is inevitably some risk that the articulated possibility of such dismissal will become a self-fulfilling prophecy because of incentives to find legitimate, valid reasons for the need of additional on-site inquiry or testimony. Awareness of this risk may, however, permit it to be avoided.

FN11. This statute need not be invoked to sustain subject matter jurisdiction, since diversity of citizenship between the Ecuadoran plaintiffs and Texaco is present under 28 U.S.C. 1332(a)(2).

FN12. Exemptions from other laws based on governmental authorization for some kinds of an activity are often sparingly inferred under United States law. See, e.g., National Gerimedical Hospital v. Blue Cross, 452 U.S. 378 (1981). Neither Ecuadoran law concerning the matter at issue in this lawsuit nor the proper choice of law for differing aspects of this litigation can as yet be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 9
Not Reported in F.Supp., 1994 WL 142006 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

    determined.

    FN13. See generally *Sheet Metal Workers v. Baylor Heating,* 877 F.2d 547 (7th Cir 1989); Note, 3 Ohio St.J.Dispute Resol. # 2 at 385 (1988); Aufses, "Thinking About ADR," 16 Litigation # 3 at 33 (ABA Spring 1990); Panel Discussion, "Unique Problems and Opportunities for Permanent Umpireships," 42 Nat'l Acad. Arb. Proceedings Ann. Meeting 176 (1990). Concerning statutes permitting enforcement of international arbitration arrangements, see *Seetransport v. Navimpex,* 989 F.2d 572 (2d Cir.1992).

S.D.N.Y.,1994.
Aguinda v. Texaco, Inc.
Not Reported in F.Supp., 1994 WL 142006 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.